**Exhibit A**

# No. 126511

---

## IN THE SUPREME COURT OF ILLINOIS

---

MARQUITA McDONALD,

Plaintiff-Respondent,

v.

SYMPHONY BRONZEVILLE PARK, LLC, *et al.*,

Defendant-Petitioner.

---

Petition for Leave to Appeal Under Supreme Court Rule 315
from the Illinois Appellate Court, First District
Case No. 1-19-2398

On appeal from the Circuit Court of Cook County under Supreme Court Rule 308,
Case No. 2017-CH-11311
The Honorable Raymond Mitchell, Judge Presiding

---

## DEFENDANT-PETITIONER SYMPHONY BRONZEVILLE PARK, LLC'S PETITION FOR LEAVE TO APPEAL UNDER ILLINOIS SUPREME COURT RULE 315

---

Richard P. McArdle (#6216504; rmcardle@seyfarth.com)
Joseph A. Donado (#6277386; jdonado@seyfarth.com)
SEYFARTH SHAW LLP
233 South Wacker Drive; Suite 8000
Chicago, Illinois 60606

*Attorneys for Defendant-Petitioner*
*Symphony Bronzeville Park, LLC*

**ORAL ARGUMENT REQUESTED**

E-FILED
10/30/2020 2:59 PM
Carolyn Taft Grosboll
SUPREME COURT CLERK

## POINTS AND AUTHORITIES

PRAYER FOR LEAVE TO APPEAL ............................................................ 1

STATEMENT OF APPELLATE COURT JUDGMENT BELOW ............................ 1

STATEMENT OF POINTS RELIED UPON FOR REVIEW .................................... 1

    820 ILCS § 305/5(a) .............................................................2, 3

    820 ILCS § 305/11.................................................................2, 3

    Ill. Sup. Ct. R. 315(a) ..............................................................2

    *Rosenbach v. Six Flags Entertainment Corp.*,
        2019 IL 123186.................................................................3, 4

    *Rosewood Corp. v. Transamerica Ins. Co.*,
        57 Ill. 2d 247 (1974) .........................................................3

    *Folta v. Ferro Eng'g*,
        2015 IL 118070.................................................................3, 4

    *Barragan v. Casco Design Corp.*,
        216 Ill. 2d 435 (2005) .........................................................3

    *Benitez v. KFC Nat. Mgmt. Co.*,
        305 Ill. App. 3d 1027 (2d Dist. 1999)...................................4

    *Goins v. Mercy Ctr. for Health Care Servs.*,
        281 Ill. App. 3d 480 (2d Dist. 1996)...................................4

STATEMENT OF FACTS...........................................................................4

    *Lewis v. Lead Indus. Ass'n, Inc.*,
        342 Ill. App. 3d 95 (1st Dist. 2003) ......................................5

    *Rosenbach v. Six Flags Entertainment Corp.*,
        2019 IL 123186.................................................................6, 8

    735 ILCS 5/2-619(a)(9) ............................................................6

    820 ILCS § 305/5(a) ................................................................6

    820 ILCS § 305/11...................................................................6

    Illinois Supreme Court Rule 308 ................................................7, 8

*Folta v. Ferro Eng'g,*
2015 IL 118070 ...................................................................................7

*Meerbrey v. Marshall Field & Co.,*
139 Ill. 2d 455 (1990) ........................................................................7

*Sjostrom v. Sproule,*
33 Ill. 2d 40 (1965) ............................................................................7

*Unger v. Continental Assurance Co.,*
107 Ill. 2d 79 (1985) ..........................................................................7

*Collier v. Wagner Castings Co.,*
81 Ill. 2d 229 (1980) ..........................................................................7

*Pathfinder Co. v. Industrial Comm'n,*
62 Ill. 2d 556 (1976) ..........................................................................7

*People ex rel. Birkett v. Dockery,*
235 Ill. 2d 73 (2009) ..........................................................................7

*McDonald v. Symphony Bronzeville Park, LLC,*
2020 IL App (1st) 192398 ...................................................................8

**ARGUMENT** .............................................................................................. 9

I.      The First District's Ruling Should Be Reversed Because It
        Conflicts With The Exclusivity Provisions' Plain Language
        And This Court's Precedent. ............................................... **9**

        *Rosenbach v. Six Flags Entertainment Corp.,*
        2019 IL 123186 ..........................................................................9

        A.      The First District's Ruling Conflicts With The Plain
                Language Of The Exclusivity Provisions Of The
                Workers' Compensation Act. ................................... 9

                *McDonald v. Symphony Bronzeville Park, LLC,*
                2020 IL App (1st) 192398 ........................................9

                *Davis v. Toshiba Mach. Co., Am.,*
                186 Ill. 2d 181 (1999) .............................................9

                *People ex rel. LeGout v. Decker,*
                146 Ill. 2d 389 (1992) .............................................9

                *Rosewood Corp. v. Transamerica Ins. Co.,*
                57 Ill. 2d 247 (1974) ...............................................9

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

*Solich v. George & Anna Portes Cancer Prevention
Center of Chicago, Inc.*,
158 Ill. 2d 76 (1994) ...................................................9

820 ILCS § 305/5(a) ................................................9, 10

820 ILCS § 305/11.........................................................10

*Gannon v. Chicago, M., St. P. & P. Ry. Co.*,
13 Ill. 2d 460 (1958) ...............................................10

**B.    The First District's Ruling Conflicts With The Holding
Of *Rosenbach*:    That A Violation Of BIPA Yields A
"Real And Significant *Injury*."**................................. 10

*Rosenbach v. Six Flags Entertainment Corp.*,
2019 IL 123186................................................10, 11

820 ILCS § 305/5(a) ...................................................10

820 ILCS § 305/11.........................................................10

*McAllister v. Ill. Workers' Comp. Comm'n*,
2019 IL App (1st) 162747WC ................................11

**C.    The First District Improperly Created A New Exception
To The Plain Language Of The Exclusivity Provisions.**.......... 11

*Rosewood Corp. v. Transamerica Ins. Co.*,
57 Ill. 2d 247 (1974) ...............................................11

*Folta v. Ferro Eng'g*,
2015 IL 118070.......................................................11

*McDonald v. Symphony Bronzeville Park, LLC*,
2020 IL App (1st) 192398.................................11, 12

*Pathfinder Co. v. Industrial Comm'n*,
62 Ill. 2d 556 (1976) ...............................................11

*Collier v. Wagner Castings Co.*,
81 Ill. 2d 229 (1980) ...............................................11

*Moushon v. National Garages, Inc.*,
9 Ill. 2d 407 (1956) .................................................11

*Meerbrey v. Marshall Field & Co.*,
139 Ill. 2d 455 (1990) .............................................11

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

*Gannon v. Chicago, M., St. P. & P. Ry. Co.*,
13 Ill. 2d 460 (1958) ...............................................12

1.    **The Availability Of Liquidated Damages Is
      Irrelevant To Whether McDonald Suffered A
      Workplace "Injury."** ...................................... 12

      *Hydrite Chem. Co. v. Calumet Lubricants
      Co.*,
      47 F.3d 887 (7th Cir. 1995) ...........................12

      *Outboard Marine Corp. v. Liberty Mut. Ins.
      Co.*,
      154 Ill. 2d 90 (1992) ...................................12

      *Giammanco v. Giammanco*,
      253 Ill. App. 3d 750 (1993) ..........................13

      *Sterk v. Redbox Automated Retail, LLC*,
      672 F.3d 535 (7th Cir. 2012) ........................13

      *Rosenbach v. Six Flags Entertainment
      Corp.*,
      2019 IL 123186 .........................................13

2.    **The Exclusivity Provisions Apply Even As To
      Employee Claims Under Statutes Intended To
      Deter Misconduct.** .......................................... 13

      *McDonald v. Symphony Bronzeville Park,
      LLC*,
      2020 IL App (1st) 192398 .......................13, 14

      *Gannon v. Chicago, M., St. P. & P. Ry. Co.*,
      13 Ill. 2d 460 (1958) ..............................13, 14

      820 ILCS § 305/5(a) ..........................................13

      *Kennerly v. Shell Oil Co.*,
      13 Ill. 2d 431 (1958) ...................................14

      740 ILCS §150/9 ...............................................14

      *Vacos v. LaSalle Madison Hotel Co.*,
      21 Ill. App. 2d 569 (1st Dist. 1959) ..............14

      *Copass v. Ill. Power Co.*,
      211 Ill. App. 3d 205 (4th Dist. 1991) ...........14

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

*Carey v. Coca-Cola Bottling Co. of
   Chicago,*
   48 Ill. App. 3d 482 (2d Dist. 1977)..............................14

*Trop v. Dulles,*
   356 U.S. 86 (1958)......................................................14

**3.     The Inability To Recover Benefits Is Irrelevant
         When Determining Whether The Exclusivity
         Provisions Bar A Claim.**................................................. 15

*McDonald v. Symphony Bronzeville Park,
   LLC,*
   2020 IL App (1st) 192398......................................15, 17

*Folta v. Ferro Eng'g,*
   2015 IL 118070.........................................15, 16, 17, 18

*Moushon v. National Garages, Inc.,*
   9 Ill. 2d 407 (1956) ...................................15, 16, 17, 18

*Meerbrey v. Marshall Field & Co.,*
   139 Ill. 2d 455 (1990) .....................................15, 17, 18

*Duley v. Caterpillar Tractor Co.,*
   44 Ill. 2d 15 (1969) ....................................................16

*Sjostrom v. Sproule,*
   33 Ill. 2d 40 (1965) ....................................................16

*Unger v. Continental Assurance Co.,*
   107 Ill. 2d 79 (1985) ..................................................16

820 ILCS § 305/5(a) .......................................................16

820 ILCS § 305/11...........................................................16

*Goins v. Mercy Ctr. for Health Care Servs.,*
   281 Ill. App. 3d 480 (2d Dist. 1996)...........................16

*In re Marriage of Mathis,*
   2012 IL 113496...........................................................17

*People ex rel. Birkett v. Dockery,*
   235 Ill. 2d 73 (2009) ............................................17, 18

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

*Rosenbach v. Six Flags Entertainment Corp.*,
2019 IL 123186.....................................................17, 18

*Zenith Radio Corp. v. United States*,
437 U.S. 443 (1978)....................................................17

820 ILCS § 310/5(a) .......................................................18

820 ILCS § 310/11..........................................................18

*Davis v. Toshiba Mach. Co., Am.*,
186 Ill. 2d 181 (1999) .................................................18

*Gannon v. Chicago, M., St. P. & P. Ry. Co.*,
13 Ill. 2d 460 (1958) ...................................................18

**D.    The First District Contravened This Court's Directive To Harmonize The Two Statutes Whenever Reasonably Possible**.......................................................................... 18

*Knolls Condominium Ass'n v. Harms*,
202 Ill. 2d 450 (2002) .............................................18

*Meerbrey v. Marshall Field & Co.*,
139 Ill. 2d 455 (1990) .............................................19

**II.    The First District's Ruling Creates A Conflict With How The Second District Addresses Workplace Privacy Injuries.................... 19**

*Goins v. Mercy Ctr. for Health Care Servs.*,
281 Ill. App. 3d 480 (2d Dist. 1996)....................................19

*Rosenbach v. Six Flags Entertainment Corp.*,
2019 IL 123186...............................................................19

*Benitez v. KFC Nat. Mgmt. Co.*,
305 Ill. App. 3d 1027 (2d Dist. 1999)..................................19

Ill. Sup. Ct. R. 315(a) ..............................................................20

**CONCLUSION** ......................................................................... 20

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

## PRAYER FOR LEAVE TO APPEAL

Defendant-Petitioner Symphony Bronzeville Park, LLC submits this Petition in accordance with Illinois Supreme Court Rule 315 requesting leave to appeal from a decision by the Illinois Appellate Court, First District, which pertains to a question of law certified in accordance with Illinois Supreme Court Rule 308.

## STATEMENT OF APPELLATE COURT JUDGMENT BELOW

The First District Appellate Court filed its decision in this matter on September 18, 2020. *See McDonald v. Symphony Bronzeville Park, LLC*, 2020 IL App (1st) 192398, ¶¶1-30 (attached as A188-A203).[1] Defendant-Petitioner Symphony Bronzeville Park, LLC did not file a Petition for Rehearing, thereby rendering this Petition for Leave to Appeal timely: by operation of rule, the deadline for this Petition was October 23, 2020, Ill. Sup. Ct. R. 315(b), but, pursuant to Bronzeville's motion, this Court extended that deadline to October 30, 2020. (A204)

## STATEMENT OF POINTS RELIED UPON FOR REVIEW

Plaintiff Marquita McDonald filed this class action alleging that she suffered an injury—including "bodily injury" and "mental anguish"—when clocking in and out from work on a "fingerprint scanner" while employed by Defendant Symphony Bronzeville Park, LLC ("Bronzeville"). (A11-A12 at ¶¶28, 29, 36) McDonald alleges that Bronzeville failed to comply with the Illinois Biometric Information Privacy Act, 740 ILCS § 14/1, *et seq.* ("BIPA"), which McDonald describes as a statute designed to

---

[1] Bronzeville cites to material in the Appendix as "A" followed by the page number in the upper right-hand corner of the Appendix. With the exception of the First District's decision and this Court's recent order on Bronzeville's motion for extension of time, all items in the Appendix were included in the Supporting Record filed with Bronzeville's Application for Leave in the First District and previously authenticated by affidavit in accordance with Illinois Supreme Court Rule 328.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

prevent "serious and irreversible privacy risks" that might occur "if a fingerprint database [were] hacked, breached, or otherwise exposed." (A6 at ¶¶3-4) McDonald seeks damages under BIPA, as well as injunctive relief "requiring [Bronzeville] to collect, store, and use biometric identifiers or biometric information in compliance with [] BIPA." (A17 at ¶56)

This Petition concerns McDonald's ability to recover statutory damages under BIPA against her former employer, but has no impact on her ability to obtain injunctive relief under the statute. In short, the Circuit Court recognized that "there is substantial ground for difference of opinion" as to whether McDonald can recover damages against her employer in light of two provisions in the Workers' Compensation Act, 820 ILCS § 305/5(a); 820 ILCS § 305/11 (together, the "Exclusivity Provisions"). (A187) Accordingly, the Circuit Court certified the following question for immediate appeal:

> Do[] the exclusivity provisions of the Workers' Compensation Act bar a claim for statutory damages under BIPA where an employer is alleged to have violated an employee's statutory privacy rights under BIPA?

(A4) The certified question involves an issue of significance that warrants this Court's review because it pertains to the core issue that lies at the heart of this and hundreds of other BIPA class actions in which employees are seeking to certify classes that will foist massive and often bet-the-company damages upon their employers for injuries allegedly incurred while clocking in and out of work. *See* Ill. Sup. Ct. R. 315(a) (identifying "the general importance of the question presented" as a factor to consider in determining whether to grant a petition for leave to appeal).

The First District erred in answering the certified question in the negative, and Bronzeville submits the following points in support of its request for review and reversal:

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

***Point #1: Disregarding Plain Language.*** Under the plain language of the Exclusivity Provisions, an employee has "no common law or statutory right to recover damages" from her employer for an "injury" incurred "in the line of [] duty," 820 ILCS § 305/5(a), or that arises in "the course of [] employment," 820 ILCS § 305/11. A straightforward application of this plain language means that McDonald cannot sue her former employer, Bronzeville, for damages for "bodily injury," "mental anguish," "loss of privacy rights," or any other "injury" she allegedly incurred while clocking in and out from work, regardless of whether she seeks damages as a matter of common law or "statutory right." *See* 820 ILCS § 305/5(a). (Argument Section I.A)

***Point #2: Conflict with Rosenbach.*** In its only decision interpreting BIPA to date, this Court held that a statutory violation in itself yields a "real and significant injury." *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186 at ¶34. Given that holding and given that the plain language of the Exclusivity Provisions applies to any "injury" incurred in "the line of [] duty" or "the course of employment," the First District erred in ruling that McDonald's workplace BIPA "injury" falls outside the Exclusivity Provisions. (Argument Section I.B)

***Point #3: Impermissible Carve Out.*** A fundamental principle of statutory construction is that "a statute cannot be construed so as to contravene the express provisions of the statute." *Rosewood Corp. v. Transamerica Ins. Co.*, 57 Ill. 2d 247, 253 (1974). In *Folta v. Ferro Eng'g*, this Court construed functionally identical language to that at issue here and held that it would be a "radical departure" from the statutory text to interpret the phrase "any injury" as being limited only to "certain" types of injury. 2015 IL 118070 at ¶41. Thus, by carving out BIPA workplace injuries from the plain language of the Exclusivity Provisions, which pertain to any "injury" incurred in "the line of [] duty" or "the course of employment," the First District contravened this fundamental principle and this Court's precedent. (Argument Section I.C)

***Point #4: Failure To Harmonize.*** When multiple statutes are at issue, courts have "a duty to interpret the statutes in a manner" that "gives effect to both statutes, where such an interpretation is reasonably possible." *See Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 441–42 (2005). Here, the Exclusivity Provisions bar only the "right to recover ***damages***," which means McDonald may pursue a private right of action under BIPA for injunctive relief (thereby fulfilling the legislative purpose of BIPA by protecting biometric information), and employers are protected from large damages claims for work-related injuries (thereby fulfilling a legislative purpose of the Workers' Compensation Act). The First District erred by failing to harmonize the two statutes and unnecessarily discarding the robust protections that Illinois employers have long maintained under the Workers' Compensation Act. (Argument Section I.D)

***Point #5: Inconsistency Between Districts.*** Another appellate district has held that damages claims based on employee privacy injuries—like being spied upon

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

in a workplace bathroom, *Benitez v. KFC Nat. Mgmt. Co.*, 305 Ill. App. 3d 1027, 1029-31, 1038 (2d Dist. 1999), and having sensitive medical information disclosed, *Goins v. Mercy Ctr. for Health Care Servs.*, 281 Ill. App. 3d 480, 487–88 (2d Dist. 1996)—***do*** fall within the Exclusivity Provisions. In contrast, the First District here held that the "character" of McDonald's privacy injury is such that it does not "fall within the categorical purview" of the Workers' Compensation Act, thereby creating a conflict with another appellate district. (Argument Section II)

As these points of error reflect, the First District's ruling conflicts with the plain language of the Exclusivity Provisions and is irreconcilable with *Rosenbach*, *Folta*, and other precedent established by this Court and another appellate district. Ill. Sup. Ct. R. 315(a).

## STATEMENT OF FACTS

*McDonald Alleges That Clocking In And Out From Work Caused Her Workplace Injury, Including A "Bodily Injury In The Form Of Mental Anguish"*

Bronzeville is a post-acute care facility that provides patients with a "variety of services, from rehabilitative to palliative care, typically after [patients] have undergone major medical procedures." (A5 at ¶1) McDonald is a former Bronzeville employee whose tenure lasted less than three months—from December 2016 to February 2017. (A11 at ¶28) McDonald alleges that she and other employees are required on a daily basis to scan their fingerprints in Bronzeville's time clocks as part of a "biometric time tracking system" and "means of authentication." (A6 at ¶2; A11 at ¶31)

McDonald contends that this time-clock system violates BIPA, which she describes as "simply an informed consent statute" that does not "absolute[ly] bar [ ] the collection, sending, transmitting or communicating of biometric data." (A9-A10 at ¶19) Specifically, McDonald alleges that Bronzeville "disregards its employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA" by failing to:

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

- Properly inform employees in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used;

- Provide a publicly available retention schedule for permanently destroying employee fingerprints; and

- Obtain a written release from employees to collect, capture, or otherwise obtain their fingerprints.

(A6 at ¶5)  McDonald, however, does ***not*** allege that Bronzeville specifically intended to invade her privacy, or that her fingerprints or biometric information have been improperly disclosed to a third-party or somehow compromised.  (A5-A19 at ¶¶1-64) Nonetheless, McDonald alleges that she "has continuously and repeatedly been exposed to the risks and harmful conditions created by [Bronzeville's] violations of [] BIPA" such that she has "experienced bodily injury in the form of mental anguish." (A12 at ¶36)

McDonald also asserts a negligence claim that parrots her BIPA claim.  (A17-A18 at ¶¶57-64)[2]  There, McDonald alleges that Bronzeville failed to exercise reasonable care in the collection and use of her biometric identifiers or biometric information: "[s]pecifically [Bronzeville was] required to collect, retain, store, and use Plaintiff's and the Class's biometric information and identifiers in compliance with the standards set forth by the BIPA." (A17 at ¶58)  To assert such a claim, McDonald must have suffered an alleged "injury," for without an injury her negligence claim would be patently deficient.  *See, e.g., Lewis v. Lead Indus. Ass'n, Inc*., 342 Ill. App. 3d 95, 101 (1st Dist. 2003).  And McDonald appears to recognize as much, for she alleges that Bronzeville's conduct "proximately caused * * * [her] mental anguish and mental injury." (A18 at ¶63)

---

[2] In the face of a Section 2-615 motion to dismiss filed by Symphony Healthcare, LLC (A51-A54)—one of the two original Defendants in this matter—McDonald dropped that entity as a defendant rather than respond to the motion. (A72-A74) The Circuit Court granted leave for McDonald to amend the complaint to name two new parties, but Bronzeville's motion to dismiss the original complaint proceeded to full briefing. It is the original complaint to which Bronzeville's motion to dismiss pertained. (A3 at n.3; A92)

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

***Because McDonald's Alleged Injury Arises From Her Employment, Bronzeville Moves To Dismiss Her Claim For Damages Based On Workers' Compensation Exclusivity***

Following the Illinois Supreme Court's decision in *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, Bronzeville moved to dismiss the Complaint under 735 ILCS 5/2-619(a)(9). Bronzeville asserted that the Exclusivity Provisions of the Illinois Workers' Compensation Act barred McDonald's claim for statutory damages because she suffered an "injury" arising from the course of her employment and because that injury included "bodily" harm and "mental anguish." (A43-A45; A103-A106) In accordance with those provisions, an employee, like McDonald, has "no common law or statutory right to recover damages from the employer * * * for injury [] sustained * * * while engaged in the line of [her] duty," 820 ILCS § 305/5(a), or for an injury "arising out of and in the course of the employment," 820 ILCS § 305/11. Bronzeville acknowledged, however, that these provisions bar only McDonald's claim for damages under BIPA, such that they do not bar a claim for injunctive relief under the statute (A106), like an "Order requiring [Bronzeville] to collect, store, and use biometric identifiers or biometric information in compliance with [] BIPA" (A17 at ¶56).

On June 17, 2019, the Circuit Court denied Bronzeville's motion to dismiss. (A109-A112) Despite McDonald's allegations of "bodily injury" and "mental anguish" (A12 at ¶36), the Circuit Court held that this workplace injury was not "compensable" for purposes of Workers' Compensation exclusivity. (A109-A112) In particular, the Circuit Court characterized McDonald's alleged injury as "the loss of the ability to maintain her privacy rights" that fell outside the Exclusivity Provisions because it "is neither a psychological nor physical injury." (A111)

-6-

***The Circuit Court Certifies A Question To Determine Whether An Employee Who
Incurs A Workplace Injury Can Sue Her Employer For Damages Under BIPA***

Thereafter, Bronzeville moved for reconsideration and, in the alternative, to certify questions under Illinois Supreme Court Rule 308. (A113-A148) The upshot of the motion was that the Circuit Court's decision conflicted both with [1] the plain language of the Exclusivity Provisions and with Illinois Supreme Court authority that broadly construes those provisions, *Folta*, 2015 IL 118070 at ¶¶14, 18-30; *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 467–68 (1990); *Sjostrom v. Sproule*, 33 Ill. 2d 40, 43 (1965); *Unger v. Continental Assurance Co.*, 107 Ill. 2d 79, 85 (1985); *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 237 (1980); *Pathfinder Co. v. Industrial Comm'n*, 62 Ill. 2d 556, 566-67 (1976), and [2] with Illinois Supreme Court authority that makes clear that a court "cannot rewrite a statute, and depart from its plain language, by reading into it exceptions, limitations or conditions not expressed by the legislature," *People ex rel. Birkett v. Dockery*, 235 Ill. 2d 73, 81 (2009); such as an exception to the Workers' Compensation Act for "privacy injuries" that McDonald proposed in the proceedings below. (A64-A69)

While the Circuit Court denied reconsideration, it determined that "[w]hether a statutory privacy claim is preempted by the Workers' Compensation Act remains unsettled" and that "whether the Workers' Compensation Act's exclusivity provisions bar Plaintiff's claim for statutory damages under BIPA is a question on which there is room for difference of opinion." (A1-A4) In line with that determination, the Circuit Court granted Bronzeville's motion and certified the following question of law in accordance with Illinois Supreme Court Rule 308:

-7-

> Do[] the exclusivity provisions of the Workers' Compensation Act bar a claim for statutory damages under BIPA where an employer is alleged to have violated an employee's statutory privacy rights under BIPA?

(A4)   The Circuit Court issued its Order certifying the above question on October 29, 2019 (*id.*), thereby providing the basis for this interlocutory appeal.

### The First District Answers The Certified Question In The Negative, But Does Not Square Its Ruling With The Plain Language of the Statute Or Rosenbach.

The First District answered the certified question in the negative.  (A188-A203)  Although the Court stated that it is bound to apply the plain language of the statute when that language is "clear and unambiguous," and although the Court did not determine that the Exclusivity Provisions were ambiguous, the Court held that an employee's BIPA injury is not barred by the Workers' Compensation Act:

> [W]e fail to see how a claim by an employee against an employer for liquidated damages under the Privacy Act—available without any further compensable actual damages being alleged or sustained and designed in part to have a preventative and deterrent effect—represents the type of injury that categorically fits within the purview of the Compensation Act, which is a remedial statute designed to provide financial protection for workers that have sustained an actual injury.  As such, we conclude that the exclusivity provisions of the Compensation Act do not bar a claim for statutory, liquidated damages, where an employer is alleged to have violated an employee's statutory privacy rights under the Privacy Act, as such a claim is simply not compensable under the Compensation Act.

*McDonald v. Symphony Bronzeville Park, LLC*, 2020 IL App (1st) 192398, ¶27.  The First District did not cite authority in the above-quoted analysis; the First District also did not attempt to reconcile its reasoning with *Rosenbach's* holding that a statutory violation in itself yields a "real and significant injury," *Rosenbach*, 2019 IL 123186 at ¶34, or otherwise explain how an employee who alleges she was injured while clocking in and out of from work squares with the plain language of the Exclusivity Provisions, which applies to any "injury" incurred in the "line of [] duty" or "the course of [] employment."

-8-

## ARGUMENT

I.  **The First District's Ruling Should Be Reversed Because It Conflicts With The Exclusivity Provisions' Plain Language And This Court's Precedent.**

Several independent reasons warrant this Court's review.  In short, the First District erred by:  [1] failing to apply the plain language of the Exclusivity Provisions; [2] failing to uphold this Court's holding in *Rosenbach v. Six Flags Entertainment Corp.*; [3] creating a new exception to the Exclusivity Provisions that finds no basis in the plain language; and [4] failing to adopt a statutory construction that harmonizes BIPA and the Workers' Compensation Act and fulfills the legislative purpose of both statutes.[3]

A.  **The First District's Ruling Conflicts With The Plain Language Of The Exclusivity Provisions Of The Workers' Compensation Act.**

The certified question presents an issue of statutory construction.  *See McDonald*, 2020 IL App (1st) 192398 at ¶11.  The analysis thus begins with the plain language of the statute.  *See Davis v. Toshiba Mach. Co., Am.*, 186 Ill. 2d 181, 184–85 (1999).  If the plain language of the statute is unambiguous, then the court must apply it and its inquiry ends there.  *See People ex rel. LeGout v. Decker*, 146 Ill. 2d 389, 394 (1992) ("There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports."); *Rosewood*, 57 Ill. 2d at 253 ("a statute cannot be construed so as to contravene the express provisions of the statute"); *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 83 (1994) (clear statutory language must be given effect).

The First District did not apply the plain language of the Exclusivity Provisions.  Those provisions unambiguously state that an employee has "no common law ***or***

---

[3] In addition, the First District's ruling creates a conflict with decisions rendered by the another appellate district.  (*See* Argument Section II)

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

***statutory right*** to recover damages from the employer * * * for injury [] sustained by any employee while engaged in the line of [] duty," 820 ILCS § 305/5(a) (emphasis added), or for an injury "arising out of and in the course of the employment," 820 ILCS § 305/11. To be sure, McDonald is pressing a statutory right to damages for an injury sustained in the course of her job duties, for she repeatedly alleges that Bronzeville ***required*** her to use the "biometric" time clock at issue. (*See* A6 at ¶2 ("When employees first begin their jobs at Symphony, they are ***required*** to scan their fingerprint in its time clocks."); *see also* A10-A11 at ¶¶22, 23, 29 31, 59 (similar)) Given that McDonald is seeking damages for alleged workplace injuries, her claim is unfounded because "[t]he language of [820 ILCS § 305/5(a)], read alone, leaves no room for construction[:] it bars any 'statutory right to recover damages for injury.'" *Gannon v. Chicago, M., St. P. & P. Ry. Co.*, 13 Ill. 2d 460, 462-63 (1958); *see also Moushon v. National Garages, Inc.*, 9 Ill. 2d 407, 411-12 (1956). The plain language of the Exclusivity Provisions thus answers the certified question: the Exclusivity Provisions bar an employee's claim against her employer for statutory damages under BIPA because such damages arise from a workplace injury that occurred in the line of duty. The First District's ruling should be reviewed and reversed because it fails to apply the statutes' plain language as written.

### B. The First District's Ruling Conflicts With The Holding Of *Rosenbach*: That A Violation Of BIPA Yields A "Real And Significant *Injury*."

The First District's ruling also conflicts with this Court's only BIPA decision to date. In *Rosenbach v. Six Flags Entertainment Corp.*, this Court held that an individual suffers a "real and significant injury" even upon merely technical violations of the statute that do not cause some additional harm. 2019 IL 123186, ¶34. An inescapable legal conclusion flows from that holding: because a technical violation of BIPA yields a "real

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

and significant injury," a workplace BIPA injury must therefore fall within the plain language of the Exclusivity Provisions, as they apply to any "injury" incurred in the "line of [] duty" or "the course of employment." *See* 820 ILCS § 305/5(a); 820 ILCS § 305/11. Again, McDonald's own allegations establish that her injury occurred in the "line of [] duty" and during "the course of [her] employment" because she alleges Bronzeville "required" her to clock in and out of work. *See, e.g., McAllister v. Ill. Workers' Comp. Comm'n*, 2019 IL App (1st) 162747WC, ¶¶27, 44 (Workers' Compensation Act applies when "the employee was performing acts he was instructed to perform by his employer"). Thus, the First District's ruling not only conflicts with the plain language of the Exclusivity Provisions, but it also conflicts with *Rosenbach*.

### C. The First District Improperly Created A New Exception To The Plain Language Of The Exclusivity Provisions.

The First District's ruling also conflicts with a fundamental principle of statutory construction: that "a statute cannot be construed so as to contravene the express provisions of the statute." *See Rosewood*, 57 Ill. 2d at 253. But that is exactly what happened here. Relying upon language in *Folta*, 2015 IL 118070 at ¶23, the First District determined that a BIPA workplace injury—unlike all other workplace injuries—falls outside the Exclusivity Provisions. *McDonald*, 2020 IL App (1st) 192398 at ¶27. This determination marks a significant departure from this Court's precedent, which has unflinchingly barred employee claims based upon all sorts of work-related injuries, including: mesothelioma diagnosed 41 years after employment (*Folta*); the "severe emotional shock" from seeing a co-worker's hand severed by machinery (*Pathfinder*); the "emotional distress" from an employer's lack of medical attention after a heart attack (*Collier*); permanent impotence resulting from a workplace accident (*Moushon*); and the

-11-

hunger, thirst, fear, and humiliation arising from an alleged false arrest (*Meerbrey*). Yet despite this comprehensive spectrum of injuries—from the extreme to the insignificant— the First District has now carved out from the "broad sweep" of the Exclusivity Provisions' plain language, *Gannon*, 13 Ill. 2d at 462-63, the "real and significant injury" that McDonald allegedly suffered at the workplace. And the First District did so while acknowledging it was operating in unchartered territory. *McDonald*, 2020 IL App (1st) 192398 at ¶27 (the court is "not aware of a single Illinois appellate decision [] applying or expanding upon *Folta's* relatively new characterization of 'compensability'").

The First District carved out an exception from the Exclusivity Provisions' plain language based on three irrelevant contentions: [1] that liquidated damages are available under BIPA "without any further compensable actual damages being alleged or sustained," [2] that BIPA aims to deter and prevent the disclosure of biometric information, and [3] that the Workers' Compensation Act "is a remedial statute designed to provide financial protection for workers that have sustained an actual injury."[4] *Id.* at ¶¶22, 27. These contentions in no way justify such a radical departure from the plain statutory text.

1. **The Availability Of Liquidated Damages Is Irrelevant To Whether McDonald Suffered A Workplace "Injury."**

The First District's decision suggests that the availability of "liquidated damages" under BIPA as an alternative to "actual damages" means that McDonald lacks an "injury." Such logic is fatally flawed. To begin, the concepts of "injury" and "damages" are "analytically distinct." *See Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d

---

[4] Notably, the First District's reference to "actual injury" in Paragraph 27 of its ruling implies that McDonald did not suffer an "actual injury," which runs counter to *Rosenbach's* holding that a BIPA injury is both "real and significant."

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

887, 890 (7th Cir. 1995). "Injury" is the harm that a plaintiff personally suffers (or that a plaintiff is imminently about to suffer), whereas "damages" comprise the quantification of that injury. *Id.*; *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 115 (1992) (noting that "damages" are "the estimated reparation in money for detriment or injury sustained: compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right" (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 571 (1986)); *Giammanco v. Giammanco*, 253 Ill. App. 3d 750, 758 (1993) (similar; noting "injury" is the "invasion of a legal right"). Accordingly, the availability of liquidated damages means only that a plaintiff's injury is difficult to quantify or that the quantification would yield less than $1,000 under BIPA; it does not mean that no "injury" has been sustained. *See also Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 538 (7th Cir. 2012) ("liquidated damages" available under statutes are intended to estimate actual damages). It is the concept of "injury"—as opposed to "damages"—that is critical to the exclusivity analysis, and *Rosenbach* unequivocally establishes that a BIPA violation yields a "real and significant injury." The availability of liquidated damages is beside the point.

> ### 2. The Exclusivity Provisions Apply Even As To Employee Claims Under Statutes Intended To Deter Misconduct.

That BIPA is intended to have "a deterrent effect" does not impact the analysis. *See McDonald*, 2020 IL App (1st) 192398 at ¶¶23-27. On this point, this Court's decision in *Gannon*, is instructive. 13 Ill. 2d at 462-63. In that case, an employee sought damages against his employer under the Scaffold Act—which was a "penal" statute allowing a private right of action for willful violations—and this Court held that the Exclusivity Provisions barred the claim:

-13-

> Plaintiff argues [] that to fail to regard the Scaffold Act as excepted from the bar of section 5(a) [*i.e.*, 820 ILCS § 305/5(a)] has the practical effect of completely nullifying it. He points out that the Scaffold Act *is designed to prevent injuries, and that its violation is made a penal offense, and he concludes that the civil action it authorizes is therefore only an additional sanction to secure compliance*.
>
>       \*     \*     \*
>
> We do not agree that these considerations warrant the conclusion that the Scaffold Act should be excluded from the broad sweep of the prohibition in section 5(a). Despite plaintiff's argument to the contrary, the Scaffold Act remains an effective enactment if the language of section 5(a) is given its natural scope. Its provisions for enforcement by State and local officials remain unaltered. A third person injured by a failure to comply with the act still has his action under it, and as we [have held] one who is employed on the job can maintain an action under it against the owner of the premises.[5]

*Gannon*, 13 Ill. 2d at 462-63 (emphasis added); *see also Vacos v. LaSalle Madison Hotel Co.*, 21 Ill. App. 2d 569, 572 (1st Dist. 1959) (Exclusivity Provisions bar claim under Dram Shop Act); *Copass v. Ill. Power Co.*, 211 Ill. App. 3d 205, 207-14 (4th Dist. 1991) (same; Public Utilities Act); *Carey v. Coca-Cola Bottling Co. of Chicago*, 48 Ill. App. 3d 482, 484 (2d Dist. 1977) (same; Structural Work Act). *Gannon* thus squarely establishes that the Exclusivity Provisions bar an employee's claim to damages for a workplace injury even when there is a private right of action under a "penal statute"—*i.e.*, a statute intended to have a deterrent effect. *See, e.g., Trop v. Dulles*, 356 U.S. 86, 96 (1958).

Similarly, it is of no matter that BIPA is intended to be "preventative." *See McDonald*, 2020 IL App (1st) 192398 at ¶27. Given that the Exclusivity Provisions bar only an employee's claim for statutory damages under BIPA, an employee may still sue to "prevent" harm by pursuing injunctive relief under the statute. And by doing so, the

---

[5] *See Kennerly v. Shell Oil Co.*, 13 Ill. 2d 431, 433 (1958) (quoting private right of action under 740 ILCS §150/9 of the Scaffold Act, which has since been repealed).

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

preventative purpose of BIPA is realized because it is injunctive relief, not the imposition of damages, that prevents harm to a plaintiff's biometric information.

### 3. The Inability To Recover Benefits Is Irrelevant When Determining Whether The Exclusivity Provisions Bar A Claim.

The First District's ruling ignores a key principle of this Court's jurisprudence: that the Exclusivity Provisions apply to all workplace injuries, even if no "remedy" is available under the Workers' Compensation Act.[6]  *See McDonald*, 2020 IL App (1st) 192398 at ¶27 (opining that the Workers' Compensation Act "is a remedial statute designed to provide financial protection for workers that have sustained an actual injury").  Indeed, this Court has repeatedly so held, applying this principle both when an employee cannot obtain recovery because the Act does not offer benefits, *see Folta*, 2015 IL 118070 at ¶¶26-30; *Moushon*, 9 Ill. 2d at 411-12, and when a claim likely will fail on the proofs, *Meerbrey*, 139 Ill. 2d at 466–67.

This Court's decision in *Meerbrey* well illustrates this principle.  139 Ill. 2d at 466–67.  In that case, a former employee sought damages for the "humiliation," "hunger," and "thirst" that his employer supposedly caused.  Surely, such claims were destined to fail before the Workers' Compensation Commission, but yet the dim prospect of recovery did not factor into this Court's analysis as to whether Meerbrey could bring a suit for damages.  *Meerbrey*, 139 Ill. 2d at 461, 467–68.  That's because a court's first concern is to determine *where* an employee's claim must be litigated (a forum issue), not whether that claim *will ultimately prevail* (a merits-related issue).  As this Court explained, this distinction has long been a staple of its jurisprudence:

---

[6] This principle is a natural outgrowth from the plain language of the Exclusivity Provisions: so long as an employee's alleged injury was incurred in the line of duty, the statutory language is triggered and bars a suit for damages.

-15-

In *Moushon[]*, [the Illinois Supreme Court] had some opportunity to consider the interplay between certain provisions under the Workers' Compensation Act that limit the employer's liability and the exclusive remedy provisions.

In *Moushon*, an employee was injured while operating equipment at his workplace. The employer provided medical, surgical and hospital services related to the injury under the Act, but the employee brought an action to recover damages for his resulting permanent impotence. ***This court held that the exclusivity provisions of the Act barred the employee's cause of action even though no compensation for his permanent injury was provided for under the Act.***

Notably, the *Moushon* court did not adopt the view articulated by the dissenting judge that where "no compensation benefits are provided in the act for the particular injury, so that no remedy is afforded the employee under the act for an injury caused by the employer's negligence, then a common-law action for damages should be allowed." * * *

***Thus, since 1956, this court has held that despite limitations on the amount and type of recovery under the Act, the Act is the employee's exclusive remedy for workplace injuries.***

*Folta*, 2015 IL 118070 at ¶¶26-30 (emphasis added); *Duley v. Caterpillar Tractor Co.*, 44 Ill. 2d 15, 16–18 (1969) (similar); *see also Sjostrom*, 33 Ill. 2d at 43 (the "line of duty" test has been interpreted in the same way as the "test of compensability;" an injury is compensable if it "arose out of and in [the] course of employment"); *Unger*, 107 Ill. 2d at 85 (same). In other words, the Exclusivity Provisions mean what they say and apply to all "injuries" allegedly sustained in the "line of duty" and that arise out of "the course of employment," 820 ILCS § 305/5(a); 820 ILCS § 305/11, even if the employee cannot recover benefits for those injuries under the Workers' Compensation Act.

This rule is also eminently sound. If the rule were different, then an employer facing a class action under BIPA would have ***greater protection*** from damages claims brought by plaintiffs ***who have suffered*** actual psychological (or physical) harm and ***no protection whatsoever*** from massive (and potentially ruinous) damages claims brought

-16-

by plaintiffs *who have not suffered* an actual injury. *See also, e.g., Goins*, 281 Ill. App. 3d at 487–88. Not only would such a result buck common sense, but it would also conflict with the above-cited Illinois Supreme Court precedent, *see Folta*, 2015 IL 118070, ¶23; *Moushon*, 9 Ill. 2d at 411-12; *see also Meerbrey*, 139 Ill. 2d at 467–68. Regardless, the point remains: the First District should have applied the plain language of the Exclusivity Provisions as written, which does not carve out any particular type of workplace injury whether characterized as a "privacy" injury or otherwise.[7] *In re Marriage of Mathis*, 2012 IL 113496 at ¶20 (plain statutory language must be applied as written); *Birkett*, 235 Ill. 2d at 81 (same); *Rosenbach*, 2019 IL 123186 at ¶24 (same).

This Court's recent decision interpreting the Exclusivity Provisions highlights this error. The First District created an exception for BIPA workplace injuries based upon certain language in *Folta*, namely this Court's comment that exclusivity applies to injuries that "categorically fall within the purview" of the Workers' Compensation Act. *See also McDonald*, 2020 IL App (1st) 192398 at ¶22. But language from any judicial opinion must be read in context. *See Zenith Radio Corp. v. United States*, 437 U.S. 443, 462 (1978) (a centuries-old "maxim, not to be disregarded [is] that general expressions, in every [] opinion, are to be taken in connection with the case in which those expressions are used"). This is an important principle here because *Folta* held that the injury at issue *fell within* the purview of the Workers' Compensation Act, so the facts there were not an example of what the First District determined here, *i.e.*, that McDonald's workplace injury *falls outside* the Act.

_____

[7] In the proceedings below, McDonald did not allege that her injury was the lost ability to maintain her privacy rights, as she would later characterize it, but rather that she suffered "bodily injury in the form of mental anguish." (A12 at ¶¶35, 36; A18 at ¶63)

-17-

There is no other reason to think that *Folta* supports the First District's ruling. *Folta* has nothing to do with "privacy injuries" and, more importantly, this Court warned against the proposition that the First District adopted: because the plain language of the statute at issue there applied to "*any* injury to health [or] disease," this Court held it would be a "radical departure to suggest" that that language applies "only for certain occupational diseases . . ." *Folta*, 2015 IL 118070 at ¶41 (construing 820 ILCS § 310/5(a) and 820 ILCS § 310/11, which "have been viewed analogously [to the Exclusivity Provisions] for purposes of judicial construction") (emphasis original). And this holding accords with this Court's prior ruling in *Davis*, 186 Ill. 2d at 184–85, which likewise declined to carve out an exception for certain injuries from a statute that, by its plain language, applied to any "injury." *Id.* ("[h]ad the legislature intended to restrict [the statute at issue] only to latent injuries * * * it would have inserted that limitation").

By applying *Folta's* language out of context, the First District's ruling conflicts with: [1] the plain language of the Exclusivity Provisions, [2] the holdings of multiple Illinois Supreme Court cases, including *Rosenbach*, *Folta*, *Gannon*, *Meerbrey*, and *Moushon*; and [3] "a cardinal rule of statutory construction," by reading into that language an exception for workplace BIPA injuries that does not exist. *See Birkett*, 235 Ill. 2d at 81. For all these reasons, the First District's ruling warrants this Court's review.

### D. The First District Contravened This Court's Directive To Harmonize The Two Statutes Whenever Reasonably Possible.

This Court's review is warranted for yet another reason, namely, that the First District failed to harmonize the Exclusivity Provisions and BIPA. The rules of construction are well-established: even if there were an "apparent conflict" between BIPA and the Exclusivity Provisions, those statutes must be construed in harmony," *1010*

-18-

*Lake Shore Ass'n*, 2015 IL 118372 at ¶37, "so that no provisions are rendered inoperative," *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 458–59 (2002). Bronzeville's position comports with this principle: [1] McDonald can prosecute a private right of action to obtain injunctive relief protecting her biometric information, which she alleges to be the overarching goal of BIPA (A6 at ¶¶3-4); and [2] employers would continue to enjoy protection against damages claims brought by employees for work-related injuries, *see Meerbrey*, 139 Ill. 2d at 462 (a key reason for exclusivity is to "relieve[] [employers] of the prospect of large damage verdicts"). This is exactly the harmonious reading—a reading that would fulfill the legislative purpose of both BIPA and the Workers' Compensation Act—that the law demands. But the First District made no effort to harmonize the two statutes and instead discarded the robust protections that employers have long maintained under the Workers' Compensation Act. In doing so, the First District provided yet another basis for review and reversal.

## II.    The First District's Ruling Creates A Conflict With How The Second District Addresses Workplace Privacy Injuries.

By ruling that a workplace privacy injury under BIPA falls outside the Exclusivity Provisions, the First District created a decisional conflict with the Second District. In at least two cases, the Second District has held that employee privacy injuries *do* fall within the Exclusivity Provisions. *See Goins*, 281 Ill. App. 3d at 487–88 (AIDS Confidentiality Act claim would be barred unless the employer, a hospital, was acting not in its capacity as an employer, but rather as a medical provider to an injured employee);[8] *Benitez*, 305 Ill. App. 3d at 1029-31, 1038 (claim barred where plaintiff-employee alleged injury from

---

[8] In *Rosenbach*, this Court noted that the private right of action under BIPA is "premised" on and "parallels" its counterpart under the AIDS Confidentiality Act. *Rosenbach*, 2019 IL 123186 at ¶27.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

"systematic spying operation [] through a hole in the ceiling of the [] women's bathroom" in the workplace).[9] By straying from this precedent, the First District created a conflict with another division of the Appellate Court, thereby further warranting this Court's intervention. *See* Ill. Sup. Ct. R. 315(a).

## CONCLUSION

This appeal presents the important, yet straightforward question: whether an employee's claim for statutory damages under BIPA stemming from a "real and significant" workplace injury is barred by the Exclusivity Provisions. The plain language of the Exclusivity Provisions and controlling precedent mandate that the answer is "yes," and, accordingly, the First District's decision should be reviewed and reversed.

DATED: October 30, 2020      Respectfully submitted

By: */s/Joseph A. Donado*

Richard P. McArdle (#6216504)
rmcardle@seyfarth.com
Joseph A. Donado (#6277386)
jdonado@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive; Suite 8000
Chicago, Illinois 60606

***Attorneys for Defendant Symphony Bronzeville Park LLC***

---

[9] The notion that an employee's workplace privacy injury stemming from being spied upon while using the bathroom at work falls within the Exclusivity Provisions, but an employee's workplace privacy injury stemming from scanning her finger falls outside the Exclusivity Provisions is nonsensical.

-20-

## **CERTIFICATE OF COMPLIANCE**

I certify that this brief conforms to the requirements of Rules 341(a) and (b).  The length of this brief, excluding the pages or words contained in the Rule 341(d) cover, the Rule 341(h)(1) statement of points and authorities, the Rule 341(c) certificate of compliance, the certificate of service, and those matters to be appended to the brief under Rule 342(a), is 20 pages.

/s/ Joseph A. Donado

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

NO. 126511

IN THE SUPREME COURT OF ILLINOIS

| | |
|---|---|
| MARQUITA McDONALD, individually and on behalf of all other similarly situated, | Appeal from the Circuit Court of Cook County, Illinois |
| Plaintiff/Appellee, | (Cook County Case No. 17 CH 11311) |
| | Hon. Raymond Mitchell, presiding |
| v. | Date of Order at Issue in Rule 308 Application: October 29, 2019 |
| SYMPHONY BRONZEVILLE PARK, LLC, | Date of Rule 308 Application: November 27, 2019 |
| Defendant/Appellant. | Date of Order Allowing Rule 308 Application: December 19, 2019 |
| | Date of Ruling on Rule 308 Appeal: September 18, 2020 |

PROOF OF SERVICE/NOTICE OF FILING

To:   Ryan D. Andrews          J. Aaron Lawson
      randrews@edelson.com     alawson@edelson.com
      J. Eli Wade-Scott        EDELSON PC
      ewadescott@edelson.com   100 Townsend Street, Suite 100
      EDELSON PC               San Francisco, California 94107
      350 North LaSalle Street
      14th Floor
      Chicago, Illinois 60654

You are hereby notified that of the following:  [1] that on October 30, 2020 I have

caused **DEFENDANT-PETITIONER SYMPHONY BRONZEVILLE PARK,

LLC'S PETITION FOR LEAVE TO APPEAL UNDER ILLINOIS SUPREME

COURT RULE 315** to be filed in the Supreme Court of Illinois, using the Court's online

filing system, Odyssey eFileIL, [2] that on October 30, 2020 I have emailed a copy of

-22-

**DEFENDANT-PETITIONER SYMPHONY BRONZEVILLE PARK, LLC'S PETITION FOR LEAVE TO APPEAL UNDER ILLINOIS SUPREME COURT RULE 315** to the above-named opposing counsel at the email addresses listed above, [3] on October 30, 2020, I have caused to be sent 3 copies of **DEFENDANT-PETITIONER SYMPHONY BRONZEVILLE PARK, LLC'S PETITION FOR LEAVE TO APPEAL UNDER ILLINOIS SUPREME COURT RULE 315** to each of the above-named opposing counsel by depositing in the U.S. mail, proper postage pre-paid from our offices below and [4] that within five days of acceptance of e-filing by the Court, I will cause to be submitted 13 copies of the **DEFENDANT-PETITIONER SYMPHONY BRONZEVILLE PARK, LLC'S PETITION FOR LEAVE TO APPEAL UNDER ILLINOIS SUPREME COURT RULE 315** to the Office of the Clerk of the Supreme Court of Illinois, 200 East Capitol Avenue, Springfield, Illinois 62701 by depositing in the U.S. mail, proper postage pre-paid from our offices below.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct.

Date:  October 30, 2020

/s/ Joseph A. Donado

Richard P. McArdle (#6216504)
rmcardle@seyfarth.com
Joseph A. Donado (#6277386)
jdonado@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive; Suite 8000
Chicago, Illinois 60606

*Attorneys for Defendant Symphony Bronzeville Park LLC*

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

# APPENDIX

**Case No. 126511**

MARQUITA McDONALD (Plaintiff/Respondent) v. SYMPHONY BRONZEVILLE PARK, LLC (Defendant/Petitioner).

## APPENDIX INDEX

| Date filed/entered | DESCRIPTION | Page Number |
|---|---|---|
| 10/29/19 | Order (on Defendants' motion for reconsideration or, alternatively, to certify questions for immediate appeal) | A1-A4 |
| 8/17/17 | Class Action Complaint and Demand for Jury Trial | A5-A20 |
| 2/27/19 | Defendants Symphony Healthcare LLC and Symphony Bronzeville Park LLC's Renewed and Amended Section 2-619 Motion to Dismiss | A21-A46 |
| 2/27/19 | Defendants Symphony Healthcare LLC and Symphony Bronzeville Park LLC's Renewed and Amended Section 2-615 Motion to Dismiss | A47-A55 |
| 4/11/19 | Plaintiff's Opposition to Motion to Dismiss Under 735 ILCS 5/2-619 | A56-A71 |
| 4/11/19 | Plaintiff's Motion for Leave to File First Amended Complaint | A72-A91 |
| 4/19/19 | Order (on Plaintiff's motion for leave to file first amended class action complaint) | A92 |
| 5/9/19 | Defendant Symphony Bronzeville Park LLC's Reply in Further Support of its Renewed and Amended Section 2-619 Motion to Dismiss | A93-A108 |
| 6/17/19 | Order (on Defendant Symphony Bronzeville Park LLC's motion to dismiss) | A109-A112 |

| Date filed/entered | DESCRIPTION | Page Number |
|---|---|---|
| 7/18/19 | Defendant Symphony Bronzeville Park LLC's Motion for Reconsideration or, Alternatively, to Certify Questions for Immediate Appeal Under Illinois Supreme Court Rule 308 | A113-A148 |
| 8/5/19 | Briefing Schedule Order | A149 |
| 8/27/19 | Plaintiff's Opposition to Defendant's Motion for Reconsideration or, Alternatively, to Certify Questions for Immediate Appeal Under Illinois Supreme Court Rule 308 | A150-A173 |
| 9/12/19 | Defendant Symphony Bronzeville Park LLC's Reply in Support of its Motion for Reconsideration or, Alternatively, to Certify Questions for Immediate Appeal Under Illinois Supreme Court Rule 308 | A174-A184 |
| 9/25/19 | Hearing Order | A185 |
| 10/16/19 | Briefing Schedule Order | A186 |
| | Statutes Involved (in pertinent part) | A187 |
| 9/18/20 | First District Appellate Decision Answering Certified Question | A188-A203 |
| 10/27/20 | Supreme Court Order on Defendant/Petitioner's Motion for Extension of Time | A204 |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| Marquita McDonald, individually and on behalf of all others similarly situated, | Case No. 17 CH 11311 |
| Plaintiff, | Calendar 2 Courtroom 2601 |
| v. | Judge Raymond W. Mitchell |
| Symphony Bronzeville Park, LLC, Symcare Healthcare LLC, and Symcare HMG LLC. | |
| Defendants. | |

## ORDER

This case is before the Court on Defendant Symphony Bronzeville Park LLC's motion for reconsideration or, alternatively, to certify questions for immediate appeal under Illinois Supreme Court Rule 308. Defendant also moves for a stay of the lawsuit pending appeal.

### I.

Plaintiff Marquita McDonald filed a class action complaint against Defendant Symphony Bronzeville Park, LLC, alleging violations of the Biometric Information Privacy Act and negligence.[1] Defendant responded to Plaintiff's complaint by filing a motion to dismiss pursuant to 735 ILCS 5/2-619. That motion was denied on two grounds. The Court held that Plaintiff established standing to bring suit in alleging a violation to her statutory privacy rights under BIPA. *See* 6/17/2019 Order. In addition, the Court held that the Workers' Compensation Act's exclusivity provisions did not otherwise bar Plaintiff's claims. *See Id.* Defendant subsequently filed this motion to reconsider and alternative motion for certification pursuant to Illinois Supreme Court Rule 308.

### II.

Defendant moves for reconsideration of the determination that the Workers' Compensation Act's exclusivity provisions did not bar Plaintiff's claims. The Court held that Workers' Compensation exclusivity did not apply because Plaintiff's injury was the loss of the ability to maintain her privacy rights, which is not a psychological or physical injury that is compensable under the Act. Further, the

---

[1]    Plaintiff has since filed an amended complaint removing Symphony Health Care, LLC and adding two new Defendants: Symcare Healthcare, LLC and Symcare HMG, LLC.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

Court analyzed that BIPA specifically defines written release in the employment context showing the drafters intended for BIPA to apply to violations by employers in the work place. *See* 740 ILCS 14/10. For these reasons, Defendant's motion to reconsider is denied. Nevertheless, there is a dearth of case law on the issue, and the Court recognizes that there is room for difference of opinion. Therefore, Defendant's motion for certification pursuant to Supreme Court Rule 308 will be addressed.

Supreme Court Rule 308 is an exception to the general rule that only final orders from a court are subject to appellate review. *Morrisey v. City of Chicago*, 334 Ill. App. 3d 251, 257 (1st Dist. 2002). Although Supreme Court Rule 308 provides a mechanism for interlocutory appeals, the procedure was "intended to be used sparingly; it was not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation." *Id.* at 257. Appeals under Rule 308 should be limited to certain exceptional circumstances, and should be strictly construed. *Id.* at 258 (citing *Voss v. Lincoln Mall Management Co.*, 166 Ill. App 3d 442, 445 (1st Dist. 1988)). A court should certify a case for interlocutory appeal only if: (1) there is a substantial ground for difference of opinion relating to the trial court's ruling; and (2) an immediate appeal may advance the ultimate determination of the litigation. *Eshagdhi v. Hanley*, 214 Ill. App. 3d 995, 998 (1st Dist. 1991).

The Workers' Compensation Act provides that an "employee has no common law or statutory right to recover damages from the employer." 820 ILCS 305/5(a). Section 11 states that, "the compensation herein provided, together with the provisions of this Act shall be the measure of the responsibility of any employer...for accidental injuries sustained by any employee arising out of and in the course of the employment." 820 ILCS 305/11. These provisions bar an employee from bringing a common law or statutory damages claims unless the employee can demonstrate her injury (1) was not accidental, (2) did not arise from employment, (3) was not received during the course of employment, or (4) is not compensable under the Act. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463 (1990). In determining whether an injury is compensable under the Act, courts consider if it "arises out of and in the course of the employment." *Unger v. Continental Assurance Co.*, 107 Ill. 2d 79, 85 (1985).

Defendant contends that Illinois Appellate Court precedent supports that statutory privacy injuries are not excepted from the Workers' Compensation Act's exclusivity provisions. Relying on *Goins v. Mercy Center for Health Care Services*, Defendant argues that the Appellate Court considered that a statutory privacy injury under the AIDS Confidentiality Act would have been preempted by Workers' Compensation exclusivity, but for the determination that Defendant was not acting as the plaintiff's employer. 281 Ill. App. 3d 480, 489 (2nd Dist. 1996). The Appellate Court, however, did not reach whether the Workers' Compensation Act preempted

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

claims under the Aids Confidentiality Act. In fact, no determination was made as to the compensability of the privacy injury had the defendant been acting as the plaintiff's employer. *Id.* Whether a statutory privacy claim is preempted by the Workers Compensation Act remains unsettled.

Defendant also argues that Illinois Supreme Court decisions finding emotional and psychological injuries compensable under the Workers' Compensation are determinative to the exclusivity issue in this case. Defendant relies on *Pathfinder Co. v. Industrial Com.*, 62 Ill. 2d 556, 565 (1976), *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 238, (1980), and *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 469 (1990) to support its contention that psychological injuries are compensable under the Act. *Pathfinder* found that an employees' severe emotional shock as a result of witnessing and assisting an injured co-employee was compensable. *Pathfinder,* 62 Ill. 2d at 563. Similarly, in *Collier* the Supreme Court held that an employee's intentional infliction of emotional distress claim resulting from inadequate medical treatment administered by a company medical attendant was barred by the Act. *Collier,* 81 Ill. 2d at 237. *Meerbrey* likewise determined that an employee's emotional injuries resulting from false imprisonment fell within the Act's exclusivity provisions. *Meerbrey,* 139 Ill. 2d at 469 (finding that the plaintiff waived the argument that his emotional injuries were not compensable under the Act by failing to raise it before the trial court).

None of these Supreme Court decisions resolve the issue here. Although Defendant broadly construes the holdings to support the compensability of emotional and psychological injuries, including those resulting from invasion of privacy, the Supreme Court has recognized the distinct nature of a claim arising under BIPA. *Rosenbach,* 2019 IL 123186, ¶ 37. Indeed, a claim for emotional or psychological injury is not required to pursue statutory damages under BIPA. *Id.* at ¶ 37.[2] The Supreme Court determined that, "[t]o require individuals to wait until they have sustained some compensable injury beyond violation of their statutory rights before they may seek recourse…would be completely antithetical to the Act's preventative and deterrent purposes." *Id.*

In light of these decisions, whether the Workers' Compensation Act's exclusivity provisions bar Plaintiff's claim for statutory damages under BIPA is a question on which there is room for difference of opinion.

## B.

Defendant also moves for a stay of proceedings pending resolution of the certified issues by the Appellate Court. A circuit court may stay proceedings as part of its inherent authority to control the disposition of cases before it. *Philips*

---

[2]    The Court notes that in addition to alleging a violation of her privacy rights under BIPA, Plaintiff's complaint alleges that she suffered mental anguish and mental injury.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

*Electronics, N.V. v. New Hamp. Ins. Co.*, 295 Ill. App. 3d 895, 901(1st Dist. 1998) (citing *Disciplined Investment Advisors v. Schweihs*, 272 Ill. App. 3d 681, 692 (1st Dist. 1995)). In determining whether to stay proceedings, a court may consider factors such as: the orderly administration of justice and judicial economy; whether a stay is necessary to secure the fruits of the appeal in the event the movant is successful; the movant's likelihood of success on the merits; and the likelihood that the respondent will suffer hardship *Id.* at 901-902; *Stacke v. Bates*, 139 Ill. 2d 295, 305-307 (1990). After considering these factors, and that the resolution of the certified issues may be dispositive, a stay of proceedings is appropriate.

## III.

Therefore, it is hereby ORDERED:

(1)    Defendant's motion for certification for interlocutory appeal on the issue of whether the Workers Compensation Act preempts Plaintiff's claim under BIPA is GRANTED, and the following question is certified for appeal:

> "Does the exclusivity provisions of the Workers' Compensation Act bar a claim for statutory damages under BIPA where an employer is alleged to have violated an employee's statutory privacy rights under BIPA?"

(2)    Defendant's motion instanter for leave to file an oversized reply brief is GRANTED.

(3)    Defendant's motion to reconsider the Court's Order of June 17, 2019, is DENIED.

(4)    Defendant's motion to stay the proceedings pending a resolution of the issues before the Appellate Court is GRANTED.

OCT 29 2019

ENTERED,

Judge Raymond W. Mitchell, No. 1992

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
CALENDAR: 04
PAGE 1 of 16
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| MARQUITA MCDONALD, individually and on behalf of all others similarly situated, | Case No.: |
| *Plaintiff*, | |
| v. | |
| SYMPHONY HEALTHCARE LLC an Illinois limited liability company, and SYMPHONY BRONZEVILLE PARK LLC, an Illinois limited liability company, | |
| *Defendants*. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Marquita McDonald brings this Class Action Complaint and Demand for Jury Trial against Defendants Symphony Healthcare LLC and Symphony Bronzville Park LLC (collectively, "Symphony") to put a stop to their unlawful collection, use, and storage of Plaintiff's and the proposed Class's sensitive biometric data. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1. Defendant Symphony Healthcare LLC operates a network of post-acute care facilities with over twenty locations throughout the State of Illinois, including Defendant Symphony Bronzeville Park LLC's location. Symphony's facilities provide patients with a variety of services, from rehabilitative to palliative care, typically after they have undergone major medical procedures. To provide such care, Symphony facilities employees a variety of individuals.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

2.      When employees first begin their jobs at Symphony, they are required to scan their fingerprint in its time clocks. That's because Symphony uses a biometric time tracking system that requires employees to use their fingerprint as a means of authentication, instead of key fobs or identification cards.

3.      While there are tremendous benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards—which can be changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes employees to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking.

4.      Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

5.      Despite this law, Symphony disregards its employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, Symphony has violated (and continues to violate) the BIPA because it did not (and continues not to):

- •      Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- •      Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by the BIPA; nor

- •      Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their fingerprints, as required by the BIPA.

6.      Accordingly, this Complaint seeks an Order: (i) declaring that Defendants'

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 2 of 16

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

conduct violates BIPA; (ii) requiring Defendants to cease the unlawful activities discussed herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

## PARTIES

7.     Plaintiff Marquita McDonald is a natural person and citizen of the State of Illinois.

8.     Defendant Symphony Healthcare LLC is a limited liability company existing under the laws of the State of Illinois. Symphony Healthcare LLC is registered to conduct business with the Illinois Secretary of State (File No. 03737292). Symphony Healthcare LLC conducts business throughout this County, the State of Illinois, and the United States.

9.     Defendant Symphony Bronzeville Park LLC is a limited liability company existing under the laws of the State of Illinois. Symphony Bronzeville Park LLC is registered to conduct business with the Illinois Secretary of State (File No. 05213223). Symphony Bronzeville Park LLC conducts business throughout this County, the State of Illinois, and the United States.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 because they conduct business transactions in Illinois, have committed tortious acts in Illinois, are registered to conduct business in Illinois, and are headquartered in Illinois.

11.     Venue is proper in Cook County because Defendants maintain their principal places of business in Cook County and conduct business transactions in Cook County. Venue is additionally proper because Plaintiff McDonald resides in Cook County.

## FACTUAL BACKGROUND

### I.     The Biometric Information Privacy Act.

12.     In the early 2000's, major national corporations started using Chicago and other

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 3 of 16

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

13.     In late 2007, a biometrics company called Pay by Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data— could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

14.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information", Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

15.     The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 4 of 16

4

> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information."

740 ILCS 14/15(b).

16.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

17.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and—most importantly here—fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

18.     The BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. *See, e.g.*, 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

19.     Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 5 of 16

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

in that conduct must put in place certain reasonable safeguards.

**II.      Defendants Violate the Biometric Information Privacy Act.**

20.      By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented using biometric data as an authentication method stopped doing so. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data. Despite the recognized dangers of using biometric data in the private sector, employers have failed to follow retailers' leads in dropping it as an identification method. In fact, many employers now require their employees to register their biometric data, viewing it as a cost-effective method of authentication.

21.      Unfortunately, Symphony failed to take note of the retail industry's trend recognizing the dangers in storing biometric identifiers and the passage of Illinois law governing the collection and use of biometric data. Symphony continues to collect, store, and use its employees' biometric data in violation of the BIPA.

22.      Specifically, when employees first begin work at Symphony, they are required to have their fingerprint scanned in order to enroll them in Symphony's fingerprint database.

23.      Symphony uses an employee time tracking system that requires employees to use their fingerprint as a means of authentication. Unlike a traditional time clock, employees have to use their fingerprints to "punch" in to or out of work.

24.      Unfortunately, Symphony fails to inform its employees the extent of the purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

25.      Symphony similarly fails to provide its employees with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 6 of 16

6

employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. An employee who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Symphony's databases—or if they ever will be.

26.     The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Symphony's—where employees are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reasons they are doing so—is so dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing a critical point: it is crucial for people to understand when providing biometric identifiers who exactly is collecting their biometric data, where it will be transmitted to, for what purposes, and for how long. But Symphony disregards these obligations, and instead unlawfully collects, stores, and uses its employees' biometric identifiers and information.

27.     Ultimately, Symphony not only disregards its employees' privacy rights, but it also violates BIPA.

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 7 of 16

### III.     Plaintiff McDonald's Experience.

28.     Plaintiff McDonald worked for Defendants' Symphony of Bronzeville facility from December 2016 to February 2017.

29.     As a new employee, Plaintiff was required to scan her fingerprint so that Symphony could use it as an authentication method to track her time.

30.     Symphony subsequently stored McDonald's fingerprint data in its databases.

31.     Each time McDonald began and ended her workday she was required to scan her fingerprint.

32.     McDonald has never been informed of the specific limited purposes or length of

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

time for which Symphony collected, stored, or used her fingerprints.

33.    McDonald has never been informed of any biometric data retention policy developed by Symphony, nor has she ever been informed of whether Symphony will ever permanently delete her fingerprints.

34.    McDonald has never been provided with nor ever signed a written release allowing Symphony to collect or store her fingerprints.

35.    McDonald has continuously and repeatedly been exposed to the risks and harmful conditions created by Symphony's violations of the BIPA alleged herein.

36.    As a result of Symphony's conduct, McDonald has experienced bodily injury in the form of mental anguish. For example, McDonald experiences mental anguish and injury when thinking about what would happen to her biometric data if Symphony went bankrupt, whether Symphony will ever delete her biometric information, and whether (and to whom) Symphony shares her biometric information.

37.    McDonald seeks liquidated damages under BIPA as compensation for the injuries Symphony has caused.

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 8 of 16

## CLASS ALLEGATIONS

38.    **Class Definition**: Plaintiff McDonald brings this action pursuant to 735 ILCS 5/2-801 on behalf of herself and a class of similarly situated individuals, defined as follows:

> All residents of the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by Defendants while residing in Illinois.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

39. **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendants have collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of employees who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendants' records.

40. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 9 of 16

a) whether Symphony collected, captured, or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

b) whether Symphony properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

c) whether Defendants obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class's biometric identifiers or biometric information;

d) whether Defendants have disclosed or re-disclosed Plaintiff's and the Class's biometric identifiers or biometric information to any third parties;

e) whether Defendants have sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

f) whether Defendants developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

g) whether Defendants comply with any such written policy (if one exists);

h) whether Defendants used Plaintiff's and the Class's fingerprints to identify them; and

i) whether Defendants' violations of the BIPA were committed negligently.

41. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

42. **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 10 of 16

10

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

### FIRST CAUSE OF ACTION
#### Violation of 740 ILCS 14/1, *et seq.*
#### (On Behalf of Plaintiff and the Class)

43. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

44. The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information...." 740 ILCS 14/15(b) (emphasis added).

45. The BIPA also prohibits private entities from disclosing a person's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

46. The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (i.e., when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-1311
PAGE 11 of 16

11

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

47. Unfortunately, Defendants fail to comply with these BIPA mandates.

48. Defendants are limited liability companies and, therefore, each qualify as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

49. Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Defendants (in the form of their fingerprints), as explained in detail in Sections II–III. *See* 740 ILCS 14/10.

50. Plaintiff's and the Class's biometric identifiers were used to identify them, and therefore constitute "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

51. Defendants violated 740 ILCS 14/15(b)(3) by negligently failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

52. Defendants violated 740 ILCS 14/15(b)(1) by negligently failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

53. Defendants violated 740 ILCS 14/15(b)(2) by negligently failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

54. Defendants violated 740 ILCS 14/15(a) by negligently failing to publicly provide a retention schedule or guideline for permanently destroying its customers' biometric identifiers and biometric information.

55. By negligently collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendants violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in the

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 12 of 16

12

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

BIPA, 740 ILCS 14/1, *et seq.*

56.     On behalf of herself and the Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages of $1,000 per violation for each of Defendants' negligent violations of the BIPA pursuant to 740 ILCS 14/20(1); and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## SECOND CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Class)

57.     Plaintiff incorporates the foregoing allegations as is fully set forth herein.

58.     Defendants owed Plaintiff a duty of reasonable care. That duty required that Defendants exercise reasonable care in the collection and use of Plaintiff's biometric identifiers or biometric information. Specifically Defendants were required to collect, retain, store, and use Plaintiff's and the Class's biometric information and identifiers in compliance with the standards set forth by the BIPA.

59.     Additionally, Defendants owed Plaintiff a heightened duty—under which Defendants assumed a duty to act carefully and not put Plaintiff at undue risk of harm—because of the employment relationship of the Parties.

60.     Defendants breached their duties by failing to implement reasonable procedural safeguards around the collection and use of Plaintiff's biometric identifiers and biometric information.

61.     Specifically, Defendants breached their duties by failing to properly inform Plaintiff in writing of the specific purpose or length of time for which her fingerprints were being

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 13 of 16

13

collected, stored, and used.

62.     Defendants also breached their duties by failing to provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's fingerprints.

63.     Defendants' breach of its duties proximately caused and continues to cause Plaintiff mental anguish and mental injury. For example, Plaintiff experiences mental anguish when thinking about what would happen to her biometric identifiers or information if Defendants went bankrupt, whether Defendants will ever delete her biometric identifiers or information, and whether (and to whom) Defendants share her biometric identifiers or information.

64.     Accordingly, Plaintiff seeks an order declaring that Defendants' conduct constitutes negligence, and awarding Plaintiff and the Class damages in an amount to be calculated at trial.

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 14 of 16

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff McDonald, on behalf of herself and the Class, respectfully requests that this Court enter an Order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff McDonald as representative of the Class, and appointing her counsel as Class Counsel;

B.     Declaring that Defendants' actions, as set out above, violate the BIPA;

C.     Awarding statutory damages of $1,000 for each of Defendants' violations of the BIPA, pursuant to 740 ILCS 14/20(1);

D.     Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendants to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

E.      Declaring that Defendants' actions, as described above, constitute negligence;

F.      Awarding Plaintiff and the Class their reasonable litigation expenses and

attorneys' fees;

G.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent

allowable; and

H.      Awarding such other and further relief as equity and justice may require.

### JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 15 of 16

Respectfully submitted,

**MARQUITA MCDONALD**, individually and on behalf of all others similarly situated,

Dated: August 17, 2017

By:    s/ Benjamin H. Richman
         One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
Sydney Janzen
sjanzen@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm ID: 44146

David Fish
dfish@fishlawfirm.com
John Kunze
jkunze@fishlawfirm.com
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
Fax: 630.778.0400

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

Firm ID: 44086

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 16 of 16

16

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

A21

FILED
2/27/2019 4:29 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2017CH11311

**Firm ID No. 90747**

FILED DATE: 2/27/2019 4:29 PM 2017CH11311

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| MARQUITA McDONALD, individually and on behalf of all other similarly situated, | |
| Plaintiff, | Case No. 2017-CH-11311 |
| v. | Calendar: 02 |
| SYMPHONY HEALTHCARE LLC, and SYMPHONY BRONZEVILLE PARK LLC, | Honorable Raymond Mitchell |
| Defendants. | |

---

### DEFENDANTS SYMPHONY HEALTHCARE LLC AND SYMPHONY BRONZEVILLE PARK LLC'S RENEWED AND AMENDED SECTION 2-619 MOTION TO DISMISS

---

DATED: February 27, 2019

Respectfully submitted,

SEYFARTH SHAW LLP

By: /s/ Joseph A. Donado

Richard P. McArdle (rmcardle@seyfarth.com)
Joseph A. Donado (jdonado@seyfarth.com)
SEYFARTH SHAW LLP
233 South Wacker Drive; Suite 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

***Attorneys for Defendants Symphony Healthcare
LLC and Symphony Bronzeville Park LLC***

55134692v.4

C21

FILED DATE: 2/27/2019 4:29 PM    2017CH11311

# TABLE OF CONTENTS

**Page**

BACKGROUND ...................................................................................................................2

I.     McDonald's Complaint Does Not Allege a "Distinct and Palpable" Injury..............................2

II.    The Illinois Supreme Court's Recent Interpretation of Statutory Language Does Not
Affect Defendants' Common-Law Standing Defense....................................................4

LEGAL STANDARD .........................................................................................................5

ARGUMENT.......................................................................................................................6

I.     McDonald Lacks Standing Under Illinois Common Law Because She Has Not
Alleged a "Distinct and Palpable" Injury-In-Fact. ..........................................................6

      A.    With Respect to Claims Relating to Improper Data Retention, A Risk of
Future Harm Is Not A "Distinct and Palpable" Injury. ...................................6

      B.    Illinois Law Accords With Other Jurisdictions as to What Constitutes an
Injury-in-Fact for Claims Based on Personal Data Retention. ........................9

      C.    McDonald Lacks Common Law Standing For The Added Reason That Her
Alleged Injury—Fear of Disclosure of Her Biometric Information—Exists
Irrespective of Defendants' Compliance With BIPA....................................11

      D.    That BIPA Allows for Liquidated And Actual Damages Does Not Mean
That McDonald Has Standing or that She Is Automatically Entitled to Relief. .........12

II.    In the Alternative, If McDonald Has Suffered an "Injury" from Clocking In and Out
of Work, Then Her Claims Would Be Preempted by the Illinois Workers'
Compensation Act, Which Supplies the Exclusive Remedy for Workplace Injuries...............17

CONCLUSION...................................................................................................................18

55134692v.4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Allison v. Aetna, Inc.,*
   No. CIV.A. 09-2560, 2010 WL 3719243 (E.D. Pa. Mar. 9, 2010) ....................................................10

*Amburgy v. Express Scripts, Inc.,*
   671 F. Supp. 2d 1046 (E.D. Mo. 2009) ............................................................................................9

*Amtech Sys. Corp. v. Illinois State Toll Highway Auth.,*
   264 Ill. App. 3d 1095 (1st Dist. 1994) ..............................................................................6, 11, 12

*Baylay v. Etihad Airways P.J.S.C.,*
   222 F. Supp. 3d 698 (N.D. Ill. 2016), *aff'd*, 881 F.3d 1032 (7th Cir. 2018) .....................................18

*Beck v. McDonald,*
   848 F.3d 262 (4th Cir 2017)............................................................................................................10

*Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.,*
   199 Ill. 2d 325 (2002)......................................................................................................................13

*BMW of North Am., Inc. v. Gore,*
   517 U.S. 559 (1996) ........................................................................................................................16

*Braitberg v. Charter Commc'ns, Inc.,*
   836 F.3d 925 (8th Cir. 2016) ..........................................................................................................10

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013)..........................................................................................................................7

*Cooley v. Power Constr. Co., LLC,*
   2018 IL App (1st) 171292................................................................................................................17

*Cooney v. Chicago Pub. Sch.,*
   407 Ill. App. 3d 358 (1st Dist. 2010) .....................................................................................6, 8, 9, 14

*Doe v. Chao,*
   540 U.S. 614 (2004)........................................................................................................................14

*Dowd & Dowd, Ltd. v. Gleason,*
   181 Ill.2d 460 (1998) ........................................................................................................................5

*Folta v. Ferro Eng'g,*
   2015 IL 118070.........................................................................................................................17, 18

55134692v.4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

*Greer v. Illinois Hous. Dev. Auth.*,
122 Ill. 2d 462 (1988) ........................................................................................5, 8

*Gubala v. Time Warner Cable, Inc.*,
846 F.3d 909 (7th Cir. Jan. 20, 2017) ..........................................................10

*Hammond v. The Bank of New York Mellon Corp.*,
No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ..............9

*Hydrite Chem. Co. v. Calumet Lubricants Co.*,
47 F.3d 887 (7th Cir. 1995) ..........................................................................13

*Key v. DSW, Inc.*,
454 F. Supp. 2d 684 (S.D. Ohio 2006) ..........................................................10

*Kunkel v. Walton*,
179 Ill. 2d 519 (1997) ..................................................................................13

*Lebron v. Gottlieb Mem'l Hosp.*,
237 Ill. 2d 217 (2010) ..................................................................................5

*Lewis v. Lead Indus. Ass'n, Inc.*,
342 Ill. App. 3d 95 (1st Dist. 2003) ................................................................6

*Loitz v. Remington Arms Co.*,
138 Ill. 2d 404 (1990) ..................................................................................15

*Long v. Elborno*,
397 Ill. App. 3d 982 (1st Dist. 2010) ..............................................................5

*Lutkauskas v. Ricker*,
2015 IL 117090 ............................................................................................4

*Lyon v. Dep't of Children & Family Servs.*,
209 Ill. 2d 264 (2004) ..................................................................................16

*Maglio v. Advocate Health & Hosps. Corp.*,
2015 IL App (2d) 140782, *appeal denied*, 39 N.E.3d 1003 (Ill. 2015) ..........*passim*

*Marshall v. Cty. of Cook*,
2016 IL App (1st) 142864 ..............................................................................6

*Martini v. Netsch*,
272 Ill. App. 3d 693 (1st. Dist. 1995) ............................................................12

*Messenger v. Edgar*,
157 Ill. 2d 162 (1993) ..................................................................................12, 13

55134692v.4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

*Meyers v. Nicolet Rest. of De Pere, LLC,*
  843 F.3d 724 (7th Cir. 2016) ...........................................................................14

*Morr-Fitz, Inc. v. Blagojevich,*
  231 Ill. 2d 474 (2008) ....................................................................................14

*Pathfinder Co. v. Indus. Comm'n,*
  62 Ill. 2d 556 (1976) ......................................................................................18

*People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van,*
  177 Ill. 2d 314 (1997) ......................................................................................4

*People v. Coe,*
  2018 IL App (4th) 170359 ............................................................................4, 5

*Peters v. St. Joseph Services Corp.,*
  74 F. Supp. 3d 847 (S.D. Tex. 2015) ..............................................................10

*Remijas v. Neiman Marcus Grp., LLC,*
  794 F.3d 688 (7th Cir. 2015) ..........................................................................10

*Rosenbach v. Six Flags Entm't Corp.,*
  2017 IL App (2d) 170317, *appeal allowed*, 98 N.E.3d 36 ................................4

*Rosenbach v. Six Flags Entm't Corp.,*
  2019 IL 123186 (2019) ..................................................................1, 4, 14, 16

*Schacht v. Brown,*
  2015 IL App (1st) 133035 .................................................................................6

*In re: Science Applications International Corp. (SAIC) Backup Tape Data Theft Litigation,*
  45 F. Supp. 3d 14 (D.D.C. 2014) ...................................................................10

*Sharp v. Gallagher,*
  95 Ill. 2d 322 (1983) ......................................................................................17

*Spears v. Ass'n of Illinois Elec. Co-op.,*
  2013 IL App (4th) 120289 ................................................................................5

*Sterk v. Redbox Automated Retail, LLC,*
  672 F.3d 535 (7th Cir. 2012) ...............................................................11, 14, 15

*Van Alstyne v. Electronic Scriptorium, Ltd.,*
  560 F.3d 199 (4th Cir. 2009) ..........................................................................14

*Van Meter v. Darien Park District,*
  207 Ill.2d 359 (2003) .......................................................................................6

55134692v.4

C25

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

*Weidner v. Midcon Corp.*,
   328 Ill. App. 3d 1056 (5th Dist. 2002) ........................................................... 2

*Wexler v. Wirtz Corp.*,
   211 Ill.2d 18 (2004) ........................................................................................ 6

*Williams v. Manchester*,
   228 Ill.2d 404 (2008) ...................................................................................... 6

*Wood River Twp. v. Wood River Twp. Hosp.*,
   331 Ill. App. 3d 599 (5th Dist. 2002) .......................................................6, 14

**Statutes**

735 ILCS 5/2-619(a)(9) ........................................................................................ 3

740 ILCS 14/15(b)(2) ......................................................................................... 15

740 ILCS 14/20.................................................................................................. 13

815 ILCS § 530/5 ................................................................................................. 7

820 ILCS 305/5(a) ............................................................................................. 18

Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* .................... *passim*

Illinois Workers' Compensation Act.................................................................... *passim*

Personal Information Protection Act, 815 ILCS § 530/1 ....................................... 7

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM    2017CH11311

Plaintiff Marquita McDonald lacks standing under Illinois **common law** to sue under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), notwithstanding the Illinois Supreme Court's recent decision concerning **statutory** standing under the BIPA in *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186 (2019), ¶15.  McDonald filed a two-count purported class action Complaint against Defendants Symphony Bronzeville Park LLC ("Bronzeville") and Symphony Healthcare LLC ("Symphony Healthcare"), asserting claims under the BIPA and common law negligence.   The gravamen of these claims is that Bronzeville and Symphony Healthcare supposedly failed to provide notice to McDonald regarding the collection, storage, and use of her "biometric information," *i.e.*, the data collected by the alleged "fingerprint scanne[r]" that McDonald used when clocking in and out while working for Bronzeville.  (Compl. at ¶¶22, 23.) Critically, however, McDonald does not allege that her "biometric information" has been hacked, or improperly disclosed, or otherwise compromised.   Nor does she allege that she has suffered pecuniary or other sort of palpable harm.   Rather, the only injury McDonald alleges is that she supposedly suffers "mental anguish and injury" "when thinking about what **would happen** to her biometric data **if** Symphony went bankrupt, whether Symphony will ever delete her biometric information, and whether (and to whom) Symphony shares her biometric information." (*Id.* at ¶¶35, 36 (emphasis added).)

Even if McDonald did have "mental anguish" about what "would happen," the Defendants' compliance or non-compliance with BIPA would not alleviate her alleged anguish or fear because BIPA is, as McDonald concedes in her complaint, "simply an informed consent statute."   As such BIPA in no way guarantees that McDonald's biometric information will not be compromised. Stated another way, Defendants' alleged non-compliance with BIPA did not cause her alleged fear, nor would Defendants' compliance with BIPA alleviate her alleged fear.   Therefore, McDonald's

55134692v.4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

alleged injury is not fairly traceable to the Defendants' actions, nor is it substantially likely to be prevented or redressed by the grant of the relief she seeks.

Finally, even if McDonald has suffered an injury in connection with clocking in and out of work, her claim would be preempted under the Illinois Workers' Compensation Act, which provides the exclusive remedies for injuries arising amid the employer-employee relationship. For these reasons, Defendant Symphony Bronzeville Park, LLC and Symphony Healthcare LLC respectfully request that the Complaint be dismissed with prejudice in accordance with Section 2-619(a)(9).

## BACKGROUND

### I.     McDonald's Complaint Does Not Allege a "Distinct and Palpable" Injury.

McDonald worked for Bronzeville for less than three months—a period spanning from December 2016 to February 2017. (*See* Compl. at ¶28.) She alleges that employees at "Symphony"[1] are required to scan their fingerprint in its time clocks as part of a biometric time tracking system as a means of authentication. (*Id.* at ¶2.) McDonald further alleges that each time she began and ended her workday she was required to scan her fingerprint. (*Id.* at ¶31.) These fingerprint scans were subsequently stored in Defendants' databases. (*Id.* at ¶30.)

McDonald contends that this time-clock system violates BIPA, which she describes as "simply an informed consent statute" that does not "absolute[ly] bar [ ] the collection, sending, transmitting or communicating of biometric data." (*Id.* at ¶19.) Specifically, McDonald alleges that

---

[1] McDonald lumps both Defendants together as "Symphony." Because a plaintiff may not lump together its allegations against multiple defendants, *see, e.g., Weidner v. Midcon Corp.*, 328 Ill. App. 3d 1056, 1060 (5th Dist. 2002) (affirming grant of motion to dismiss because "[p]laintiffs' complaint fails to allege sufficient facts to constitute the basis for any duty owed *by the respective defendants*. * * * For example, in each count, regardless of which defendant is listed, plaintiffs state the exact same allegations of fault" (emphasis added)), Defendant Symphony Healthcare has filed a separate Section 2-615 motion to dismiss to require McDonald to allege how exactly Symphony Healthcare is relevant to the claims here. In actuality, Symphony is in effect a single-purpose limited liability company that possesses leasehold interests; it has no employees and no physical operations, and it has no relationship either to McDonald or her allegations.

55134692v.4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

Defendants "disregard[] [] employees' statutorily protected privacy rights and unlawfully collect[], store[], and use[] their biometric data in violation of the BIPA" by failing to:

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by the BIPA; and

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their fingerprints, as required by the BIPA.

(*Id.* at ¶5.) McDonald, however, does ***not*** allege that her fingerprints or biometric information have been improperly disclosed to a third-party, or somehow compromised, or that she has suffered a pecuniary or other sort of palpable injury. Instead, she alleges that she "has continuously and repeatedly been exposed to the risks and harmful conditions created by Symphony's violations of the BIPA" such that she has "experienced bodily injury in the form of mental anguish." (*Id.* at ¶35.) As she puts it, she "experiences mental anguish and injury when thinking about what would happen to her biometric data if Symphony went bankrupt, whether Symphony will ever delete her biometric information, and whether (and to whom) Symphony shares her biometric information." (*Id.* at ¶36 (parentheses in original).) McDonald's injury thus is predicated on her (supposed) fear of events that have not occurred.

McDonald's common-law negligence claim parrots her claim under BIPA. McDonald alleges that Defendants failed to exercise reasonable care in the collection and use of Plaintiff's biometric identifiers or biometric information: "[s]pecifically Defendants were required to collect, retain, store, and use Plaintiff's and the Class's biometric information and identifiers in compliance with the standards set forth by the BIPA." (*Id.* at ¶58.) With respect to both counts, Bronzeville and Symphony Healthcare previously moved to dismiss the Complaint in accordance with 735 ILCS 5/2-619(a)(9) based upon McDonald's lack of standing under Illinois common law.

55134692v.4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

## II. The Illinois Supreme Court's Recent Interpretation of *Statutory* Language Does Not Affect Defendants' *Common-Law* Standing Defense.

In their original Section 2-619 motion to dismiss, Defendants raised two distinct standing arguments. In particular, Defendants asserted that "McDonald lacks standing in two separate, and independently dispositive, respects: [1] she lacks standing under Illinois common law, which requires a 'distinct ***and palpable***' 'injury in fact' as an essential element of ***every*** cause of action, and [2] she lacks standing under the plain language of the BIPA statute, which requires a plaintiff to be 'aggrieved by [a] violation' of BIPA as a prerequisite to bringing suit." (Defs.' Section 2-619 Reply at 1 (emphasis in original).) These arguments parallel the distinction between "common-law standing, which requires an injury in fact to a legally recognized interest" and "statutory standing, which requires the fulfillment of statutory conditions in order to sue for legislatively created relief." *See People v. Coe*, 2018 IL App (4th) 170359, ¶43. And though a plaintiff meets statutory standing requirements, it does not necessarily mean that she also meets common-law standing requirements and vice versa. *See, e.g., People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 331 (1997) (noting that "[i]n Illinois, standing is part of the common law" and applying common law standing analysis to statutory claim); *see also Lutkauskas v. Ricker*, 2015 IL 117090, ¶31 ("a plaintiff can sustain a cause of action only where he or she has suffered some injury to a legal right, harm caused by the defendant's conduct is an essential element of every cause of action. As a consequence, an allegation that the plaintiff has suffered an injury resulting from the defendant's action is both a pleading requirement and a prerequisite of standing").

It is statutory standing to which the recent *Rosenbach* decision pertains. In that case, the certified questions before the Supreme Court dealt only with the issue of what it means to be an "aggrieved person" under section 20 of BIPA. *Rosenbach v. Six Flags Entm't Corp.*, 2017 IL App (2d) 170317, ¶15, *appeal allowed*, 98 N.E.3d 36, *and rev'd*, 2019 IL 123186, ¶40. Accordingly, in answering

55134692v.4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

those questions, the Supreme Court resolved the pure legal question of what "fulfill[s] the statutory conditions in order to sue for legislatively created relief," *Coe*, 2018 IL App (4th) 170359 at ¶43, but it did not address standing under Illinois common law, particularly since common law standing is an affirmative defense, *see Greer v. Illinois Hous. Dev. Auth.*, 122 Ill. 2d 462, 494 (1988), that was not at issue in the certified questions before the Court, *see Long v. Elborno*, 397 Ill. App. 3d 982, 988 (1st Dist. 2010) (under Rule 308 "our examination is strictly limited to the certified question presented to the court."); *Spears v. Ass'n of Illinois Elec. Co-op.*, 2013 IL App (4th) 120289, ¶15 (same); *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill.2d 460, 469 (1998) (noting that a court should only answer a certified question if it asks a question of law and decline to answer where the ultimate disposition "will depend on the resolution of a host of factual predicates"). Accordingly, Defendants hereby renew their motion to dismiss based on a lack of standing under Illinois common law (Argument Section I) and assert, in the alternative, that, if McDonald is deemed to have suffered an "injury" from clocking in and out of work, it would be preempted under the Illinois Workers' Compensation Act, which provides the exclusive remedy for workplace-related harms (Argument Section II).

## LEGAL STANDARD

A motion brought pursuant to section 2–619 admits the sufficiency of the complaint, but asserts an affirmative defense or other matter that avoids or defeats the claim. *Maglio v. Advocate Health & Hosps. Corp.*, 2015 IL App (2d) 140782, ¶20, *appeal denied*, 39 N.E.3d 1003 (Ill. 2015) (further noting that "[l]ack of standing is an affirmative matter that is properly raised under section 2–619(a)(9)"); *see also Lebron v. Gottlieb Mem'l Hosp.*, 237 Ill. 2d 217, 252–53 (2010) ("Under Illinois law, lack of standing is an affirmative defense, which is the defendant's burden to plead and prove. While a lack of subject matter jurisdiction cannot be forfeited, a lack of standing will be forfeited if not raised in a timely manner in the trial court (citation omitted)). In ruling on a section 2–619

55134692v.4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM  2017CH11311

motion to dismiss, the court must view the pleadings and supporting materials, if any, in the light most favorable to the non-movant. *Van Meter v. Darien Park District*, 207 Ill.2d 359, 367–68 (2003).

## ARGUMENT

**I.     McDonald Lacks Standing Under Illinois Common Law Because She Has Not Alleged a "Distinct and Palpable" Injury-In-Fact.**

Where a plaintiff lacks standing, "the proceedings must be dismissed" because "the lack of standing negates the plaintiff's cause of action." *Wexler v. Wirtz Corp.*, 211 Ill.2d 18, 22 (2004); *Marshall v. Cty. of Cook*, 2016 IL App (1st) 142864, ¶1 (same); *Schacht v. Brown*, 2015 IL App (1st) 133035, ¶14 (same); *Wood River Twp. v. Wood River Twp. Hosp.*, 331 Ill. App. 3d 599, 604 (5th Dist. 2002) (same). In order to have standing under Illinois common law, a plaintiff "must have suffered some injury-in-fact to a legally cognizable interest," *Maglio*, 2015 IL App (2d) 140782 at ¶¶22-30, which means a plaintiff must have alleged an "actual or threatened" injury that is: "[1] distinct and palpable; [2] fairly traceable to the defendant's actions; and [3] substantially likely to be prevented or redressed by the grant of the requested relief," *id.* at ¶22; *Amtech Sys. Corp. v. Illinois State Toll Highway Auth.*, 264 Ill. App. 3d 1095, 1103 (1st Dist. 1994) (same). Here, McDonald lacks standing because her alleged injury—a fear of what might happen to her "biometric information" in the future (Compl. at ¶¶35, 36)—as a matter of law, does not constitute an injury-in-fact, cannot be traced to Defendants' actions or inactions, and cannot be redressed by the relief she requests.

**A.     With Respect to Claims Relating to Improper Data Retention, A Risk of Future Harm Is Not A "Distinct and Palpable" Injury.**

A risk of future harm is insufficient to give rise to standing. *See Williams v. Manchester*, 228 Ill.2d 404, 425 (2008) ("as a matter of law, an increased risk of future harm is an *element of damages* that can be recovered for a present injury—it is *not* the injury itself" (emphasis in original)); *Cooney v. Chicago Pub. Sch.*, 407 Ill. App. 3d 358, 365–66 (1st Dist. 2010) (same; citing authority); *see also Lewis v. Lead Indus. Ass'n, Inc.*, 342 Ill. App. 3d 95, 101 (1st Dist. 2003) (similar). As courts have described

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM    2017CH11311

this general principle, a risk of future harm is not an "actual or threatened" injury unless it is "certainly impending," or there is a "substantial risk" that the harm will occur. *Maglio*, 2015 IL App (2d) 140782 at ¶25 (citing *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 234 (2014) and quoting *Clapper v. Amnesty International USA*, 133 S.Ct. 1138, 1150 n.5 (2013)). Stated conversely, a "***possible*** future injury" or a "theory that relies on a highly attenuated chain of events" is not an injury-in-fact and is insufficient to establish standing. *Id.* (internal quotation omitted; emphasis original).

In the data retention context in particular, courts have applied this general principle to hold that the risk of identity theft, even where personal-identifying information has been compromised or stolen, is insufficient in itself to give rise to standing. A recent case from the Second District— *Maglio v. Advocate Health & Hosps. Corp.*—well illustrates this point. 2015 IL App (2d) 140782 at ¶¶22-30. In that case, the plaintiff sued Advocate, a network of affiliated doctors and hospitals, alleging that burglars stole four password-protected computers that contained certain information relating to four million patients. *Id.* at ¶3. Advocate subsequently "notified patients about the incident, set up a call center to answer their questions, and offered one year of free credit-monitoring services, including identity theft resolution assistance and identity theft insurance." *Id.* The plaintiffs alleged that this conduct violated the Personal Information Protection Act, 815 ILCS § 530/1—which, like BIPA, pertains to "[u]nique biometric data generated from measurements * * * such as a fingerprint, retina or iris image, or other unique physical representation or digital representation of biometric data," 815 ILCS § 530/5—and that they were injured because they faced an increased risk of identity theft and because they had suffered emotional distress, *Maglio*, 2015 IL App (2d) 140782 at ¶¶9, 30. Applying recent jurisprudence from the United States Supreme Court,[2]

---

[2] Because federal standing principles under Article III "are similar to those" that arise as a matter of common law in Illinois," federal case law interpreting Article III standing "is instructive." *Id.* at ¶25; *see also, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("threatened injury must be ***certainly impending*** to constitute injury in fact" because "[a]llegations of ***possible*** future injury" are not sufficient (emphasis in original)). Indeed, the Illinois Supreme Court itself has relied upon United States Supreme Court precedent

55134692v.4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

the *Maglio* court held that plaintiffs did not have standing because their "allegations of injury are clearly speculative":

> [The United States Supreme Court decision in] *Clapper* compels rejection of [the plaintiffs'] claim that an increased risk of identity theft is sufficient to satisfy the injury-in-fact requirement for standing.  As plaintiffs here have not alleged that their personal information has actually been used or that they have been victims of identity theft or fraud, the arguably increased risk of such acts as a result of Advocate's data breach is insufficient to confer standing as that concept is applied in federal cases.

*Maglio*, 2015 IL App (2d) 140782 at ¶¶25, 26 (further holding that plaintiffs lack standing to pursue common law negligence claim).  And the First District likewise has recognized that a claim based upon the improper disclosure of personal data cannot proceed where the alleged injury is merely the increased risk of future identity theft.  *See Cooney*, 407 Ill. App. 3d at 365–66.  Thus, to have an injury-in-fact under Illinois common law, a plaintiff must allege that she, personally, has suffered some actual harm (or the imminent risk of actual harm) from the improper use of her information.  *Maglio*, 2015 IL App (2d) 140782 at ¶¶25-29 (the "fact that two plaintiffs to date (out of those 4 million) have received notification of fraudulent activity, *i.e.*, have suffered actual injury arising from Advocate's alleged wrongful acts, does not show that plaintiffs here face imminent, certainly impending, or a substantial risk of harm as a result of the burglary, where no such activity has occurred with respect to their personal data." (parentheses in original)).

This holding—that "an increased risk of identity theft" is "insufficient to confer standing" with respect to data that may have been compromised—controls the outcome here.  McDonald does **not** allege that her "biometric information" has been actually hacked, compromised, or otherwise improperly disclosed, or that there is some imminent risk that those things are about to happen.  She also does **not** allege that her "biometric information" has been used in a way that has actually resulted in some sort of pecuniary or otherwise palpable harm.  Rather, McDonald alleges

in discussing the "distinct and palpable" component of standing under Illinois common law.  *Greer*, 122 Ill. 2d at 494.

55134692v.4

C34

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

only that she has suffers "mental anguish and injury" "when thinking about what **would happen** to her biometric data **if** Symphony went bankrupt, whether Symphony will ever delete her biometric information, and whether (and to whom) Symphony shares her biometric information." (Compl. at ¶¶35, 36 (emphasis added).) Thus, this is an *a fortiori* case: if a plaintiff lacks a cognizable injury where there has been an actual data breach or improper disclosure (such as in *Maglio* and *Cooney*), then McDonald must also lack a cognizable injury since, based on her allegations, she is even further removed from a potentially cognizable injury. Accordingly, the Complaint here should be dismissed because McDonald has alleged facts that are insufficient to establish an injury-in-fact, as a matter of law. *See Maglio*, 2015 IL App (2d) 140782 at ¶¶18-32 (plaintiff's lack of standing warranted dismissal of statutory and common law claims).

## B. Illinois Law Accords With Other Jurisdictions as to What Constitutes an Injury-in-Fact for Claims Based on Personal Data Retention.

Illinois law is in line with the overwhelming weight of non-binding authority as to what constitutes a "distinct and palpable" injury-in-fact for claims based upon the improper retention or disclosure of personal information. This authority holds that, when a plaintiff alleges only that her information is at future risk of harm arising from a potential data breach, it does not constitute a "distinct and palpable" injury:

- "Assuming plaintiff's allegation of security breach to be true, plaintiff alleges that he would be injured 'if' his personal information was compromised, and 'if' such information was obtained by an unauthorized third party, and 'if' his identity was stolen as a result, and 'if' the use of his stolen identity caused him harm. These multiple 'if's' squarely place plaintiff's claimed injury in the realm of the hypothetical. If a party were allowed to assert such remote and speculative claims * * * [the] standing doctrine would be meaningless." *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1053 (E.D. Mo. 2009);

- Plaintiffs lack "standing because they claim to have suffered little more than an increased risk of future harm from the loss (whether by accident or theft) of their personal information." *Hammond v. The Bank of New York Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307, at *2 (S.D.N.Y. June 25, 2010) (internal citation omitted; cititng authorities; parentheses in original);

55134692v.4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

- "In the identity theft context, courts have embraced the general rule that an alleged increase in risk of future injury is not an 'actual or imminent' injury." *Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 689 (S.D. Ohio 2006) (citing authorities).

- "[Plaintiffs] alleged injury of an increased risk of identity theft is far too speculative" to establish standing. *Allison v. Aetna, Inc.*, No. CIV.A. 09-2560, 2010 WL 3719243, at *5 (E.D. Pa. Mar. 9, 2010).

*See Beck v. McDonald*, 848 F.3d 262, 275 (4th Cir 2017) (similar; summarizing federal circuit-level authority on this issue); *In re: Science Applications International Corp. (SAIC) Backup Tape Data Theft Litigation*, 45 F. Supp. 3d 14, 28 (D.D.C. 2014) (similar; citing authorities). The upshot of these cases is that a plaintiff does not have an injury or the imminent risk of injury, where she "cannot describe how [she] will be injured without beginning the explanation with the word 'if.'" *See also Peters v. St. Joseph Services Corp.*, 74 F. Supp. 3d 847, 856–57 (S.D. Tex. 2015) (putative class action against hospital following data breach dismissed because the heightened risk of future identity theft posed by the data breach did not confer an injury in fact on persons whose information might have been accessed); *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 910–13 (7th Cir. Jan. 20, 2017) (similar; regarding violation of the Cable Communications Policy Act); *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016) (same).

To be sure, if a plaintiff has alleged that her personal data has been hacked or otherwise compromised and that identity theft occurred as a result as to the plaintiff in particular or as to a non-insubstantial portion of other persons affected by the data breach, then a cognizable injury-in-fact may have occurred. *See, e.g., Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693 (7th Cir. 2015) (finding that plaintiff suffered an injury in fact where 9,200 cases of identity theft had occurred as result of a data breach that compromised approximately 350,000 credit card numbers); *cf. Maglio*, 2015 IL App (2d) 140782 at ¶¶3, 24 (where data breach involved information relating to four million people, plaintiff lacked a "distinct and palpable" injury in fact where only two of those people allegedly suffered identify theft); *Beck*, 848 F.3d at 275-76 (no injury in fact where compromised data included unencrypted personal information of approximately 7,400 patients,

55134692v.4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

including names, birth dates, the last four digits of social security numbers, and physical descriptors such as age, race, gender, height, and weight). But that is not the case here. Recall that McDonald's alleged "injury" supposedly occurred "when thinking about what would happen to her biometric data *if* Symphony went bankrupt, whether Symphony will ever delete her biometric information, and whether (and to whom) Symphony shares her biometric information." (*Id.* at ¶¶35, 36 (emphasis added).) In other words, McDonald is even further removed from a cognizable injury-in-fact because she has not even alleged that a data breach occurred, much less that anyone has actually been hurt by it.

Given this authority, it should go without saying that the mere improper collection or retention of personal information does not give rise to standing. After all, "[h]ow could there be an injury, unless the information, not having been destroyed, were disclosed? If, though not timely destroyed, it remained secreted [away] until it was destroyed, there would be no injury." *See Sterk v. Redbox Automated Retail, LLC,* 672 F.3d 535, 538 (7th Cir. 2012) (addressing the records destruction provision of the Video Privacy Protection Act). McDonald's lack of a cognizable injury-in-fact dooms her claims and her Complaint should be dismissed for want of common-law standing.

**C.    McDonald Lacks Common Law Standing For The Added Reason That Her Alleged Injury—Fear of Disclosure of Her Biometric Information—Exists Irrespective of Defendants' Compliance With BIPA.**

In order to have standing, a plaintiff "must have suffered some injury-in-fact to a legally cognizable interest," *Maglio,* 2015 IL App (2d) 140782 at ¶¶22-30, which means a plaintiff, in addition to alleging a "a distinct and palpable injury, must also have suffered that such an injury is fairly traceable to the defendant's actions and is substantially likely to be prevented or redressed by the grant of the requested relief," *id.* at ¶22; *Amtech Sys. Corp. v. Illinois State Toll Highway Auth.,* 264 Ill. App. 3d 1095, 1103 (1st Dist. 1994) (same).

55134692v.4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

McDonald's alleged injury—fear of disclosure—is not connected to or derived from Defendants' compliance or non-compliance with BIPA, which Plaintiff concedes is "simply an informed consent statute." (*See* Compl. at ¶19.) Neither BIPA's notice and consent requirements or its requirement to publish a retention policy have any bearing on whether biometric information might be hacked, improperly disclosed, or otherwise compromised. *See generally Martini v. Netsch*, 272 Ill. App. 3d 693, 695 (1st. Dist. 1995) ("The decision as to standing may differ depending on the issue involved and the nature of the relief sought. Whether the plaintiff has standing to sue is to be determined from the allegations contained in the complaint."); *see also Messenger v. Edgar*, 157 Ill. 2d 162, 171 (1993) (standing "must be defined on a case-by-case basis"). And that is true both as to former employees, like McDonald, and as to current employees. *See Maglio*, 2015 IL App (2d) 140782 at ¶21 ("in assessing standing in a class action, which plaintiffs seek these cases to be, we focus on the named plaintiffs' allegations, not the general class they purport to represent"). Defendants could have fully complied with BIPA, and McDonald's alleged fear would not be alleviated. The same is true if Defendants' collected her biometric information and failed to comply with BIPA. McDonald's fear of compromise, therefore has nothing to do with Defendants' compliance or non-compliance with BIPA. Thus, her alleged injury is not fairly traceable to the Defendant's non-compliance with BIPA, and is not substantially likely to be prevented or redressed by the grant of the requested relief," *Amtech Sys. Corp. v. Illinois State Toll Highway Auth.*, 264 Ill. App. 3d 1095, 1103 (1st Dist. 1994).

**D.      That BIPA Allows for Liquidated And Actual Damages Does Not Mean That McDonald Has Standing or that She Is Automatically Entitled to Relief.**

Even if the Illinois legislature could discard the common-law standing principles that apply to "every cause of action,"[3] there is nothing in the text of BIPA to suggest that the Legislature so

---

[3] To suggest that the Illinois legislature could eliminate the injury-in-fact requirement is an altogether questionable proposition. While the legislature can create new substantive rights, it cannot impose additional

55134692v.4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM    2017CH11311

intended. On this point, McDonald previously made much of the fact that BIPA refers both to "actual damages" and "liquidated damages." *See* 740 ILCS 14/20 ("Any person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party. A prevailing party may recover for each violation: (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater . . ."). McDonald, that is, thinks the availability of "liquidated damages" as an alternative to "actual damages" obviates the need for her to have suffered a "distinct and palpable" injury in fact.

But "injury" and "damages" are two "analytically distinct" concepts. *See Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 890 (7th Cir. 1995). "Injury" is the harm that a plaintiff personally suffers (or that a plaintiff is imminently about to suffer), whereas "damages" comprise the quantification of that injury. *Id.* The former is critical to a standing inquiry; the latter is not. *See Messenger v. Edgar*, 157 Ill. 2d 162, 172 (1993) (noting the distinction between "injury" and "damages" and further noting that standing depends on existence of injury, not existence of damages).

Taking just one example of this distinction, consider a plaintiff that has suffered an injury, but her damages are for whatever reason difficult or impossible to calculate. The failure to be able to prove "actual damages" does not affect the plaintiff's standing to bring a cause of action, *see id.*, but rather affects only the type of relief she is entitled to obtain. Sometimes that remedy might be injunctive or declaratory relief,[4] or sometimes that remedy may be liquidated damages, if a statute so

---

"conditions precedent" for bringing suit, *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335-36 (2002), and there is no reason to think the legislature can eliminate existing conditions precedent for bringing suit such as the injury-in-fact requirement. *See also Kunkel v. Walton*, 179 Ill. 2d 519, 528 (1997) ("[u]ltimately [the Illinois Supreme] [C]ourt retains primary constitutional authority over court procedure. Consequently, the separation of powers principle is violated when a legislative enactment unduly encroaches upon the inherent powers of the judiciary, or directly and irreconcilably conflicts with a rule of this court on a matter within the court's authority.").

[4] Setting aside that Defendants here are asserting lack of standing as an affirmative defenses, Defendants respectfully submit that a person who has been "aggrieved by" a violation of BIPA can seek

55134692v.4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

prescribes. But the existence of liquidated damages as a remedy under a statute does not mean that a plaintiff can avoid the need to have suffered an "injury in fact" under Illinois common law, it means only that her damages may be difficult to quantify (or if that quantification would yield less than $1,000). *See Sterk*, 672 F.3d at 538 (7th Cir. 2012) ("liquidated damages are intended to be an estimate of actual damages"); *see also Doe v. Chao*, 540 U.S. 614, 624–25 (2004) (similar); *Van Alstyne v. Electronic Scriptorium, Ltd.*, 560 F.3d 199, 205–06 (4th Cir. 2009) (similar).[5] But a plaintiff must always have suffered an "injury" in order to obtain relief from a court, whatever form that relief may ultimately take. *See, e.g., Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 489 (2008) (noting that, even in when a plaintiff seeks declaratory relief, standing is a "threshold question").

It is the question of "injury" to which Defendants' above-cited authority pertains. Indeed, *Maglio* and *Cooney* specifically hold—like the overwhelming weight of non-binding authority likewise holds—that "an increased risk of identity theft" is "insufficient to confer standing" because that **injury** is not "distinct and palpable." *Maglio*, 2015 IL App (2d) 140782 at ¶¶24-26 (citing *Greer*); *see also Cooney*, 407 Ill. App. 3d at 361 (similar). In line with this authority, McDonald has not alleged that she suffered an actual harm by the mere retention of her biometric data, and her Complaint should be dismissed accordingly.

---

recourse under the statute, *see Rosenbach*, 2019 IL 123186 (2019) at ¶37, but the type of relief that the plaintiff could obtain would depend on whether the plaintiff has already suffered an injury—for which actual damages or liquidated damages may be recoverable—or injunctive or declaratory relief when the plaintiff has not yet suffered an actual injury, but is at imminent risk of suffering an actual injury. *See, e.g., Wood River Twp.*, 331 Ill. App. 3d at 604 ("A claimed injury, whether actual or threatened, must be distinct and palpable, fairly traceable to the defendant's actions, and substantially likely to be prevented or redressed by the requested relief.") (declaratory judgment context).

[5] The Seventh Circuit has aptly described this distinction between [1] generally falling within the scope of a particular statute and [2] what it means to have a "distinct and palpable" injury arising from an alleged statutory violation. That the legislature "has passed a statute coupled with a private right of action is a good indicator that whatever harm might flow from a violation of that statute would be particular to the plaintiff. Yet the plaintiff still must allege a concrete injury that resulted from the violation in his case." *See Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016). "In other words, Congress' judgment that there should be a legal remedy for the violation of a statute does not mean each statutory violation creates an Article III injury." *Id.*; *see also Chao*, 540 U.S. at 624–25 (similar).

55134692v.4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

Any other result would simply buck common sense. After all, could it possibly be true that a plaintiff has suffered a cognizable "injury in fact" just by virtue of a statutory violation, no matter how technical? Suppose, for example, that Defendants were alleged to have provided a disclosure about the retention of McDonald's biometric information, but that disclosure said only that McDonald's information would be stored for "more than a year." Such a disclosure might be argued to technically violate BIPA, which requires a plaintiff to be advised "in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used." 740 ILCS 14/15(b)(2). Yet, it would turn common sense on its head to think that a plaintiff (or a class of plaintiffs) could recover liquidated damages for such a hyper-technical violation, even in the absence of actual harm. Such a plaintiff would be an "aggrieved person" entitled to pursue a private right of action under BIPA, but her claim would be negated under common law standing principles due to lack of any "distinct and palpable" injury arising from the hyper-technical violation. And without the jurisprudential limiting principle of common-law standing there would be no basis to distinguish between cases involving only hyper-technical violations of BIPA and cases that involving violations that actually produce some harm.

The plain text of the statute further sustains Defendants' position. BIPA allows for "liquidated," not "punitive," damages. *Sterk*, 672 F.3d at 538 ("liquidated damages are intended to be an estimate of actual damages"). But, to be sure, if a plaintiff class were able to recover a mountain of liquidated damages without any pecuniary or palpable harm, those damages would operate in effect like punitive damages. Defendants respectfully submit that the Legislature did not intend to hurl employers across the state into bet-the-company litigation based upon mere negligence, particularly where the class has not suffered an injury in fact, *see, e.g., Loitz v. Remington Arms Co.*, 138 Ill. 2d 404, 415 (1990) ("punitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence" (internal quotation

55134692v.4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

omitted)), and particularly where such a statutory construction would raise significant constitutional concerns, *see BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996) ("Due Process Clause of the Fourteenth Amendment prohibits a State from imposing a grossly excessive punishment on a tortfeasor"); *see also Lyon v. Dep't of Children & Family Servs.*, 209 Ill. 2d 264, 272 (2004) ("due process [] protects fundamental justice and fairness"). Thus, both the text of BIPA and common sense further sustain the proposition that McDonald's Complaint should be dismissed because she lacks standing under Illinois common law.

*    *    *

In sum, a plaintiff who alleges a bare violation of BIPA is entitled to pursue a private right of action. *Rosenbach*, 2019 IL 123186 (2019) at ¶15. But if a defendant asserts lack of standing as an affirmative defense, then the question becomes whether the plaintiff has suffered a "distinct and palpable injury," which means that a plaintiff's BIPA can proceed only if she has suffered actual harm or there is an imminent risk that an actual harm will occur. Then, if a plaintiff has standing as a matter of common law, Defendants submit that a plaintiff who is determined to be at risk of an imminent harm could potentially recover injunctive or declaratory relief (and reasonable attorneys' fees, if she prevails); or, if the plaintiff has already suffered an actual harm, she could obtain her actual damages or liquidated damages when her actual damages are difficult to quantify (or if that quantification would yield less than $1,000). This approach is thus consistent with *Rosenbach*, the Illinois common law of standing, and the statutory text, which potentially allows liquidated damages to be awarded upon a finding of mere negligence.

In contrast, plaintiff's apparent contention that a violation of statute automatically leads to bet-the-company damages would contravene several principles of law. First, it would confuse the distinction between what a plaintiff must allege for statutory standing—*i.e.*, what a plaintiff must allege to get in the courthouse door; here, what it means to be "aggrieved" such as to give rise to a

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

private right of action under BIPA—and what a defendant must prove should it assert a lack of standing defense as a matter of Illinois common law—*i.e.*, that, while aggrieved for purposes of pleading a private right of action, the plaintiff cannot proceed for want of a "distinct and palpable" injury in fact. Second, it would ignore a plaintiff's ultimate burden of establishing the right to relief under the statute. Taking a notable example (discussed above), if plaintiff or the class were able to obtain liquidated damages without any actual harm, then those damages would in effect operate like (massive and likely ruinous) punitive damages, but yet would be imposed only for "negligent" conduct, which also would further contravene the principle that punitive damages cannot be awarded for negligent conduct.

Accordingly, Defendants respectfully submit that their common-law standing represents an important limiting principle that accords with the plain meaning of the BIPA statute. And because McDonald has not suffered a "distinct and palpable" injury in fact, her Complaint must be dismissed for lack of standing.

## II. In the Alternative, If McDonald Has Suffered an "Injury" from Clocking In and Out of Work, Then Her Claims Would Be Preempted by the Illinois Workers' Compensation Act, Which Supplies the Exclusive Remedy for Workplace Injuries

Even assuming that McDonald has pleaded a distinct and palpable injury—and she hasn't— her Complaint is nonetheless ripe for dismissal because any injury she obtained during the course of her employment would be preempted by the Illinois Workers' Compensation Act. The Workers' Compensation Act created a system where "in exchange for a system of no-fault liability upon the employer, the employee is subject to statutory limitations on recovery for injuries and occupational diseases arising out of and in the course of employment." *Folta v. Ferro Eng'g*, 2015 IL 118070, ¶12. "As part of this 'balancing,' the Act further provides that the statutory remedies under it shall serve as the employee's exclusive remedy if he sustains a compensable injury." *Sharp v. Gallagher*, 95 Ill. 2d 322, 326 (1983) (internal quotation omitted); *Cooley v. Power Constr. Co., LLC*, 2018 IL App (1st)

55134692v.4

C43

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM    2017CH11311

171292, ¶12 ("Employees that are injured at work do not have a cause of action against their employer, and their exclusive remedy is to apply for benefits under the Workers' Compensation Act"); *see also* 820 ILCS 305/5(a) (setting forth exclusivity provision). An employee may only escape the exclusive remedy provision of the Worker's Compensation Act if the employee establishes that their alleged injury falls within one of four categories: "that the injury [1] was not accidental; [2] did not arise from his employment; [3] was not received during the course of employment; or [4] was not compensable under the Act." *Folta*, 2015 IL 118070 at ¶14. An injury resulting from negligence is, by definition, accidental. *See, e.g., Baylay v. Etihad Airways P.J.S.C.*, 222 F. Supp. 3d 698, 704 (N.D. Ill. 2016), *aff'd*, 881 F.3d 1032 (7th Cir. 2018) ("Both an employee's claim of employer negligence and a claim of employer willful and wanton conduct fall within the definition of 'accidental' and are preempted" by the Illinois Workers' Compensation Act) (citing authority).

McDonald cannot establish that her injury avoids the exclusivity test under the Workers' Compensation Act. First, to the extent McDonald has suffered an injury as a result of placing her finger on a time-clock scanner, her "injury" would be "accidental," particularly given that the Complaint alleges only that Defendants engaged in negligent conduct. (*See* Compl. ¶¶41, 51-56.) Second, McDonald admits that her alleged injuries arose out of her employment and were received during the course of her employment. (*Id.* at ¶¶2, 3, 5, 16, 18, 21-27, 29, 59.) Third, McDonald's alleged "mental anguish" is potentially compensable under the Workers' Compensation Act. *See Pathfinder Co. v. Indus. Comm'n*, 62 Ill. 2d 556, 562 (1976). Accordingly, McDonald's claims are barred by the Workers' Compensation Act, and the Complaint should be dismissed under Section 2-619.

## **CONCLUSION**

Plaintiff Marquita McDonald has not suffered a cognizable injury-in-fact and thus lacks standing under Illinois common law to assert either of the claims she alleges in the Complaint. And even if she has suffered an injury in connection with clocking in and out of work, her claim would

55134692v.4

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

be preempted under the Illinois Workers' Compensation Act, which provides the exclusive remedy for workplace-related injuries.  For both reasons, the Complaint should be dismissed in its entirety in accordance with Section 2-619(a)(9).

55134692v.4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

## CERTIFICATE OF SERVICE

I, Joseph A. Donado, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing **DEFENDANTS SYMPHONY BRONZEVILLE PARK, LLC AND SYMPHONY HEALTHCARE LLC'S RENEWED AND AMENDED SECTION 2-619 MOTION TO DISMISS** to be served upon the following by email on this 27th day of February 2019:

Eli Wade-Scott
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
T: (312) 589-6370
F:  (312) 589-6378

/s/ Joseph A. Donado

55134692v.4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

A47

FILED
2/27/2019 4:29 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2017CH11311

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

**Firm ID No. 90747**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| MARQUITA McDONALD, individually and on behalf of all other similarly situated, | |
| Plaintiff, | Case No. 2017-CH-11311 |
| v. | Calendar: 02 |
| SYMPHONY HEALTHCARE LLC, and SYMPHONY BRONZEVILLE PARK LLC, | Honorable Raymond Mitchell |
| Defendants. | |

---

## DEFENDANTS SYMPHONY HEALTHCARE LLC AND SYMPHONY BRONZEVILLE PARK LLC'S RENEWED AND AMENDED SECTION 2-615 MOTION TO DISMISS

---

DATED: February 27, 2019

Respectfully submitted,

SEYFARTH SHAW LLP

By: /s/ Joseph A. Donado
_____

Richard P. McArdle (rmcardle@seyfarth.com)
Joseph A. Donado (jdonado@seyfarth.com)
SEYFARTH SHAW LLP
233 South Wacker Drive; Suite 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

***Attorneys for Defendants Symphony Healthcare LLC and Symphony Bronzeville Park LLC***

55280788v.1

C47

FILED DATE: 2/27/2019 4:29 PM    2017CH11311

In accordance with 735 ILCS 5/2-615 ("Section 2-615"), Defendants Symphony Bronzeville LLC ("Bronzeville") and Symphony Healthcare LLC ("Symphony Healthcare") hereby move to dismiss Plaintiff Marquita McDonald's Complaint [1] because it fails to allege a cognizable negligence claim (Count II) and [2] because, as to Symphony Healthcare in particular, it fails to specifically allege facts that could possibly give rise to claims against that entity.

## **BACKGROUND**

McDonald has filed a two-count purported class action Complaint against Bronzeville and Symphony Healthcare, asserting claims under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA") and common law negligence. The essence of these claims is that McDonald believes that she should have received notice regarding the collection, storage, and use of her "biometric information," *i.e.*, the data collected by the alleged "fingerprint scanne[r]" that McDonald used when clocking in and out from work. (Compl. at ¶¶22.) Notably, however, McDonald has not alleged a cognizable duty under Illinois common law or that she has actually been harmed by Defendants' supposed conduct, which means she has not adequately alleged the essential elements of a common law negligence claim (Argument Section I below). Count II should be dismissed as a result.

In addition, despite the fact that McDonald is a former employee of Bronzeville and not Symphony Healthcare (*see id* at ¶28 ("McDonald worked for Defendants' Symphony of Bronzeville location . . ."), the Complaint lumps together both named Defendants—referring to them collectively as "Symphony" (*id.* at 1)—such that ***all*** substantive allegations are levied against both Defendants as if they were one and the same. (*See id.* at ¶¶1, 2, 5, 21-27, 29-36, 40.) Indeed, there are only two allegations directed specifically to Symphony Healthcare (*id.* at ¶¶1, 8): [1] that "Defendant Symphony Healthcare LLC operates a network of post-acute care facilities with over twenty locations throughout the State of Illinois, including Defendant Symphony Bronzeville Park

55280788v.1

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM 2017CH11311

LLC's location," and [2] that "Defendant Symphony Healthcare LLC is a limited liability company existing under the laws of the State of Illinois. Symphony Healthcare LLC is registered to conduct business with the Illinois Secretary of State (File No. 03737292). Symphony Healthcare LLC conducts business throughout this County, the State of Illinois, and the United States." As set forth below (Argument Section II), these allegations are insufficient to sustain claims as Symphony Healthcare such that the entire Complaint should be dismissed as to that entity.

## **LEGAL STANDARD**

A Section 2–615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429–30 (2006). In reviewing the sufficiency of a complaint, a court accepts as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Id.* But as the Supreme Court has "repeatedly stated * * * Illinois is a fact-pleading jurisdiction," which means that a "plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of faction, not simply conclusions." *Id.* (citation omitted).

## **ARGUMENT**

### I. **McDonald's Negligence Claim Fails as a Matter of Law and Should Be Dismissed Pursuant to Section 2-615.**

McDonald's negligence claim should be dismissed for want of duty. *See Cooney v. Chicago Pub. Sch.*, 407 Ill. App. 3d 358, 365–66 (1st Dist. 2010) (to prevail on a negligence claim, a plaintiff "must allege" that "[1] defendants owed a duty to plaintiffs; [2] defendants breached that duty; and [3] the breach caused injury to plaintiffs"). Indeed, Illinois does not impose a common-law duty to safeguard personal information, *id.* (affirming dismissal of negligence claim because the defendant "had no duty to protect the plaintiff's [personal] information from disclosure."), and "unless a duty is owed, there is no negligence" *Washington v. City of Chicago*, 188 Ill. 2d 235, 239 (1999) (internal quotation omitted). *See also Dolmage v. Combined Ins. Co. of Am.*, No. 14-cv-3809, 2015 WL 292947,

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

**5–6 (N.D. Ill. Jan. 21, 2015) ("Because there is no common law duty to protect personal information in Illinois, Plaintiff has failed to state a claim for negligence."); *Cmty. Bank of Trenton v. Schnuck Markets*, Inc., No. 15-cv-01125, 2016 WL 5409014, *12 (S.D. Ill. Sept. 28, 2016) (similar); *Landale Signs & Neon, Ltd. v. Runnion Equip. Co.*, No. 16-CV-7619, 2016 WL 7409916, *3 (N.D. Ill. Dec. 22, 2016) (similar); *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 897–98 (N.D. Ill. 2012) (similar). That McDonald has failed to allege a cognizable duty gives reason alone to warrant dismissal of Count II.

Moreover, even if Illinois common law recognized a duty to safeguard personal information, McDonald does not plead any breach of such a duty or that she has suffered an injury proximately caused by the supposed breach of duty. *See also Boyd v. Travelers Ins. Co.*, 166 Ill. 2d 188, 197 (1995) (stating that "[t]o state a cause of action for negligence, a plaintiff must plead the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, an injury proximately caused by the breach, and damages" and holding that a "threat of future harm, not yet realized, is not actionable."); *Lewis v. Lead Indus. Ass'n, Inc.*, 342 Ill. App. 3d 95, 101 (1st Dist. 2003) ("in order for a plaintiff to recover damages for an increased risk of future harm in a tort action, he or she must establish, among other things, that the defendant's breach of duty caused a present injury which resulted in that increased risk"); *see also Dillon v. Evanston Hospital*, 199 Ill.2d 483, 496–507 (2002) (similar); *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 177 (1982) (similar). Indeed, there is no allegation that McDonald's information has been hacked, compromised, or improperly disclosed or that she has been hurt by improper disclosure or otherwise. For these reasons, too, the Complaint fails to allege the essential elements of a common-law negligence claim such that Count II should be dismissed in accordance with Section 2-615.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

## II.    In Trying To Rope-In A Defendant With Whom She Has No Direct Relationship, McDonald Contravenes Several Basis Fact-Pleading Principles.

As to Symphony Healthcare in particular, the Complaint fails to specifically allege facts that could give rise to claims against that entity. Illinois is a fact-pleading state. This means that "the allegations in a complaint must set forth facts that satisfy the elements necessary to support a cause of action," *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 335 (1997); *Grund v. Donegan*, 298 Ill. App. 3d 1034, 1037 (1st Dist. 1998) (same); *see also Alpha Sch. Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 735 (1st Dist. 2009); and that "conclusory allegations unsupported by **specific facts** are not sufficient to survive dismissal," *Wells Fargo Bank, N.A. v. Mundie*, 2016 IL App (1st) 152931, ¶8 (emphasis added); *see also Plocher v. City of Highland*, 59 Ill. App. 3d 697, 701 (5th Dist. 1978) (a "complaint may not rest upon conclusions of fact unsupported by allegations of specific facts from which such conclusions may be drawn"). The Complaint fails to comport with Illinois's fact-pleading standard in at least two significant respects.

### A.    McDonald Ignores The Principle That A Complaint Must State A Claim As To Each Named Defendant.

The first significant failure is that, by lumping together both Defendants for all its substantive allegations, the Complaint contravenes the basic pleading principle that a Complaint must state a claim as to **each** named defendant. McDonald, that is, "must set out sufficient facts to establish that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused injury to the plaintiff." *Weidner v. Midcon Corp.*, 328 Ill. App. 3d 1056, 1060 (5th Dist. 2002). And "[i]t is not sufficient that a complaint merely allege a duty; the plaintiff must allege facts from which the law will raise a duty and specific facts showing an omission of that duty and resulting injury." *Id.*; *Kohn v. Laidlaw Transit, Inc.*, 347 Ill. App. 3d 746, 754 (5th Dist. 2004) (same).

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

The Complaint fails to meet this pleading standard. In particular, the Complaint "fails to allege sufficient facts to constitute the basis for any duty owed by the respective defendants," which is a fatal shortcoming as the *Weidner* court explained:

> The allegations, in fact, are conclusory and nonspecific as to duties, acts, or omissions of defendants. For example, in each count, **regardless of which defendant is listed, plaintiffs state the exact same allegations of fault. There is absolutely no differentiation between the separate and distinct duties owed to plaintiffs by each defendant.** No facts were pleaded to support the claims that defendants had a duty * * * It is insufficient to merely plead the legal conclusion of agency. [I]t is fundamental that facts, and not conclusions, are to be pleaded, no matter how many such conclusions are set forth and regardless of whether they inform defendants in a general way of the nature of the claim against them. A court is bound to consider only those facts well-pleaded, and with no facts giving rise to any duty between the parties being alleged, the court had no choice but to dismiss plaintiffs' second amended complaint for the failure to state a cause of action.

*Weidner*, 328 Ill. App. 3d at 1060 (emphasis added; internal citation omitted). And while *Weidner* dealt specifically with a negligence claim, the general holding—that a complaint must set forth facts to support a claim against each particular defendant—applies equally regardless of the type of claim at issue. *See, e.g., In re Beatty*, 118 Ill. 2d 489, 499-500 (1987) (that general allegations with regard to the "defendants" did not suffice to state a claim, as it did not "state the specific statements made by each [defendant]" or show how each related to the claims at issue).

This is not an idle point. McDonald was not a Symphony Healthcare employee (*see* Compl. at ¶28), but yet nonetheless the Complaint repeatedly levies allegations against Symphony Healthcare as if it were McDonald's employer by lumping together both Defendants:

> 2.    When **employees** first begin their jobs at **Symphony**, they are required to scan their fingerprint in its time clocks. . . .

> 5.    Despite this law, **Symphony** disregards **its employees'** statutorily protected privacy rights . . .

> 16.    BIPA specifically applies to **employees** who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

18.  BIPA also establishes standards for how **employers** must handle Illinois employees' biometric identifiers and biometric information . . .

22.  Specifically, when **employees** first begin work at **Symphony**, they are required to have their fingerprint scanned in order to enroll them in **Symphony's** fingerprint database.

23.  **Symphony** uses an **employee** time tracking system that requires **employees** to use their fingerprint as a means of authentication.

24.  Unfortunately, **Symphony** fails to inform **its employees** the extent of the purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

25.  **Symphony** similarly fails to provide **its employees** with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA.  An **employee** who leaves the company does so without any knowledge of when their biometric identifiers will be removed from **Symphony's** databases—or if they ever will be.

27.  Ultimately, **Symphony** not only disregards **its employees'** privacy rights, but it also violates BIPA.

44.  [] BIPA requires companies to obtain informed written consent **from employees** before acquiring their biometric data.

59.  **Defendants** owed Plaintiff a heightened duty—under which Defendants assumed a duty to act carefully and not put Plaintiff at undue risk of harm— **because of the employment relationship of the Parties**.

(Compl. at ¶¶2, 5, 16, 18, 22-25, 27, 44, 59 (emphasis added).)  Given that the Complaint so often invokes the employee-employee relationship and duties that arise therein, why is it that a non-employer entity (Symphony Healthcare) is a party to this suit?  That the Complaint fails to answer this question and fails to supply specific facts with respect to Symphony Healthcare means that the Complaint is deficient and should be dismissed as to Symphony Healthcare.

**B.      Only Well-Pleaded Facts Are Entitled To Deference At This Stage; and There Are No Well-Pleaded Allegations as to Symphony Healthcare.**

The second significant failure is that there are no **well-pleaded** facts that could possibly sustain the contention that Symphony Healthcare, as a non-employer entity, should be a party to this

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM    2017CH11311

lawsuit. To be considered "well-pleaded," a complaint's "factual allegations must be supported by allegations of **specific** facts." *Capstone Fin. Advisors, Inc. v. Plywaczynski*, 2015 IL App (2d) 150957, ¶10 (emphasis in original); *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶31 (similar). And if an alleged fact is conclusory it is not entitled to any deference whatever on a Section 2-615 motion. *See Alpha Sch. Bus Co.,* 391 Ill. App. 3d at 735 ("conclusory factual allegations unsupported by specific facts are not deemed admitted" on a motion to dismiss under Section 2-615 (emphasis added)). Accordingly, it is not enough for McDonald to allege that "Symphony Healthcare and Symphony Bronzeville **together** collected [ ] McDonald's biometric identifiers and biometric information" (Pl.'s Resp. at 4 (emphasis in original)) because that conclusion—*i.e.*, that Defendants supposedly "worked together"—is not supported by a single specific fact, for there is no indication whatsoever as to why Symphony Healthcare, a non-employer entity, would be involved with the time-clock procedures and mechanisms of another entity's employees.

## CONCLUSION

For the reasons stated above, the Complaint fails to allege duty, causation, or injury with respect to her common-law negligence claim such that Count II should be dismissed for failure to allege these essential elements. In addition, because the Complaint fails to adequately allege a factual basis for claims against Symphony Healthcare, the Complaint should be dismissed against that Defendant. Accordingly, Defendants respectfully request an Order in accordance with 735 ILCS 5/2-615 [1] dismissing Count II of the Complaint as to Bronzeville; [2] dismissing the entire Complaint against Symphony Healthcare; and [3] granting whatever other relief the Court deems appropriate.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 2/27/2019 4:29 PM   2017CH11311

## CERTIFICATE OF SERVICE

I, Joseph A. Donado, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing **DEFENDANTS SYMPHONY BRONZEVILLE PARK, LLC AND SYMPHONY HEALTHCARE LLC'S RENEWED AND AMENDED SECTION 2-615 MOTION TO DISMISS** to be served upon the following by email on this 27th day of February 2019:

> Eli Wade-Scott
> EDELSON PC
> 350 North LaSalle Street, 13th Floor
> Chicago, Illinois 60654
> T: (312) 589-6370
> F:  (312) 589-6378

/s/ Joseph A. Donado

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

A56

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
4/11/2019 5:55 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2017CH11311

4662488

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED DATE: 4/11/2019 5:55 PM   2017CH11311

| | |
|---|---|
| MARQUITA MCDONALD, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>SYMPHONY HEALTHCARE LLC, an Illinois limited liability company, and SYMPHONY BRONZEVILLE PARK LLC, an Illinois limited liability company,<br><br>*Defendants*. | Case No. 2017-CH-11311<br><br>Calendar 2<br><br>Judge Raymond Mitchell |

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS UNDER 735 ILCS 5/2-619**

C56

FILED DATE: 4/11/2019 5:55 PM   2017CH11311

# INTRODUCTION

Plaintiff Marquita McDonald sued Symphony Healthcare LLC and Symphony of Bronzeville LLC (collectively, "Symphony") for collecting her fingerprints in violation of the Biometric Information Privacy Act, 740 ILCS 14.[1] The BIPA provides Illinoisans with several protections for their biometric information, requiring entities that collect biometric information to take certain steps before, during, and after any collection of biometric data. As part of her employment at Symphony of Bronzeville, one of the many post-acute care centers in the Symphony network, Defendants collected and stored Plaintiff McDonald's fingerprints when she clocked in and out of work using a fingerprint scanner. Yet she was never afforded any of the protections guaranteed by BIPA. Invoking the law's statutory cause of action and remedy, she sued to redress these violations of her rights.

Defendants contend that, for two reasons, she is out of luck. First, Defendants say, McDonald lacks "common law standing." Although Defendants acknowledge that controlling Supreme Court precedent establishes that she has a cause of action, they contend that there is another hair to split: that McDonald lacks the "distinct and palpable" grievance necessary to sue. But Defendants mischaracterize *Rosenbach's* holding, and worse, fail to cite on-point authority fatal to their argument.

Just a few months ago in *Duncan v. FedEx Office & Print Services,* the First District dispelled precisely the confusion about the "distinct and palpable" language that Defendants are relying on here. As the Court stated, a "distinct and palpable" injury is merely "an injury that

---

[1]    Plaintiff, along with filing this response brief, has moved to amend her complaint to substitute Symphony Healthcare as a party for Symcare Healthcare LLC and Symcare HMG LLC, omit the negligence claim, and omit her allegations of mental anguish. The amended complaint should not materially affect the issues posed in this 2-619 motion.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 5:55 PM   2017CH11311

cannot be characterized as 'a grievance common to all members of the public.'" *Duncan v. FedEx Office & Print Servs., Inc.*, 2019 IL App (1st) 180857, ¶ 22 (quoting *Messenger v. Edgar*, 157 Ill. 2d 162, 172 (1993)). That is, because McDonald alleges that Defendants violated *her* rights, she meets this test. With regard to a statutory violation, the First District's holding is not ambiguous: "Importantly, under Illinois law, when a plaintiff alleges a statutory violation, no 'additional requirements' are needed for standing." *Id.* ¶ 23 (quoting *Glisson v. City of Marion*, 188 Ill. 2d 211, 222 (1999)).

Defendants also briefly contend that McDonald's exclusive remedy lies in the Worker's Compensation Act, but it is clear that the challenged conduct is neither covered by nor compensable under that law, so the argument goes nowhere. Defendants' amended 2-619 motion should be denied.

## FACTUAL BACKGROUND

The Biometric Information Privacy Act, 740 ILCS 14, represents the Legislature's judgment that sensitive biometric information requires special protections. In the early 2000s, national corporations began using Chicago as a testing ground for a variety of "biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). One company, Pay by Touch, provided Illinois retailers with fingerprint scanners that allowed consumers to pay for goods and services. (Compl. ¶ 13.) In 2007, Pay by Touch filed for bankruptcy. (*Id.*) The Illinois legislature was alarmed by the risk that the millions of fingerprint records amassed by Pay by Touch would be sold as an asset, distributed or otherwise disclosed through the bankruptcy. (*Id.*) Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

276; *see also* 740 ILCS 14/5. BIPA's legislative findings make clear that the legislature sought to protect Illinois residents from the unique threat posed by biometrics:

> Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

740 ILCS 14/5(c).

BIPA concerns both "biometric identifiers" and "biometric information." 740 ILCS 14/10. Identifiers include fingerprints, retina scans, voiceprints, and scans of hand or facial geometry; biometric information is any information based on a biometric identifier that is used to identify an individual. *Id*. Private entities may not collect either type of information without informing the subject of the collection "in writing [that] a biometric identifier or biometric information is being collected or stored," 740 ILCS 14/15(b)(1), publishing a retention policy explaining the purpose of collection and length of time the information will be stored, 740 ILCS 14/15(b)(2), and obtaining written permission to collect biometric information, 740 ILCS 14/15(b)(3). In the employment context, the "written release" required by the Act includes "a release executed by an employee as a condition of employment." 740 ILCS 14/10. Finally, the information must be protected with industry-standard security measures. 740 ILCS 14/15(e). BIPA contains a private right of action, as well. The statute provides that "[a]ny person aggrieved by a violation of this Act shall have a right of action in a State circuit court . . . . [and] may recover for each violation: (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater . . . ." 740 ILCS 14/20.

FILED DATE: 4/11/2019 5:55 PM   2017CH11311

C59

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 5:55 PM   2017CH11311

Though BIPA has been in effect since 2008, Defendants have never complied with its requirements. Defendants operate a network of post-acute care nursing facilities across the State of Illinois, one of which is in Chicago's Bronzeville neighborhood. (Compl. ¶ 1.) Symphony requires its employees, such as Ms. McDonald, to use their fingerprints to clock in and out of work instead of an ID or punch card. (*Id.* ¶ 2.) Defendants never obtained Ms. McDonald's, or any other employee's, written consent to this procedure or disclosed how long they intend to keep their employees' biometric information. (*Id.* ¶ 5.)

## LEGAL STANDARD

A motion under 735 ILCS 5/2-619 "admits the legal sufficiency of the complaint but asserts an affirmative defense or matter that avoids or defeats the claim." *Vanguard Energy Servs. LLC v. Shihadeh*, 2017 IL App (2d) 160909, ¶ 11. A court considering a motion to dismiss under 2-619 interprets all pleadings and supporting materials in favor of the nonmoving party. *Id.*

## ARGUMENT

### I.    McDonald has standing to sue.

Defendants first argue that McDonald lacks so-called "common-law standing." But however standing is described, McDonald has it. As the First District recently confirmed, "under Illinois law, when a plaintiff alleges a statutory violation, no additional requirements are needed for standing." *Duncan*, 2019 IL App (1st) 180857, ¶ 23. That is the case here: McDonald alleges that Defendants violated her statutory rights under BIPA, and sues under a cause of action provided by that statute. She therefore has standing because—as discussed briefly below—there is no longer any debate that McDonald has a cause of action under the statute. *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186. Indeed, the Appellate Court previously held as much *in a BIPA case* that Symphony inexplicably fails to cite. *See Sekura v. Krishna Schaumburg Tan,*

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 5:55 PM   2017CH11311

*Inc.*, 2018 IL App (1st) 180175, ¶¶ 35-37, 72 (holding that an individual alleging a violation of their BIPA rights has standing to sue under BIPA). Thus, McDonald clearly has standing to sue.

In a previous iteration of this motion, Defendants argued that McDonald lacked standing because she is purportedly not "aggrieved" by Defendants' actions. The Illinois Supreme Court unanimously rejected that understanding of the statute in *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186. In *Rosenbach*, the Supreme Court held that a person is aggrieved under BIPA when their "legal right[s are] invaded," as by a violation of their BIPA rights:

> Accordingly, when a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach. Consistent with the authority cited above, such a person or customer would clearly be "aggrieved" within the meaning of section 20 of the Act (*id.* § 20) and entitled to seek recovery under that provision.

*Id.* ¶ 33; *see also Sekura*, 2018 IL App (1st) 180175, ¶ 54 ("Instead, it must be a person whose privacy rights under the Act were [violated who is] "aggrieved by" the violation.").

Despite *Rosenbach*'s clear holding, Defendants pretend *Rosenbach* does not resolve their argument. *Rosenbach*, they say, dealt only with "statutory standing," failing to resolve their contentions regarding "common-law standing." The argument is deeply flawed.

First, it rests on a false distinction. As *Duncan* recognized, when a statute provides a personal right to a plaintiff, as BIPA does, and a plaintiff alleges a violation of that right, as McDonald does, no more is required for standing. *See* 2019 IL App (1st) 180857, ¶ 23. That is why the Supreme Court in *Rosenbach* wrote that someone who does not receive the protections of BIPA is "*entitled* to seek recovery" under BIPA. 2019 IL 123186, ¶ 33 (emphasis added). True, in Illinois "standing is a common law concept." *In re N.C.*, 2014 IL 116532, ¶ 42. But it is satisfied so long as "a party has a real interest in the outcome of the controversy." *Id.* (quotation

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 5:55 PM   2017CH11311

omitted). A statutory right provides that interest. *See Duncan*, 2019 IL App (1st) 180857, ¶ 23. There is thus no meaningful distinction between "statutory" and "common law" standing.

Second, Defendants' "common law standing" argument is completely divorced from the text of BIPA. Defendants repeatedly demand proof of a breach or pecuniary harm to the Plaintiff:

- "[Plaintiff] does ***not*** allege that her 'biometric information' has been used in a way that has actually resulted in some sort of pecuniary or otherwise palpable harm." (Def.'s Mem. at 8) (emphasis in original).

- "To be sure, if a plaintiff has alleged that her personal data has been hacked or otherwise compromised and that identity theft occurred as a result as to the plaintiff in particular or as to a non-insubstantial portion of other persons affected by the data breach, then a cognizable injury-in-fact may have occurred." (*Id.* at 10.)

These kinds of harms are precisely what the *Rosenbach* court held is *not* required to bring a claim under BIPA, because waiting for a breach—and an identity theft that can be proven to be the result of the breach—is exactly the opposite of what the Legislature intended:

> The strategy adopted by the General Assembly through enactment of the Act is to try to head off such problems before they occur.. . . . That is the point of the law. To require individuals to wait until they have sustained some compensable injury beyond violation of their statutory rights before they may seek recourse, as defendants urge, would be completely antithetical to the Act's preventative and deterrent purposes.

*Rosenbach*, 2019 IL 123186, ¶¶ 36–37. Defendants' effort to resurrect these burdens in the guise of "common-law standing" cannot co-exist alongside the Supreme Court's opinion, much less *Duncan*'s clear mandate on precisely this issue.

Defendants rely heavily on *Maglio v. Advocate Health & Hospitals Corp.*, 2015 IL App (2d) 140782 in trying to make this point. But as *Duncan* explains, *Maglio* held that the asserted injury was speculative, not that plaintiffs can never challenge a private entity's data-security

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 5:55 PM   2017CH11311

practices in court. *See Duncan*, 2019 IL App (1st) 180857, ¶ 27 (discussing *Maglio*). *Duncan*

also notes that "there is no indication that the statutes on which the *Maglio* plaintiffs based their

claims expressly grant a private cause of action to a customer for a violation." *Id. Duncan* holds

that the existence of a private cause of action with statutory damages, as exists here, is

dispositive of the standing question in the plaintiff's favor. *Id.* ¶ 23. *Maglio* is therefore

distinguishable, and if it's not, *Duncan* is controlling in this District.

Defendants' contention that, *Maglio* aside, McDonald's alleged injury is not "distinct and

palpable" lacks all merit, and their focus on quantifying future harms is irrelevant. A "distinct

and palpable" injury occurs when a plaintiff's personal legal rights are invaded, in contrast to a

generalized grievance. *See Messenger v. Edgar*, 157 Ill. 2d 162, 172 (1993); *Duncan*, 2019 IL

App (1st) 180857, ¶ 23. Here, McDonald complains that she was denied her rights under BIPA.

That is all that is needed to allege a "distinct and palpable" grievance. Thus, Defendants'

extended discussion about the possibility of future injury is beside the point.

Third, Defendant contends that McDonald has not alleged a "redressable" injury but,

again, ignores both Illinois standing law and the text of the statute. Focusing exclusively on

McDonald's alleged mental anguish, Defendant argues that because this anguish would be

present whether or not Defendants complied with the statute, she does not have standing to

pursue her claim. Of course, that presupposes that some injury beyond violation of the statute is

required to state a claim which, as laid out above, is not required. But it's also the wrong way to

think about the question: when a Defendant violates BIPA, "the right of the individual to

maintain [his or] her biometric privacy vanishes into thin air." *Rosenbach*, 2019 IL 123186, ¶ 34

(quoting *Patel v. Facebook Inc.*, 290 F. Supp. 3d 948, 953 (N.D. Cal. 2018)). As the Supreme

Court observed, that "injury is real and significant." *Id.* And one route to compensating the injury

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 5:55 PM   2017CH11311

provided by the legislature is liquidated damages, which have always been used to compensate for harms that would otherwise be "uncertain or difficult to prove." *1550 MP Road LLC v. Teamsters Local Union No. 700*, 2017 IL App (1st) 153300, ¶ 81. Thus, McDonald's injuries are redressable, in precisely the way the Legislature sought to do so. 740 ILCS 14/20; *see also Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1116 (9th Cir. 2014) (noting that an injury to statutorily guaranteed rights "would be redressed by an award of statutory damages").

## II.   McDonald's claim is not preempted by the Worker's Compensation Act.

Defendants' second argument under section 2-619 is that McDonald's claim is preempted by the Workers' Compensation Act (the "WCA"). The WCA preempts employee claims "for injury or death sustained by any employee while engaged in the line of his duty." *See* 820 ILCS 305/5(a). But the WCA does not preempt *every* claim that's in any way related to workplace conduct—it preempts only injuries that are compensable under the Act. *See Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 237 (1980); *Sharp v. Gallagher*, 95 Ill. 2d 322, 326 (1983) (noting that "the statutory remedies … serve as the employee's exclusive remedies if he sustains a compensable injury"). The injury that occurs when a statutory right is invaded is not compensated under the WCA, because it is not a physical injury as contemplated by that Act.

The purpose of the WCA is to provide financial protection for workers who are unable to work due to on-the-job injuries. *Murff v. Illinois Workers' Comp. Comm'n*, 2017 IL App (1st) 160005WC, ¶ 16. For that reason, the WCA is concerned with physical injuries that interfere with work, generating legions of cases on what constitutes such an injury. *See Pathfinder Co. v. Indus. Comm'n*, 62 Ill. 2d 556, 563 (1976) (holding that "sudden, severe emotional shock traceable to a definite time, place and cause which causes psychological injury or harm" is compensable under Act, "though no physical trauma or injury was sustained," and collecting

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 5:55 PM   2017CH11311

cases). In contrast, cases that do not concern a physical injury are not compensated by the workers' compensation scheme and are not preempted. In the seminal treatise on workers' compensation law, this distinction is discussed as follows:

> If the essence of the tort, in law, is non-physical, and if the injuries are of the usual non-physical sort, with physical injury being at most added to the list of injuries as a makeweight, the suit should not be barred. But if the essence of the action is recovery for physical injury or death, *including in "physical" the kinds of mental or nervous injury that cause disability*, the action should be barred even if it can be cast in the form of a normally non-physical tort.

Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law,* § 68.34(a) at 13–180 (1997) (original emphasis). The physical/non-physical distinction is borne out in Illinois case law. *Toothman v. Hardee's Food Sys., Inc.*, 304 Ill. App. 3d 521, 533 (5th Dist. 1999) (holding that "in order for injuries to be compensable under the Act, there must be some demonstrable medical evidence of injury in order for the claimant/employee to recover"); *Schroeder v. RGIS, Inc.*, 2013 IL App (1st) 122483, ¶ 30 (noting that mental injuries tied to a physical injury—the "physical mental" category—are compensable).[2]

Invasion of a statutory right—while constituting an "injury" for purposes of a cause of action under BIPA and standing, *see Rosenbach*, 2019 IL 123186, ¶ 34—is not the type of physical injury resulting in disability that is compensated by the WCA. As the First District just observed, "the [BIPA] is a privacy rights law that applies inside and outside the workplace," and "[s]imply because an employer opts to use biometric data, like fingerprints, for timekeeping purposes does not transform a complaint into a wages or hours claim." *Liu v. Four Seasons*

---

[2]     Defendants note as an afterthought that Plaintiff's allegation of mental anguish would be "potentially compensable" under the WCA. (Def.'s Mem. at 18.) Even if that were true—which is not a certainty, *see Toothman*, 304 Ill. App. 3d at 533—the argument misses the point: the compensable injury that Plaintiff is primarily concerned with is the invasion of her statutory rights under BIPA, which is not compensable under the Act.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 5:55 PM   2017CH11311

*Hotel, Ltd.*, 2019 IL App (1st) 182645, ¶ 30. Section 8 of the WCA, 820 ILCS 305/8, sets out what is recoverable in "nonfatal cases" such as this. That section says nothing about compensating individuals for violations of their right to biometric privacy. Neither do any cases interpreting the Workers' Compensation Act hold that the law provides compensation for violations of the right to biometric privacy. And that makes good sense, because the WCA compensates disabling injury to workers, whereas BIPA's purpose is to regulate biometric collectors and prevent harm. Should the Workers' Compensation Commission concern itself with no-fault damage awards for the invasions of statutory rights, BIPA's preventative and regulatory purpose is undone.

The court in *Marino v. Arandell Corp.* relied on this fundamental purpose of workers' compensation laws to find that the Wisconsin workers' compensation scheme did not preempt the state's right to privacy statute. 1 F. Supp. 2d 947, 956 (E.D. Wis. 1998). There, the court observed that injury associated with the statutory violation was essentially non-physical. *Id.* at 954. "Rather, the essence of the 'harm' perpetrated by an invasion of privacy is that a fundamental right, valued by society and protected by statute, has been disregarded." *Id.* at 954–55. Therefore, the court reasoned, the harm posed by the statutory violation was not the "disabling physical or mental injury" contemplated by the workers' compensation act, and was not preempted. *Id.* at 956. *See also Busby v. Truswal Sys. Corp.*, 551 So. 2d 322, 325 (Ala. 1989) (finding invasion of privacy not compensable under Alabama workers' compensation scheme and not preempted). For precisely the same reasons, BIPA is not preempted by the WCA.

Defendants' argument, too, has farther-reaching effects: statutory rights aimed at regulating employer behavior, rather than purely at compensating physically-injured employees, should not be found preempted by workers' compensation schemes. *See Vainio v. Brookshire*,

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 5:55 PM   2017CH11311

258 Mont. 273, 280, 852 P.2d 596, 601 (1993) (finding sexual harassment claim not an "injury" precluded by Montana Workers' Compensation Act). To be sure, an employee cannot bring a statutory claim to recover for physical injuries. *Gannon v. Chicago, M., St. P. & P. Ry. Co.*, 13 Ill. 2d 460, 462 (1958). But where the "injury" at issue is the violation of a statutory right—and accompanying statutory damages compensate that injury—it is not a physical injury that the WCA compensates. For instance, if an employer violated the AIDS Confidentiality Act by revealing an employee's HIV status, the employee's sole recourse cannot be to the Illinois Workers' Compensation Commission. *See* 410 ILCS 305/1 *et seq.* This reasoning should, accordingly, be rejected.

Defendants' preemption argument fails for a second reason. Symphony's contention that any claim alleging "negligence" (of whatever kind) is "accidental" under the Workers' Compensation Act is erroneous. As *Pathfinder* notes, the term "accidental" "is not a technical legal term but encompasses anything that happens without design or an event which is unforeseen by the person to whom it happens." 62 Ill. 2d at 563 (quotations omitted). In contrast, "[t]he exclusivity provisions will not bar a common law cause of action against an employer, however, for injuries which the employer or its alter ego intentionally inflicts upon an employee or which were commanded or expressly authorized by the employer." *Meerbrey v. Marshall Field & Co., Inc.*, 139 Ill. 2d 455, 464 (1990). The injury here, invasion of McDonald's biometric privacy rights, was not accidental, even though her claims currently allege only a negligent violation of the Act. Whether or not Defendants negligently violated the statute, *see* 740 ILCS 14/20, is different from whether or not their conduct was accidental. Plainly the decision to require employees to clock in and out with a fingerprint scanner was not an accident under the Workers' Compensation Act; that was an occurrence that resulted from the purposeful

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 5:55 PM    2017CH11311

"design" of Symphony's time-keeping system. Moreover, although McDonald's claim arises from Symphony's failure to provide statutorily mandated notice to McDonald, which itself prevented McDonald from knowing how her biometric data was being stored and violated her statutory rights, that does not mean her injury "occur[ed] unexpectedly" and so is covered by the Workers' Compensation Act. *See Lannom v. Kosco*, 158 Ill. 2d 535, 541 (1994). McDonald was required by Defendants to use the fingerprint time clock. Her injury was caused by deliberate action on Defendants' part. The Workers' Compensation Act therefore does not provide her exclusive route to recovery.

Finally, it is clear that the legislature did not believe or intend that BIPA claims would be pre-empted by the Workers' Compensation Act. BIPA explicitly defines the pre-collection "written release" required by the Act to include "a release executed by an employee as a condition of employment." 740 ILCS 14/10. Thus, the legislature was aware that BIPA claims could arise in the employment context; yet it treated them identically to non-employee claims except as to permissible methods of obtaining consent, suggesting that it did not intend the kind of differential treatment Defendants advocate for. *See People ex rel. Cmty. High Sch. Dist. # 231 v. Hupe*, 2 Ill. 2d 434, 448 (1954) ("Courts must construe the acts in such a way as to reflect the obvious intent of the legislature and to permit practical application of the statutes."). What's more, while the Workers' Compensation Act covers workplace injuries as a general matter, the BIPA is a far narrower provision protecting a specific type of privacy right. To the extent the laws conflict, then, as by mandating differing compensation schemes, the narrower BIPA should be construed to control over the more general WCA. *See, e.g.*, *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002) ("Where there exists a general statutory provision and a specific statutory provision … the specific provision controls and should be applied."). Likewise,

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 5:55 PM   2017CH11311

the BIPA postdates the WCA. "Generally when two statutes are in conflict, the more specific should take precedence over the more general and the more recently enacted statute should be applied over the earlier enacted statute." *In re Jarquan B.*, 2016 IL App (1st) 161180, ¶ 23. To the extent the statutory compensation schemes both apply, and therefore conflict, the later enacted BIPA, and its right of action, therefore controls.

In sum, the McDonald's injuries are not compensable under the WCA, so the WCA's exclusivity provisions are inapplicable. To the extent there *is* a conflict, established canons dictate application of the BIPA in this circumstance.

## CONCLUSION

The motion to dismiss under section 2-619 should be denied.

Dated: April 11, 2019     Respectfully submitted,

**MARQUITA MCDONALD**, individually and on behalf of class of similarly situated individuals,

By: /s/ J. Eli Wade-Scott
   One of Plaintiff's attorneys

Benjamin H. Richman
brichman@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
EDELSON PC
350 N. LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm ID: 62075

David Fish
dfish@fishlawfirm.com
John Kunze
kunze@fishlawfirm.com
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

Tel: 630.355.7590
Fax: 630.778.0400
Firm ID: 44086

FILED DATE: 4/11/2019 5:55 PM   2017CH11311

15

C70

FILED DATE: 4/11/2019 5:55 PM   2017CH11311

## <u>CERTIFICATE OF SERVICE</u>

 I, J. Eli Wade-Scott, an attorney, hereby certify that on April 11, 2019, I served the above and foregoing document by causing a true and accurate copy of the same to be filed and transmitted to all counsel of record via the Court's electronic filing system and further, by transmitting the same to the persons below via electronic mail.

Richard P. McCardle
rmcardle@seyfarth.com
Joseph A. Donado
jdonado@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606

        /s/ J. Eli Wade-Scott     

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

Return Date: No return date scheduled
Hearing Date: 4/22/2019 10:15 AM - 10:15 AM
Courtroom Number:
Location:

FILED
4/11/2019 6:03 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2017CH11311

4662504

FILED DATE: 4/11/2019 6:03 PM   2017CH11311

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| MARQUITA MCDONALD, individually and on behalf of all others similarly situated, | Case No. 2017-CH-11311 |
| *Plaintiff*, | Calendar 2 |
| v. | Judge Raymond Mitchell |
| SYMPHONY HEALTHCARE LLC, an Illinois limited liability company, and SYMPHONY BRONZEVILLE PARK LLC, an Illinois limited liability company, | |
| *Defendants*. | |

### PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

Plaintiff Marquita McDonald respectfully moves the Court for leave to file a First Amended Complaint *instanter*, attached hereto as Exhibit 1. In support thereof, Plaintiff states:

1.    Plaintiff filed this case on August 17, 2017.

2.    In the original complaint, Plaintiff alleged that Defendants Symphony Healthcare LLC and Symphony Bronzeville Park LLC collected her fingerprints and/or biometric information without complying with the requirements of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.*

3.    Defendants filed two motions to dismiss under 735 ILCS 2-615 and 735 ILCS 5/2-619. Ruling on the motions was stayed pending the Illinois Supreme Court's decision in *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186. After the Supreme Court's decision, Defendants have renewed those motions in slightly different forms.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 6:03 PM   2017CH11311

4.      In the renewed 2-615 motion, Defendants argue that (1) Plaintiff had failed to state a claim for negligence, and (2) Plaintiff had failed to allege sufficient facts against Symphony Healthcare LLC to establish its liability under BIPA.

5.      Plaintiff now seeks to amend her Complaint.

6.      First, the amended complaint removes Symphony Healthcare LLC and names two related entities: Symcare Healthcare LLC and Symcare HMG LLC. The entities' relationship is detailed in the amended complaint.

7.      Second, Plaintiff withdraws the negligence claim in the amended complaint.

8.      Finally, Plaintiff removed the allegations of mental anguish, because they are unnecessary to her recovery on her BIPA claim.

9.      Amendments in Illinois are governed by statute, which provides that "amendments may be allowed on just and reasonable terms" at "any time before final judgment." 735 ILCS 5/2-616(a). The statute "favor[s] the liberal allowance of amendments[,]" *McDonald v. Cook Cty. Officers Electoral Bd.*, 2018 IL App (1st) 180406, ¶ 22, and "any doubt as to whether a plaintiff should be granted leave to file an amended complaint should be decided in favor of allowance of the amendment[,]" *Hanmi Bank v. Chuhak & Tecson, P.C.*, 2018 IL App (1st) 180089, ¶ 21 (quoting *Mitchell v. Norman James Const. Co.*, 291 Ill. App. 3d 927, 939 (1st Dist. 1997)). Courts consider the following factors in deciding whether to allow amendment:

(1) whether the proposed amendment would cure the defective pleading;
(2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment;
(3) whether the proposed amendment is timely; and
(4) whether previous opportunities to amend the pleading could be identified.

*Loyola Acad. v. S & S Roof Maint., Inc.*, 146 Ill. 2d 263, 273 (1992). All of the factors need not be met; they are simply guidelines for the Court's ultimate charge: to determine "whether the

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 6:03 PM   2017CH11311

amendment would further the ends of justice[.]" *Hiatt v. Illinois Tool Works*, 2018 IL App (2d) 170554, ¶ 38.

10.    Plaintiff should be allowed to amend her complaint for the first time at this stage of the case. No motions to dismiss have been ruled upon, and the amendment substantially streamlines the issues to be decided on the 2-615 motion. This amendment will not disrupt briefing on the 2-619 motion, as it has no material effect on the legal arguments raised in that motion.

11.    Nor are Defendants prejudiced. Both Symcare entities were, no doubt, fully aware of the allegations in the lawsuit. Symcare Healthcare LLC is the near-complete owner of Defendant Symphony Bronzeville LLC, and Symcare HMG LLC is its manager.

WHEREFORE, Plaintiff respectfully requests that this Court grant her leave to file her First Amended Complaint *instanter*, and grant any further relief as may be appropriate and just.


Dated: April 11, 2019                           Respectfully submitted,

                                                **MARQUITA MCDONALD**, individually and on
                                                behalf of class of similarly situated individuals,

                                                By: /s/ J. Eli Wade-Scott
                                                One of Plaintiff's attorneys

                                                Benjamin H. Richman
                                                brichman@edelson.com
                                                J. Eli Wade-Scott
                                                ewadescott@edelson.com
                                                EDELSON PC
                                                350 N. LaSalle Street, 14th Floor
                                                Chicago, Illinois 60654
                                                Tel: 312.589.6370
                                                Fax: 312.589.6378
                                                Firm ID: 62075

                                                David Fish
                                                dfish@fishlawfirm.com
                                                John Kunze

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 6:03 PM   2017CH11311

kunze@fishlawfirm.com
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
Fax: 630.778.0400
Firm ID: 44086

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 6:03 PM   2017CH11311

# CERTIFICATE OF SERVICE

I, J. Eli Wade-Scott, an attorney, hereby certify that on April 11, 2019, I served the above and foregoing document by causing a true and accurate copy of the same to be filed and transmitted to all counsel of record via the Court's electronic filing system and further, by transmitting the same to the persons below via electronic mail.

Richard P. McCardle
rmcardle@seyfarth.com
Joseph A. Donado
jdonado@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606

/s/ J. Eli Wade-Scott

Return Date: No return date scheduled
Hearing Date: 4/22/2019 10:15 AM - 10:15 AM
Courtroom Number:
Location:

FILED
4/11/2019 6:03 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2017CH11311

4662504

FILED DATE: 4/11/2019 6:03 PM   2017CH11311

# Exhibit 1

FILED DATE: 4/11/2019 6:03 PM   2017CH11311

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| MARQUITA MCDONALD, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>SYMPHONY BRONZEVILLE PARK LLC, an Illinois limited liability company, SYMCARE HEALTHCARE LLC, an Illinois limited liability company, and SYMCARE HMG LLC, an Illinois limited liability company,<br><br>*Defendants.* | Case No.: 2017-CH-11311<br><br>Calendar 2<br><br>Judge Raymond Mitchell |

## FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Marquita McDonald brings this Class Action Complaint and Demand for Jury Trial against Defendants Symphony Bronzeville Park LLC, Symcare Healthcare LLC, and Symcare HMG LLC (collectively, "Symphony" or "Defendants") to put a stop to their unlawful collection, use, and storage of Plaintiff's and the proposed Class's sensitive biometric data. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1.     Defendant Symcare Healthcare LLC owns a network of post-acute care facilities with over twenty locations throughout the State of Illinois, including Defendant Symphony Bronzeville Park LLC's location. Symphony's facilities provide patients with a variety of services, from rehabilitative to palliative care, typically after they have undergone major medical procedures. To provide such care, Symphony facilities employees a variety of individuals.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 6:03 PM   2017CH11311

2.  When employees first begin their jobs at Symphony (at the Bronzeville Park location and others), they are required to scan their fingerprint in its time clocks. That's because Symphony uses a biometric time tracking system that requires employees to use their fingerprint as a means of authentication, instead of key fobs or identification cards.

3.  While there are tremendous benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards—which can be changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes employees to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking.

4.  Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

5.  Despite this law, Symphony disregards its employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, Symphony has violated (and continues to violate) the BIPA because it did not (and continues not to):

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by the BIPA; nor

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their fingerprints, as required by the BIPA.

6.  Accordingly, this Complaint seeks an Order: (i) declaring that Defendants'

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 6:03 PM   2017CH11311

conduct violates BIPA; (ii) requiring Defendants to cease the unlawful activities discussed herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

**PARTIES**

7.      Plaintiff Marquita McDonald is a natural person and citizen of the State of Illinois.

8.      Defendant Symphony Bronzeville Park LLC is a limited liability company existing under the laws of the State of Illinois. Symphony Bronzeville Park LLC is registered to conduct business with the Illinois Secretary of State (File No. 05213223). Symphony Bronzeville Park LLC conducts business in Cook County.

9.      Defendant Symcare Healthcare LLC is a limited liability company existing under the laws of the State of Illinois. Symcare Healthcare LLC is registered to conduct business with the Illinois Secretary of State (File No. 05213223). Symcare Healthcare LLC owns 99.9% of Defendant Symphony Bronzeville Park LLC. Symcare Healthcare LLC conducts business in Cook County.

10.      Defendant Symcare HMG LLC is a limited liability company existing under the laws of the State of Illinois. Symcare HMG LLC is registered to conduct business with the Illinois Secretary of State (File No. 05213339). Symcare HMG LLC is the sole manager of Defendant Symphony Bronzeville Park LLC registered with the Illinois Secretary of State. Symcare HMG LLC conducts business in Cook County.

**JURISDICTION AND VENUE**

11.      This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 because they conduct business transactions in Illinois, have committed tortious acts in Illinois, are registered to conduct business in Illinois, and are headquartered in Illinois.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 6:03 PM   2017CH11311

12. Venue is proper in Cook County because Defendants conduct business transactions in Cook County. Venue is additionally proper because the transaction giving rise to this cause of action occurred in Cook County.

## FACTUAL BACKGROUND

### I. The Biometric Information Privacy Act.

13. In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

14. In late 2007, a biometrics company called Pay by Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data— could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

15. Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information", Illinois enacted the BIPA in 2008. *See* Illinois

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 6:03 PM    2017CH11311

House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

16.    The BIPA is an informed consent statute which achieves its goal by making it

unlawful for a company to, among other things, "collect, capture, purchase, receive through

trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric

information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric
> information is being collected or stored;

> (2) informs the subject . . . in writing of the specific purpose and length of term
> for which a biometric identifier or biometric information is being collected,
> stored, and used; and

> (3) receives a written release executed by the subject of the biometric identifier or
> biometric information."

740 ILCS 14/15(b).

17.    BIPA specifically applies to employees who work in the State of Illinois. BIPA

defines a "written release" specifically "in the context of employment [as] a release executed by

an employee as a condition of employment." 740 ILCS 14/10.

18.    Biometric identifiers include retina and iris scans, voiceprints, scans of hand and

face geometry, and—most importantly here—fingerprints. *See* 740 ILCS 14/10. Biometric

information is separately defined to include any information based on an individual's biometric

identifier that is used to identify an individual. *See id*.

19.    The BIPA also establishes standards for how employers must handle Illinois

employees' biometric identifiers and biometric information. *See*, *e.g.*, 740 ILCS 14/15(c)–(d).

For instance, the BIPA requires companies to develop and comply with a written policy—made

available to the public—establishing a retention schedule and guidelines for permanently

destroying biometric identifiers and biometric information when the initial purpose for collecting

FILED DATE: 4/11/2019 6:03 PM   2017CH11311

such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

20.     Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must put in place certain reasonable safeguards.

## II.     Defendants Violate the Biometric Information Privacy Act.

21.     By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

22.     Unfortunately, Defendants failed to address these concerns. Defendants continue to collect, store, and use their employees' biometric data in violation of the BIPA.

23.     Specifically, when employees first begin work at Symphony, they are required to have their fingerprint scanned in order to enroll them in Symphony's fingerprint database.

24.     Symphony uses an employee time tracking system that requires employees to use their fingerprint as a means of authentication. Unlike a traditional time clock, employees have to use their fingerprints to "punch" in to or out of work.

25.     Unfortunately, Symphony fails to inform its employees the extent of the purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 6:03 PM  2017CH11311

26.  Symphony similarly fails to provide its employees with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. An employee who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Symphony's databases—or if they ever will be.

27.  The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Symphony's—where employees are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reasons they are doing so—is so dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing a critical point: it is crucial for people to understand when providing biometric identifiers who exactly is collecting their biometric data, where it will be transmitted to, for what purposes, and for how long. But Symphony disregards these obligations, and instead unlawfully collects, stores, and uses its employees' biometric identifiers and information.

28.  Ultimately, Symphony disregards its employees' statutorily protected privacy rights by violating BIPA.

### III.  Plaintiff McDonald's Experience.

29.  Plaintiff McDonald worked for Defendants' Symphony of Bronzeville facility from December 2016 to February 2017.

30.  As a new employee, Plaintiff was required to scan her fingerprint so that Symphony could use it as an authentication method to track her time.

31.  Symphony subsequently stored McDonald's fingerprint data in its databases.

32.  Each time McDonald began and ended her workday she was required to scan her

C84

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 6:03 PM    2017CH11311

fingerprint.

33.    McDonald has never been informed of the specific limited purposes or length of

time for which Symphony collected, stored, or used her fingerprints.

34.    McDonald has never been informed of any biometric data retention policy

developed by Symphony, nor has she ever been informed of whether Symphony will ever

permanently delete her fingerprints.

35.    McDonald has never been provided with nor ever signed a written release

allowing Symphony to collect or store her fingerprints.

36.    McDonald has continuously and repeatedly been exposed to the risks and harmful

conditions created by Symphony's violations of the BIPA alleged herein.

37.    McDonald seeks liquidated damages under BIPA as compensation for the injuries

Symphony has caused.

## CLASS ALLEGATIONS

38.    **Class Definition**: Plaintiff McDonald brings this action pursuant to 735 ILCS

5/2-801 on behalf of herself and a class of similarly situated individuals, defined as follows:

> All residents of the State of Illinois who had their fingerprints collected, captured,
> received, otherwise obtained, or disclosed by Defendants while residing in Illinois.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over

this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents,

successors, predecessors, and any entity in which the Defendants or their parents have a

controlling interest and its current or former employees, officers and directors; (3) persons who

properly execute and file a timely request for exclusion from the Class; (4) persons whose claims

in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's

counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of

FILED DATE: 4/11/2019 6:03 PM   2017CH11311

any such excluded persons.

39.   **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendants have collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of employees who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendants' records.

40.   **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a)   whether Symphony collected, captured, or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

   b)   whether Symphony properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

   c)   whether Defendants obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class's biometric identifiers or biometric information;

   d)   whether Defendants have disclosed or re-disclosed Plaintiff's and the Class's biometric identifiers or biometric information to any third parties;

   e)   whether Defendants have sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

   f)   whether Defendants developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

   g)   whether Defendants comply with any such written policy (if one exists);

   h)   whether Defendants used Plaintiff's and the Class's fingerprints to identify

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 6:03 PM   2017CH11311

them; and

i)   whether Defendants' violations of the BIPA were committed negligently.

41.   **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

42.   **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 6:03 PM   2017CH11311

## CAUSE OF ACTION
### Violation of 740 ILCS 14/1, *et seq.*
### (On Behalf of Plaintiff and the Class)

43.      Plaintiff incorporates the foregoing allegations as if fully set forth herein.

44.      The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…." 740 ILCS 14/15(b) (emphasis added).

45.      The BIPA also prohibits private entities from disclosing a person's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

46.      The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (i.e., when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

47.      Unfortunately, Defendants fail to comply with these BIPA mandates.

48.      Defendants are limited liability companies and, therefore, each qualify as a

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 6:03 PM  2017CH11311

"private entity" under the BIPA. *See* 740 ILCS 14/10.

49.     Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Defendants (in the form of their fingerprints), as explained in detail in Sections II–III. *See* 740 ILCS 14/10.

50.     Plaintiff's and the Class's biometric identifiers were used to identify them, and therefore constitute "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

51.     Defendants violated 740 ILCS 14/15(b)(3) by negligently failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

52.     Defendants violated 740 ILCS 14/15(b)(1) by negligently failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

53.     Defendants violated 740 ILCS 14/15(b)(2) by negligently failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

54.     Defendants violated 740 ILCS 14/15(a) by negligently failing to publicly provide a retention schedule or guideline for permanently destroying its customers' biometric identifiers and biometric information.

55.     By negligently collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendants violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq*.

56.     On behalf of herself and the Class, Plaintiff seeks: (1) injunctive and equitable

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 6:03 PM   2017CH11311

relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages of $1,000 per violation for each of Defendants' negligent violations of the BIPA pursuant to 740 ILCS 14/20(1); and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff McDonald, on behalf of herself and the Class, respectfully requests that this Court enter an Order:

A.      Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff McDonald as representative of the Class, and appointing her counsel as Class Counsel;

B.      Declaring that Defendants' actions, as set out above, violate the BIPA;

C.      Awarding statutory damages of $1,000 for each of Defendants' violations of the BIPA, pursuant to 740 ILCS 14/20(1);

D.      Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendants to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

E.      Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G.      Awarding such other and further relief as equity and justice may require.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 4/11/2019 6:03 PM   2017CH11311

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

**MARQUITA MCDONALD**, individually and on behalf of all others similarly situated,

Dated: April 11, 2019

By: /s/ J. Eli Wade-Scott
    One of Plaintiff's Attorneys

Benjamin H. Richman
brichman@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm ID: 62075

David Fish
dfish@fishlawfirm.com
John Kunze
kunze@fishlawfirm.com
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
Fax: 630.778.0400
Firm ID: 44086

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

Marquita McDonald,

        Plaintiff,

    v.

Symphony HealthCare LLC, and
Symphony Bronzeville Park LLC,

        Defendant.

Case No. 2017 CH 11311

Calendar 2
Courtroom 2601

Judge Raymond W. Mitchell

## ORDER

    This case is before the Court on Plaintiff's motion for leave to file first
amended class action complaint. Plaintiff's motion is GRANTED. The briefing
schedule entered on Defendants' motion to dismiss stands. The ruling date of May
24, 2019, at 10:00 a.m. stands.

Judge Raymond W. Mitchell

ENTERED,      APR 1 9 2019

Circuit Court – 1992

Judge Raymond W. Mitchell, No. 1992

A93

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
5/9/2019 11:28 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2017CH11311

5002420

**Firm ID No. 90747**

FILED DATE: 5/9/2019 11:28 PM 2017CH11311

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

MARQUITA McDONALD, individually and
on behalf of all other similarly situated,

               Plaintiff,

v.

SYMPHONY BRONZEVILLE PARK LLC,
SYMCARE HEALTHCARE LLC, and
SYMCARE HMG LLC.

               Defendants.

Case No. 2017-CH-11311

Calendar:  02

Honorable Raymond Mitchell

---

### DEFENDANT SYMPHONY BRONZEVILLE PARK LLC'S REPLY IN FURTHER
### SUPPORT OF ITS RENEWED AND AMENDED
### SECTION 2-619 MOTION TO DISMISS

---

DATED:  May 9, 2019

Respectfully submitted,

SEYFARTH SHAW LLP


By:  /s/ Joseph A. Donado

Richard P. McArdle (rmcardle@seyfarth.com)
Joseph A. Donado (jdonado@seyfarth.com)
SEYFARTH SHAW LLP
233 South Wacker Drive; Suite 8000
Chicago, Illinois 60606
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

***Attorneys for Defendant Symphony Bronzeville
Park LLC***

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 5/9/2019 11:28 PM   2017CH11311

The core question before the Court is whether Plaintiff Marquita McDonald can represent a class of plaintiffs that doubtless will seek a mountain of liquidated damages against Defendant Symphony Bronzeville Park, LLC ("Bronzeville"),[1] even though she cannot identify an actual or threatened injury stemming from Bronzeville's alleged violation of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* Not surprisingly, Illinois law does not allow a plaintiff to seek redress without an actual or threatened injury, but rather demands as a fundamental requirement of "every cause of action," that a plaintiff must have suffered, or be at an imminent risk of suffering, a "distinct and palpable" "injury in fact." *P & S Grain, LLC v. Cty. of Williamson*, 399 Ill. App. 3d 836, 842 (5th Dist. 2010). This is an important limiting principle distinct from the issue of whether McDonald can state a claim under BIPA, for if Illinois common law did not recognize lack of standing as an affirmative defense, then Bronzeville (and employers around the state) would face massive—and likely ruinous—exposure even though McDonald and her purported class have not suffered actual harm and are not alleged to be at imminent risk of suffering harm. That McDonald has not suffered an "injury in fact" or "actual harm" negates her case, *see Schacht v. Brown*, 2015 IL App (1st) 133035, ¶14 (if a plaintiff has not presented a "distinct and palpable injury," then "[d]ismissal is mandated" because "such a deficiency negates the very cause of action"), and her Complaint should be dismissed for want of common-law standing.

And even assuming that McDonald had suffered an injury—like the "mental anguish" and "mental injury" she alleges in her Complaint (*see* Compl. at ¶¶35, 36, 63)—then that injury would have occurred within the workplace and in connection with her employment, such that the Illinois Workers' Compensation Act would provide her exclusive right of recovery. Thus, regardless of whether

---

[1] The Complaint originally named Symphony Healthcare, LLC as a Defendant. But in light of Symphony Healthcare, LLC's renewed motion to dismiss under Section 2-615, McDonald sought and received leave to amend her complaint to substitute two new Defendants, Symcare Healthcare, LLC and Symcare HMG, LLC.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 5/9/2019 11:28 PM   2017CH11311

McDonald has suffered an actual injury or not, her Complaint cannot proceed because she either lacks

an injury in fact (warranting dismissal under common-law standing principles) or else has suffered an

injury in the workplace (warranting dismissal based on Workers' Compensation preemption).

## ARGUMENT

I.   **Because McDonald Has Not Alleged a "Distinct and Palpable" Injury, Her Claim Must Be Dismissed for Want of Common-Law Standing**.

McDonald's response brief wholly ignores a key underpinning of Bronzeville's motion to

dismiss: that statutory standing and common-law standing are two different concepts.[2]  As Bronzeville

set forth in its motion, there is a critical distinction between "common-law standing, which requires

an injury in fact to a legally recognized interest" and "statutory standing, which requires the fulfillment

of statutory conditions in order to sue for legislatively created relief."  *See People v. Coe*, 2018 IL App

(4th) 170359, ¶43.  And even if a plaintiff meets statutory standing requirements, that does not

necessarily mean that she also meets common-law standing requirements.  *See, e.g., People v. $1,124,905*

*U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 331 (1997) (noting that "[i]n Illinois,

standing is part of the common law" and applying common law standing analysis to statutory claim);

*see also Lutkauskas v. Ricker*, 2015 IL 117090, ¶31 ("a plaintiff can sustain a cause of action only where

he or she has suffered some injury to a legal right, harm caused by the defendant's conduct is an

essential element of every cause of action.  As a consequence, an allegation that the plaintiff has

suffered an injury resulting from the defendant's action is both a pleading requirement and a

prerequisite of standing").  McDonald does not address the body of authority in her response.

---

[2] Defendants have appreciated this distinction all along.  In their original Section 2-619 motion to dismiss, Defendants raised two distinct standing arguments.  (Defs.' Section 2-619 Reply at 1 (asserting that "McDonald lacks standing in two separate, and independently dispositive, respects: [1] she lacks standing under Illinois common law, which requires a 'distinct **and palpable**' 'injury in fact' as an essential element of **every** cause of action, and [2] she lacks standing under the plain language of the BIPA statute, which requires a plaintiff to be 'aggrieved by [a] violation' of BIPA as a prerequisite to bringing suit." (emphasis in original).)

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 5/9/2019 11:28 PM   2017CH11311

Instead, throughout her brief, McDonald consistently blurs the distinction between statutory standing and common-law standing. Take note of how McDonald frames the standing issue. She contends variously [1] that "there is no longer any debate the [she] has a cause of action under the statute" (Pl.'s Resp. at 5) and [2] that when a "plaintiff alleges a violation of a [statutory] right * * * no more is required for standing" (*id.* at 6), and [3] she references that what is required "to bring a claim under BIPA" (*id.* at 7). From these contentions, McDonald concludes that she "clearly has standing to sue." (*Id.* at 6) In doing so, McDonald conflates the issues. Her contentions relate to "the fulfillment of statutory conditions in order to sue for legislatively created relief"—*i.e.*, what a plaintiff needs to allege in order to state a claim under BIPA—not with what constitutes a "distinct and palpable" "injury in fact to a legally recognized interest"—*i.e.*, what a plaintiff must have suffered in order to withstand a common-law standing defense. *See Coe*, 2018 IL App (4th) 170359 at ¶43.

And contrary to what McDonald suggests, nothing in *Rosenbach* purports to eliminate the distinction between statutory standing and common law standing. (*Cf.* Pl.'s Resp. at 7 (contending that "[t]here is [] no meaningful distinction between 'statutory' and 'common law' standing)) As Bronzeville explained, the Supreme Court dealt only with the certified questions before it, which pertained only to what it takes to state a claim under section 20 of BIPA, *Rosenbach v. Six Flags Entm't Corp.*, 2017 IL App (2d) 170317, ¶15, *appeal allowed*, 98 N.E.3d 36, *and rev'd*, 2019 IL 123186, ¶40, and not what it means to have standing under Illinois common law. Therefore, because common-law standing is an affirmative defense, *see Greer v. Illinois Hous. Dev. Auth.*, 122 Ill. 2d 462, 494 (1988), that was not at issue in the certified questions before the Court, it was not an issue considered by the Court. *See Long v. Elborno*, 397 Ill. App. 3d 982, 988 (1st Dist. 2010) (under Rule 308 "our examination is strictly limited to the certified question presented to the court."); *Spears v. Ass'n of Illinois Elec. Co-op.*, 2013 IL App (4th) 120289, ¶15 (same); *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill.2d 460, 469 (1998) (noting that a court should only answer a certified question if it asks a question of law and decline to answer

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 5/9/2019 11:28 PM   2017CH11311

where the ultimate disposition "will depend on the resolution of a host of factual predicates"). In fact, the Illinois Supreme Court did not mention the phrase "distinct and palpable" anywhere in its opinion. *Rosenbach*, 2019 IL 123186 at ¶¶1-43. As a result, the Illinois Supreme Court's recent interpretation of BIPA's statutory language does not pertain to the common-law standing principles that inhere in "every cause of action," *P & S Grain*, 399 Ill. App. 3d at 842, and McDonald is simply wrong to suggest otherwise.

A. **In the Data-Retention Context, There Must Be a Showing that There Is An Imminent Risk of Some Harm.**

In the data-retention context in particular, courts have held that the ***risk of*** identity theft, even where personal-identifying information has been compromised or stolen, is insufficient in itself to give rise to standing. For example, under the Personal Information Protection Act ("PIPA"), 815 ILCS § 530/1—which, like BIPA, pertains to "[u]nique biometric data generated from measurements * * * such as a fingerprint, retina or iris image, or other unique physical representation or digital representation of biometric data," 815 ILCS § 530/5—it has been held that an increased risk of identity theft is insufficient to give rise to a "distinct and palpable" injury-in-fact. *See Maglio*, 2015 IL App (2d) 140782 at ¶¶9, 30. And to a similar effect, the First District likewise has recognized that a claim based upon the improper disclosure of personal data under PIPA cannot proceed where the alleged injury is merely the increased risk of future identity theft. *See Cooney v. Chicago Pub. Sch.*, 407 Ill. App. 3d 358, 365–66 (1st Dist. 2010). McDonald does not address this authority, or even attempt to explain why cases interpreting what constitutes an "injury" in the data-retention context and under a statute that covers "biometric data" do not control the outcome here.[3] Thus, with respect to the type of injury that McDonald alleges here, she must allege that she has suffered some actual harm (or the

---

[3] These cases are not outliers. As Bronzeville set forth in its motion, courts from around the country have similarly so held in the data-retention context. (*See* Def.'s Motion at 9-11) McDonald does not address these cases either.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 5/9/2019 11:28 PM   2017CH11311

imminent risk of actual harm) from the improper use of her information, or else she does not have an injury-in-fact under Illinois common law. *Maglio*, 2015 IL App (2d) 140782 at ¶¶25-29 (the "fact that two plaintiffs to date (out of those 4 million) have received notification of fraudulent activity, *i.e.*, have suffered actual injury arising from Advocate's alleged wrongful acts, does not show that plaintiffs here face imminent, certainly impending, or a substantial risk of harm as a result of the burglary, where no such activity has occurred with respect to their personal data." (parentheses in original)).

But McDonald does ***not*** make such allegations. She does not allege that her "biometric information" has been actually hacked, compromised, or otherwise improperly disclosed, or that there is some imminent risk that those things are about to happen. She also does ***not*** allege that her "biometric information" has been used in a way that has actually resulted in some sort of pecuniary or otherwise palpable harm. Rather, McDonald alleges only that she has suffered "mental anguish and injury" "when thinking about what ***would happen*** to her biometric data ***if*** Symphony went bankrupt, whether Symphony will ever delete her biometric information, and whether (and to whom) Symphony shares her biometric information." (Compl. at ¶¶35, 36 (emphasis added).) These allegations are insufficient as a matter of law, and her Complaint should be dismissed.

McDonald's reliance on a recent FACTA case does not counsel a different result. (*See* Pl.'s Resp. at 5-7 (citing *Duncan v. FedEx Office & Print Servs., Inc.*, 2019 IL App (1st) 180857, ¶25)) For starters, McDonald overreads the holding of that case.[4] While it is true that the court there said that

---

[4] In addition, the FACTA provision at issue in *Duncan* is inapposite because it does not deal with [1] biometric information or [2] data retention or [3] a statutory provision requiring informed consent, but rather prohibits the disclosure of certain credit card information. *See Duncan*, 2019 IL App (1st) 180857 at ¶¶5-6. Accordingly, Bronzeville respectfully submits that its cited authority, which addresses a statute that protects biometric information (alongside other types of information) and data retention should guide the Court's analysis. And to the extent that the Court takes *Duncan* into account, Bronzeville will note parenthetically that another panel of the First District addressed standing under FACTA issued a diametrically opposed ruling. *See Paci v. Costco Wholesale Corp.*, 2018 IL App (1st) 180164-U, ¶2. While that opinion was unpublished, Bronzeville respectfully submits that that case reflects "there is substantial ground for difference of opinion," such "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Ill. Sup. Ct. R. 308(a); *see also* Ill. Sup. Ct. R. 23 (noting, among other things, that an appellate panel may issue an

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 5/9/2019 11:28 PM 2017CH11311

"under Illinois law, when a plaintiff alleges a statutory violation, no 'additional requirements' are needed for standing," *Duncan*, 2019 IL App (1st) 180857 at ¶23, that statement must be read in context. *See Zenith Radio Corp. v. United States*, 437 U.S. 443, 462 (1978) (noting a centuries-old "maxim, not to be disregarded, that general expressions, in every [judicial] opinion, are to be taken in connection with the case in which those expressions are used") (internal quotation omitted); *Gen. Ins. Co. of Am. v. Clark Mall Corp.*, No. 08 C 2787, 2010 WL 2901788, at *2 (N.D. Ill. July 26, 2010) ("judicial opinions must not be confused with statutes, and general expressions must be read in context, not surgically excised from their broader setting") (citing authority); *Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005) ("Judges expect their pronunciamentos to be read in context"); *Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1026 (7th Cir. 2006) ("it is a disservice to judges and a misunderstanding of the judicial process to wrench general language in an opinion out of context."). The quote that McDonald cherry-picked from *Duncan* refers to a distinction between Illinois and federal standing principles—*i.e.*, whether a state court plaintiff must establish that she falls within a statute's "zone of interest" before having standing—that simply is not at issue here. *Duncan*, 2019 IL App (1st) 180857 at ¶23. In other words, the *Duncan* court was not purporting to proclaim a categorical rule that a plaintiff automatically has standing to sue for **any** statutory violation no matter how technical.[5] And we know that *Duncan* cannot be read as establishing a categorical rule because such a reading would conflict with Illinois Supreme Court precedent that requires a "distinct and palpable" injury in order to have standing to pursue a statutory claim. *See $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d at 331 (noting that "[i]n Illinois, standing is part of the common law" and applying common law standing analysis to statutory claim).

---

unpublished disposition if it "unanimously determines" that "the disposition is clearly controlled by case law precedent, statute, or rules of court").

[5] Of course, **some** statutory violations would give rise to a "distinct and palpable" injury, but not **all** statutory violations do. The point of the lack-of-standing defense under Illinois common law is to provide a jurisprudential principle that separates the two.

-6-

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 5/9/2019 11:28 PM   2017CH11311

This is not to say that a plaintiff does not have access to an appropriate remedy before a breach occurs, which is what McDonald misleadingly suggests. (*See* Pl.'s Resp. at 7)  Rather, as Bronzeville previously explained, a plaintiff who alleges a bare violation of BIPA is entitled to pursue a private right of action. *Rosenbach*, 2019 IL 123186 (2019) at ¶15.  But if a defendant asserts lack of standing as an affirmative defense, then the question becomes whether the plaintiff has suffered a "distinct and palpable injury," which means that a plaintiff's BIPA claim can proceed only if she has suffered actual harm or there is an imminent risk that an actual harm will occur.  *See generally Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693 (7th Cir. 2015) (finding that plaintiff suffered an injury in fact where 9,200 cases of identity theft had occurred as result of a data breach that compromised approximately 350,000 credit card numbers); *cf. Maglio*, 2015 IL App (2d) 140782 at ¶¶3, 24 (where data breach involved information relating to four million people, plaintiff lacked a "distinct and palpable" injury in fact where only two of those people allegedly suffered identify theft); *Beck v. McDonald*, 848 F.3d 262, 275-76 (4th Cir. 2017) (no injury in fact where compromised data included unencrypted personal information of approximately 7,400 patients, including names, birth dates, the last four digits of social security numbers, and physical descriptors such as age, race, gender, height, and weight).  Then, if a plaintiff has standing as a matter of common law, a plaintiff who is at risk of an imminent harm could recover injunctive or declaratory relief (and reasonable attorneys' fees, if she prevails); or, if the plaintiff has already suffered an actual harm, she could seek actual damages or liquidated damages under the statute.  This approach is consistent with *Rosenbach*, the Illinois common law of standing, and the statutory text.[6]  Not only is this approach faithful to the law but it is also faithful to common

---

[6] In addition, Bronzeville will note parenthetically that to the extent McDonald is contending that Bronzeville's position is that "plaintiffs can never challenge a private entity's data-security practices in court" (Pl.'s Resp. at 7-8), the contention is utterly mistaken.  For a broader discussion of Bronzeville's position in this regard, Bronzeville respectfully directs the Court to Argument Section I.D in its Section 2-619 motion and Argument Section I.B below.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 5/9/2019 11:28 PM   2017CH11311

sense because it applies appropriate (and proportional) recourse according to circumstance. McDonald fails to address this approach in her response.

### B. McDonald's Position, If Credited, Would Expose Employers to Massive Liability Even for Hyper-Technical Violations of the Statute.

McDonald does not dispute what Bronzeville posited in its Motion: that she thinks any violation of statute, no matter how trivial or how harmless, would automatically yield bet-the-company damages.

Not surprisingly, such a disproportionate and unfair reading of BIPA runs into several insurmountable obstacles. First, McDonald confuses the distinction between what a plaintiff must allege for statutory standing—*i.e.*, what a plaintiff must allege to get in the courthouse door; here, what it means to be "aggrieved" such as to give rise to a private right of action under BIPA—and what a defendant must prove should it assert a lack of standing defense as a matter of Illinois common law—*i.e.*, that, while aggrieved for purposes of pleading a private right of action, the plaintiff cannot proceed for want of a "distinct and palpable" injury in fact. Second, McDonald ignores a plaintiff's ultimate burden of establishing the right to relief under the statute. Taking a notable example, if plaintiff or the class were able to obtain liquidated damages without any actual harm, then those damages would in effect operate like massive (and likely ruinous) punitive damages, but yet would be imposed only for "negligent" conduct, which also would further contravene the principle that punitive damages cannot be awarded for negligent conduct. *See, e.g., Loitz v. Remington Arms Co.*, 138 Ill. 2d 404, 415 (1990) ("punitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence" (internal quotation omitted)). In sum, McDonald's position runs counter to the law and common sense, and, if that position were credited, then all statutory violations—no matter how technical and harmless—would potentially give rise to bet-the-company damages.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 5/9/2019 11:28 PM    2017CH11311

That cannot possibly be what the Legislature intended. Indeed, the plain text of the statute further sustains Bronzeville's position. BIPA allows for "liquidated," not "punitive," damages. *See Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 538 (7th Cir. 2012) ("liquidated damages are intended to be an estimate of actual damages"). But, to be sure, if a plaintiff class were able to recover a mountain of liquidated damages without any pecuniary or palpable harm, those damages would operate in effect like punitive damages. Bronzeville respectfully submits that the Legislature did not intend to hurl employers across the state into bet-the-company litigation based upon mere negligence, particularly where the class has not suffered an injury in fact, and particularly where such a statutory construction would raise significant constitutional concerns. *See BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996) ("Due Process Clause of the Fourteenth Amendment prohibits a State from imposing a grossly excessive punishment on a tortfeasor"); *see also Lyon v. Dep't of Children & Family Servs.*, 209 Ill. 2d 264, 272 (2004) ("due process [] protects fundamental justice and fairness"). Thus, it is the common law lack-of-standing defense that serves as the jurisprudential limiting principle that disposes of statutory claims where a plaintiff has not suffered a "distinct and palpable" injury.[7]

## C.    Statutes Are Presumed Not To Alter the Common Law.

McDonald's position—that BIPA erases the common-law lack-of-standing defense (Pl.'s Resp. at 7)—contravenes another fundamental principle of law: that statutes must be read as embracing common law principles, not erasing them. *See Rush Univ. Med. Ctr. v. Sessions*, 2012 IL 112906, ¶16 ("Illinois courts have limited all manner of statutes in derogation of the common law to

---

[7] McDonald contends that, for standing purposes, she need only show that she is not presenting a "generalized grievance." (Pl.'s Resp. at 8) But while that contention may speak to whether a plaintiff has suffered a "distinct" injury, it has nothing to do with whether that injury is "palpable." And a plaintiff must have suffered an injury that is both "distinct **and** palpable" injury in order to survive a common-law standing defense. *See Wood River Twp. v. Wood River Twp. Hosp.*, 331 Ill. App. 3d 599, 604 (2002) (emphasis added); *see also Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016) ("Congress' judgment that there should be a legal remedy for the violation of a statute does not mean each statutory violation creates an Article III injury").

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 5/9/2019 11:28 PM   2017CH11311

their express language, in order to effect the least—rather than the most—alteration in the common law"); *Adams v. Northern Illinois Gas Co.*, 211 Ill.2d 32, 69 (2004) (same; collecting cases); *see also Murphy-Hylton v. Lieberman Mgmt. Servs.*, Inc., 2016 IL 120394, ¶29 (courts "cannot construe a statute that is in derogation of the common law beyond what the words of the statute expresses or beyond what is necessarily implied from what is expressed" (internal citation omitted)).

BIPA thus must be read as preserving common-law standing principles.  *See $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d at 328 ("[i]n Illinois, standing is part of the common law").  That is to say, that BIPA claims are subject to the common-law standing principles that apply to "every cause of action," namely, that a plaintiff must have suffered a "distinct and palpable" injury in order to bring suit.  *P & S Grain*, 399 Ill. App. 3d at 842; *Olle v. C House Corp.*, 2012 IL App (1st) 110427, ¶15 (noting "[t]he supreme court has advised that statutes in derogation of common law will not be found to abrogate common-law affirmative defenses, unless it plainly appears that the intent of the statute is to impose strict liability"); *see also Barthel v. Illinois Cent. Gulf R. Co.*, 74 Ill. 2d 213, 220 (1978) (the "rule in Illinois is that statutes in derogation of the common law are to be strictly construed in favor of persons sought to be subjected to their operation.  The courts will read nothing into such statutes by intendment or implication").  In line with common-law standing principles, McDonald's complaint should be dismissed because there is nothing "palpable" about an "injury" that a plaintiff cannot identify without referring to a statute.

## II.     If McDonald Has Suffered an "Injury" from Clocking In and Out of Work, Then Her Claims Would Be Preempted by the Illinois Workers' Compensation Act.

Even assuming that McDonald has pleaded a distinct and palpable injury, her Complaint is nonetheless ripe for dismissal because any injury she obtained during the course of her employment is preempted by the Illinois Workers' Compensation Act.  McDonald squarely alleges that she has suffered "mental anguish and injury" from clocking in and out of work, both in connection with her BIPA claim (Compl. at ¶¶35, 36), and her negligence claim (*id.* at ¶63 ("Defendant's breach of its

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 5/9/2019 11:28 PM   2017CH11311

duties proximately caused and continues to cause Plaintiff mental anguish and mental injury"). It is self-evident that determining whether Bronzeville proximately caused McDonald anguish and mental injury requires proof of an actual injury. *See Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006) ("To state a cause of action for negligence, a complaint must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach").

Having so alleged, McDonald has pleaded herself out of court. *See Pettigrew v. Putterman*, 331 Ill. App. 3d 633, 641 (1st Dist. 2002) (allegations in a complaint constitute admissions). The Workers' Compensation Act is the exclusive remedy for accidental injuries transpiring in the workplace, *see Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455, 462 (1990), such that an employee has "[n]o common law **or statutory right** to recover damages from the employer * * * for injuries incurred in the course of her employment." *Richardson v. Cty. of Cook*, 250 Ill. App. 3d 544, 547 (1st Dist. 1993) (emphasis added); 820 ILCS § 305/5(a) (providing that an employee has "[n]o common law **or statutory right** to recover damages from the employer") (emphasis added). And the policy reasons for that exclusivity are manifest: the workers' compensation system acts as a form of insurance, providing for liability without fault on the part of the employer in return for relief from the prospect of large damage claims. *See Wielgus v. Ryobi Techs., Inc.*, 875 F. Supp. 2d 854, 860 (N.D. Ill. 2012).

To circumvent this exclusivity rule, McDonald must demonstrate that her injury [1] "was not accidental," [2] "did not arise from her employment," [3] "was not received during the course of her employment," or [4] "is not compensable under the Act." *See Nischan v. Stratosphere Quality, LLC,* 865 F.3d 922, 934 (7th Cir. 2017). No exception to exclusivity applies here. "The fact that the employee sustained no physical injury or trauma is irrelevant to the applicability of the Act. Rather, an injury is compensable under the Act if it was sustained during the course of employment and arose from that employment." *See Richardson*, 250 Ill. App. 3d at 548; *Pathfinder Co. v. Industrial Comm'n*, 62 Ill.2d 556,

-11-

FILED DATE: 5/9/2019 11:28 PM   2017CH11311

563 (1992) (employee that has a "psychological injury or harm has suffered an accident within the meaning of the Act, though no physical trauma or injury was sustained").[8]  In addition, the Complaint concedes that this injury was "accidental" because it alleges only that Bronzeville engaged in negligent conduct (Compl. ¶¶41, 51-56), and negligent conduct is, by definition, accidental.[9]  *See, e.g., Baylay v. Etihad Airways P.J.S.C.*, 222 F. Supp. 3d 698, 704 (N.D. Ill. 2016), *aff'd*, 881 F.3d 1032 (7th Cir. 2018) ("Both an employee's claim of employer negligence and a claim of employer willful and wanton conduct fall within the definition of 'accidental' and are preempted" by the Illinois Workers' Compensation Act) (citing authority).  Thus, the principle of workers' compensation exclusivity squarely applies here.

There is no reason to think that BIPA sought to upheave the liability protection to common law and statutory claims that employers enjoy with respect to workplace-related injuries.  For starters, BIPA appears in Chapter 740 of the Illinois Code, which is titled "Civil Liabilities," whereas laws specifically applicable to employers and their employees are contained in Chapter 820, which is aptly named the "Employment" chapter of the Illinois Code.  Moreover, BIPA's "Legislative Findings" section makes no mention of employers or employees, 740 ILCS 14/5, and, in fact, the terms "employment" and "employee" are only contained in BIPA at the end of 740 ILCS 14/10, buried within the definition of the phrase "written release."  Accordingly, BIPA "should not be construed to effect a change in the settled law of the State" because neither its place in the Illinois Code nor its text "clearly require[s] such a construction," *In re May 1991 Will Cty. Grand Jury*, 152 Ill. 2d 381, 388 (1992),

---

[8] McDonald tries to avoid this unequivocal holding—that "the fact that the employee sustained no physical injury or trauma *is irrelevant* to the applicability of the [Workers' Compensation] Act"—by relying on a secondary source and state-court cases from Alabama and Montana.  (Pl.'s Resp. at 10-12)  Suffice it to say that McDonald's cited authority does not control the outcome here, given that Illinois courts of review have resolved the issue.

[9] In her response, McDonald suggests that Bronzeville acted "intentionally" and "deliberately," but fails to cite any allegations in the Complaint in so suggesting (Pl.'s Resp. at 12-13)—and for good reason:  there are no allegations in the Complaint that could possibly sustain the contention that Bronzeville specifically intended to cause McDonald to suffer "mental anguish" or "mental injury."  (*See* Compl. ¶¶41, 51-56)

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 5/9/2019 11:28 PM   2017CH11311

particularly since it is the Workers' Compensation Act, not BIPA, that contains an exclusivity provision, *see Gannon v. Chicago, M., St. P. & P. Ry. Co.*, 13 Ill. 2d 460, 463 (1958) (holding that Workers' Compensation Act preempts employee claim brought under a statute).

And even if there were "[a]n apparent conflict between statutes, they must be construed in harmony," *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶37, "so that no provisions are rendered inoperative," *Knolls Condominium Ass'n v. Harms*, 202 Ill.2d 450, 458–59, (2002); *Barragan v. Casco Design Corp.* 216 Ill. 2d 435, 441–42 (2005) (the "court has a duty to interpret the statutes in a manner that avoids an inconsistency and gives effect to both statutes, where such an interpretation is reasonably possible"). Here, it is easy to give effect to both BIPA and the Workers' Compensation Act:  to the extent that an employee can otherwise demonstrate that injunctive or declaratory relief is appropriate, then that employee can obtain redress under BIPA;[10] but to the extent that that employee seeks a "statutory right" to damages under BIPA, that claim would be preempted by the exclusive remedies afforded under the Illinois Workers' Compensation Act.

\*     \*     \*

---

[10] In this regard, McDonald often conflates the concept of seeking "redress" and recovering monetary damages. (*See, e.g.,* Pl.'s Resp. at 8-9)  Those two concepts are not co-extensive.  For example, as Bronzeville has explained, a plaintiff who has not yet been injured, but who is at imminent risk of harm, could potentially obtain redress by way of injunctive relief, even though she would be precluded from obtaining damages for want of an actual injury.  *See Williams v. Manchester*, 228 Ill.2d 404, 425 (2008) ("as a matter of law, an increased risk of future harm is an **element of damages** that can be recovered for a present injury—it is **not** the injury itself" (emphasis in original)); *Cooney*, 407 Ill. App. 3d at 365–66 (same; citing authority); *see also Lewis v. Lead Indus. Ass'n, Inc.*, 342 Ill. App. 3d 95, 101 (1st Dist. 2003) (similar); *see also Sterk*, 672 F.3d at 538 (noting that "liquidated damages are intended to be an estimate of actual damages" such that "if failure of timely destruction [of data] results in no injury at all because there is never any disclosure, the only possible estimate of actual damages for violating [the statute] would be zero").

-13-

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 5/9/2019 11:28 PM   2017CH11311

## **CONCLUSION**

One of these two things must be true:  either McDonald has not suffered a "distinct and palpable injury" (such that she lacks standing under Illinois common law) or she suffered a "distinct and palpable" injury arising from and in connection with her employment (such that her claims would be preempted by the Illinois Workers' Compensation Act, which provides the exclusive remedy for workplace-related harms).  In either event, the Complaint should be dismissed in its entirety in accordance with Section 2-619(a)(9).

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 5/9/2019 11:28 PM   2017CH11311

## CERTIFICATE OF SERVICE

I, Joseph A. Donado, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing **DEFENDANT SYMPHONY BRONZEVILLE PARK, LLC'S REPLY IN FURTHER SUPPORT OF ITS RENEWED AND AMENDED SECTION 2-619 MOTION TO DISMISS** to be served upon the following by email on this 9th day of May 2019:

Eli Wade-Scott
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
T: (312) 589-6370
F:  (312) 589-6378


/s/ Joseph A. Donado

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

Marquita McDonald, individually and
on behalf of all others similarly situated,

|  |  |
|---|---|
| Plaintiff, | Case No. 2017-CH-11311 |
|  | Calendar 2 |
| v. | Courtroom 2601 |
| Symphony Bronzeville Park LLC,<br>Symcare Healthcare LLC, and<br>Symcare HMG LLC | Judge Raymond W. Mitchell |
| Defendants. |  |

## ORDER

This case is before the Court on Defendant Symphony Bronzeville Park LLC's motion to dismiss Plaintiff McDonald's complaint pursuant to 735 ILCS 5/2-619(a)(9).[1]

### I.

Illinois enacted the Biometric Information Privacy Act ("BIPA") in 2008. 740 ILCS 14. BIPA is an informed consent statute which requires a private entity that collects, captures, purchases, or otherwise obtains a person's biometric information to first inform the subject in writing that biometric information is being collected or stored and the specific purposes and length of term for which the information is being collected, stored, and used. The entity must also obtain a written release from the subject consenting to collection of biometric information. 740 ILCS 14/15(b). The statute also provides a private right of action, including liquidated damages, for any person aggrieved by a violation of the act against a private entity that negligently violates a provision. 740 ILCS 14/20(1).

The facts alleged in the complaint are taken as true for the purpose of ruling on a motion to dismiss. Plaintiff McDonald was employed at Defendant Symphony for three months. During the course of her employment, McDonald was required to scan her fingerprint to track her time at work. McDonald was never provided with nor signed a release consenting to storage of her biometric information. McDonald has also never been informed of the purposes or length of time for which her biometric information was being stored. McDonald claims to have experienced

---

[1] Defendant Symphony's Motion *Instanter* for Leave to File an Oversized Reply Brief is Granted.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

mental anguish from being uninformed about what Symphony will do with her biometric information.

Plaintiff McDonald filed a class action complaint on behalf of herself and all other individuals similarly situated against Symphony alleging a violation of BIPA and negligence.

## II.

A section 2-619 motion to dismiss admits the legal sufficiency of the complaint. 735 ILCS 5/2-619. The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of the litigation. *Henry v. Gallagher* (In re Estate of Gallagher), 383 Ill. App. 3d 901, 903 (1st Dist. 2008). Although a section 2-619 motion to dismiss admits the legal sufficiency of a complaint, it raises defects, defenses, or some other affirmative matter appearing on the face of the complaint or established by external submissions, which defeat the plaintiff's claim. *Ball v. County of Cook,* 385 Ill. App. 3d 103, 107 (1st Dist. 2008).

### A.

Symphony argues McDonald lacks standing to bring suit. Symphony claims that the recent *Rosenbach* decision held that a violation of BIPA was only enough to establish statutory standing, but the affirmative defense of lack of common law standing requires a concrete injury beyond just a violation of the statute. *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186. However, in *Rosenbach*, the Court held that when a private entity fails to adhere to the required procedures in BIPA, the affected individuals suffer a "real and significant" injury in that their right to maintain their biometric privacy is taken away. *Id.* at ¶ 34. Additionally, in *Sekura*, the appellate court concluded that a violation of BIPA constituted harm even if the information was not disclosed to a third party. *Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175, ¶ 77. If affected individuals had to wait until additional harm had occurred beyond a violation of the Act, it would be "too late, because, as the drafters found, once a person's biometric identifiers have been compromised, there is simply 'no recourse' for prevention." *Id.* at ¶ 59. This would be "completely antithetical to the Act's preventative and deterrent purposes." *Rosenbach*, 2019 IL at ¶ 37.

Symphony also argues that McDonald's only claim of injury is mental anguish over what could happen to her data and relies on *Maglio,* which held that risk of future harm does not constitute an injury. *Maglio v. Advocate Health & Hospitals Corp.*, 2015 IL App (2d) 140782. However, in *Duncan,* the court distinguished *Maglio* because the statute plaintiffs relied on did not expressly grant a private right of action for violations. *Duncan v. FedEx Office & Print Services,*

2

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

2019 IL App (1st) 180857, ¶ 25. Additionally, the court held in *Sekura* that mental anguish can constitute a concrete injury. *Sekura*, 2018 IL App (1st) at ¶ 78.

Symphony claims that McDonald's fear of disclosure of her biometric information would exist regardless of their compliance with the requirements in BIPA because it is merely an informed consent statute. However, *Rosenbach* held that a violation of BIPA results in the injury of lost privacy rights. *Rosenbach*, 2019 IL at ¶ 34. The loss of these rights are directly traceable and would not exist without Symphony's alleged violation of the Act.

Finally, Symphony argues that allowing plaintiffs to recover liquidated damages for minor technical violations of the Act, would expose defendants to substantial liability that would amount to punitive damages. However, the Court in *Rosenbach* stated that this liability gives these entities "the strongest possible incentive to conform to the law." *Id.* at ¶ 37. It should not be too difficult or costly for entities to comply. *Id.*

## B.

Symphony also argues that if McDonald did suffer an injury, her claim is preempted by the Illinois Workers' Compensation Act. 820 ILCS 305. The Act is the exclusive remedy for workplace injuries unless the employee can demonstrate her injury (1) was not accidental, (2) did not arise from employment, (3) was not received during the course of employment, or (4) is not compensable under the Act. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463 (1990). In *Schroeder*, the court held that psychological injuries caused by a physical trauma or injury are compensable under the Act. *Schroeder v. RGIS, Inc.*, 2013 IL App (1st) 122483, ¶ 30. However, the injury that McDonald suffered was the loss of the ability to maintain her privacy rights. This is neither a psychological nor physical injury and is not compensable under the Act.

Additionally, in *Liu*, the court stated that the Act applies "inside and outside the workplace." *Liu v. Four Seasons Hotel, Ltd.*, 2019 IL App (1st) 182645, ¶ 30. BIPA specifically defines written release in the employment context showing the drafters intended for BIPA to apply to violations by employers in the workplace. 740 ILCS 14/10.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

### III.

Therefore, it is hereby ORDERED:

(1) Defendant Symphony's motion to dismiss Plaintiff McDonald's complaint is DENIED.

(2) Defendant has until July 18, 2019 to answer.

(3) The ruling date set for June 21, 2019 at 10:00 a.m. is stricken.

(4) The case is continued to August 7, 2019 at 10:00 a.m.

Judge Raymond W. Mitchell

ENTERED,     JUN 1 7 2019

Circuit Court –

Judge Raymond W. Mitchell, No. 1992

4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

A113

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
7/18/2019 4:10 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2017CH11311

5828882

**Firm ID No. 90747**

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

MARQUITA McDONALD, individually and on
behalf of all other similarly situated,

                 Plaintiff,

     v.

SYMPHONY BRONZEVILLE PARK LLC,
SYMCARE HEALTHCARE LLC, and
SYMCARE HMG LLC.

                 Defendants.

Case No. 2017-CH-11311

Calendar: 02

Honorable Raymond Mitchell

---

## DEFENDANT SYMPHONY BRONZEVILLE PARK LLC'S MOTION FOR RECONSIDERATION OR, ALTERNATIVELY, TO CERTIFY QUESTIONS FOR IMMEDIATE APPEAL UNDER ILLINOIS SUPREME COURT RULE 308

---

DATED: July 18, 2019

Respectfully submitted,

SEYFARTH SHAW LLP


By: /s/ Joseph A. Donado

Richard P. McArdle (rmcardle@seyfarth.com)
Joseph A. Donado (jdonado@seyfarth.com)
SEYFARTH SHAW LLP
233 South Wacker Drive; Suite 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

**Attorneys for Defendant Symphony Bronzeville Park LLC**

58047442v.2

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

The Court erred in denying Symphony's[1] Motion to Dismiss.  Under the Illinois Workers' Compensation Act, a former employee, like Plaintiff Marquita McDonald, has no "***statutory right*** to recover damages from the employer * * * for injuries incurred in the course of her employment." *See Richardson v. Cty. of Cook*, 250 Ill. App. 3d 544, 547 (1st Dist. 1993) (emphasis added; internal quotation omitted); 820 ILCS § 305/5(a); 820 ILCS § 305/11.  Thus, if McDonald has suffered a "real and significant injury" and "mental anguish" from clocking in and out of work, as the Court stated in its dismissal order (Order dated 6/17/19, attached as Exhibit A, at 1-3), then that injury arose in, and during the course of, McDonald's employment, such that it is "compensable" for purposes of Workers' Compensation exclusivity.  *See Folta v. Ferro Eng'g*, 2015 IL 118070, ¶¶12, 18-30 (broadly construing exclusivity provisions of Sections 5(a) and 11 to hold that an injury will be found to be "compensable under the Act" when it "aris[es] out of and in the course of the employment") (citing authority).  Accordingly, Symphony requests reconsideration of the Court's determination that McDonald can seek damages against her former employer for an injury that occurred in the workplace.

In the alternative, Symphony requests that the Court certify questions in accordance with Illinois Supreme Court Rule 308(a), so that potentially dispositive issues can proceed to immediate appeal.  The proposed questions for appeal raise legal issues upon which there is substantial ground for difference of opinion, and an immediate appeal from the Court's June 17, 2019 Order would materially advance the ultimate termination of the litigation.  Symphony also moves for a stay of the lawsuit pending the appeal and whatever other relief the Court deems appropriate.

---

[1] "Symphony" refers to Defendant Symphony of Bronzeville Park, LLC, the moving Defendant concerning the Motion to Dismiss at issue.  Since that motion was filed, McDonald requested and received leave to amend the complaint to drop the other original defendant in the lawsuit, Symphony Healthcare, LLC, and to add two new defendants, Symcare Healthcare, LLC and Symcare HMG, LLC.  To date, neither of the new Defendants has been served with process.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

# **BACKGROUND**

On June 17, 2019, the Court denied Symphony's Section 2-619 Motion to Dismiss the Complaint as to McDonald's claims under BIPA.  (Ex. A)  In that motion, Symphony argued that one of these two things must be true:  either McDonald has not suffered a "distinct and palpable injury" (such that she lacks standing under Illinois common law) or she suffered a "distinct and palpable" injury arising from and in connection with her employment (such that her claims would be preempted by the Illinois Workers' Compensation Act, which provides the exclusive remedy for workplace-related harms).

In denying the motion, the Court held that McDonald's workplace injury was not "compensable" for purposes of determining Workers' Compensation exclusivity:

> The Act is the exclusive remedy for workplace injuries unless the employee can demonstrate her injury (1) was not accidental, (2) did not arise from employment, (3) was not received during the course of employment, or (4) is not compensable under the Act. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463 (1990).  In *Schroeder*, the court held that psychological injuries caused by a physical trauma or injury are compensable under the Act. *Schroeder v. RGIS, Inc.*, 2013 IL App (1st) 122483, ¶30. However, the injury that McDonald suffered was the loss of the ability to maintain her privacy rights.  This is neither a psychological nor physical injury and is not compensable under the Act.

(Ex. A at 3)  The Court further held that "BIPA specifically defines written release in the employment context showing the drafters intended for BIPA to apply to violations by employers in the workplace."  (*Id.* (citing 740 ILCS § 14/10)).

At least two significant—and potentially dispositve—legal questions are raised by the Court's ruling:

❶    Whether the exclusivity provisions in the Workers' Compensation Act, which state among other things, that an employee has "[n]o common law or statutory right to recover damages from the employer * * * for [an] injury [] sustained by any employee while engaged in the line of his duty," 820 ILCS § 305/5; 820 ILCS § 305/11, bars a claim for statutory damages under BIPA that is based upon an injury that arises in, and during the course of, employment; and

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

❷    Whether the Illinois legislature impliedly repealed the exclusivity provisions in the Workers' Compensation Act when enacting BIPA.

For the reasons set forth below, Symphony respectfully submits that the Court erred in holding that McDonald's injury is not "compensable" for purposes of determining Workers' Compensation exclusivity and in holding that BIPA in effect repeals the exclusivity provisions in the Workers' Compensation Act. And because answers to these questions—upon which there is substantial ground for difference of opinion—may materially advance the ultimate termination of this litigation, Symphony respectfully submits that these questions should certified for immediate appeal in accordance with Illinois Supreme Court Rule 308.

## LEGAL STANDARD

### I.    Motion to Reconsider

"The intended purpose of a motion to reconsider is to bring to the court's attention [1] newly discovered evidence which was not available at the time of the first hearing, [2] changes in the law, or [3] errors in the court's previous application of existing law." *Horwitz v. Bankers Life & Cas. Co.*, 319 Ill. App. 3d 390, 396-97 (1st Dist. 2001); *see also Hart v. Valspar Corp.*, 252 Ill. App. 3d 1005, 1009 (1st Dist. 1993) ("[t]he purpose of a motion for reconsideration is to alter the court of any errors that it has made and to allow an opportunity for their correction"). Here, Symphony's motion to reconsider serves to bring to the Court's attention an error in the application of existing law.

### II.    Illinois Supreme Court Rule 308

In the alternative, Symphony requests that the Court certify the above-stated questions for immediate appellate review in accordance with Illinois Supreme Court Rule 308. That Rule authorizes appeal from an interlocutory order not otherwise appealable if the Court finds: [1] the order at issue involves questions of law as to which there is substantial ground for difference of opinion and [2] an immediate appeal from the order may materially advance the ultimate termination

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM    2017CH11311

of the litigation.  *See* Ill. S. Ct. R. 308(a); *see also In re Marriage of Spircoff*, 2011 IL App (1st) 103189, ¶8 (reciting standards for appeal pursuant to Rule 308).

## **ARGUMENT**

### I.    Reconsideration Is Appropriate Because Workers' Compensation Exclusivity Applies To Workplace Injuries Like the Injury McDonald Alleges Here.

The exclusivity provision of the Workers' Compensation Act bars McDonald from recovering statutory damages under BIPA.  That exclusivity provision means that an employee has "[n]o common law *or statutory right* to recover damages from the employer * * * for injuries incurred in the course of her employment." *Richardson*, 250 Ill. App. 3d at 547 (emphasis added; internal quotation omitted); 820 ILCS § 305/5(a) (providing that an employee has "[n]o common law *or statutory right* to recover damages from the employer") (emphasis added); 820 ILCS § 305/11 ("the compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer * * * for accidental injuries sustained by any employee arising out of and in the course of the employment").  Indeed, the Illinois Supreme Court has explained "[t]he language of the [exclusivity] section, read alone, leaves no room for construction [because] it bars any 'statutory right to recover damages for injury." *See Gannon v. Chicago, M., St. P. & P. Ry. Co.*, 13 Ill. 2d 460, 463 (1958) (holding that Workers' Compensation Act preempts employee claim brought under a statute).  Others courts have similarly so held.  *See also, e.g., Vacos v. LaSalle Madison Hotel Co.*, 21 Ill. App. 2d 569, 572 (1st Dist. 1959) (exclusivity barred employee's statutory damages claim under the Dram Shop Act; the "clear language of [Section 5(a)] bars any right . . . to recover" outside the Workers' Compensation Act); *Carey v. Coca-Cola Bottling Co. of Chicago*, 48 Ill. App. 3d 482, 484 (2d Dist. 1977) (employee's Structural Work Act claims against his employer barred under Section 5(a) of Illinois Workers' Compensation Act); *Laird v. Baxter Health Care Corp.*, 272 Ill. App. 3d 280, 285 (1st Dist. 1994), *as modified* (May 22, 1995) (statutory wrongful death claim preempted:  the Workers' Compensation Act "was designed to balance the interests and

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

rights of both the employee and the employer.  Under the Act, an employer incurs liability, without fault, to an employee who is accidentally injured on the job.  In exchange, the employee loses the right to bring any common law or statutory cause of action against the employer.").  This authority controls the outcome here:  the Workers' Compensation Act "leaves no room for construction" because it plainly bars any statutory right an employee has to recover damages against an employer, *Gannon*, 13 Ill. 2d at 463, such as the statutory right to damages under BIPA.

> **A.**   **The Court Erred In Ruling That An Injury Arising Out of and During the Course of McDonald's Employment Is Not "Compensable" Under The Workers' Compensation Act.**

To circumvent this exclusivity rule, McDonald must demonstrate that her injury [1] "was not accidental," [2] "did not arise from her employment," [3] "was not received during the course of her employment," or [4] "is not compensable under the Act." *Folta*, 2015 IL 118070 at ¶14; *see also Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1039 (7th Cir. 2018) (plaintiff bears burden of establishing exception to Workers' Compensation exclusivity provision).  At issue in this motion is the Court's determination that McDonald's injury is excluded from the Workers' Compensation Act because it is not "compensable."  (Ex. A at 3)

The Court erred in that determination.  McDonald admits that her alleged injuries arose out of her employment and were received during the course of her employment (*see, e.g.,* Compl., attached as Exhibit B, at ¶¶2, 21-23, 29, 31, 35, 36, 59),[2] which means that her injury is

---

[2] To the extent McDonald has suffered an "injury" from placing her finger on a time-clock scanner, her injury is "accidental."  (*See also* Ex. B at ¶¶51-56)  Courts have construed the term "accidental" "to be a comprehensive one that is almost without boundaries," such that it that includes "willful and wanton" conduct, *see Baylay v. Etihad Airways P.J.S.C.*, 222 F. Supp. 3d 698, 703-04 (N.D. Ill. 2016), *aff'd*, 881 F.3d 1032 (7th Cir. 2018) (citing authority; internal quotation omitted), and all other conduct except that where the "employer [ ] acted deliberately and with specific intent to injure the employee," *Garland v. Morgan Stanley & Co.*, 2013 IL App (1st) 112121, ¶29; *Copass v. Ill. Power Co.*, 211 Ill. App. 3d 205, 214 (4th Dist. 1991) (similar); *Mayfield v. ACME Barrel Co.*, 258 Ill. App. 3d 32, 35 (1st Dist. 1994) (similar).  And because there are no allegations that Symphony implemented a time-clock system with the specific intent of injuring McDonald (*see, e.g.,* Ex. B at ¶¶51-56)—nor can there be given the constraints of Illinois Supreme Court Rule 137— McDonald's injury is accidental, and she cannot establish that the first exception to exclusivity applies.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

"compensable." *See Folta*, 2015 IL 118070 at ¶14 ("[i]n discussing the scope of the exclusivity provisions under the Workers' Compensation Act, [the Illinois Supreme Court] has indicated that the Act generally provides the exclusive means by which an employee can recover against an employer for a work related injury"). Indeed, the Illinois Supreme Court has consistently construed the exclusivity provisions of the Workers' Compensation Act to hold that an injury will be found to be "compensable under the Act" when it "aris[es] out of and in the course of the employment."[3] *See Folta*, 2015 IL 118070, ¶¶14, 18-30; *Sjostrom v. Sproule*, 33 Ill. 2d 40, 43 (1965) ("the 'line of duty' test is therefore construed as identical to the general test of compensability, 'arise out of and in the course of employment'"); *Unger v. Continental Assurance Co.*, 107 Ill. 2d 79, 85 (1985) ("The pivotal question . . . is whether the injury alleged is compensable under the Act. An injury will be found to be compensable if it "aris[es] out of and in the course of the employment."). And this holding applies regardless of whether the alleged injury is physical or non-physical, like the "bodily injury in the form of mental anguish" that McDonald allegedly suffered here (*see, e.g.,* Compl. at ¶¶35, 36). *See Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 467–68 (1990); *Pathfinder Co. v. Industrial Comm'n*, 62 Ill. 2d 556 (1976); *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229 (1980).

Under Illinois Supreme Court precedent, there is no exception to exclusivity for any particular type of injury, or injuries arising from an alleged invasion of privacy. (*Cf.* Ex. A at 2-3) Rather, any injury is compensable so long as it arises out of, and during the course of, the plaintiff's employment. *See Richardson*, 250 Ill. App. 3d at 548 ("an injury is compensable under the Act if it

---

[3] In *Folta*, the Illinois Supreme Court explained the evolution away from older cases that once limited the exclusivity rule to physical injuries and how it has historically rejected arguments just like the one McDonald made here—that the exclusivity provision should be somehow limited to certain categories of injuries. *See Folta*, 2015 IL 118070, ¶¶10-30. The Illinois Supreme Court has consistently rejected attempts to limit the Act's application based on the nature of the injury, which conflicts with the plain language of the statute and an unflinching line of authority broadly interpreting exclusivity. *Id.* In other words, the Workers' Compensation Act does not distinguish between types of injuries except in one respect—it requires only that the injury be an "accidental" one "arising out of and in the course of the employment." *See* 820 ILCS 305/5(a) and 11.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

was sustained during the course of employment and arose from that employment"). Any other result would conflict not only with unequivocal Illinois Supreme Court precedent, but also with the plain language of the exclusivity provision, which states, among other things, that an employee has "[n]o common law or statutory right to recover damages from the employer * * * for [an] injury [ ] sustained by any employee while engaged in the line of [ ] duty." 820 ILCS § 305/5(a); *see also People ex rel. Birkett v. Dockery*, 235 Ill. 2d 73, 81 (2009) ("[i]t is a cardinal rule of statutory construction that we cannot rewrite a statute, and depart from its plain language, by reading into it exceptions, limitations or conditions not expressed by the legislature"). Thus, if the Court determines that McDonald suffered an injury when clocking in and out of work (which it did), and McDonald alleges her employer negligently caused that injury (which she does), then there can be no other outcome but that her injury arose out of, and during the course of, her employment. Accordingly, McDonald's alleged injury is "compensable" and falls squarely within the strike-zone of the Worker's Compensation Act. Reconsideration is warranted.

### B.      The Court Erred In Holding that BIPA Repeals the Exclusivity Provision in the Workers' Compensation Act.

There is no reason to think that, by enacting BIPA, the Illinois legislature sought to upheave the liability protection to common law and statutory claims that employers enjoy with respect to workplace-related injuries. As Symphony previously asserted, BIPA appears in Chapter 740 of the Illinois Code, which is titled "Civil Liabilities," whereas laws specifically applicable to employers and their employees are contained in Chapter 820, which is aptly named the "Employment" chapter of the Illinois Code. Moreover, BIPA's "Legislative Findings" section makes no mention of employers or employees, 740 ILCS § 14/5, and, in fact, the terms "employment" and "employee" are only contained in BIPA at the end of 740 ILCS § 14/10, buried within the definition of the phrase "written release." Accordingly, because there is no **express** repeal of Workers' Compensation exclusivity, BIPA "should not be construed to effect a change in the settled law of the State,"

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

especially since neither its place in the Illinois Code nor its text "clearly require[s] such a construction." *In re May 1991 Will Cty. Grand Jury*, 152 Ill. 2d 381, 388 (1992). Recall, too, that it is the Workers' Compensation Act, not BIPA, that contains an exclusivity provision. *See Gannon*, 13 Ill. 2d at 463 (holding that Workers' Compensation Act preempts employee claim brought under a statute).

Even if there were "[a]n apparent conflict between statutes, they must be construed in harmony," *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶37, "so that no provisions are rendered inoperative," *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 458–59 (2002); *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 441–42 (2005) (the "court has a duty to interpret the statutes in a manner that avoids an inconsistency and gives effect to both statutes, where such an interpretation is reasonably possible"); *People v. McGuire*, 2015 IL App (2d) 131266, ¶15 (the "court presumes that the legislature would not enact a law that completely contradicts an existing law without expressly repealing the existing law. For a later enactment to operate as a repeal by implication of an existing statute, there must be such a manifest and total repugnance that the two cannot stand together.") (internal quotation omitted). This is true for a simple reason: "it is presumed that the General Assembly acts rationally and with full knowledge of all previous enactments and will not enact a law which contradicts a prior statute unless it expressly repeals the prior language." *Fischetti v. Vill. of Schaumburg*, 2012 IL App (1st) 111008, ¶6.

Here, it is easy to give effect to both BIPA and the Workers' Compensation Act. To the extent an employee can demonstrate that injunctive or declaratory relief is appropriate, then that employee can obtain redress under BIPA; but to the extent the employee seeks a "statutory right" to damages under BIPA, that claim is preempted by the exclusive remedies afforded under the Workers' Compensation Act. Thus, McDonald potentially has a remedy of injunctive or declaratory relief under BIPA and monetary relief under the Workers' Compensation Act, which means the two

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

statutes can be construed in harmony in accordance with Illinois law. For these reasons, Symphony respectfully submits that the Court erred in holding that BIPA impliedly repealed the exclusivity provision of the Workers' Compensation Act, thereby further demonstrating that reconsideration is warranted.

## II.     If The Court Denies Reconsideration, Then Certification of Questions Under Illinois Supreme Court Rule 308 Is Appropriate.

In the alternative to reconsideration, Symphony requests that the Court certify questions in accordance with Illinois Supreme Court Rule 308(a). That Rule authorizes appeal from an interlocutory order not otherwise appealable if the Court finds: [1] the order at issue involves questions of law as to which there is substantial ground for difference of opinion and [2] an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See* Ill. S. Ct. R. 308(a). Both of the prerequisites for certification are satisfied here.

### A.     The Certified Questions Present Questions of Law As To Which There Is Substantial Ground for Difference of Opinion.

Questions relating to statutory construction or the interplay between two statutes—like what Symphony proposes to be certified here—are pure questions of law. As a result, they are appropriately certified under Rule 308. *See, e.g., Bowman v. Ottney*, 2015 IL 119000, ¶8 (issue of statutory construction appropriate for review under Rule 308); *Johnston v. Weil*, 241 Ill. 2d 169, 175 (2011); *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 439 (2010) (same); *Bass v. Cook Cty. Hosp.*, 2015 IL App (1st) 142665, ¶13 (same); *In re Marriage of Akula*, 404 Ill. App. 3d 350, 355 (1st Dist. 2010) (same).

And there is substantial ground for difference of opinion as to Symphony's proposed questions. Foremost, each presents an issue of first impression. *See, e.g., Doe v. Sanchez*, 2016 IL App (2d) 150554, ¶20 (allowing certified questions where "there is no directly applicable case law answering whether a private busing company owes students a heightened standard of care and, if so,

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM    2017CH11311

whether it can be vicariously liable for its employees' acts outside the scope of employment"); *Costello v. Governing Bd. of Lee County Special Educ. Ass'n*, 252 Ill. App. 3d 547, 552-553 (2nd Dist. 1993) (allowing appeal under Supreme Court Rule 308 where the issue was one of first impression). Moreover, Symphony respectfully submits that reasonable minds could differ with the Court as to whether a statutory claim for damages can proceed [1] in light of an exclusivity provision that bars an employee's "statutory right to recover damages from the employer * * * for [an] injury [ ] sustained by any employee while engaged in the line of his duty," 820 ILCS § 305/5, or [2] in light of the long line of Illinois Supreme Court cases holding that the analysis of whether an injury is compensable hinges upon whether an injury arose in connection with, and during the course of, employment. Indeed, the one case that the Court cited in its Opinion does not address, much less hold, that an injury to privacy rights is excepted from workers' compensation exclusivity. *See Schroeder v. RGIS, Inc.*, 2013 IL App (1st) 122483, ¶30 (holding that psychological injury was compensable under the Workers' Compensation Act). Thus, given the statutory language at issue and that the certified questions present issues of first impression, Symphony submits that the first requirement under Rule 308 has been satisfied.

### B. An Immediate Appeal from the Court's Order Would Materially Advance the Ultimate Termination of the Litigation.

An immediate appeal would materially advance the ultimate termination of this litigation. Resolving the two questions proposed above would conclusively establish whether the exclusivity provision of the Illinois Workers' Compensation Act bars an employee's claim for money damages under BIPA. In turn, the answers to those two questions would be case dispositive because it is the potential for bet-the-company damages that is driving the litigation, such that if Symphony prevails on appeal this case will almost certainly settle or otherwise be resolved. In contrast, if an immediate appeal is not taken, substantial time and expense will be spent litigating McDonald's claims, including her class action claims, before appellate review could be obtained. *See Voss v. Lincoln Mall*

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM    2017CH11311

*Mgmt. Co.*, 166 Ill. App. 3d 442, 448 (1988) (explaining that interlocutory appeals are typically granted in cases that may either be "potentially long and expensive" or "involve 'controlling' questions of law as to which one possible resolution would necessarily dispose of the case"). Because this case presents precisely the type of situation that Rule 308(a) is designed to address, *see Solon*, 236 Ill. 2d at 439 (issuing a supervisory order directing the appellate court to accept the appeal and consider the certified question of statutory construction), Symphony requests that the Court certify the following questions for immediate appeal:

❶    Whether the exclusivity provisions in the Workers' Compensation Act, which state among other things, that an employee has "[n]o common law or statutory right to recover damages from the employer * * * for [an] injury [] sustained by any employee while engaged in the line of his duty," 820 ILCS § 305/5; 820 ILCS § 305/11, bars a claim for statutory damages under BIPA that is based upon an injury that arises in, and during the course of, employment; and

❷    Whether the Illinois legislature impliedly repealed the exclusivity provisions in the Workers' Compensation Act when enacting BIPA.

In addition, this case should be stayed pending an appeal of certified questions. *See* Ill. Sup. Ct. R. 308(e) (providing that either the trial court or the appellate court may stay proceedings in the trial court pending an interlocutory appeal); *see also Vasa N. Atl. Ins. Co. v. Selcke*, 261 Ill. App. 3d 626, 628 (1st Dist. 1994) (stay of proceedings may be granted in accordance with a court's "inherent power to control the disposition of the cases before it"). A stay is necessary here because a ruling by the appellate court in Symphony's favor on the questions above will result in the dismissal of the most significant aspect of this case. Accordingly, a stay would preserve the Court's and the parties' resources pending the potentially case-dispositive ruling.

## CONCLUSION

Defendant Symphony Bronzville Park, LLC respectfully requests that the Court reconsider its Order denying Symphony's motion to dismiss. In the alternative, the dismissal order involves questions of law as to which there is substantial ground for difference of opinion and that an

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

immediate appeal from that order may materially advance the ultimate termination of the litigation. Accordingly, Symphony requests that the Court certify the above two proposed questions for immediate appeal pursuant to Rule 308. Symphony further requests that the Court stay all further proceedings to permit Symphony to seek an interlocutory appeal pursuant to Illinois Supreme Court Rule 308(a) and for such other relief as the Court deems just and appropriate.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

## CERTIFICATE OF SERVICE

I, Joseph A. Donado, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing **DEFENDANT SYMPHONY BRONZEVILLE PARK LLC'S MOTION FOR RECONSIDERATION OR, ALTERNATIVELY, TO CERTIFY QUESTIONS FOR IMMEDIATE APPEAL UNDER ILLINOIS SUPREME COURT RULE 308** to be served upon the following by email on this 18th day of July 2019:

Eli Wade-Scott
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
T: (312) 589-6370
F: (312) 589-6378

/s/ Joseph A. Donado

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

# EXHIBIT A

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM  2017CH11311

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

Marquita McDonald, individually and
on behalf of all others similarly situated,

        Plaintiff,

    v.

Symphony Bronzeville Park LLC,
Symcare Healthcare LLC, and
Symcare HMG LLC

        Defendants.

Case No. 2017-CH-11311

Calendar 2
Courtroom 2601

Judge Raymond W. Mitchell

## ORDER

This case is before the Court on Defendant Symphony Bronzeville Park LLC's motion to dismiss Plaintiff McDonald's complaint pursuant to 735 ILCS 5/2-619(a)(9).[1]

### I.

Illinois enacted the Biometric Information Privacy Act ("BIPA") in 2008. 740 ILCS 14. BIPA is an informed consent statute which requires a private entity that collects, captures, purchases, or otherwise obtains a person's biometric information to first inform the subject in writing that biometric information is being collected or stored and the specific purposes and length of term for which the information is being collected, stored, and used. The entity must also obtain a written release from the subject consenting to collection of biometric information. 740 ILCS 14/15(b). The statute also provides a private right of action, including liquidated damages, for any person aggrieved by a violation of the act against a private entity that negligently violates a provision. 740 ILCS 14/20(1).

The facts alleged in the complaint are taken as true for the purpose of ruling on a motion to dismiss. Plaintiff McDonald was employed at Defendant Symphony for three months. During the course of her employment, McDonald was required to scan her fingerprint to track her time at work. McDonald was never provided with nor signed a release consenting to storage of her biometric information. McDonald has also never been informed of the purposes or length of time for which her biometric information was being stored. McDonald claims to have experienced

---

[1] Defendant Symphony's Motion *Instanter* for Leave to File an Oversized Reply Brief is Granted.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

mental anguish from being uninformed about what Symphony will do with her biometric information.

Plaintiff McDonald filed a class action complaint on behalf of herself and all other individuals similarly situated against Symphony alleging a violation of BIPA and negligence.

## II.

A section 2-619 motion to dismiss admits the legal sufficiency of the complaint. 735 ILCS 5/2-619. The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of the litigation. *Henry v. Gallagher* (In re Estate of Gallagher), 383 Ill. App. 3d 901, 903 (1st Dist. 2008). Although a section 2-619 motion to dismiss admits the legal sufficiency of a complaint, it raises defects, defenses, or some other affirmative matter appearing on the face of the complaint or established by external submissions, which defeat the plaintiff's claim. *Ball v. County of Cook,* 385 Ill. App. 3d 103, 107 (1st Dist. 2008).

## A.

Symphony argues McDonald lacks standing to bring suit. Symphony claims that the recent *Rosenbach* decision held that a violation of BIPA was only enough to establish statutory standing, but the affirmative defense of lack of common law standing requires a concrete injury beyond just a violation of the statute. *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186. However, in *Rosenbach*, the Court held that when a private entity fails to adhere to the required procedures in BIPA, the affected individuals suffer a "real and significant" injury in that their right to maintain their biometric privacy is taken away. *Id.* at ¶ 34. Additionally, in *Sekura*, the appellate court concluded that a violation of BIPA constituted harm even if the information was not disclosed to a third party. *Sekura v. Krishna Schaumburg Tan, Inc.,* 2018 IL App (1st) 180175, ¶ 77. If affected individuals had to wait until additional harm had occurred beyond a violation of the Act, it would be "too late, because, as the drafters found, once a person's biometric identifiers have been compromised, there is simply 'no recourse' for prevention." *Id.* at ¶ 59. This would be "completely antithetical to the Act's preventative and deterrent purposes." *Rosenbach*, 2019 IL at ¶ 37.

Symphony also argues that McDonald's only claim of injury is mental anguish over what could happen to her data and relies on *Maglio,* which held that risk of future harm does not constitute an injury. *Maglio v. Advocate Health & Hospitals Corp.*, 2015 IL App (2d) 140782. However, in *Duncan,* the court distinguished *Maglio* because the statute plaintiffs relied on did not expressly grant a private right of action for violations. *Duncan v. FedEx Office & Print Services,*

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

2019 IL App (1st) 180857, ¶ 25. Additionally, the court held in *Sekura* that mental anguish can constitute a concrete injury. *Sekura*, 2018 IL App (1st) at ¶ 78.

Symphony claims that McDonald's fear of disclosure of her biometric information would exist regardless of their compliance with the requirements in BIPA because it is merely an informed consent statute. However, *Rosenbach* held that a violation of BIPA results in the injury of lost privacy rights. *Rosenbach*, 2019 IL at ¶ 34. The loss of these rights are directly traceable and would not exist without Symphony's alleged violation of the Act.

Finally, Symphony argues that allowing plaintiffs to recover liquidated damages for minor technical violations of the Act, would expose defendants to substantial liability that would amount to punitive damages. However, the Court in *Rosenbach* stated that this liability gives these entities "the strongest possible incentive to conform to the law." *Id.* at ¶ 37. It should not be too difficult or costly for entities to comply. *Id.*

## B.

Symphony also argues that if McDonald did suffer an injury, her claim is preempted by the Illinois Workers' Compensation Act. 820 ILCS 305. The Act is the exclusive remedy for workplace injuries unless the employee can demonstrate her injury (1) was not accidental, (2) did not arise from employment, (3) was not received during the course of employment, or (4) is not compensable under the Act. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463 (1990). In *Schroeder*, the court held that psychological injuries caused by a physical trauma or injury are compensable under the Act. *Schroeder v. RGIS, Inc.*, 2013 IL App (1st) 122483, ¶ 30. However, the injury that McDonald suffered was the loss of the ability to maintain her privacy rights. This is neither a psychological nor physical injury and is not compensable under the Act.

Additionally, in *Liu*, the court stated that the Act applies "inside and outside the workplace." *Liu v. Four Seasons Hotel, Ltd.*, 2019 IL App (1st) 182645, ¶ 30. BIPA specifically defines written release in the employment context showing the drafters intended for BIPA to apply to violations by employers in the workplace. 740 ILCS 14/10.

3

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM 2017CH11311

### III.

Therefore, it is hereby ORDERED:

(1)    Defendant Symphony's motion to dismiss Plaintiff McDonald's
complaint is DENIED.

(2)    Defendant has until July 18, 2019 to answer.

(3)    The ruling date set for June 21, 2019 at 10:00 a.m. is stricken.

(4)    The case is continued to August 7, 2019 at 10:00 a.m.

Judge Raymond W. Mitchell

ENTERED,
JUN 1 7 2019

Circuit Court –

Judge Raymond W. Mitchell, No. 1992

4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM  2017CH11311

# EXHIBIT B

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
CALENDAR: 04
PAGE 1 of 16
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

| | |
|---|---|
| MARQUITA MCDONALD, individually and on behalf of all others similarly situated,<br><br>        *Plaintiff,*<br><br>  v.<br><br>SYMPHONY HEALTHCARE LLC an Illinois limited liability company, and SYMPHONY BRONZEVILLE PARK LLC, an Illinois limited liability company,<br><br>        *Defendants.* | Case No.: |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Marquita McDonald brings this Class Action Complaint and Demand for Jury Trial against Defendants Symphony Healthcare LLC and Symphony Bronzville Park LLC (collectively, "Symphony") to put a stop to their unlawful collection, use, and storage of Plaintiff's and the proposed Class's sensitive biometric data. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1. Defendant Symphony Healthcare LLC operates a network of post-acute care facilities with over twenty locations throughout the State of Illinois, including Defendant Symphony Bronzeville Park LLC's location. Symphony's facilities provide patients with a variety of services, from rehabilitative to palliative care, typically after they have undergone major medical procedures. To provide such care, Symphony facilities employees a variety of individuals.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 2 of 16

2.      When employees first begin their jobs at Symphony, they are required to scan their fingerprint in its time clocks. That's because Symphony uses a biometric time tracking system that requires employees to use their fingerprint as a means of authentication, instead of key fobs or identification cards.

3.      While there are tremendous benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards—which can be changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes employees to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking.

4.      Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

5.      Despite this law, Symphony disregards its employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, Symphony has violated (and continues to violate) the BIPA because it did not (and continues not to):

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by the BIPA; nor

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their fingerprints, as required by the BIPA.

6.      Accordingly, this Complaint seeks an Order: (i) declaring that Defendants'

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

conduct violates BIPA; (ii) requiring Defendants to cease the unlawful activities discussed

herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

### PARTIES

7.     Plaintiff Marquita McDonald is a natural person and citizen of the State of

Illinois.

8.     Defendant Symphony Healthcare LLC is a limited liability company existing

under the laws of the State of Illinois. Symphony Healthcare LLC is registered to conduct

business with the Illinois Secretary of State (File No. 03737292). Symphony Healthcare LLC

conducts business throughout this County, the State of Illinois, and the United States.

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 3 of 16

9.     Defendant Symphony Bronzeville Park LLC is a limited liability company

existing under the laws of the State of Illinois. Symphony Bronzeville Park LLC is registered to

conduct business with the Illinois Secretary of State (File No. 05213223). Symphony Bronzeville

Park LLC conducts business throughout this County, the State of Illinois, and the United States.

### JURISDICTION AND VENUE

10.     This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209

because they conduct business transactions in Illinois, have committed tortious acts in Illinois,

are registered to conduct business in Illinois, and are headquartered in Illinois.

11.     Venue is proper in Cook County because Defendants maintain their principal

places of business in Cook County and conduct business transactions in Cook County. Venue is

additionally proper because Plaintiff McDonald resides in Cook County.

### FACTUAL BACKGROUND

**I.     The Biometric Information Privacy Act.**

12.     In the early 2000's, major national corporations started using Chicago and other

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 4 of 16

locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

13.     In late 2007, a biometrics company called Pay by Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data— could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

14.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information", Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

15.     The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

4

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 5 of 16

(2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information."

740 ILCS 14/15(b).

16.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

17.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and—most importantly here—fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

18.     The BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. *See, e.g.*, 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

19.     Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM    2017CH11311

in that conduct must put in place certain reasonable safeguards.

**II.    Defendants Violate the Biometric Information Privacy Act.**

20.    By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented using biometric data as an authentication method stopped doing so. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data. Despite the recognized dangers of using biometric data in the private sector, employers have failed to follow retailers' leads in dropping it as an identification method. In fact, many employers now require their employees to register their biometric data, viewing it as a cost-effective method of authentication.

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 6 of 16

21.    Unfortunately, Symphony failed to take note of the retail industry's trend recognizing the dangers in storing biometric identifiers and the passage of Illinois law governing the collection and use of biometric data. Symphony continues to collect, store, and use its employees' biometric data in violation of the BIPA.

22.    Specifically, when employees first begin work at Symphony, they are required to have their fingerprint scanned in order to enroll them in Symphony's fingerprint database.

23.    Symphony uses an employee time tracking system that requires employees to use their fingerprint as a means of authentication. Unlike a traditional time clock, employees have to use their fingerprints to "punch" in to or out of work.

24.    Unfortunately, Symphony fails to inform its employees the extent of the purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

25.    Symphony similarly fails to provide its employees with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 7 of 16

employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. An employee who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Symphony's databases—or if they ever will be.

26.     The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Symphony's—where employees are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reasons they are doing so—is so dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing a critical point: it is crucial for people to understand when providing biometric identifiers who exactly is collecting their biometric data, where it will be transmitted to, for what purposes, and for how long. But Symphony disregards these obligations, and instead unlawfully collects, stores, and uses its employees' biometric identifiers and information.

27.     Ultimately, Symphony not only disregards its employees' privacy rights, but it also violates BIPA.

**III.     Plaintiff McDonald's Experience.**

28.     Plaintiff McDonald worked for Defendants' Symphony of Bronzeville facility from December 2016 to February 2017.

29.     As a new employee, Plaintiff was required to scan her fingerprint so that Symphony could use it as an authentication method to track her time.

30.     Symphony subsequently stored McDonald's fingerprint data in its databases.

31.     Each time McDonald began and ended her workday she was required to scan her fingerprint.

32.     McDonald has never been informed of the specific limited purposes or length of

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 8 of 16

time for which Symphony collected, stored, or used her fingerprints.

33.     McDonald has never been informed of any biometric data retention policy developed by Symphony, nor has she ever been informed of whether Symphony will ever permanently delete her fingerprints.

34.     McDonald has never been provided with nor ever signed a written release allowing Symphony to collect or store her fingerprints.

35.     McDonald has continuously and repeatedly been exposed to the risks and harmful conditions created by Symphony's violations of the BIPA alleged herein.

36.     As a result of Symphony's conduct, McDonald has experienced bodily injury in the form of mental anguish. For example, McDonald experiences mental anguish and injury when thinking about what would happen to her biometric data if Symphony went bankrupt, whether Symphony will ever delete her biometric information, and whether (and to whom) Symphony shares her biometric information.

37.     McDonald seeks liquidated damages under BIPA as compensation for the injuries Symphony has caused.

### CLASS ALLEGATIONS

38.     **Class Definition**: Plaintiff McDonald brings this action pursuant to 735 ILCS 5/2-801 on behalf of herself and a class of similarly situated individuals, defined as follows:

> All residents of the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by Defendants while residing in Illinois.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who

8

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 9 of 16

properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

39.     **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendants have collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of employees who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendants' records.

40.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a)  whether Symphony collected, captured, or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

b)  whether Symphony properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

c)  whether Defendants obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class's biometric identifiers or biometric information;

d)  whether Defendants have disclosed or re-disclosed Plaintiff's and the Class's biometric identifiers or biometric information to any third parties;

e)  whether Defendants have sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

f)  whether Defendants developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for

C141

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 10 of 16

collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

g)   whether Defendants comply with any such written policy (if one exists);

h)   whether Defendants used Plaintiff's and the Class's fingerprints to identify them; and

i)   whether Defendants' violations of the BIPA were committed negligently.

41.   **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

42.   **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM  2017CH11311

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 11 of 16

comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## FIRST CAUSE OF ACTION
### Violation of 740 ILCS 14/1, *et seq.*
### (On Behalf of Plaintiff and the Class)

43.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

44.     The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information...." 740 ILCS 14/15(b) (emphasis added).

45.     The BIPA also prohibits private entities from disclosing a person's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

46.     The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (i.e., when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 12 of 16

47.     Unfortunately, Defendants fail to comply with these BIPA mandates.

48.     Defendants are limited liability companies and, therefore, each qualify as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

49.     Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Defendants (in the form of their fingerprints), as explained in detail in Sections II–III. *See* 740 ILCS 14/10.

50.     Plaintiff's and the Class's biometric identifiers were used to identify them, and therefore constitute "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

51.     Defendants violated 740 ILCS 14/15(b)(3) by negligently failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

52.     Defendants violated 740 ILCS 14/15(b)(1) by negligently failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

53.     Defendants violated 740 ILCS 14/15(b)(2) by negligently failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

54.     Defendants violated 740 ILCS 14/15(a) by negligently failing to publicly provide a retention schedule or guideline for permanently destroying its customers' biometric identifiers and biometric information.

55.     By negligently collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendants violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in the

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM 2017CH11311

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 13 of 16

BIPA, 740 ILCS 14/1, *et seq.*

56.     On behalf of herself and the Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages of $1,000 per violation for each of Defendants' negligent violations of the BIPA pursuant to 740 ILCS 14/20(1); and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## SECOND CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Class)

57.     Plaintiff incorporates the foregoing allegations as is fully set forth herein.

58.     Defendants owed Plaintiff a duty of reasonable care. That duty required that Defendants exercise reasonable care in the collection and use of Plaintiff's biometric identifiers or biometric information. Specifically Defendants were required to collect, retain, store, and use Plaintiff's and the Class's biometric information and identifiers in compliance with the standards set forth by the BIPA.

59.     Additionally, Defendants owed Plaintiff a heightened duty—under which Defendants assumed a duty to act carefully and not put Plaintiff at undue risk of harm—because of the employment relationship of the Parties.

60.     Defendants breached their duties by failing to implement reasonable procedural safeguards around the collection and use of Plaintiff's biometric identifiers and biometric information.

61.     Specifically, Defendants breached their duties by failing to properly inform Plaintiff in writing of the specific purpose or length of time for which her fingerprints were being

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

collected, stored, and used.

62.     Defendants also breached their duties by failing to provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's fingerprints.

63.     Defendants' breach of its duties proximately caused and continues to cause Plaintiff mental anguish and mental injury. For example, Plaintiff experiences mental anguish when thinking about what would happen to her biometric identifiers or information if Defendants went bankrupt, whether Defendants will ever delete her biometric identifiers or information, and whether (and to whom) Defendants share her biometric identifiers or information.

64.     Accordingly, Plaintiff seeks an order declaring that Defendants' conduct constitutes negligence, and awarding Plaintiff and the Class damages in an amount to be calculated at trial.

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 14 of 16

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff McDonald, on behalf of herself and the Class, respectfully requests that this Court enter an Order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff McDonald as representative of the Class, and appointing her counsel as Class Counsel;

B.     Declaring that Defendants' actions, as set out above, violate the BIPA;

C.     Awarding statutory damages of $1,000 for each of Defendants' violations of the BIPA, pursuant to 740 ILCS 14/20(1);

D.     Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendants to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 7/18/2019 4:10 PM  2017CH11311

E.   Declaring that Defendants' actions, as described above, constitute negligence;

F.   Awarding Plaintiff and the Class their reasonable litigation expenses and

attorneys' fees;

G.   Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent

allowable; and

H.   Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 15 of 16

Respectfully submitted,

**MARQUITA MCDONALD,** individually and on
behalf of all others similarly situated,

Dated: August 17, 2017

By:   s/ Benjamin H. Richman
      One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
Sydney Janzen
sjanzen@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm ID: 44146

David Fish
dfish@fishlawfirm.com
John Kunze
jkunze@fishlawfirm.com
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
Fax: 630.778.0400

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

Firm ID: 44086

FILED DATE: 7/18/2019 4:10 PM   2017CH11311

ELECTRONICALLY FILED
8/17/2017 5:19 PM
2017-CH-11311
PAGE 16 of 16

16

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

McDONALD )
_____ )
Plaintiff(s), )
)
v. )
)
SYMPHONY )
_____ )
Defendant(s). )

Calendar 2

No. 17 CH 11311

Judge Raymond W. Mitchell
Courtroom 2601

## BRIEFING SCHEDULE ORDER

This cause coming on for entry of a briefing schedule on the Motion of

Movant(s), __DEFENDANTS' MOTION__ for

☐ 2-615 Dismissal  ☐ 2-619 Dismissal  ☐ Summary Judgment

☒ Other __FOR RECONSIDERATION OR ALTENATIVELY TO CERTIFY QUESTIONS FOR IMMEDIATE APPEAL__
IT IS HEREBY ORDERED AS FOLLOWS: __UNDER RULE 308__

1. _____ Movant's Brief is due on _____, 20___.

2. __PLAINTIFF'S__ Response Brief is due on __8/27__, 20 __19__.

3. __DEFENDANT'S__ Reply Brief is due on __9/11__, 20 __19__.

4. Courtesy copies are due on the same day as the Reply Brief.

5. No motion, movant's brief or response brief shall exceed *fifteen (15) double-spaced pages with 12 pt. font and 1 inch margins* (exclusive of exhibits). No reply brief shall exceed *seven (7) pages.* Oversized briefs are disfavored and require leave of court. No surreplies will be permitted.

6. The matter is set for Ruling on __9/20/19__ at 10:00 a.m. Please note that your motion may be decided on the briefs. If after reviewing the briefing, the judge determines that a hearing would be helpful, the Court will set a hearing date in consultation with counsel. Unless otherwise ordered, counsel need not appear on a Ruling Date.

7. Other __THE STATUS HEARING SET FOR AUGUST 7, 2019 IS HEREBY STRICKEN__

Name __J DONADO__                    ENTER:

Email __jdonado@serphilll.com__        Judge Raymond W. Mitchell

Telephone __312 460 5600__              AUG 05 2019

Atty. For Party __DEFENDANT__          Circuit Court – 1992

Atty. No. __90747__                    Judge Raymond W. Mitchell, No. 1992

*Please See Explanatory Notes On Reverse Side*

Rev. Nov. 2017

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
8/27/2019 2:25 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2017CH11311

6347797

FILED DATE: 8/27/2019 2:25 PM   2017CH11311

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

MARQUITA MCDONALD, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

SYMPHONY BRONZEVILLE PARK LLC, SYMCARE HEALTHCARE LLC, and SYMCARE HMG LLC,

*Defendants*.

Case No. 2017-CH-11311

Calendar 2

Hon. Raymond W. Mitchell

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OR, ALTERNATIVELY, TO CERTIFY QUESTIONS FOR IMMEDIATE APPEAL UNDER ILLINOIS SUPREME COURT RULE 308

Its original Motion to Dismiss having been denied, Defendant Symphony of Bronzeville Park LLC ("Symphony") now submits practically identical arguments and asks that the Court allow it a second bite at the dismissal apple by way of its Motion for Reconsideration or, Alternatively, To Certify Questions for Immediate Appeal Under Illinois Supreme Court Rule 308. First, Symphony asks the Court to reconsider its June 17, 2019 Order denying its Section 2-619 Motion to Dismiss. In the alternative, Symphony asks the Court to certify two questions for immediate interlocutory appeal. This Court should deny both requests. The first should be denied because it fails to establish how the court purportedly erred and merely repeats Symphony's previous arguments. The second should be denied because there are no grounds for disagreement about a question of law, let alone the "substantial grounds" required by statute and precedent.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 8/27/2019 2:25 PM  2017CH11311

## ARGUMENT

**I.    Symphony cannot explain how the court misapplied existing law.**

The Court denied Symphony's motion to dismiss, directly rejecting its argument that the

Workers' Compensation Act ("WCA"), 820 ILCS 305/1 *et seq.*, provides the exclusive remedies

in this case to the exclusion of the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1

*et seq.* A motion to reconsider is only appropriate when it "bring[s] to the court's attention (1)

newly discovered evidence which was not available at the time of the first hearing, (2) changes

in the law, or (3) errors in the court's previous application of existing law." *Horwitz v. Bankers*

*Life & Cas. Co.*, 319 Ill. App. 3d 390, 396–97 (1st Dist. 2001). Symphony now moves for the

Court to reconsider that decision under the third prong.

Symphony's motion should be denied for two reasons. First, repetition of its previous

arguments is insufficient. *See People v. Teran*, 376 Ill. App. 3d 1, 5 (2d Dist. 2007). While

Symphony hides behind a thin veil of additional citations, its argument is still nothing more than

old arguments that have already been rejected. Second, the time for Symphony to raise its

arguments was when it filed its motion to dismiss. Especially given Symphony's attempt to reuse

old arguments, the Court should deny its motion outright.

In Symphony's original Motion to Dismiss, it argued that the WCA's exclusivity

provision must apply to McDonald's claims because her injury was (1) accidental, (2) occurred

during work, and (3) was compensable under the WCA. (Defendant's Renewed and Amended

Section 2-619 Motion to Dismiss, at 18.) After consideration of this argument, the Court denied

Symphony's motion to dismiss, ruling that the privacy injuries claimed here are not compensable

by the WCA because the injury at issue—the loss of McDonald's control of her biometric

privacy—was not the type of "physical or emotional" injury compensable under the WCA.

2

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 8/27/2019 2:25 PM   2017CH11311

(*McDonald v. Symphony Bronzeville Park, LLC*, No. 2017-CH-11311 at 3 (Cir. Ct. Cook Cty. June 17, 2019) [hereinafter, "June 17 Order"].)

In Symphony's Motion to Reconsider, it once again argues that the WCA must provide the exclusive remedial scheme for McDonald's claims because her injury (1) was accidental, (2) occurred during work, and (3) was compensable under the WCA. (Defendant's Motion for Reconsideration or, Alternatively, To Certify Questions for Immediate Appeal Under Illinois Supreme Court Rule 308, at 6–8 [hereinafter, "Defendant's Motion"].) Symphony offers nothing new in support of its argument. First, Symphony repeats its argument that compensable injuries are those that arise from work. (*Id.* at 7.) Second, Symphony claims that injuries that occur at work arise from work, (*id.* at 8)—the same fallacy they already asked the Court to accept. And third, Symphony concludes that injuries that occurred at work are compensable under the WCA, (*id.*)—a position the Court has already rejected, which is based on fallacious reasoning, and is unsupported by precedent, *see*, *e.g.*, *Mytnik v. Illinois Workers' Compensation Comm'n*, 2016 IL App (1st) 152116WC, ¶ 36.

Instead of providing any explanation as to where the Court made a legal error, Symphony merely reasserts the same arguments the Court has already rejected. Symphony offers no existing law that compels a different conclusion; its argument is nothing more than recapitulation of old points already rejected by the Court. Because they offer no coherent explanation of how the Court misapplied existing law, Symphony's Motion for Reconsideration should be dismissed.

To the extent that Symphony wanted to raise cases or authority in support of these positions, the time for that was in its motion to dismiss. A motion to reconsider is not a free second round of motion to dismiss briefing: a party's time to bring its best arguments is in the

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 8/27/2019 2:25 PM   2017CH11311

first instance. *See Merchants Bank v. Roberts*, 292 Ill. App. 3d 925, 929 (2d Dist. 1997). Trial courts should not stand by and allow movants to make scant arguments in their original motion, only to lose, and use a motion for reconsideration to relitigate the issue. *Id.* "Civil proceedings already suffer from far too many delays and the interests of finality and efficiency *require* that the trial courts not consider such late-tendered evidentiary material, no matter what the contents thereof may be." *Id.* (quoting *John Alden Life Ins. Co. v. Propp*, 255 Ill. App. 3d 1005, 1011 (2d Dist. 1994) (quoting *Gardner v. Navistar Int'l Trans. Corp.*, 213 Ill. App. 3d 242, 248–49 (4th Dist. 1991))) (emphasis in original). The same reasoning applies here with additional force because the Symphony does not even bring late-tendered evidentiary material. Instead, Symphony cobbles together a few citations that do nothing more than rehash an argument that the court has already properly rejected. The Court should decline Symphony's invitation to revisit old issues.

II.     **Symphony cannot manufacture "substantial ground for difference of opinion" about a question of law by "respectfully submit[ting] that reasonable minds *could* differ" about an application of well-settled law to the facts of this case.**

Interlocutory appeals are not the norm in the Illinois courts. "Appeals under Illinois Supreme Court Rule 308 should be reserved for exceptional circumstances, and the rule should be sparingly used." *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21 (citing *Voss v. Lincoln Mall Mgmt. Co.*, 166 Ill. App. 3d 442, 450 (1st Dist. 1988) (affirming Illinois courts' "strong policy … to construe Rule 308 strictly and sparingly")). "Certified questions must not seek an application of the law to the facts of a specific case." *Rozsavolgyi*, 2017 IL 121048, ¶ 21. Rather, making an interlocutory order appealable under Rule 308 requires a finding that "[1] the order involves a question of law [2] as to which there is substantial ground for difference of opinion

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" Ill. S. Ct. R. 308(a).

While Symphony is correct that a ruling in its favor on appeal could result in the dismissal of this case, that alone is not enough to overcome "the law's strong policy against piecemeal appeals[.]" *See Voss*, 166 Ill. App. 3d at 451. And on the first and second requirements for immediate interlocutory appeal, Symphony falls well short.

As for the first prong, Symphony misconstrues this Court's holding to present purely legal questions. It does not. The Order's *only* questions here—whether WCA and BIPA are applicable—both apply well-settled legal frameworks to the facts of this case. While Symphony frames the issue as one of statutory interpretation, the statutory interpretation question it would like answered—whether BIPA impliedly repealed the WCA—was *never* at issue here. As the Illinois Supreme Court has held, the implied repeal analysis would only have been appropriate if the Court found both the WCA and BIPA statutes apply. *Lily Lake Rd. Defs. v. County of McHenry*, 156 Ill. 2d 1, 9 (1993) ("An implied repeal results only when the terms and necessary operation of a later statute are repugnant to and cannot be harmonized with the terms and effect of an earlier statute."). Instead, the Court properly considered the relevant precedent interpreting the WCA and held that under the facts and circumstances alleged here, McDonald's BIPA claims are properly brought in court. (June 17 Order, at 3.) The Court's application of law to the specific facts of this case is not an appropriate for a Rule 308 certification. *See Rozsavolgyi*, 2017 IL 121048, ¶ 21.

As for the second prong, Symphony merely argues "that reasonable minds *could* differ with the Court[.]" (Defendant's Motion, at 11) (emphasis added). But an assertion of mere potential disagreement is woefully insufficient to show that substantial grounds for difference of

5

FILED DATE: 8/27/2019 2:25 PM   2017CH11311

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 8/27/2019 2:25 PM   2017CH11311

opinion about a question of law actually exist. "The substantial grounds for difference of opinion prong in Rule 308 has been satisfied in instances where the question of law had not been directly addressed by the appellate or supreme court, or where there is a conflict between appellate districts or with the Illinois Supreme Court." *Rozsavolgyi*, 2017 IL 121048, ¶ 32.

Symphony asserts no discordant appellate opinions, and instead purports to present a novel question of law. None exists. The Appellate Court has determined that the WCA applies to injuries that spring from "risks and hazards which are peculiar to the nature of the work [employees] are employed to do." *See Mytnik*, 2016 IL App (1st) 152116WC, ¶ 36. The distinction between appropriate WCA cases and this case is stark. On the one hand, when an employee hired to do mechanical work in an industrial facility is injured by a piece of heavy machinery while on the job, the WCA controls. *See, e.g., Bryant v. Indus. Comm'n*, 250 Ill. App. 3d 659, 660 (1st Dist. 1993) (applying the WCA where a man hired to work as a press operator at an automobile manufacturing facility suffered a gruesome injury after his hand was pulled into the press). But when an employee's biometric privacy is violated, wholly unrelated to the particulars of the work she was hired to do, BIPA—not the WCA—controls. (June 17 Order, at 3 (holding the WCA did not apply and BIPA did apply)); *Robertson v. Hostmark Hospitality Grp., Inc.*, No. 18 CH 5194 (Cir. Ct. Cook Cty. July 31, 2019) (same), attached hereto as Exhibit 1; *Mazurkiewicz v. Mid-City Nissan, Inc.*, No. 18 CH 9798 (Cir. Ct. Cook Cty. Aug. 15, 2019) (same; denying defendant's argument that BIPA claims resulting from the use of a timeclock were preempted by WCA); *Mims v. Freedman Seating Co.*, No. 18 CH 09806 (Cir. Ct. Cook Cty. Aug. 22, 2019) (same), attached hereto as Exhibit 2.

Symphony has not been able to identify a *single instance* when any court has adopted its position. Including this case, four different Cook County courts have considered this exact issue,

6

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 8/27/2019 2:25 PM  2017CH11311

and all four have come to the same conclusion: that the WCA does not apply the way Symphony

says it does. (June 17 Order, at 3); *Robertson*, No. 18 CH 5194 (Cir. Ct. Cook Cty. July 31,

2019); *Mazurkiewicz*, No. 18 CH 9798 (Cir. Ct. Cook Cty. Aug. 15, 2019); *Mims*, No. 18 CH

09806 (Cir. Ct. Cook Cty. Aug. 22, 2019) (same).

There are no grounds for substantial difference of opinion as to a question of law here:

the question is one regarding the application of settled WCA law to the facts, and every court

that has applied that law to similar facts has come to the same conclusion.

Because Symphony's argument concerns the application of well-settled WCA law to the

facts of this case, and because all courts having faced the same application have agreed with this

Court, there are no substantial grounds for difference of opinion. And without substantial

grounds for difference of opinion as to a question of law, there is no reason to certify any

questions for immediate interlocutory appeal.

## **CONCLUSION**

For the reasons stated above, McDonald respectfully requests that the Court deny

Symphony's Motion for Reconsideration or, Alternatively, To Certify Questions for Immediate

Appeal Under Illinois Supreme Court Rule 308.

Dated: August 27, 2019

Respectfully submitted,

**MARQUITA MCDONALD**, individually and on
behalf of class of similarly situated individuals,

By: /s/ J. Eli Wade-Scott
*One of Plaintiff's attorneys*

Jay Edelson
jedelson@edelson.com
Ryan D. Andrews
randrews@edelson.com

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 8/27/2019 2:25 PM   2017CH11311

J. Eli Wade-Scott
ewadescott@edelson.com
EDELSON PC
350 N. LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm ID: 62075

David Fish
dfish@fishlawfirm.com
John Kunze
jkunze@fishlawfirm.com
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
Fax: 630.778.0400
Firm ID: 44086

*Attorneys for Plaintiff and the Putative Class*

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 8/27/2019 2:25 PM   2017CH11311

## CERTIFICATE OF SERVICE

  I, J. Eli Wade-Scott, an attorney, hereby certify that on August 27, 2019, I served the above and foregoing document by causing a true and accurate copy of the same to be filed and transmitted to all counsel of record via the Court's electronic filing system.

          s/ J. Eli Wade-Scott

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

A159

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
8/27/2019 2:25 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2017CH11311

6347797

FILED DATE: 8/27/2019 2:25 PM   2017CH11311

# Exhibit 1

C159

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

FILED DATE: 8/27/2019 2:25 PM  2017CH11311

| | |
|---|---|
| THOMAS ROBERTSON, individually, and on behalf of all others similarly situated, Plaintiff, v. HOSTMARK HOSPITALITY GROUP, INC., et al, Defendants, | ) ) ) ) ) ) ) ) ) Case No. 18-CH-5194 |

## MEMORANDUM AND ORDER

Defendants Hostmark Hospitality Group, Inc. and Raintree Enterprises Mart Plaza, Inc. have filed a motion to dismiss Plaintiff, Thomas Robertson's complaint pursuant to 735 ILCS 5/2-619.1.

### I.  Background

The Biometric Information Privacy Act ("BIPA") requires private entities in possession of biometric information to develop a publicly available written policy establishing a retention schedule and guidelines for permanently destroying biometric information. 740 ILCS 14/15(a). BIPA also requires a private entity to obtain written consent from the individual before it can collect the individual's biometric information. 740 ILCS 14/15(b). Significantly, BIPA prevents a private entity from disseminating an individual's biometric information unless it has received the individual's consent. 740 ILCS 14/15(d).

Section 14/20 of BIPA grants any person aggrieved by a violation of BIPA a right of action. 740 ILCS 14/20. A prevailing party may recover actual damages or a statutory penalty whichever is greater for each violation. 740 ILCS 14/20 (1) and (2).

### A. Plaintiff Thomas Robertson

Plaintiff Thomas Robertson ("Robertson") filed a Class Action Complaint (the "Complaint"). Robertson alleges that he worked as a food and beverage manager for Defendants Hostmark Hospitality Group, Inc. ("Hostmark") and Raintree Enterprises Mart Plaza, Inc. ("Raintree") (collectively "Defendants") from 2010 to January 2016. (Compl. at ¶41). Robertson alleges that beginning in 2010, as a condition of his employment, he was required to scan his fingerprint so Defendants could authenticate and track his time. (Id. at ¶42). Robertson alleges that Defendants stored his fingerprint data in their employee database. (Id. at ¶43).

Robertson alleges that Defendants violated BIPA because: (1) he was never informed of the specific limited purposes or length of time for which Defendants collected, stored, and disseminated his biometric information; (2) he was never informed of any biometric data retention and deletion policy; (3) he never signed a written release allowing Defendants to

1

FILED DATE: 8/27/2019 2:25 PM   2017CH11311

collect, store, use, or disseminate his biometric data; and (4) upon information and belief, Defendants have disclosed his fingerprint data to at least one out-of-state third-party vender. (Compl. at ¶¶33, 45-47, 71, 76-77, 81, 86-88, 92, 97-98).

## II.   Motion to Dismiss

Defendants are seeking to dismiss the Complaint pursuant to 735 ILCS 5/2-619.1. Section 2-619.1 allows a party to bring a combined motion to dismiss under Sections 2-615 and 2-619. 735 ILCS 5/2-619.1.

"A section 2-615 motion to dismiss challenges the legal sufficiency of the complaint. Yoon Ja Kim v. Jh Song, 2016 IL App (1st) 150614-B, ¶41. "Such a motion does not raise affirmative factual defenses but alleges only defects on the face of the complaint." Id. "All well-pleaded facts and all reasonable inferences from those facts are taken as true. Where unsupported by allegations of fact, legal and factual conclusions may be disregarded." Kagan v. Waldheim Cemetery Co., 2016 IL App (1st) 131274, ¶29. "In determining whether the allegations of the complaint are sufficient to state a cause of action, the court views the allegations of the complaint in the light most favorable to the plaintiff. Unless it is clearly apparent that the plaintiff could prove no set of facts that would entitle him to relief, a complaint should not be dismissed." Id.

A section 2-619 motion to dismiss "admits the legal sufficiency of the complaint and affirms all well-pled facts and their reasonable inferences, but raises defects or other matters either internal or external from the complaint that would defeat the cause of action." Cohen v. Compact Powers Sys., LLC, 382 Ill. App. 3d 104, 107 (1st Dist. 2008). A dismissal under §2-619 permits "the disposal of issues of law or easily proved facts early in the litigation process." Id. Section 2-619(a)(5) authorizes dismissal where "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5).

### A.   Section 2-619

Defendants argue that the Complaint should be dismissed pursuant to section 2-619 because (1) his claim is preempted by the Illinois Workers' Compensation Act (the "IWCA"); and (2) his claims are time barred by any applicable statute of limitations.

#### 1. Preemption

Defendants argue that the IWCA preempts Robertson's claims because his injury falls into the types of injuries covered by the IWCA. (Memo at 11). The court disagrees.

Section 305/5(a) of the IWCA (the "exclusivity provision") provides:

[. . .] no common law or statutory right to recover damages from the employer [...] for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act [. . .].

820 ILCS 305/5(a).

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 8/27/2019 2:25 PM   2017CH11311

In order to avoid the exclusivity provision an employee must establish "that the injury (1) was not accidental: (2) did not arise from his employment; (3) was not received during the course of employment: or (4) was not compensable under the [IWCA]." Folta v. Ferro Engineering, 2015 IL 118070, ¶ 14.

The Illinois Supreme Court has held that "whether an injury is compensable is related to whether the type of injury categorically fits within the purview of the Act." Folta, 2015 IL 118070, ¶ 23.

Robertson's alleged injury is not compensable under the IWCA because it is not a type of injury which categorically fits within the purview of the IWCA.

"The purpose of the [IWCA] is to protect employees against risks and hazards which are peculiar to the nature of the work they are employed to do." Mytnik v. Illinois Workers' Compensation Comm'n, 2016 IL App (1st) 152116WC. ¶ 36. Defendants offer no explanation as to how Robertson's statutory right to maintain his privacy in his biometric data is a risk or hazard peculiar to his employment as a food and beverage manager.

Further, the court finds persuasive Judge Raymond W. Mitchell's well-considered opinion in McDonald v. Symphony Bronzeville Park, LLC, et al., No. 2017-CH-11311 (Cir. Ct. Cook Cty. June 17, 2019). In McDonald, Judge Mitchell held that the plaintiff's loss of her ability to maintain her privacy rights under BIPA was neither a psychological nor a physical injury and thus was not compensable under the IWCA.

Therefore, the court finds that the IWCA does not preempt Robertson's claim.

### 2. Statute of Limitations

Section 14/20 of BIPA does not include a statute of limitations. Defendants have identified three different statutes of limitation which they think are applicable. The court will address each in turn.

Initially, Defendants have argued that public policy favors the application of the shortest possible statute of limitations.

The Illinois Supreme Court has held that "[t]he determination of the applicable statute of limitations is governed by the type of injury at issue. irrespective of the pleader's designation of the nature of the action." Travelers Casualty & Surety Co. v. Bowman, 229 Ill. 2d 461, 466 (2008) (quoting Armstrong v. Guigler. 174 Ill. 2d 281, 286 (1996)). "[I]t is the nature of the plaintiff's injury rather than the nature of the facts from which the claim arises which should determine what limitations period should apply." Travelers, 229 Ill. 2d at 466. "To determine the true character of a plaintiff's cause of action. [Armstrong] emphasized that '[t]he focus of the inquiry is on the nature of the liability and not on the nature of the relief sought.' " Travelers, 229 Ill. 2d at 467 (quoting Armstrong, 174 Ill. 2d at 291).

Defendants have cited no case law which indicates that a court may apply any statute of limitations on a public policy basis. The court rejects Defendants' argument.

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 8/27/2019 2:25 PM    2017CH1311

### a.  1-Year (Privacy Actions)

Section 13-201 provides that "[a]ctions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued." 735 ILCS 5/13-201.

Defendants argue that because Robertson is alleging a violation of his right to privacy in his biometric data, Section 13-201 applies. Robertson argues that Section 13-201 applies only to privacy claims involving a publication element. The court agrees with Robertson.

Section 14/20 of BIPA grants any person aggrieved by a violation of BIPA (a statute) a right of action. 740 ILCS 14/20. The fact that Robertson alleges his privacy rights were violated does not change the fact that the true nature of any potential liability stems from alleged violations of the BIPA statute. The Travelers' court makes clear that regardless of Robertson's allegation that his privacy rights were violated; we are dealing with an action for a violation of the BIPA statute and not an action for slander, libel, or for the publication of matter violating the right to privacy. Travelers, 229 Ill. 2d at 466; 735 ILCS 5/13-201.

Even assuming that Section 14/20 of BIPA created an action for violating a right of privacy in one's biometric data, the plain and unambiguous language of Section 13-201 is clear that it applies to actions *for publication* of matter violating the right of privacy. 735 ILCS 5/13-201. Nothing in the plain and unambiguous language of Section 14/20 indicates that publication is a necessary element for a person to be aggrieved by a violation of the BIPA statute. 740 ILCS 14/20.

While Defendants point out that Robertson has alleged that his biometric data has been disseminated (published) to at least one out-of-state third-party vendor and disclosed (published) to other, currently unknown, third-parties in violation of Section 15/15(d) of BIPA, Defendants have not cited any legal authority to justify the application of Section 13-201 to the alleged violations of the other sections of BIPA. (Compl. at ¶33); 740 ILCS 14/15(d); 735 ILCS 5/13-201.

Therefore, the court finds that Section 13-201 does not apply to Robertson's claims.

### b.  2-Year (Penal Statues)

Section 13-202 provides that "Actions for [. . .] a statutory penalty [. . .] shall be commenced within 2 years next after the cause of action accrued [. . .]. 735 ILCS 5/13-202.

Defendants argue that because Section 14/20 of BIPA is penal in nature Section 13-202 applies. Robertson argues that because Section 14/20 of BIPA is remedial in nature Section 13-202 does not apply. The court agrees with Robertson.

A statutory penalty is penal in nature if it "(1) impose[s] automatic liability for a violation of its terms; (2) set[s] forth a predetermined amount of damages; and (3) impose[s] damages without regard to the actual damages suffered by the plaintiff." Landis v. Marc Realty, L.L.C., 235 Ill. 2d 1, 13 (2009) (citing McDonald's Corp. v. Levine, 108 Ill. App. 3d 732, 738 (1982)).

Here, it is clear that Section 14/20 does not impose damages without regard to the actual damages suffered by a plaintiff because it allows a plaintiff to recover the greater of his actual damages or the applicable liquidated damages amount. 740 ILCS 14/20. The fact that a plaintiff

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 8/27/2019 2:25 PM   2017CH11311

may be awarded or seeks only liquidated damages does not mean Section 14/20 is penal in nature.

The Illinois Supreme Court's decision in Standard Mutual Insurance Co. v. Lay, 2013 IL 114617 instructive. In Standard Mutual, the Supreme Court held that the statutory penalty of the Telephone Consumer Protection Act (the "TCPA") was remedial and not penal. Standard Mutual, 2013 IL 114617, ¶ 33. The TCPA allows a person to bring an action to recover their actual monetary loss or $500 for each violation, whichever was greater. Id. at ¶29. In reaching its holding the Supreme Court noted that the TCPA was "clearly within the class of remedial statutes which are designed to grant remedies for the protection of rights, introduce regulation conducive to the public good, or cure public evils." Id. at ¶ 31 (quoting Scott v. Association for Childbirth at Home, International, 88 Ill. 2d 279, 288 (1981)). "Whether we view the $500 statutory award as a liquidated sum for actual harm, or as an incentive for aggrieved parties to enforce the statute, or both, the $500 fixed amount clearly serves more than purely punitive or deterrent goals." Id. at ¶ 32.

Like the TCPA, Section 14/20 of BIPA allows a plaintiff to recover either their actual damages or a liquidated amount. Standard Mutual, 2013 IL 114617, ¶ 29; 740 ILCS 14/20. Also like the TCPA, BIPA is clearly "within the class of remedial statutes which are designed to grant remedies for the protection of rights, introduce regulation conducive to the public good or cure public evils." Standard Mutual, 2013 IL 114617, ¶ 31.

As the Illinois Supreme Court pointed out in Rosenbach v. Six Flags Entertainment Corp., 2019 IL 123186, ¶ 37, by allowing private entities to face liability for violating BIPA, without requiring an individual to show more than a violation of their statutory rights, "those entities have the strongest possible incentive to conform to the law and prevent problems before they occur and cannot be undone." Whether this court views Section 14/20's liquidated damages provisions "as a liquidated sum for actual harm, or as an incentive for aggrieved parties to enforce the statute, or both, the [liquidated damages] amount clearly serves more than purely punitive or deterrent goals." Standard Mutual, 2013 IL 114617, ¶ 32.

Therefore, the court finds that Section 13-202 does not apply to Robertson's claims.

### c.   5-Year (Catchall 5-Year)

Section 13-205 provides "[. . .] all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13-205.

Because, Section 14/20 does not contain a limiting provision and neither Section 13-201 nor Section 13-202 applies, the court finds that Section 13-205 provides the applicable statute of limitation for Section 14/20.

### 3. Whether Robertson's Claims are barred by the 5-Year Statute of Limitations

Robertson filed his complaint on April 1, 2019. Defendants argue that Robertson's claims are barred under Section 13-205 because management position employees, like Robertson, are not hourly employees and have not used timekeeping devices since January 16, 2013. (Memo Ex. 2, ¶ 6). Robertson argues his claims are not barred by Section 13-205 because he continued

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 8/27/2019 2:25 PM 2017CH1311

to use the fingerprint scanning method of authentication periodically through 2014. (Response Ex. 1, ¶ 7). The parties have supported their arguments with affidavits.

In deciding the merits of a Section 2-619 motion, "a trial court cannot determine disputed factual issues solely upon affidavits and counter-affidavits." Vaughn v. Blue Cross Blue Shield of Illinois, 403 Ill. App. 3d 830, 836 (1st Dist. 2010). Because the parties have presented conflicting affidavits, the court cannot resolve this disputed factual issue on a Section 2-619 motion and denies Defendants' motion without prejudice. 735 ILCS 5/2-619(c).

### B. Section 2-615

Defendants argue that Robertson's complaint must be dismissed because he has failed to identify who his employer was, in violation of the Illinois fact pleading requirements. The court disagrees.

Illinois is a fact pleading jurisdiction. Simpkins v. CSX Transportation, Inc., 2012 IL 110662, ¶ 26. Fact pleading does not require a plaintiff to set forth evidence but does require a "plaintiff allege facts sufficient to bring a claim within a legally recognized cause of action." Simpkins, 2012 IL 110662, ¶ 26. "A plaintiff may not rely on conclusions of law or fact unsupported by specific factual allegations." Id.

Here, Robertson's complaint does allege the ultimate facts which if proven would bring his claim within the legally recognized cause of action for a violation of the BIPA statute. While Defendants are correct that throughout Robertson's complaint he generally refers to both Defendants, Defendants have cited[1] no persuasive or binding case law which indicates this practice violates Illinois fact pleading requirements. Robertson's complaint it is clear that he is alleging that both defendants employed him and engaged in conduct violating BIPA. (Compl. at ¶¶33, 41-47, 71, 76-77, 81, 86-88, 92, 97-98).

### III. Conclusion

Defendants' motion to dismiss pursuant to 735 ILCS 5/2-619 is denied without prejudice.

Defendants' motion to dismiss pursuant to 735 ILCS 5/2-615 is denied without prejudice.

The status date of August 2, 2019 is stricken. Status is set for August 22, 2019

Entered: _____

ENTERED
Judge Neil H. Cohen-2021
JUL 31 2019
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

---

[1] The court notes that Defendants have cited Carter v. Dolan, No. 08 C 7464, 2009 U.S. Dist. LEXIS 53735, a non-binding opinion from the Northern District of Illinois, and Elder v. Cook Count Department of Corrections., 2016 IL App (1st) 153428-U, an unpublished opinion. Although a circuit court may look to federal court orders for guidance or persuasive authority they are not binding authority. Reichert v. Board of Fire & Police Commr's of Collinsville, 388 Ill. App. 3d 834, 845 (5th Dist. 2009). Similarly, unpublished opinions are not binding authority and may not be cited as persuasive authority. Ill. Sup. Ct., R 23(e).

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

A166

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
8/27/2019 2:25 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2017CH11311

6347797

FILED DATE: 8/27/2019 2:25 PM  2017CH11311

# Exhibit 2

C166

FILED DATE: 8/27/2019 2:25 PM  2017CH11311

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

Joshua Mims, *individually and on
behalf of all others similarly situated*    )
    )
    Plaintiff(s),    )
    )
    v.    )
    )
Freedman Seating Company    )
    )
    Defendant(s).    )

No. 18 CH 09806

Calendar 13

Judge Anna H. Demacopoulos

## ORDER

This matter comes before the Court on Defendant Freeman Seating Co.'s motion to dismiss filed under 735 ILCS 5/2-619.1. Having reviewed the motion, response, reply, and exhibits thereto, and heard argument on August 22, 2019, and thereby being fully informed in the premises, for the following reasons, Defendant's motion to dismiss is denied.

Defendant Freedman Seating brings this Motion to Dismiss under 735 ILCS 5/2-619.1 arguing that (1) under the 619(a)(9) standard, the Biometric Information Privacy Act (BIPA) is preempted under the Illinois Worker's Compensation Act (IWCA); and (2) under the 615 standard, that Mims has failed to state a cause of action for negligent violation of BIPA as he has not pleaded a tangible damage proximately caused by Freedman Seating, a textbook requirement of an action for negligence. The Court will address the 615 argument first.

A combined motion to dismiss is expressly permitted by the rules of civil procedure so long as each portion of the motion "shall be limited to and shall specify that it is made under one of Sections 2-615, 2-619, or 2-1005." 735 ILCS 5/2-619.1 (Lexis 2016). Each part shall also clearly show the grounds relied upon under the Section on which it is based. *Id.* A combined

SUBMITTED - 10979142 - Matthew Andris - 10/30/2020 2:59 PM

FILED DATE: 8/27/2019 2:25 PM  2017CH11311

2-619.1 motion is reviewed under the *de novo* standard on appeal. *Mueller v. N. Suburban Clinic, Ltd.,* 299 Ill. App. 3d 568, 572 (Ill. App. 1st 1998).

A motion brought pursuant to 735 ILCS 5/2-615 of the Illinois Code of Civil Procedure challenges the legal sufficiency of the complaint. *Napleton v. Village of Hinsdale,* 229 Ill.2d 296, 305 (2008). Illinois is a fact-pleading jurisdiction. *Weiss v. Waterhouse Secs., Ins.,* 208 Ill.2d 439, 451 (2004). Only the ultimate facts to be proved need be alleged, not the evidentiary facts tending to prove such ultimate facts. *Krueger v. Lewis,* 342 Ill. App. 3d 467, 470 (1st Dist. 2003). But conclusions of law or fact are not considered well-pleaded even if they generally inform the defendant of the nature of the claim. *Coghlan v. Beck,* 984 N.E.2D 132, ¶ 22 (Ill. App. 1st 2013). Rather, a movant must set forth a legally recognized claim and plead facts in support of each element of the claim. *Redelmann v. Claire Sprayway, Inc.,* 874 N.E.2d 230, 328-29 (Ill. App. 1st 2007).

The issue on a 2-615 motion is whether the allegations, when viewed in a light most favorable to the movant, are sufficient to state a cause of action upon which relief can be granted. *Borowiec v. Gateway 2000, Inc.,* 219 Ill.2d 376, 382 (2004).

When bringing a motion pursuant to Section 2-619.1 of the Illinois Code of Civil Procedure, the section 2-619 portion of the motion admits, *arguendo,* that a complaint asserts a legally sufficient claim but sets forth an affirmative matter, defect, or defense that defeats the claim or avoids its legal effect. *See Coghlan,* 984 N.E.2D at ¶22-23 (comparing 2-615 and 2-619 motions). A defendant may move for dismissal of a cause of action under Section 2-619(a)(9) if "the claim asserted against the Defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (Lexis 2016).

FILED DATE: 8/27/2019 2:25 PM   2017CH11311

The term "affirmative matter" as used in section 2-619(a)(9) has been defined as a type of defense that either negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint. *Bloomingdale State Banks v. Woodland Sales Co.*, 186 Ill. App. 3d 227, 233 (Ill. 2nd Dist. 1989). The affirmative matter must be apparent on the face of the complaint or supported by affidavits or other evidentiary material. *Kedzie & 103rd Currency Exch. V. Hodge,* 619 N.E.2d 732, 735 (Ill. 1993). It is a defense other than a negation of the essential allegations of the plaintiff's cause of action; something more than evidence offered to refute a well-pleaded fact in the complaint. *Zahl v. Krupa,* 365 Ill. App. 3d 653, 659 (2006). Section 2-619 is not a proper vehicle to contest factual allegations; nor does it authorize a fact-based 'mini-trial' on whether plaintiff can support his allegations." *Reynolds,* 2013 IL App (4th) 120139, ¶42.

Freedman Seating claims that the holding in *Rosenbach v. Six Flags Entm't Corp* is not relevant here because (1) there is no basis to conclude that the Supreme Court intended the words used to describe levels of culpability and statutory damages available to plaintiffs under the BIPA to be deemed meaningless, *i.e.*, "negligently," "intentionally," and "recklessly;" (2) showing negligence should not be deemed "mere surplusage;" and (3) there is no evidence that the General Assembly intended $1,000 to be a default award when it not only cited negligence as the applicable standard of culpability but, tellingly, also included *no* such requirement for injunctive relief. *See Rosenbach v. Six Flags Entm't Corp* 2019 IL 123186. Freedman Seating emphasizes that a cause of action for negligence requires (a) duty; (b) breach; (c) *proximate cause*; and (d) *damages.* Here, Freedman Seating argues that Mims has failed to show both proximate cause and damage. Freedman Seating claims the holding of *Rosenbach* is not relevant here because this case deals with *negligence,*

FILED DATE: 8/27/2019 2:25 PM 2017CH11311

whereas the holding of the Court is merely that any statutory violation is sufficient to demonstrate that a plaintiff is "aggrieved" and state a cause of action. *Rosenbach v. Six Flags Entm't Corp*, 2019 IL 123186, ¶ 33.

The question certified and decided in *Rosenbach* was "whether one qualifies as an "aggrieved" person and may seek liquidated damages and injunctive relief pursuant to [BIPA] if [they have] not alleged some actual injury or adverse effect, beyond violation of [their] rights under the statute." *Rosenbach*, ¶1. The Illinois Supreme Court then analyzed the text of BIPA, noting that section 20 of the Act provides that "[a]ny person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party." *Id.* ¶21, citing 740 ILCS 14/20 (Lexis 2016). Section 20 also provides that "[a] *prevailing party* may recover" $1,000 in liquidated damages for a negligent violation or $5,000 in liquidated damages for an intentional or reckless violation. *Id.* (emphasis supplied). The Illinois Supreme Court went on to hold that "an individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an 'aggrieved' person *and be entitled to seek liquidated damages* and injunctive relief pursuant to [BIPA]." *Rosenbach*, ¶40 (emphasis supplied).

The Illinois Supreme Court has explicitly found that a plaintiff does not need to plead actual damages to state a claim for a violation of BIPA that includes a request for liquidated damages, whether claiming a negligent violation or a reckless violation on the part of the employer. Mims has alleged sufficient facts to bring a cause of action for a violation of BIPA, Freedman Seating's 2-615 motion to dismiss is denied.

Freedman Seating next argues that the Illinois Workers' Compensation Act preempts BIPA because (1) Mims claims a statutory right to recover from his former employer for an injury

FILED DATE: 8/27/2019 2:25 PM   2017CH11311

sustained at work and in the line of duty; (2) to the extent Mims' allegations qualify as compensable harm, his exclusive remedy is through the regime established under the IWCA; and (3) no exclusions to the IWCA apply.

The IWCA is the exclusive remedy for workplace injuries unless an employee can demonstrate their injury (1) was not accidental; (2) did not arise from employment; (3) was not received during the course of employment; or (4) is not compensable under the IWCA. *Meerbrey v. Marshall Field & Co.,* 139 Ill. 2d 455, 463 (1990). Psychological injuries caused by physical trauma or injury can be compensable under the IWCA. *Schroeder v. RGIS, Inc.,* 2013 IL App (1st) 122483, ¶30. The Illinois Supreme Court has also held that "whether an injury is compensable is related to whether the type of injury categorically fits within the purview of the [IWCA.]" *Folta v. Ferro Eng'g,* 2015 IL 118070, ¶23. The IWCA's purpose is "to protect employees against risks and hazards which are peculiar to the nature of the work they are employed to do." *Mytnik v. Ill. Workers' Compensation Comm'n,* 2016 IL App (1st) 12116WC, ¶36.

Freedman Seating's argument is not persuasive for two main reasons, (1) Mims' alleged injury, a violation of his privacy through the mismanagement of his biometric data, is not a type of injury that fits within the purview of the IWCA; and (2) a breach of a person's privacy is a type of injury distinct from physical and psychological injuries – and thus not compensable under the IWCA. Here, the injury is the failure to request a written consent from the employee and failure to maintain the data pursuant to the standards articulated under BIPA. The injury is not the mere collection of the data; it includes how that data was handled by Mims' employer after its collection. And the Court finds it important clarify that the collection of the biometric

FILED DATE: 8/27/2019 2:25 PM 2017CH11311

data was a *condition* of employment. A condition of employment can never be an injury within the line of duty of employment because it proceeds the actual term of employment.

The United States Supreme Court has found that all people have a right to privacy based upon the penumbral effects of the 1st, 3rd, 4th, 5th, 9th, and 14th Amendments of the United States Constitution. *See New York Times Co. v. Sullivan,* 376 U.S. 254 (1964) (1st and 14th Amendments); *Griswold v. Connecticut,* 381 U.S. 479 (1965) (Amendments 1, 3, 4, 5, 9, 14); *Katz v. United States,* 389 U.S. 347, 351 (1967) (4th Amendment); *Lawrence v. Texas,* 539 U.S. 558 (2003) (14th Amendment). Moreover, the United States of America is a signatory to the Universal Declaration of Human Rights, which explicitly recognizes an individual's right to privacy. Universal Declaration of Human Rights, Article 12, G.A. Res. 217 (III) A, U.N. Doc A/RES/217(III) (Dec. 10, 1948), *see Sosa v. Alvarez-Machain,* 542 U.S. 692, 734 (2004) (clarifying that this recognition does not confer obligations upon the USA under international law).

BIPA is a codification of the Illinois Legislature's intent to protect a person's biometric information. It exists to protect the privacy of a person through their ability to know where and how their biometric identifying information is being stored, specifying for how long, how it will be controlled, who will access it, and how it will be destroyed. A violation of privacy is not an injury peculiar to a person's nature of employment, and even if it were, a violation of privacy is not the type of injury covered under the IWCA, which only covers physical or psychological injuries. Defendant admitted in open court that a privacy right alone is at issue. Psychological harm and a breach of privacy are separate harms. And although there may be psychological injury as a result of a breach of privacy, that does not mean those harms are one and the same. It is similar to saying a broken arm and an infection of that broken arm are the same. One may stem

FILED DATE: 8/27/2019 2:25 PM 2017CH11311

from the other, but they are still distinct injuries that are healed differently. Privacy is a right that goes to the core of human dignity; it goes beyond the physical or psychological injuries covered under the IWCA.

The allegations of Mims' complaint are not barred by other affirmative matter avoiding the legal effect of or defeating the claim, *e.g.,* BIPA is not preempted by the IWCA. Freedman Seating's motion to dismiss under 2-619(a)(9) is denied.

IT IS HEREBY ORDERED:

(1) Freedman Seating Company's motion to dismiss is denied.

(2) This matter is set for status in courtroom 2502 on September 19, 2019 at 9:30 a.m.

ENTERED:

Judge Anna Helen Demacopoulos

AUG 22 2019

Circuit Court - 2002

_____
Judge Anna H. Demacopoulos, 2002

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
9/12/2019 9:59 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2017CH11311

6556335

**Firm ID No. 90747**

FILED DATE: 9/12/2019 9:59 PM   2017CH11311

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

MARQUITA McDONALD, individually and on
behalf of all other similarly situated,

                Plaintiff,

v.

SYMPHONY BRONZEVILLE PARK LLC,
SYMCARE HEALTHCARE LLC, and
SYMCARE HMG LLC.

                Defendants.

Case No. 2017-CH-11311

Calendar: 02

Honorable Raymond Mitchell

---

## DEFENDANT SYMPHONY BRONZEVILLE PARK LLC'S REPLY IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OR, ALTERNATIVELY, TO CERTIFY QUESTIONS FOR IMMEDIATE APPEAL UNDER ILLINOIS SUPREME COURT RULE 308

---

DATED:  September 12, 2019

Respectfully submitted,

SEYFARTH SHAW LLP


By:  /s/ Joseph A. Donado

Richard P. McArdle (rmcardle@seyfarth.com)
Joseph A. Donado (jdonado@seyfarth.com)
SEYFARTH SHAW LLP
233 South Wacker Drive; Suite 8000
Chicago, Illinois 60606
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

***Attorneys for Defendant Symphony Bronzeville Park LLC***

58997914v.2

FILED DATE: 9/12/2019 9:59 PM   2017CH11311

What Symphony established in its Motion remains unrefuted. In light of the plain language of the Workers' Compensation Act and an unflinching line of Illinois Supreme Court precedent, the Court erred in holding that McDonald's injury is not "compensable" such that reconsideration is appropriate. In short, the Workers' Compensation act preempts any "***statutory right*** to recover damages from the employer * * * for injuries incurred in the course of her employment." *See Richardson v. Cty. of Cook*, 250 Ill. App. 3d 544, 547 (1st Dist. 1993) (emphasis added; internal quotation omitted); 820 ILCS § 305/5(a); 820 ILCS § 305/11. Accordingly, McDonald cannot bring a damages claim under BIPA for injuries arising from clocking in and out of work, and the Court misapplied the plain language of the Workers' Compensation Act and Illinois Supreme Court precedent in ruling to the contrary. And should the Court decline reconsideration, Symphony respectfully requests, in the alternative, that the Court certify Symphony's proposed questions for immediate appeal in accordance with Illinois Supreme Court Rule 308, so that this case and countless others can be materially advanced by appellate court guidance on the potentially case-dispositive issue of Workers' Compensation exclusivity.

## ARGUMENT

I.      **Reconsideration Is Warranted Because The Court's Ruling Conflicts With The Plain Language of the Workers' Compensation Act and Illinois Supreme Court Precedent.**

The Court's ruling on Symphony's motion to dismiss cannot be reconciled with the plain language of the Workers' Compensation Act. The exclusivity provisions of that Act apply to any "injury * * * sustained by any employee while engaged in the line of his duty as such employee," 820 ILCS § 305/5(a), or "arising out of and in the course of [] employment," 820 ILCS § 305/11. Thus, if McDonald has suffered a "real and significant injury" from a BIPA violation (Ex. A to Def.'s Motion at 2) or the "bodily injury in the form of mental anguish" that she alleges (Ex. B to Def.'s Motion at ¶36), then the plain language of the Workers' Compensation Act bars McDonald from pursuing a "statutory right" to recover damages for those injuries from her employer, Symphony.

FILED DATE: 9/12/2019 9:59 PM 2017CH11311

*See Richardson*, 250 Ill. App. 3d at 547 (holding that Workers' Compensation exclusivity means that an employee has "[n]o common law ***or statutory right*** to recover damages from the employer * * * for injuries incurred in the course of her employment") (emphasis added; internal quotation omitted).  The Court's ruling is inconsistent with this plain language because the statute does not except invasion-of-privacy-type injuries or any other type of injury.  (Ex. A to Def.'s Motion at 3)  Rather, the statute categorically preempts all claims for damages—whether based on common-law or a statute—brought by an employee for any injury arising out of, and during the course of, employment.

McDonald tacitly concedes that the plain language of the statute defeats her claim for damages.  In her response, McDonald does not mention the language of the exclusivity provisions, much less explain how the Court's ruling can be reconciled with them.  (Pl.'s Resp. at 1-7)  Instead, McDonald resorts to empty platitudes (*see, e.g.,* Pl.'s Resp. at 1-1 (contending that Symphony is "ask[ing] that the Court allow it a second bite at the dismissal apple")) and baseless contentions, like her contention that Symphony failed to set forth "how the Court purportedly erred" (Pl.'s Resp. at 1).  (*See also* Pl.'s Resp. at 2 ("Symphony hides behind a thin veil of additional citations"); *cf.* Pl.'s Resp. at 4 (contending that "Symphony offers no existing law" in support of its request for reconsideration))  The purported error here—which Symphony set forth before (Def.'s Motion at 5-10) and will set forth here again—is that the Court carved out an exception to Workers' Compensation exclusivity that conflicts with the statute's plain language and, in doing so, contravened "a cardinal rule" of statutory construction:  that a court "cannot rewrite a statute, and depart from its plain language, by reading into it exceptions, limitations or conditions not expressed by the legislature." *See also People ex rel. Birkett v. Dockery*, 235 Ill. 2d 73, 81 (2009).

The Court's ruling also cannot be squared with Illinois Supreme Court precedent.  According to that precedent, an injury is "compensable" for purposes of Workers' Compensation

FILED DATE: 9/12/2019 9:59 PM    2017CH11311

exclusivity so long as the injury "aris[es] out of and in the course of the employment." *Folta v. Ferro Eng'g*, 2015 IL 118070, ¶¶14, 18-30 ("In discussing the scope of the exclusivity provisions under the Workers' Compensation Act, this court has indicated that the Act generally provides the exclusive means by which an employee can recover against an employer for a work related injury"); *Sjostrom v. Sproule*, 33 Ill. 2d 40, 43 (1965) ("the 'line of duty' test is therefore construed as identical to the general test of compensability, 'arise out of and in the course of employment'"); *Unger v. Continental Assurance Co.*, 107 Ill. 2d 79, 85 (1985) (stating that "[t]he pivotal question . . . is whether the injury alleged is compensable under the Act. An injury will be found to be compensable if it arises out of and in the course of the employment'") (internal quotation omitted). Accordingly, there is no basis under that precedent to hold that exclusivity applies only to "psychological injuries caused by a physical trauma or injury." (Ex. A to Def.'s Motion at 3.) Indeed, the Illinois Supreme Court has held that "humiliation" and other similar injuries **are** preempted by the Workers' Compensation Act even when those injuries are unrelated to a physical harm. *See Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 467–68 (1990) (holding that "humiliation" and other similar injuries were "compensable" where the plaintiff asserted theories of false imprisonment, false arrest or malicious prosecution unrelated to any physical harm: "plaintiff offers no principled basis for distinguishing between the emotional injuries which he allegedly suffered in the course of his employment, and those deemed compensable in *Pathfinder* and *Collier*"). This result makes particularly good sense given the dictionary definition of the key statutory term "injury." *See* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "injury" to mean "[t]he violation of another's legal right, for which the law provides a remedy; a wrong or injustice"); *see also* 820 ILCS § 305/5(a); 820 ILCS § 305/11.[1] Thus, the

---

[1] Symphony will note parenthetically that invasion-of-privacy-type claims involve "psychological" injuries, which is another reason why they should not be treated differently for purposes of Workers' Compensation exclusivity. *See, e.g., Schmidt v. Ameritech Illinois*, 329 Ill. App. 3d 1020, 1035 (1st. Dist. 2002) (discussing "mental anguish" in considering whether the plaintiff stated an actual injury sufficient to sustain an intrusion upon seclusion claim); *see also, e.g., Braun v. Flynt*, 726 F.2d 245, 250 (5th

FILED DATE: 9/12/2019 9:59 PM   2017CH11311

Court's ruling conflicts not only with the plain language of the statute, but also with Illinois Supreme Court precedent, the latter being a point that McDonald again concedes by lack of contrary argument.[2]

Plus, if the result were any different, then an employer would have ***greater*** protection from damages claims brought by plaintiffs who ***have*** suffered actual psychological (or physical) harm and ***no*** protection whatsoever from massive (and potentially ruinous) damages claims brought by plaintiffs who ***have not*** suffered an actual injury at all. *See Goins v. Mercy Ctr. for Health Care Servs.*, 281 Ill. App. 3d 480, 487–88 (2d Dist. 1996) (holding that an employee's claim under the AIDS Confidentiality, 410 ILCS 305/1 *et seq.* would have been preempted by Workers' Compensation exclusivity but for the determination that the employer, a hospital, was acting not in its capacity as an employer, but rather as a medical provider to an injured employee); *see also Bank of New York Mellon v. Laskowski*, 2018 IL 121995, ¶12 (a court presumes that the legislature did not intend absurd results). Regardless, the point remains: this Court is bound by the plain language of the Workers' Compensation Act and Illinois Supreme Court precedent, which do not carve out invasion-of-privacy injuries from exclusivity.

The Court thus erred by misapplying controlling law regarding what constitutes a "compensable" injury. *See Horwitz v. Bankers Life & Cas. Co.*, 319 Ill. App. 3d 390 (1st Dist. 2001) (one "intended purpose of a motion to reconsider is to bring to the court's attention * * * errors in the court's previous application of existing law"); *Hart v. Valspar Corp.*, 252 Ill. App. 3d 1005, 1009

---

Cir. 1984) (recognizing "that the principal element of injury in a defamation action is impairment of reputation while an invasion of privacy claim is founded on mental anguish"); *Bolduc v. Bailey*, 586 F. Supp. 896, 902 (D. Colo. 1984) ("invasion of privacy involves injury to the person, primarily through mental and emotional distress").

[2] McDonald does not address *Folta* or *Meerbrey* or any of the Illinois Supreme Court cases that Symphony cited in its Motion. (Pl.'s Resp. at 1-7.) And, notably, McDonald does not cite an Illinois Supreme Court case that supposedly sustains her principal contention that invasion-of-privacy injuries are excepted from exclusivity. (*Id.*) One would think that if either the statutory language or Illinois Supreme Court precedent actually supported her contention, then McDonald would have so stated in her response. That she did not do so speaks volumes.

FILED DATE: 9/12/2019 9:59 PM   2017CH11311

(1st Dist. 1993) (similar). The question of "compensability" does not rest on whether McDonald suffered a "psychological injur[y] caused by a physical trauma or injury" (Ex. A to Def.'s Motion at 2),[3] but rather whether her injury arises from, and during the course of her employment, for that is the test that the Illinois Supreme Court applies. *See, e.g., Folta*, 2015 IL 118070 at ¶¶14, 18-30; *Sjostrom*, 33 Ill. 2d at 43; *Unger*, 107 Ill. 2d at 85; *see also* 820 ILCS § 305/5(a) (stating that an employee shall have "no common law or statutory right to recover damages from the employer * * * for injury * * * sustained by any employee while engaged in the line of his duty as such employee"); 820 ILCS § 305/11 (similar). Because McDonald's alleged injury undoubtedly arises out of her employment (*see, e.g.,* Ex. B to Def.'s Motion at ¶¶2, 21-23, 29, 31, 35, 36; *see also* Ex. B to Def.'s Motion at ¶59 (alleging that Symphony "owed Plaintiff a heightened duty—under which [it] assumed a duty to act carefully and not put Plaintiff at undue risk of harm—because of the employment relationship of the Parties")), then that injury is "compensable." No other result can be squared with the plain language of the Workers' Compensation Act or Illinois Supreme Court precedent.

In addition, there is a more fundamental problem with McDonald's position: it conflicts with her own allegations. McDonald did not merely allege as her injury that she lost "control of her biometric privacy," as she now contends (Pl.'s Resp. at 2), but rather that she suffered "bodily injury in the form of mental anguish" (Ex. B to Def.'s Motion at ¶36). (*Cf.* Pl.'s Resp. at 2 (McDonald

---

[3] The case the Court cited—*Schroeder v. RGIS, Inc.*, 2013 IL App (1st) 122483, ¶30—is not to the contrary. In that case, the appellate court did not pass upon the issue of whether an injury like the one McDonald alleges here is compensable; instead, the court held that the injury at issue **was** compensable and, as a result, it had no reason to opine on the limits of exclusivity. *Id.*; *cf. Goins*, 281 Ill. App. 3d at 487–88. And to the extent that case could be viewed as setting forth a limiting principle as to exclusivity, it still would not control this issue here because any such holding would be inconsistent with both prior and subsequent Illinois Supreme Court authority. *See Folta*, 2015 IL 118070 at ¶¶14, 18-30; *Meerbrey*, 139 Ill. 2d at 467–68 (applying Workers' Compensation exclusivity where plaintiff alleged, among other things, that she suffered "humiliation" even though no physical injury was alleged). The same is true of the one case that McDonald cites as supposedly demonstrating Symphony's "fallacious" reasoning. *See Mytnik v. Illinois Workers' Comp. Comm'n*, 2016 IL App (1st) 152116WC, ¶39 (finding injury at issue to be "compensable").

FILED DATE: 9/12/2019 9:59 PM   2017CH11311

contending despite the allegations in her Complaint that her injury "was not the type of 'physical or emotional' injury compensable under the [Workers' Compensation Act]").) Therefore, even under the Court's reasoning, exclusivity principles would nonetheless be brought to bear because McDonald alleges a physical (*i.e.*, "bodily") injury and a psychological injury (*i.e.*, "mental anguish") such that dismissal of her damages claim is appropriate. For all these reasons, reconsideration is warranted.

## II.    The Court Erred In Holding that BIPA Repeals the Exclusivity Provision in the Workers' Compensation Act.

That "BIPA specifically defines written release in the employment context" does not counsel a different result.[4] While it is true, as the Court noted (Ex. A to Def.'s Motion at 3), that BIPA contains such a definitional provision, that does not mean an employee can pursue a statutory claim for damages against her employer for an injury arising from clocking in and out of work. Of course, a mere definition in one statute does not constitute an "express repeal" of another. *See, e.g., Feret v. Schillerstrom*, 363 Ill. App. 3d 534, 540 (2d Dist. 2006). Accordingly, the overwhelming presumption is that the Legislature did not intend to repeal the Workers' Compensation Act, which, by its exclusivity provisions, provides protection for employers against statutory claims for damages brought by employees for injuries that arise in the workplace, *see Jahn v. Troy Fire Prot. Dist.*, 163 Ill. 2d 275, 279 (1994); *In re May 1991 Will Cty. Grand Jury*, 152 Ill. 2d 381, 388 (1992); *Fischetti v. Vill. of Schaumburg*, 2012 IL App (1st) 111008, ¶6. To the extent McDonald can demonstrate that injunctive or declaratory relief is appropriate, then she can seek redress under BIPA; but to the extent she seeks a "statutory right" to damages under BIPA, her claim is preempted by the exclusive remedies

---

[4] The second question that Symphony proposes for certification pertains to the Court stating in its dismissal order that "BIPA specifically defines written release in the employment context showing the drafters intended for BIPA to apply to violations by employers in the workplace." (Ex. A. to Def.'s Motion at 3 (citing 740 ILCS § 14/10)). Given this language, Symphony does not understand why McDonald asserts that "whether BIPA impliedly repealed the WCA—was ***never*** at issue here." (*See* Pl.'s Resp. at 5 (emphasis in original))

FILED DATE: 9/12/2019 9:59 PM   2017CH11311

afforded under the Workers' Compensation Act. And because McDonald does not meaningfully address this issue in her response (*see* Pl.'s Resp. at 5), Symphony will rest on the arguments it previously asserted in its Motion (Def.'s Motion at 8-10).

### III.   Certification of Questions Under Illinois Supreme Court Rule 308 Is Appropriate And Will Materially Advance This Case and Hundreds of Other Pending BIPA Cases.

In the alternative to reconsideration, certifying questions for interlocutory appeal is warranted, and nothing in McDonald's response demands otherwise. *See also* Ill. S. Ct. R. 308 (authorizing appeal from an interlocutory order not otherwise appealable if the Court finds: [1] the order at issue involves questions of law as to which there is substantial ground for difference of opinion and [2] an immediate appeal from the order may materially advance the ultimate termination of the litigation). Foremost, as Symphony established in its Motion, questions relating to statutory construction or the interplay between two statutes are pure questions of law that are appropriately certified under Rule 308, *see, e.g., Bowman v. Ottney*, 2015 IL 119000, ¶8 (construing effect of two statutes on one another); *Johnston v. Weil*, 241 Ill. 2d 169, 175 (2011) (same); *see also Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 439 (2010) (issue of statutory construction appropriate for review under Rule 308); *Bass v. Cook Cty. Hosp.*, 2015 IL App (1st) 142665, ¶13 (same); *In re Marriage of Akula*, 404 Ill. App. 3d 350, 355 (1st Dist. 2010) (same); so, too, are novel questions of law yet to be considered by a court of review, as McDonald acknowledges (Pl.'s Resp. at 5-6 (citing *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶32 for the proposition that the "substantial grounds for difference of opinion prong in Rule 308 has been satisfied in instances where the question of law had not been directly addressed by the appellate or supreme court"). *See also Doe v. Sanchez*, 2016 IL App (2d) 150554, ¶20 (addressing certified questions under Rule 308 where there was "no directly applicable case law"); *Costello v. Governing Bd. of Lee County Special Educ. Ass'n*, 252 Ill. App. 3d 547, 552 (2nd Dist. 1993) (similar regarding issue of "first impression"). McDonald's response in effect demonstrates that Symphony has carried its burden in this regard because the only cases McDonald

FILED DATE: 9/12/2019 9:59 PM   2017CH11311

cites for the proposition that BIPA "controls" over the Workers' Compensation Act are **Circuit Court** decisions. (Pl.'s Resp. at 6-7)

Moreover, Symphony again submits that reasonable minds could differ as to whether a statutory claim for damages can proceed [1] in light of an exclusivity provision that bars an employee's "statutory right to recover damages from the employer * * * for [an] injury [ ] sustained by any employee while engaged in the line of his duty," 820 ILCS § 305/5, or [2] in light of the long line of Illinois Supreme Court cases holding that the analysis of whether an injury is "compensable" hinges upon whether an injury arose in connection with, and during the course of, employment. *See also Goins*, 281 Ill. App. 3d at 487–88. Again, McDonald's own response brief in effect establishes as much. If the analysis were as "well settled" as she says it is (Pl.'s Resp. at 5), then why didn't she address the plain language of the statute or the Illinois Supreme Court cases setting forth the standard for compensability? The first requirement for certifying questions is satisfied.

The second requirement is satisfied, as well. To be sure, answers to the questions that Symphony proposes for certification would materially advance the ultimate termination of this litigation by conclusively establishing whether the exclusivity provision of the Workers' Compensation Act bars an employee's claim for money damages under BIPA. *See Voss v. Lincoln Mall Mgmt. Co.*, 166 Ill. App. 3d 442, 448 (1st Dist. 1988) (explaining that interlocutory appeals are typically granted in cases that may either be "potentially long and expensive" or "involve 'controlling' questions of law as to which one possible resolution would necessarily dispose of the case"). Not only would answers be case dispositive—because it is the potential for bet-the-company damages that is driving this litigation—but they would also provide much needed appellate guidance

FILED DATE: 9/12/2019 9:59 PM   2017CH11311

in the hundreds of currently pending BIPA class actions, the vast majority of which arise within the employment context.[5]

## CONCLUSION

If McDonald "suffered bodily injury in the form of mental anguish" by clocking in and out from work, as she contends (*see* Compl. at ¶36), then she cannot recover damages under BIPA because, under the Illinois Workers' Compensation Act, she has no "***statutory right*** to recover damages from the employer * * * for injuries incurred in the course of her employment." *See Richardson*, 250 Ill. App. 3d at 547 (emphasis added; internal quotation omitted); 820 ILCS § 305/5(a); 820 ILCS § 305/11. And not only does the plain language of the Illinois Workers' Compensation Act bar McDonald's request for damages, but so does a long line of Illinois Supreme Court precedent that broadly construes Workers' Compensation exclusivity and holds that an injury will be found to be "compensable under the Act" whenever it "aris[es] out of and in the course of the employment." *See Folta*, 2015 IL 118070 at ¶¶12, 18-30. In light of this plain statutory language and apposite Illinois Supreme Court precedent, Symphony respectfully requests reconsideration because the Court misapplied controlling law in ruling that McDonald could proceed on a statutory claim for damages against her employer for an injury arising during the course of her employment.

In the alternative, Symphony respectfully submits that the dismissal order involves questions of law as to which there is substantial ground for a difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation. Accordingly, Symphony requests that the Court certify the two questions it proposes for immediate appeal pursuant to Rule 308 and that the Court grant a corresponding stay of proceedings pending the resolution of those questions.

---

[5] According to *amicus* briefing submitted in *Rosenbach*, approximately **88%** of then-pending BIPA cases pertain to the employment context. (*See* Amicus Br. at 1, available at: https://epic.org/amicus/bipa/rosenbach/Rosenbach-v-Six-Flags-Restaurant-Law-Center-Amicus.pdf).

FILED DATE: 9/12/2019 9:59 PM   2017CH11311

## CERTIFICATE OF SERVICE

I, Joseph A. Donado, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing **DEFENDANT SYMPHONY BRONZEVILLE PARK LLC'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR RECONSIDERATION OR, ALTERNATIVELY, TO CERTIFY QUESTIONS FOR IMMEDIATE APPEAL UNDER ILLINOIS SUPREME COURT RULE 308** to be served upon the following by email on this 12th day of September 2019:

        Eli Wade-Scott
        EDELSON PC
        350 North LaSalle Street, 13th Floor
        Chicago, Illinois 60654
        T: (312) 589-6370
        F: (312) 589-6378

        /s/ Joseph A. Donado

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

McDonald )
Plaintiff(s), )
)
v. )
)
Symphony )
Defendant(s). )

Calendar 2

No. 2017 CH 11311

Judge Raymond W. Mitchell
Courtroom 2601

## HEARING ORDER

This cause coming on for entry of a hearing date on the Motion of

Movant, __Defendant Symphony_____ for

☐ 2-615 Dismissal  ☐ 2-619 Dismissal  ☐ Summary Judgment

☒ Other __Motion to Reconsider the Court's order of June 12, 2019__

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. The motion is set for hearing on __October 16__ at __11:30__

2. Each side will be allotted __10__ minutes to present oral argument.

Prior to the hearing, the judge will have read the briefs, underlying pleadings and all exhibits. The purpose of the hearing is to provide counsel an opportunity to point out the key facts and to summarize their principal contentions and supporting reasoning.

In presenting an oral argument, counsel should be mindful of the limitations inherent in an oral communication of short duration. Oral argument is ordinarily not a suitable medium for a detailed recital of the facts or a painstaking analysis and dissection of authorities. These are matters best left to the briefs.

3. Other_____

Name __The Court_____

Email_____

Telephone_____

Atty. For Party_____

Atty. No._____

**ENTER:** Judge Raymond W. Mitchell

SEP 2 5 2019

Circuit Court – 1992

_____

Judge Raymond W. Mitchell, No. 1992

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

McDONALD
_____
Plaintiff(s),

v.

SYMPHONY BRONZEVILLE
_____
Defendant(s). PARK LLC
ET AL

Calendar 2

No. _2017 CH 11311_

Judge Raymond W. Mitchell
Courtroom 2601

**BRIEFING SCHEDULE ORDER**

This cause coming on for entry of a briefing schedule on the Motion of

Movant(s), _____DEFENDANT SYMPHONY BRONZEVILLE'S___ for

☐ 2-615 Dismissal ☐ 2-619 Dismissal ☐ Summary Judgment
☒ Other _TO RECONSIDER OR ALTERNATIVELY TO_
IT IS HEREBY ORDERED AS FOLLOWS: _CERTIFY QUESTIONS FOR IMMEDIATE APPEAL_

1. _____ Movant's Brief is due on _____, 20____.

2. _____ Response Brief is due on _____, 20____.

3. _____ Reply Brief is due on _____, 20____.

4. Courtesy copies are due on the same day as the Reply Brief.

5. No motion, movant's brief or response brief shall exceed _fifteen (15) double-spaced pages with 12 pt. font and 1 inch margins_ (exclusive of exhibits). No reply brief shall exceed _seven (7) pages._ Oversized briefs are disfavored and require leave of court. No surreplies will be permitted.

6. The matter is set for Ruling on _____ at 10:00 a.m. Please note that your motion may be decided on the briefs. If after reviewing the briefing, the judge determines that a hearing would be helpful, the Court will set a hearing date in consultation with counsel. Unless otherwise ordered, counsel need not appear on a Ruling Date.

7. Other _THE MOTION IS TAKEN UNDER ADVISEMENT_
_AND THE COURT WILL RULE IN WRITING._

Name _J. Dorado_

Email _jdonado@srydorth.com_

Telephone _312 460 5600_

Atty. For Party _DEFENDANT_

Atty. No. _90247_

ENTER:

_[signature]_

OCT - 9 2019

Judge Raymond W. Mitchell, No. 1992

_Please See Explanatory Notes On Reverse Side_

# <u>STATUTES INVOLVED</u>

**820 ILCS § 305/5(a)**

**Sec. 5. Damages; minors; third-party liability.** (a) Except as provided in Section 1.2, no common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization that is wholly owned by the employer, his insurer or his broker and that provides safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury. * * *

**820 ILCS § 305/11**

**Sec. 11. Measure of responsibility.** Except as provided in Section 1.2, the compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer engaged in any of the enterprises or businesses enumerated in Section 3 of this Act, or of any employer who is not engaged in any such enterprises or businesses, but who has elected to provide and pay compensation for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this Act, and whose election to continue under this Act, has not been nullified by any action of his employees as provided for in this Act. * * *

2020 IL App (1st) 192398
Opinion filed: September 18, 2020

FIRST DISTRICT
FIFTH DIVISION

No. 1-19-2398

| | | |
|---|---|---|
| MARQUITA McDONALD, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of Cook County. |
|     Plaintiff-Appellee, | ) ) | No. 2017 CH 11311 |
| v. | ) ) | Honorable |
| SYMPHONY BRONZEVILLE PARK LLC, an Illinois Limited Liability Company; SYMCARE HEALTHCARE LLC, an Illinois Limited Liability Company; and SYMCARE HMG, LLC, an Illinois Limited Liability Company, | ) ) ) ) ) ) | Raymond W. Mitchell, Judge, presiding. |
|     Defendants | ) ) | |
| (Symphony Bronzeville Park, LLC, Defendant-Appellant). | ) | |

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Hoffman concurred in the judgment and opinion.

## OPINION

¶ 1    In this interlocutory appeal, brought pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019), we consider the following certified question: "Do[ ] the exclusivity provisions of the Workers' Compensation Act bar a claim for statutory damages under [the Biometric Information Privacy Act] where an employer is alleged to have violated an employee's statutory privacy rights under [the Biometric Information Privacy Act]?" We answer the certified question in the negative.

¶ 2    In August 2017, plaintiff-appellee, Marquita McDonald, filed this class action lawsuit against defendant-appellant, Symphony Bronzeville Park, LLC, an Illinois limited liability company (Bronzeville), and Symphony Healthcare LLC, an Illinois limited liability company. Therein, McDonald generally alleged that she was employed by Bronzeville from December 2016

No. 1-19-2398

to February 2017. She further alleged that she was required by her employer to provide biometric information by scanning her fingerprint for the purpose of utilizing a fingerprint-based time clock system implemented by defendants, as were the other members of a proposed class of defendants' employees.

¶ 3     The complaint further alleged that defendants had violated—and continued to violate— various statutory requirements of the Biometric Information Privacy Act (Privacy Act) (740 ILCS 14/1 *et seq.* (West 2018)) by negligently collecting this biometric information from McDonald and the members of a proposed class of defendants' employees without properly (1) informing the employees in advance and in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used; (2) providing a publicly available retention schedule and guidelines for permanently destroying the scanned fingerprints; and (3) obtaining a written release from the employees prior to the collection of their fingerprints. As such, the first count of the complaint sought, on behalf of McDonald and the proposed class members (1) injunctive and equitable relief requiring defendants to comply with the requirements of the Privacy Act, (2) liquidated, statutory damages of $1000 for each of defendants' negligent violations of the Privacy Act, and (3) statutory attorney fees and costs.

¶ 4     The second count of the complaint incorporated the foregoing allegations and set out a common law claim of negligence against defendants. Therein, defendants were alleged to have a duty of reasonable care to comply with the requirements of the Privacy Act or, alternatively, a heightened duty to do so as the employers of McDonald and the proposed class members. Contending that defendants had violated these duties, the complaint sought damages for the injuries resulting from this negligence in an amount to be determined at trial. Of note, in each count of the complaint it was alleged that as a result of defendants' wrongful conduct, McDonald had

No. 1-19-2398

suffered and continued to suffer "mental anguish and mental injury" in that she "experiences mental anguish when thinking about what would happen to her biometric identifiers or information if Defendants' went bankrupt, whether Defendant will ever delete her biometric identifiers or information, and whether (and to whom) Defendants share her biometric identifiers or information."

¶ 5    Defendants filed motions to dismiss the class action complaint. Among the arguments raised by defendants was an assertion that any claims made by McDonald on her own behalf or on behalf of any of defendants' other employees would be barred by the exclusivity provisions of the Workers' Compensation Act (Compensation Act) (820 ILCS 305/1 *et seq.* (West 2018)).

¶ 6    In response, McDonald was granted leave to file an amended complaint in which she (1) removed Symphony Healthcare LLC as a defendant and added as defendants two related entities, Symcare Healthcare LLC, an Illinois limited liability company, and Symcare HMG LLC, an Illinois limited liability company; (2) withdrew the common law negligence claim; and (3) removed any allegation that McDonald suffered mental anguish as a result of defendants' purported violations of the Privacy Act. The operative, amended complaint also specifically sought recovery of liquidated damages under the Privacy Act, not any actual damages.

¶ 7    After full briefing by the parties, the circuit court denied the motions to dismiss the amended complaint in a written order entered June 17, 2019. Therein, and as relevant here, the circuit court rejected the assertion the Compensation Act preempted any claims by an employee against an employer under the Privacy Act. Bronzeville thereafter filed a motion seeking reconsideration of that conclusion or, alternatively, certification for immediate appeal of two questions regarding this conclusion pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019). In a written order entered on October 29, 2019, the circuit court denied the motion to

- 3 -

No. 1-19-2398

reconsider but certified the following question for interlocutory appeal: "Do[ ] the exclusivity provisions of the Workers' Compensation Act bar a claim for statutory damages under [the Privacy Act] where an employer is alleged to have violated an employee's statutory privacy rights under [the Privacy Act]?" The circuit court also stayed the proceedings before it, pending resolution of the certified question in the appellate court.

¶ 8     Bronzeville sought leave to appeal in November 2019, and this court granted such leave in December 2019. Thereafter, we allowed a group of businesses facing similar class action lawsuits by employees in the circuit courts, collectively referred to as the "Affected Illinois Employers," to file a brief as *amicus curiae* on behalf of Bronzeville.

¶ 9     Rule 308 provides in relevant part:

> "When the trial court, in making an interlocutory order not otherwise appealable, finds that the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the court shall so state in writing, identifying the question of law involved. Such a statement may be made at the time of the entry of the order or thereafter on the court's own motion or on motion of any party. The Appellate Court may thereupon in its discretion allow an appeal from the order." Ill. S. Ct. R. 308(a) (eff. Oct. 1, 2019).

¶ 10     "The scope of review in an interlocutory appeal brought under Rule 308 is limited to the certified question." *Wesly v. National Hemophilia Foundation*, 2020 IL App (3d) 170569, ¶ 8. As such, certified questions "must not seek an application of the law to the facts of a specific case." *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21; *Coldwater v. Village of Elwood*, 2020 IL App (3d) 190247, ¶ 13 ("Our review is strictly limited to the certified question, rather than the

No. 1-19-2398

propriety of the parties' underlying claims."). As such, and "[b]y definition, certified questions are questions of law subject to *de novo* review." *Rozsavolgyi*, 2017 IL 121048, ¶ 21.[1]

¶ 11    In addition, answering the certified question will necessarily require us to engage in the statutory construction of the two acts in question.

> "The fundamental rule of statutory construction is to ascertain and effectuate the legislature's intent. [Citation.] The most reliable indicator of the legislative intent is the language of the statute itself, which must be given its plain and ordinary meaning. [Citation.] Where the language is clear and unambiguous, a court may not depart from the plain language by reading into the statute exceptions, limitations, or conditions that the legislature did not express." *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 16.

The construction of a statute is also a question of law that is reviewed *de novo*. *Id.*

¶ 12    The Privacy Act was enacted in 2008 to help regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g) (West 2018). The Privacy Act defines "biometric identifier" to mean "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *Id.* § 10. "Biometric information" means "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.*

¶ 13    Section 15 of the Privacy Act (*id.* § 15) imposes various obligations upon private entities with respect to the collection, retention, disclosure, and destruction of biometric identifiers and

---

[1]For this reason, we ignore those portions of the briefs before us in which the arguments are based upon the specific allegations made in either McDonald's original or amended complaint. Such issues are simply irrelevant to the question of law presented in the certified question.

No. 1-19-2398

biometric information. These include the following:

> "(b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

>> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

>> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

>> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative." *Id.* § 15(b).

¶ 14 The obligations imposed upon private entities are enforceable through private rights of action. Specifically, section 20 of the Privacy Act provides that "[a]ny person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party." *Id.* § 20. Section 20 further provides:

> "[a] prevailing party may recover for each violation:

>> (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;

>> (2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater;

        (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and

        (4) other relief, including an injunction, as the State or federal court may deem appropriate." *Id.*

Notably, no "additional consequences need be pleaded or proved. The violation, in itself, is sufficient to support the individual's or customer's statutory cause of action." *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 33.

¶ 15    This is an important point, as we note again that the certified question specifically asks us to consider the applicability of the Compensation Act's exclusivity provisions to a claim against an employer by its employee for "statutory damages" resulting from a violation of an employee's statutory privacy rights under the Privacy Act. We take this to refer to a claim for the liquidated damages provided for in in the statutory text cited above and which were actually sought in the amended complaint below, not to a claim for any greater amount of "actual damages" that, while available under the Privacy Act, were not sought below. See 740 ILCS 14/20 (West 2018).

¶ 16    Considering that the scope of our review is limited to the specific legal question presented (*supra* ¶ 10), we cannot and do not consider the applicability of the Compensation Act's exclusivity provisions to any specific claim against an employer by its employee for "actual damages" resulting from a violation of an employee's statutory privacy rights under the Privacy Act. To do so would improperly expand the scope of the certified question and would call for "an application of the law to the facts of a specific case." *Rozsavolgyi*, 2017 IL 121048, ¶ 21. Thus, whether and under what specific circumstances the Compensation Act would preempt such a claim is simply not a question before this court, and we express no opinion on the matter.

¶ 17    Turning to the Compensation Act, we note that in general terms it "substitutes an entirely

No. 1-19-2398

new system of rights, remedies, and procedure for all previously existing common law rights and liabilities between employers and employees subject to the [Compensation] Act for accidental injuries or death of employees arising out of and in the course of the employment." *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 180 (1978). Pursuant to the statutory scheme implemented by the Compensation Act, the employee gave up his rights to sue in court, but recovery for injuries arising out of and in the course of his employment became automatic. *Id.* The employer was compelled to pay, but his liability became fixed under a strict and comprehensive statutory scheme and was not subjected to the sympathies of jurors whose compassion for fellow employees often led to high recovery. *Id.* "This trade-off between employer and employee promoted the fundamental purpose of the [Compensation] Act, which was to afford protection to employees by providing them with prompt and equitable compensation for their injuries." *Id.* at 180-81.

¶ 18    With respect to the protections provided for employers, the Compensation Act specifically states that

> "[n]o common law or statutory right to recover damages from the employer *** is available
> to any employee who is covered by the provisions of this Act, to any one wholly or partially
> dependent upon him, the legal representatives of his estate, or any one otherwise entitled
> to recover damages for such injury." 820 ILCS 305/5(a) (West 2018).

The Compensation Act also provides that "[t]he compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer engaged in any of the enterprises or businesses enumerated in Section 3 of this Act." *Id.* § 11. Considering these two "exclusivity provisions," our supreme court "has indicated that the [Compensation Act] generally provides the exclusive means by which an employee can recover against an employer for a work-related injury." *Folta v. Ferro Engineering*, 2015 IL 118070, ¶ 14.

- 8 -

No. 1-19-2398

¶ 19    "However, an employee can escape the exclusivity provisions of the [Compensation] Act if the employee establishes that the injury (1) was not accidental; (2) did not arise from his employment; (3) was not received during the course of employment; or (4) was not compensable under the [Compensation] Act." *Id.* Obviously, any claim for an *intentional* violation under section 20(2) of the Privacy Act (740 ILCS 14/20(2) (West 2018)) would clearly fall under the first exception and would therefore not be preempted by the Compensation Act. However, it is under the fourth exception to the exclusivity provisions of the Compensation Act, compensability, that we resolve the entirety of the certified question before us.

¶ 20    As our supreme court itself has acknowledged, it "has had limited opportunity to address what we originally meant *** when we used the phrase 'not compensable' to carve out a category of injuries for which the exclusive remedy provision would not be applicable." *Folta*, 2015 IL 118070, ¶ 17. The court's jurisprudence on the matter is largely contained in a handful of decisions. See, *Pathfinder Co. v. Industrial Comm'n*, 62 Ill. 2d 556 (1976); *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229 (1980); *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455 (1990); *Folta*, 2015 IL 118070.

¶ 21    In *Folta*, 2015 IL 118070, ¶ 1, our supreme court's most recent opportunity to address this issue, the court found an employee's negligence action against his employer was barred by the exclusive remedy provisions of the Compensation Act, even when the employee's injury first manifested after the expiration of certain statute of limitations contained therein.[2] In summarizing the development of the compensability exception, the court stated:

---

[2]The *Folta* decision also considered the same question with respect to the Workers' Occupational Diseases Act (820 ILCS 310/1 *et seq.* (West 2010)), an act not at issue here. See *Folta*, 2015 IL 118070, ¶ 1. However, as the court noted in *Folta*, the corresponding exclusivity provisions in the two acts "have been viewed analogously for purposes of judicial construction." *Id.* ¶ 13.

"In *Pathfinder* ***, an employee brought a claim for disability benefits under the [Compensation] Act as a result of the severe emotional shock she suffered after assisting a coemployee whose hand was severed in a machine. The court held that 'a psychological disability is not of itself noncompensable under the Workmen's Compensation Act.' [Citation.] The court reasoned that this type of injury was within the concept of how we defined an accidental injury. The court found that the term 'accident' was defined broadly and included anything that happened 'without design or an event which is unforeseen by the person to whom it happens.' [Citation.] Therefore, the court concluded that an employee who suffered a sudden, severe emotional shock after witnessing the injury of a coemployee had suffered an accident within the meaning of the [Compensation] Act, even though the employee sustained no physical trauma or injury. [Citation.] Thus, the workers' compensation claim could proceed.

Thereafter, in *Collier*, the court was asked to consider whether an employee could bring a common-law action to recover for the emotional distress arising from an employer's conduct in failing to provide medical assistance after he suffered a heart attack. In addressing whether the employee could escape the bar of the exclusivity provisions, the court set out four categories, without citation, including consideration of whether the injury was 'compensable' under the [Compensation] Act. [Citation.] The court merely relied on the decision in *Pathfinder* to find that emotional distress was 'compensable' under the [Compensation] Act and, therefore, a claim for emotional damages could not escape the bar of the exclusivity provisions. [Citation.]

Lastly, in *Meerbrey*, the court considered whether emotional distress suffered as a consequence of false imprisonment, false arrest, or malicious prosecution was

'compensable' under the [Compensation] Act. Although the court recognized that some jurisdictions had held that the type of emotional injuries suffered as a result of being falsely imprisoned were not the type of 'personal injury' covered by workers' compensation laws, the court found they were compensable where the employee failed to differentiate the type of emotional injuries from those suffered in *Pathfinder* and *Collier*. [Citation.]

Thus, *Pathfinder*, *Collier* and *Meerbrey* stand for the proposition that whether an injury is compensable is related to whether the type of injury categorically fits within the purview of the [Compensation] Act. These cases do not stand for the proposition that whether an injury is compensable is defined by whether there is an ability to recover benefits for a particular injury sustained by an employee." *Id.* ¶¶ 20-23.

The *Folta* decision went on to stress that it is only where "the injury is the type of work-related injury within the purview of the [Compensation Act]" that an employer's liability is governed exclusively by the provisions of that act. *Id.* ¶ 36.

¶ 22    We are not aware of a single Illinois appellate decision, regardless of the context, applying or expanding upon *Folta*'s relatively new characterization of "compensability" under the Compensation Act as being a question of "whether an injury is compensable is related to whether the type of injury categorically fits within the purview of the [Compensation] Act." *Id.* ¶ 23. Nor are we aware of any Illinois appellate decision applying this definition of the compensability standard to the question of whether the Compensation Act preempts a claim by an employee against an employer for liquidated damages under the Privacy Act. However, we do agree with the following observation from a federal court considering the issue: "the *Folta* court made clear that this inquiry is broader than just whether an injury arises out of and in the course of employment and does, to some extent, consider the character of the injury." *Treadwell v. Power Solutions*

No. 1-19-2398

*International, Inc.*, 427 F. Supp. 3d 984, 992 (N.D. Ill. 2019).

¶ 23    Regarding the "character of the injury" at issue here, we note that in discussing the availability of a claim for liquidated damages by an individual "aggrieved" by a violation of the Privacy Act, our supreme court has indicated that a "person who suffers actual damages as the result of the violation of his or her rights would meet this definition of course, but sustaining such damages is not necessary to qualify as 'aggrieved.' " *Rosenbach*, 2019 IL 123186, ¶ 30.

> "Accordingly, when a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach. *** [S]uch a person or customer would clearly be 'aggrieved' within the meaning of section 20 of the [Privacy] Act [citation] and entitled to seek recovery under that provision. No additional consequences need be pleaded or proved. The violation, in itself, is sufficient to support the individual's or customer's statutory cause of action." *Id.* ¶ 33.

¶ 24    This is so, the court explained, because when a "private entity fails to adhere to the statutory procedures ***, 'the right of the individual to maintain [his or] her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized.' [Citation.] This is no mere 'technicality.' The injury is real and significant." *Id.* ¶ 34.

¶ 25    Furthermore, in discussing how allowing a claim without requiring any further actual damages furthered the Privacy Act's purpose of addressing the risks and problems associated with the improper compromise of an individual's biometric identifiers or biometric information, our supreme court has found:

> "The strategy adopted by the General Assembly through enactment of the [Privacy]

Act is to try to head off such problems before they occur. It does this in two ways. The first is by imposing safeguards to insure that individuals' and customers' privacy rights in their biometric identifiers and biometric information are properly honored and protected to begin with, before they are or can be compromised. The second is by subjecting private entities who fail to follow the statute's requirements to substantial potential liability, including liquidated damages, injunctions, attorney fees, and litigation expenses 'for each violation' of the law [citation] whether or not actual damages, beyond violation of the law's provisions, can be shown.

The second of these two aspects of the law is as integral to implementation of the legislature's objectives as the first. Other than the private right of action authorized in section 20 of the [Privacy] Act, no other enforcement mechanism is available. It is clear that the legislature intended for this provision to have substantial force. When private entities face liability for failure to comply with the law's requirements without requiring affected individuals or customers to show some injury beyond violation of their statutory rights, those entities have the strongest possible incentive to conform to the law and prevent problems before they occur and cannot be undone. Compliance should not be difficult; whatever expenses a business might incur to meet the law's requirements are likely to be insignificant compared to the substantial and irreversible harm that could result if biometric identifiers and information are not properly safeguarded; and the public welfare, security, and safety will be advanced. That is the point of the law. To require individuals to wait until they have sustained some compensable injury beyond violation of their statutory rights before they may seek recourse *** would be completely antithetical to the [Privacy] Act's preventative and deterrent purposes." *Id.* ¶¶ 36-37.

No. 1-19-2398

¶ 26    In contrast, and in considering the purview of the Compensation Act, we note again that the Compensation Act's provisions comprise a "trade-off between employer and employee promot[ing] the fundamental purpose of the [Compensation] Act, which [is] to afford protection to employees by providing them with prompt and equitable compensation for their injuries." *Kelsay*, 74 Ill. 2d at 180-81; *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 41 ("The main purpose of the [Compensation] Act is to provide financial protection for injured workers ***."); *Flynn v. Industrial Comm'n*, 211 Ill. 2d 546, 556 (2004) ("the Workers' Compensation Act is a remedial statute intended to provide financial protection for injured workers"). "The [Compensation] Act does not apply to anticipated future injuries, and an employee's rights under the [Compensation] Act accrue only at such time when a work-related injury occurs." *Wieseman v. Kienstra, Inc.*, 237 Ill. App. 3d 721, 724 (1992).

¶ 27    In light of the above discussion, we fail to see how a claim by an employee against an employer for liquidated damages under the Privacy Act—available without any further compensable actual damages being alleged or sustained and designed in part to have a preventative and deterrent effect—represents the type of injury that categorically fits within the purview of the Compensation Act, which is a remedial statute designed to provide financial protection for workers that have sustained an actual injury. As such, we conclude that the exclusivity provisions of the Compensation Act do not bar a claim for statutory, liquidated damages, where an employer is alleged to have violated an employee's statutory privacy rights under the Privacy Act, as such a claim is simply not compensable under the Compensation Act.

¶ 28    And, while no district of the Illinois Appellate Court has considered this particular issue, we note that several federal courts have generally done so and more generally concluded that the Compensation Act does not preempt a suit by an employee against an employer under the Privacy

No. 1-19-2398

Act. See *Snider v. Heartland Beef, Inc.*, No. 4:20-cv-04026-SLD-JEH, 2020 WL 4880163, at *5 (C.D. Ill. Aug. 14, 2020); *Lenoir v. Little Caesar Enterprises, Inc.*, No. 19-cv-1575, 2020 WL 4569695, at *4 (N.D. Ill. Aug. 7, 2020); *Cothron v. White Castle System, Inc.*, No. 19 CV 00382, 2020 WL 3250706, at *6 (N.D. Ill. June 16, 2020); *Peatry v. Bimbo Bakeries USA, Inc.*, No. 19 C 2942, 2020 WL 919202, at *6 (N.D. Ill. Feb. 26, 2020); *Treadwell*, 427 F. Supp. 3d at 992-93 (N.D. Ill. 2019); see also *Mintun v. Kenco Logistics Services LLC*, No. 19-2348, 2020 WL 1700328, at *2 (C.D. Ill. Apr. 7, 2020) (motion to stay a federal case, pending this court's resolution of the very case now before us, denied where "[w]ithout ruling on the question directly, the Court concludes it is unlikely that a state appellate court would rule that the [Compensation Act] preempts [the Privacy Act]"). In addition, we are aware that numerous circuit courts in this state have also generally considered this issue, and likewise appear to be unanimous in reaching the same general conclusion. See *Cothron*, 2020 WL 3250706, at *6 (citing cases).

¶ 29     For the foregoing reasons, we answer the certified question in the negative and remand this matter to the circuit court.

¶ 30     Certified question answered; cause remanded.

## No. 1-19-2398

| | |
|---|---|
| **Cite as:** | *McDonald v. Symphony Bronzeville Park LLC*, 2020 IL App (1st) 192398 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2017-CH-11311; the Hon. Raymond W. Mitchell, Judge, presiding. |
| **Attorneys for Appellant:** | Richard P. McArdle and Joseph A. Donado, of Seyfarth Shaw LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Ryan D. Andrews and J. Eli Wade-Scott, of Edelson PC, of Chicago, and J. Aaron Lawson, of Edelson PC, of San Francisco, California, for appellee. |
| ***Amicus Curiae*:** | David M. Schultz, Gretchen Harris Sperry, and John P. Ryan, of Hinshaw & Culbertson, LLP, of Chicago, for *amici curiae* Affected Illinois Employers. |



# SUPREME COURT OF ILLINOIS

SUPREME COURT BUILDING
200 East Capitol Avenue
SPRINGFIELD, ILLINOIS 62701-1721

CAROLYN TAFT GROSBOLL
Clerk of the Court

(217) 782-2035
TDD: (217) 524-8132

October 27, 2020

FIRST DISTRICT OFFICE
160 North LaSalle Street, 20th Floor
Chicago, IL 60601-3103
(312) 793-1332
TDD: (312) 793-6185

Joseph Aurelio Donado
Seyfarth Shaw, LLP
233 South Wacker Drive, Suite 8000
Chicago, IL 60606-6448

In re:    McDonald v. Symphony Bronzeville Park, LLC
          126511

Today the following order was entered in the captioned case:

Motion by Petitioner for an extension of time for filing a Petition for Leave to Appeal to and including October 30, 2020. <u>Allowed</u>.

Order entered by Justice Neville.

Very truly yours,

*Carolyn Taft Grosboll*

Clerk of the Supreme Court

cc:    Appellate Court, First District
       John Aaron Lawson
       Richard Patrick McArdle
       Ryan David Andrews