**Exhibit B**

IN THE CIRCUIT COURT OF THE
TWENTY-THIRD JUDICIAL CIRCUIT
DEKALB COUNTY, CHANCERY DIVISION


BRENT CAMERON, Individually,      )
and on behalf of all others       )
similarly situated,               )
                                  )
                                  )
        Plaintiffs,               )
                                  )
    vs.                           ) No. 2019-CH-000013
                                  )
                                  )
POLAR TECH INDUSTRIES, INC.,      )
and ADP LLC,                      )
                                  )
                                  )
        Defendants.               )


        TRANSCRIPT OF PROCEEDINGS at the

    hearing of the above-entitled cause before THE

    HONORABLE BRADLEY WALLER, Judge of said Court,

    in Room 300 of the Dekalb County Courthouse,

    133 West State Street, Sycamore, Illinois, on

    August 23, 2019, at the hour of 10:00 a.m.


REPORTED BY:  Nohemi Salazar-Pitts, CSR
LICENSE NO.:  084-4648

```
 1      APPEARANCES:

 2              STEPHAN ZOURAS, LLP, by
                MS. HALEY R. JENKINS and
 3              MR. RYAN F. STEPHAN
                100 N Riverside Plaza
 4              Suite 2150
                Chicago, Illinois  60606
 5              (312) 233-1550
                hjenkins@stephanzouras.com
 6              rstephan@stephanzouras.com

 7                      Appeared on behalf of the
                        Plaintiff and the Putative Class;
 8

 9              JENNER & BLOCK, LLP, by
                MR. DAVID C. LAYDEN
10              353 North Clark Street
                Chicago, Illinois  60654-3456
11              312.922.9350
                dlayden@jenner.com
12
                        Appeared on behalf of the
13                      Defendant ADP LLC;

14
                O'HAGAN MEYER, by
15              MR. THOMAS BOWERS
                One East Wacker Drive
16              Suite 3400
                Chicago, Illinois  60601
17              312.422.6100
                tbowers@ohaganmeyer.com
18

19                      Appeared on behalf of Defendant
                        Polar Tech Industries, Inc.
20

21

22

23

24
```

```
 1            THE COURT:  All right.

 2            THE CLERK:  Cameron v Polar Tech.

 3            THE COURT:  Do you want to stay there?

 4    You don't have to.

 5            MR. LAYDEN:  Whatever you prefer, your

 6    Honor.

 7            THE COURT:  As long as you speak up, I

 8    have no problem if you'd like to stay right there.

 9                 I'd like you to identify yourselves

10    from my left to my right, please.

11            MR. BOWERS:  Thomas Bowers on behalf of

12    Polar Tech.

13            MR. LAYDEN:  Good morning, your Honor.

14    David Layden on behalf of ADP.

15            MS. JENKINS:  Haley Jenkins on behalf of

16    the Plaintiffs.

17            MR. STEPHAN:  Good morning, Judge.  Ryan

18    Stephan on behalf of Plaintiffs.

19            THE COURT:  Did you have something you

20    wanted to tender to me?

21            MR. LAYDEN:  No, your Honor.  If you

22    prefer that we step up, we're happy to do it.

23    Whatever you'd like us to do.

24            THE COURT:  Whatever you guys want to do.
```

1   If you want to have a seat and argue from there,

2   that's perfectly fine.  All right?

3           So what's before the court is motions

4   to dismiss.  Polar Tech has brought a motion under

5   2-619.1, which, we all know, is a dual motion

6   including 615 and 619.  Essentially, their motion

7   is predicated under (a)(5) statute of limitations

8   issue as well as long as (a)(9), and then ADP has

9   filed a 2-615 motion.  There is joint response

10  filed by the Plaintiff.  There's respective

11  replies.  I have had the opportunity to review

12  everything.

13          Who would like to go first on the

14  Defendants' side?

15          MR. LAYDEN:  Your Honor --

16          THE COURT:  And you can have a seat, by

17  the way.  You don't have to stand.  Thank you.

18          MR. LAYDEN:  Your Honor, we flipped a

19  coin, and I will go first.

20          THE COURT:  All right.

21          MR. LAYDEN:  Your Honor, as -- and I will

22  obviously repeat a little bit just to try to

23  summarize the high points.  ADP's motion first, of

24  all directed, at the Section 15(b) claim of BIPA,

1  which is the portion of BIPA which requires that

2  an entity collecting biometric information covered

3  by the statute provide written notice and consent

4  and obtain written consent or written release.

5              Your Honor, the basis for our motion

6  is that the way that the plain language of the

7  statute is structured, you read the entire

8  statute, you focus on 15(b), is that 15(b) applies

9  only to the entity, we think, collecting the data.

10  This is not applied to any entity that is in

11  possession of the data.

12              And our position is in this case the

13  Plaintiff has alleged, and it's practically

14  Plaintiff's employer, Polar Tech, which actually

15  collected the data.  And obviously the employer

16  had control of the workplace, which required that

17  its employees use the biometric and therefore is

18  the collector.

19              We certainly, of course, as we

20  indicate, don't think it is a valid claim against

21  Polar Tech, but we do believe that if anyone is

22  subject to 15(b), it would be Polar Tech.  We

23  think that that is clear from the plain language

24  of statute.

1          It's also important, Judge, to focus

2     on the definition of "written release," which is

3     set forth in BIPA, which provides that a written

4     release in the context of employment is a release

5     executed as a condition of employment.

6          And we think, your Honor, that that

7     further affirms our reading of the statute, which

8     is that when you have an employer using biometric

9     technology in the workplace that is covered by the

10    statute, that it is the employer's job to obtain

11    and to provide written notice to get the consent.

12         Plaintiff's position as set forth in

13    their response is basically that any entity that

14    comes into possession of biometric data at any

15    point in time is subject to 15(b).  We don't think

16    that's right, your Honor, because, first of all,

17    it would serve to destroy the careful distinction

18    that the general assembly made in using words like

19    "collect" versus "possess."

20         If that's really what the legislature

21    intended, they would have just simply said "any

22    entity coming into possession of biometric data

23    needs to get notice and get consent."  That's not

24    what the legislation said, and we think that's

1   very important to recognize.

2           The Plaintiffs also focused on the

3   word "obtain," or actually it said the words

4   "otherwise obtain" at the end of 15(b), and

5   suggested that that's essentially just akin to

6   coming into possession.  We don't agree with them,

7   first of all, in line with what I just said, which

8   is that it would collapse the distinction that the

9   legislature made.

10          And second of all, the word

11  "otherwise obtain" comes at the end of a string of

12  other words, "capture," "collect," which all

13  involve, essentially, an active process of

14  obtaining information from the actual individual

15  who has the biometric data, and therefore we think

16  that it needs to be read consistently with that,

17  meaning an interaction with the person who has the

18  biometric data and the opportunity to give notice

19  and obtain release, if that is required.

20          And for all those reasons, we don't

21  believe that the 15(b) claim can stand.  And if

22  you look at the complaint, your Honor, it's pretty

23  clear that the specific allegations in the

24  complaint are that Polar Tech was the entity

1  collecting.

2              Certainly, the Plaintiff has included

3  some general allegations that each Defendant or

4  that Defendants actively collected.  But I think

5  if you look at the Plaintiff's theory of the case

6  is that Polar Tech used the clock in the workplace

7  to obtain the employees' biometric information and

8  then it was later, according to Plaintiffs,

9  disclosed to ADP, meaning that ADP was not

10  collecting; ADP was receiving it afterwards.

11  That's the theory that we believe is set forth in

12  the complaint.  And we believe that that

13  forecloses the Plaintiff from a pleading, a claim,

14  against ADP under Section 15(b).

15              We also would move to dismiss the

16  Section 15(a) claim, your Honor, and that is the

17  one that requires an entity in possession of

18  biometric information covered by the statute to

19  develop a written retention policy.

20              Your Honor, as we have set forth in

21  our brief, the Plaintiff had argued initially that

22  ADP violated it by not providing the policy to

23  Plaintiff.  That's not what the statute requires.

24  The Plaintiff seems to have now backed off a

1  little bit and said we have to have a policy.

2  And, your Honor, first of all, that's not what the

3  statute requires.  The statute actually has

4  different language.  It says you must develop,

5  which to us means plainly that when you come into

6  possession of biometric information, you then must

7  develop a policy.

8            And I think just to be clear here,

9  your Honor -- and we haven't raised a 619 motion,

10  so this may have to be a summary judgment issue if

11  we don't prevail today on this.  But ADP had a

12  biometric policy in effect in October 2017.  The

13  Plaintiff started working in early 2018, so there

14  is not going to be a Section 15(a) claim against

15  ADP unless the Plaintiff is going to challenge the

16  efficacy of the policy.  I don't understand them

17  doing so, but we may have to get to that.

18            So we think that the 15(a) claim

19  fails to state a claim because they just haven't

20  alleged that ADP violated that section of BIPA.

21            And then, your Honor, finally, that

22  leaves us with the alleged claim under 15(d),

23  which is the section of BIPA that deals with

24  disclosure/disseminations.  And here what we

1  really have is a very conclusory obligation.

2              In parts of their Complaint, the

3  Plaintiff alleges that Polar Tech has collected

4  and then disclosed to ADP.  But then they say,

5  well, ADP also disclosed to cloud storage

6  providers and other vendors.  It's actually not

7  true, but for purposes of their pleading, our

8  position is that they haven't pled that that's the

9  issue.

10         THE COURT:  Can I ask you a question?

11         MR. LAYDEN:  Certainly, your Honor.

12         THE COURT:  My understanding is that you

13  concede in your, I think it's your reply, I could

14  be wrong, that there was a -- it was transmitted

15  to a third-party storage provider.

16         MR. LAYDEN:  Your Honor, I don't think we

17  did, and if we did, we misspoke, and so I

18  apologize for that.  I can tell you also --

19         THE COURT:  I want to be accurate.

20         MR. LAYDEN:  Sure.  Of course.  I can

21  tell you, and I realize that we're stepping a

22  little bit outside pleadings, your Honor; but ADP

23  does not disclose or give data to anyone else.

24  The data -- any data that ADP gets stays at ADP.

1          Plaintiffs, obviously, are entitled

2    to allege that, but I just -- I'm telling you what

3    the facts will ultimately show.

4          THE COURT:  Just give me a moment because

5    I do not want to state something that is

6    inaccurate.

7          It must have been with the -- I

8    apologize.  It must have been what the Plaintiff

9    had alleged, because I'm looking at your reply and

10   I do not see it in here.  As a matter of fact, you

11   can test that.

12          So go ahead.

13          MR. LAYDEN:  Very well, your Honor.  So

14   basically the -- so putting aside what actually

15   happened, because I appreciate in the 615 motion,

16   you need to deal with the specific facts alleged.

17   We understand that.  There is no -- there are no

18   specific facts alleged as to a

19   disclosure/dissemination.

20          And even if -- this is obviously

21   assuming, because it's not true.  Even if they

22   could allege that ADP had disseminated it to a

23   cloud storage provider, our view is that is not a

24   disclosure/dissemination because -- for two

1  reasons:  A, the dictionary definition of

2  disclosure or disseminating would mean essentially

3  to reveal something.  It's to reveal to someone

4  who does not have a right to have it.

5           And the cloud storage provider simply

6  provided, essentially, an administrative service,

7  and it would be a significant expansion of BIPA to

8  say that any time a cloud storage provider is ever

9  provided data that there needs to be, essentially,

10  disclosure consent.

11           And, actually, taking Plaintiff's

12  theory to the actual logical conclusion, I think

13  they would say that 15(b) applies to cloud storage

14  providers.  So if anyone ever were to switch

15  storage providers, they would have to somehow get

16  back and go to all the people who they collected

17  data from and get that information including

18  former employees.  So I think it becomes one

19  whirlpool very, very quickly.

20           So, your Honor, we're not contending

21  that, you know -- as Plaintiff said that, you

22  know, that ADP could do whatever they want with

23  this data, but they can't give it to -- you know,

24  they can't sell it, they can't provide it to

1   people who -- for purposes other than what it has

2   been collected for.

3           But even assuming -- again, it's not

4   true, but even assuming ADP had used a cloud

5   storage provider, we don't believe that it

6   constitutes a disclosure or dissemination under

7   the statute.

8           As a matter of fact, it is in

9   Section 15(b) of the statute, a provision talks

10  about what happens when you transmit data and how

11  you have to deal with it when you transmit it, and

12  then if you transmit it, you're not allowed to

13  disclose it, which to us is further confirmation

14  that not every transmission of data to someone

15  else constitutes disclosure, because otherwise

16  that section doesn't make any sense.

17          So, your Honor, for those reasons --

18  and I'm obviously happy to answer any further

19  questions you have -- we don't believe that the

20  complaint alleges a sufficient claim under BIPA

21  against ADP, and we would ask that it be dismissed

22  with prejudice.

23          THE COURT:  And you're also moving to

24  dismiss the common law negligence count as well,

1  correct?

2       MR. LAYDEN:  Your Honor, we are.  And

3  obviously Plaintiff's counsel can address this.

4  I don't understand they're proceeding on that, at

5  least in other cases they have dropped that claim

6  post Rosenbach.  But we are -- to the extent they

7  are proceeding on that, we are, in fact, proposing

8  it for the reasons that we have said at this time.

9       THE COURT:  And you are also saying that

10  the statute of limitations issue which was raised

11  by the co-Defendant is premature at this point

12  because the named Plaintiff, whether you pick the

13  one-, two-, five-year statute of limitation, was

14  filed, even in the worst case, within the one-year

15  statute of limitations; is that correct.

16       MR. LAYDEN:  Your Honor, that is ADP's

17  view.  I don't want to step on Polar Tech's toes.

18       THE COURT:  I'm not -- no.  I'm the one

19  bringing it up, so you're not stepping on their

20  toes.

21       MR. LAYDEN:  You're right.  That is what

22  we believe to be the case.  But obviously Polar

23  Tech has a relationship with the Plaintiff, and

24  they are aware, obviously, of the facts relating

1    to his employment status.  So we are just not in

2    the position to say that, but based on the briefs,

3    that is what we believe.

4         THE COURT:  Okay.  Very good.

5              All right.  The way I'm going to

6    handle this is that I'm going to allow you to

7    respond to ADP, and then you get the last word on

8    your motion, and then we will move to Polar Tech.

9              You're up.

10        MS. JENKINS:  Thank you, your Honor.  ADP

11   is essentially claiming that only certain sections

12   of BIPA don't apply to it, but the plain language

13   of the statute makes clear that it applies to all

14   private entities that come into possession or that

15   obtained this data, and to private entities as

16   defined by the statute.

17        THE COURT:  Can I ask you this question?

18   What data is ADP actually acquiring?

19        MS. JENKINS:  Well, your Honor, ADP is

20   the manufacturer of the clock, the manufacturer of

21   the software, and is additionally supporting the

22   services, and they're obtaining whatever data that

23   clock is taking from the Plaintiff.  So when he

24   puts his fingerprint on the clock and it takes

1  that fingerprint data from him, that's the data

2  that they're obtaining.

3          THE COURT:  Okay.  But -- and I know a

4  little bit about this, I think, but, I mean,

5  there's different ways to obtain data.  So you can

6  have the data that I think is contemplated by the

7  statute which is that you have somebody's

8  biometric information in the form of a fingerprint

9  or a retina scan, et cetera, as defined, or you

10  can have data that -- I don't know if you're

11  familiar with the terminology of a hash function

12  where a hash function is essentially, as I have

13  always looked at it as, is it's kind of like

14  gibberish, it's encrypted, it's something that --

15  it's like, you know, your password.

16          So if you type in your password, you

17  know, "I love mom," the hash function recognizes

18  that, but it doesn't recognize it word-for-word.

19  So it seems to me it begs the first question:

20  What data, in your view, is ADP actually acquiring

21  from your client?

22          MS. JENKINS:  Well, your Honor, the first

23  part is that they may be acquiring his actual

24  biometric identifier, his actual fingerprint; but

1  the statute also contemplates biometric

2  information, which is any information derived from

3  that fingerprint.

4          So even if -- and I'm going to

5  anticipate ADP would argue that they're collecting

6  some encrypted mathematical template of his -- of

7  the fingerprint scan the Plaintiff puts on the

8  time clock.  But that is biometric information,

9  and that is data that they're collecting.

10          THE COURT:  So you think the statute is

11  broad enough to encompass and include encrypted or

12  hash functions?

13          MS. JENKINS:  I do.

14          THE COURT:  Go ahead.

15          MR. STEPHAN:  And, Judge, if I can add

16  one thing on that.

17          THE COURT:  Yes.

18          MR. STEPHAN:  And this is sort of how

19  computers work, right?  If you look at any image

20  on your computer, there are numbers behind it.

21  That's how the computers communicate.  So they

22  don't -- it's not like a hard copy fingerprint

23  that you would see at a police office.  So it's

24  how computers communicate, and we clearly believe

1    that's contemplated by the statute.

2         THE COURT:  But, to your point, they

3    communicate by use of digits, they communicate by

4    use of codes.  So, you know, you could look at the

5    data collected by virtue of the fingerprint or the

6    retina scan and have absolutely no idea what

7    you're looking at.

8         You believe that's contemplated by

9    the statute?

10        MR. STEPHAN:  Well, I don't believe that

11    your first part of that is necessarily accurate.

12    Anything that is encrypted can be unencrypted, and

13    oftentimes numbers represent other things.  So we

14    do feel like that is included by the statute and

15    we feel that it is under the definition of

16    biometric information covered by the statute.

17        THE COURT:  What section would you direct

18    my attention to, of the statute?

19        MS. JENKINS:  In Section 14/10 is the

20    definition of biometric information.

21        THE COURT:  So your position is

22    biometric -- the biometric identifier and the

23    biometric information, those two coupled together

24    would include encrypted/unencrypted, hash

1   functions, et cetera?

2          MS. JENKINS:  Yes.

3          THE COURT:  And your position would be

4   under biometric information means any information

5   regardless of how it's been captured, converted,

6   stored, or shared?

7          MS. JENKINS:  Exactly.

8          THE COURT:  Go ahead.  By the way, do you

9   have the case on that?

10          MS. JENKINS:  I'm sorry?

11          THE COURT:  Do you have a case or cases

12   on that?

13          MS. JENKINS:  Not yet.  It's still being

14   litigated.

15               But, your Honor --

16          THE COURT:  I don't ask questions I don't

17   know answers to, but ahead.

18          MS. JENKINS:  So, your Honor, I think one

19   of the important things to remember is that ADP

20   bases its entire business model on the fact that

21   it's collecting this data, sets out to collect

22   this data because it creates the time clocks that

23   do it and software that goes along with it.  It

24   integrates those programs into it's various HR and

1  payroll functions that it provides to various

2  employers, and it profits from all of this.

3          So to call them not a collector of

4  the data, we just think would simply inaccurate.

5  It's actually one of the biggest collectors of

6  this type of data, which means it should be the

7  most knowledgeable in this space, the most

8  experienced.  It's one of the most vulnerable if

9  attacked, and it's the most culpable here as well.

10  And yet they did nothing absolutely to comply with

11  BIPA.

12          We are at a Section 2-615 motion to

13  dismiss stage, and if you look simply at the

14  pleadings with respect to Section 15(a), we

15  allege, and ADP hasn't really disputed that they

16  possessed the Plaintiff's biometric data.

17          We alleged that they didn't have a

18  written publically available retention and

19  destruction policy, and if discovery bears out

20  that they might have produced that prior to the

21  Plaintiff's employment, so be it, but we are

22  talking about the allegations in the pleadings

23  right now; and under the pleadings and within the

24  boundaries of the complaint, we have properly

1  alleged a claim with respect to 15(a).

2          With respect to Section 15(b), we

3  have alleged, and they don't really dispute it,

4  that they failed to provide the requisite notice

5  under BIPA and they failed to obtain a written

6  release from our client, all before collecting his

7  biometric data.  Instead, they just want to write

8  themselves out of the statute, but as we stated

9  before, Section 15(b) applies uniformly to all

10  private entities that collect, capture, or

11  otherwise obtain this data.

12          THE COURT:  How would ADP have any sort

13  of privity or the ability to effectuate the

14  elements under B?  In other words, it talks about

15  that has to be obtained before the collection of

16  the data, correct?  So how would they be in a

17  position to do that?

18          MS. JENKINS:  They could easily implement

19  on their own device, you know, a pop-up screen

20  that comes up when the Plaintiff or another

21  individual first uses the device that says, you

22  know -- it has BIPA-compliant written disclosure

23  and asks for their written consent to do so.

24          They could also require their

1   customers, the employers, to include them on any

2   BIPA-complaint disclosure and a release that they

3   provide to their employees prior to collecting the

4   data.

5           There are a number of ways that they

6   could comply with the statute, but they have

7   chosen not to.  They then want the Court to

8   believe that collection rests only with the

9   employer, but this position just simply makes no

10  sense.

11          That would be like saying, when the

12  minister passes around the collection plate at

13  church, only the minister is collecting the money

14  and not the church, and we all know that that's

15  not true; and that's not how data works in our

16  day-to-day lives either.  It doesn't stay with the

17  initial collector.  No data that you provide to

18  one, you know, company or to one venue generally

19  stays with that.  It's disseminated across several

20  platforms and integrated into other platforms, as

21  ADP well knows.

22          And with respect, again, to

23  Section 15(d), we have alleged that they had

24  disclosed or disseminated the Plaintiff's

1    biometric data to third parties.  And the biggest

2    contention is that the conclusions -- or their

3    allegations are conclusory, but we can't be

4    expected to know at the pleading stage where

5    everything that they have disclosed has gone and

6    who it's gone to.

7              But we do know from our own

8    investigation and from our experience in this

9    field that the data is shared or at least able to

10   be accessed across a number of different platforms

11   by a number of different parties.

12             Again, if discovery bears out that an

13   allegation turns out not to be fruitful, that's an

14   issue for a different time.  Based on the

15   pleadings we have alleged that ADP violated

16   Section 15(d).  ADP also claims that Section 15(d)

17   requires some sort of public disclosure of

18   Plaintiff's data, but the plain text of BIPA does

19   not require that.  It just requires that it be

20   disseminated or disclosed to a third party.

21             You could disclose something to a

22   third party without making it known to the public

23   at large, which is what we have alleged that they

24   have done here.

1                 So, again, your Honor, I think it's

2      important to consider that we're still at the

3      pleading stage, and based on the allegations in

4      the Complaint the Plaintiff has properly alleged

5      the violations of Sections 15(a), (b), and (d) of

6      BIPA with respect to ADP.

7                 THE COURT:  Anything else?

8                 MS. JENKINS:  Not unless you have

9      questions.

10                 THE COURT:  Do you have anything?

11                 MR. STEPHAN:  No, Judge.  Thank you.

12                 THE COURT:  Okay.  You get the last word.

13      It's your motion.

14                 MR. LAYDEN:  Thank you, Judge.

15                 So just to re-respond, and

16      actually -- well, to your questions and also to

17      what Plaintiff's counsel said; first of all, the

18      way the technology works, there is no fingerprint

19      involved.  The scanning function essentially

20      measures -- it's much, much less precise than a

21      law enforcement fingerprint, so anything that you

22      may have seen on TV or what we think of as actual

23      fingerprints, it's not involved here.

24                 The scanning essentially measures a

1   few points on the fingertip, on a portion of the

2   fingertip.  It then creates this mathematical

3   template that your Honor referenced; it's

4   encrypted, it's just a series of hexadecimal

5   numbers.  That's all that it is.  There's no

6   fingerprint stored, there's no image of the

7   fingerprint stored.  It's just a series of

8   numbers.  So that's what we're dealing with here.

9            And, your Honor, we certainly

10   disagree, and I think I may have previewed this a

11   little bit in my opening remarks.  We don't

12   believe this technology is covered by the statute.

13   We do believe, though, that there probably is

14   going to be summary judgment issues as opposed to

15   a -- or maybe a trial issue as opposed to a motion

16   to dismiss issue.

17            So we're not at all conceding that

18   it's covered, and, your Honor, I think your

19   question goes to one of the key arguments we're to

20   be raising, which is it just simply isn't covered.

21            A couple of other points just to

22   respond to what Plaintiff's counsel said, it's

23   actually not true that ADP manufactures the

24   clocks.  ADP doesn't.  ADP buys the clocks from a

1　company called Kronos that actually manufactures

2　them.  And that's important, your Honor, because

3　it goes to something else that Ms. Jenkins said.

4　　　　　Your Honor asked whether -- how could

5　ADP have actually obtain, provide notice and get

6　consent, and that's obviously going to be focused

7　on our briefs.  And one of the suggestions that

8　Plaintiff's counsel has alleged is we could just

9　build it in the clock software.  Well, that's

10　impossible, your Honor.  We don't write the clock

11　software; it's Kronos software.

12　　　　　So you're essentially suggesting that

13　something that we buy from someone else, we should

14　somehow be required under BIPA to reprogram, which

15　we can't because we don't actually have the source

16　code to provide this onscreen notice.

17　　　　　And then the other suggestion Ms.

18　Jenkins made was that we could just rely upon the

19　customers to provide notice and get consent.

20　Well, actually, the problem with that, your Honor,

21　is that BIPA has these $1,000, $5,000 per item

22　penalties, and that's a significant risk to ask a

23　company like ADP to run because certainly we would

24　expect that all of our clients would comply with

1   the law in every instance.

2            But when we have the plaintiffs all

3   over this country who are filing these lawsuits by

4   the dozens and hundreds, and so basically for

5   their end, for their response that they make

6   repeatedly, well, you can't just rely upon someone

7   else to take care -- or just rely upon someone

8   else to just take care of any financial liability.

9   We don't think it's workable, and frankly it's not

10  what the statute says, your Honor.  The statute

11  says that -- it talks about a collector, it talks

12  about the companies that may become in possession.

13           And, your Honor, Ms. Jenkins' used an

14  interesting analogy, the minister with the

15  collection plate, which is not one I have heard

16  before, but I actually certainly think it is

17  pretty interesting.

18       THE COURT:  Well, we have ushers in my

19  church who pass the plate.

20       MR. LAYDEN:  Yeah, I was going to say

21  that, but I thought they were ushers, and the

22  minister is not going to have much to do with the

23  ushers just passing it around.

24           But I think actually the analogy

1   works a little bit better if you think about it

2   this way:  The minister, or the church, is Polar

3   Tech; the people passing around the collections

4   plate are the supervisors.  They are folks in

5   Polar Tech's facility who are in charge of making

6   sure its employees use these clocks to clock in

7   and out of work so they can be paid wages by Polar

8   Tech in connection with their employment of Polar

9   Tech.

10              I don't think it would be reasonable

11  for the Plaintiff to sue all those supervisors

12  individually and say that they were collecting,

13  and try to subject them to 1,000 liability.

14  Instead, I think that the way BIPA works is that

15  the entity that is actually collecting the data

16  for use in its business, which is the employer, is

17  the entity that is the collector, it's not the

18  supervisor, it's not someone like that.

19              So I think actually that analogy does

20  work if you just switch the entities out a little

21  bit.  I think that the ushers are the supervisors.

22              So, your Honor, I think for all those

23  reasons, you know, I think that the Plaintiff's

24  response doesn't really quite meet the arguments

1    that we made in the brief.  I think that this is a

2    situation where understandably they're really

3    trying to stretch BIPA way beyond its limits in

4    terms of who is covered by this, and I really

5    think that it just creates a real practical

6    problem.

7              We should not be construing laws in

8    ways that make it impractical or impossible for

9    entities to comply, particularly where you have

10   such a draconian penalty scheme in it.  And that's

11   really what they're asking for, and it's really

12   kind of a trap for companies like ADP which are

13   marketed for selling its clocks, providing its

14   services.

15             So for those reasons, we don't think

16   there's any basis to apply 15(b) to ADP, and I

17   don't think -- I think that my remarks on 15(a)

18   and 15(d), I think, can stand; and for those

19   reasons, your Honor, we would ask that you grant

20   our motion to dismiss the claims.  Thank you.

21             THE COURT:  Thank you.  This is a very

22   intriguing area for me.  I'm going to deal with

23   the simple thing first or simple count first.  I

24   did not see that the Plaintiff gave any sort of a

1   response to the, what I'll term the common law

2   negligence claim, but to make the record clear,

3   there is a statutory provision that I believe

4   predominates, and I'm going to dismiss the common

5   law negligence claim with prejudice under

6   619(a)(9).

7          The -- and that also addresses what

8   Polar Tech raised, but in any event, what's really

9   in play here is the statute, and the statute is

10  the Biometric Information Privacy Act found at

11  740 ILCS 14/1 at (c), and it addresses a number of

12  issues.

13         And what, however, is before me today

14  with respect to ADP is a 2-615 motion.  And as we

15  all know, 2-615 is the motion under the Code of

16  Civil Procedure that mandates that I look to the

17  four corners of the pleadings and the four corners

18  of the pleadings only, and that's what I have

19  done.

20         I'm admonished that I'm to construe

21  the complaint in the light most favorable to the

22  nonmoving party.  It's what I like to call the "so

23  what" motion.  So, what you have alleged does not

24  state a cause of action, in this case under the

1    statute that's before me.

2              So diving into this, the complaint --

3    we're going to start with, since both sides have

4    started with 15(b), I'm going to start there.

5    15(b) of the statute provides that no private

6    entity, and I really have not heard, nor did I see

7    in any of the briefs, if you will, there's no

8    dispute, there's no contest, there's no argument

9    that ADP is anything but a private entity.

10             No private entity may collect,

11   capture, purchase, receive through trade or

12   otherwise obtain a person's or a customer's

13   biometric identifier or biometric information

14   unless it first, so in other words, before, it

15   collects, captures, purchases, receives, or

16   otherwise obtains, it first must inform the

17   subject or the subject's legally authorized

18   representative in writing that a biometric

19   identifier or biometric information is being

20   collected or stored;

21             Two, informs the subject or the

22   subject's legally authorized representative in

23   writing of the specific purpose and length of term

24   for which a biometric identifier or biometric

1   information is being collected, stored, and used,

2   and receives a written release executed by the

3   subject of the biometric identifier or biometric

4   information or the subject's legally authorized

5   representative.

6            There's a definition of written

7   release, and that means informed written consent

8   or, in the context of employment, a release

9   executed by an employee as condition of

10  employment.  Although not really addressed in any

11  of the briefs, the issue of what is a -- or what's

12  the definition of a legally authorized

13  representative.  That's not set forth in the

14  statute.  Does that mean the employer?  There are

15  no cases that interpret that.

16            So I have to give effect to the plain

17  language of a statute.  I'm mandated by the

18  Appellate and Supreme Court to do that.  And the

19  best way is to look at the plain language and not

20  to excise out a particular section, but to read

21  the statute in its totality.

22            So it seems to me that trying to give

23  effect to the statute as a whole where a cause of

24  action would accrue would really be under 15(a),

1  (b), (c), (d), and (e), as to what, if you will, a

2  private entity can do with the data as defined in

3  the statute.  So to try to give effect to the

4  whole of the statute, it's this court's view that

5  15(b) only applies to an employer and not a third

6  party.

7              It seems to me that trying to give

8  effect to this, the information is, first and

9  foremost, it is a before, unless it first informs

10  the subject or the subject's legally authorized

11  representative.  And if I look at the pleading, it

12  seems to me that the intent of this section is for

13  an employer to be, if you will, responsible for

14  providing that information.  And I'm trying to

15  give effect to the definition of written release

16  in the employment context, and that by its plain

17  language states that.

18              So I always hate to be on the cutting

19  edge because that branch can get real thin real

20  quick, but unfortunately I don't see a case that

21  is directly on point interpreting this.  The

22  statute is fairly new, as we all know, but my view

23  is that it applies when it is an employment

24  situation, which is the allegation here, that it's

1  the employer's responsibility, not a third party,

2  and I'm going to grant the 2-615 motion with

3  respect to 15(b), with prejudice.

4          15(a) does not require that a private

5  entity provide an individual with anything.  It

6  is -- what it states specifically, for the record,

7  is that a private entity in possession of

8  biometric identifiers or biometric information

9  must develop a written policy made available to

10  the public establishing a retention schedule and

11  guidelines for permanently destroying biometric

12  identifiers and biometric information, and it goes

13  on.  I don't think I need to go any further.

14          But with respect to the pleadings, I

15  think there needs to be more specificity than just

16  a recitation of the statute.  But I don't think

17  the pleadings correctly or accurately state that,

18  and I'm directing everyone's attention to

19  paragraph 44, "Furthermore, each defendant fails

20  to provide employees," that's not required, but I

21  am certainly going to give, with respect to a

22  15(a) allegation, the Plaintiff the opportunity to

23  replead.  So the 615 motion will be granted,

24  however, it will be granted without prejudice.

1          15(d), this is interesting.  15(d)

2     provides that "no private entity in possession of

3     a biometric identifier or biometric information

4     may disclose, re-disclose or otherwise disseminate

5     a person's or a customer's biometric identifier or

6     biometric information, unless the subject of the

7     biometric identifier or biometric information or

8     the subject's legally authorized representative --

9     there is it is again" -- "consents to the

10    disclosure or re-disclosure, the disclosure or

11    re-disclosure completes a financial transaction

12    requested or authorized by the subject, the

13    biometric identifier, or the biometric

14    information, or the subject's legally authorized

15    representative --" it's not applicable here --

16    "the disclosure or re-disclosure is required by

17    State or Federal Law or municipal ordinance, or

18    the disclosure is required pursuant to a valid

19    warrant or subpoena issued by a court of competent

20    jurisdiction."

21          But what's in play here is no private

22    entity in possession of a biometric identifier or

23    biometric information may disclose re-disclose or

24    otherwise disseminate.  With respect to again, the

1    four corners of the pleadings, it seems to me that

2    there are not sufficient facts, there's not

3    sufficient specificity just to say it was

4    disclosed without more.

5              And, again, like I did under (a), I'm

6    going to grant the motion; however, it's going to

7    be without prejudice to replead.  And so that will

8    be the order of the Court with respect to ADP's

9    motion.

10             You're up.

11        MR. BOWERS:  Thank you, your Honor.  And

12   I apologize, I'm also getting over a cold, so I'll

13   do my best to speak up.

14        THE COURT:  No apologies necessary.

15             Go ahead.

16        MR. BOWERS:  So given the fact that your

17   Honor has already addressed Polar Tech's argument

18   with respect to Plaintiff's Common Law negligence

19   claim, I'll just start turn my attention to the

20   statute of limitations issue that's before you.

21             We filed a Section 619 motion with

22   respect to the statute of limitations --

23        THE COURT:  (a)(5)?

24        MR. BOWERS:  Correct, (a)(5)motion.

1          As your Honor is well aware, BIPA

2   does not contain an expressed statute of

3   limitations.  This is an area that's being

4   litigated amongst circuit courts across Illinois,

5   and these lawsuits continue to be filed by

6   plaintiffs' attorneys in Northern Illinois and

7   across the state.

8          It is Polar Tech's stance that a

9   one-year statute of limitations applies to

10  Mr. Cameron's BIPA claim because BIPA is a statute

11  that is concerned with the right of privacy and

12  the protection of privacy rights.

13          Alternatively, Polar Tech submits

14  that in the event a one-year statute of

15  limitations does not apply, a two-year statute of

16  limitations applies to limit any claims of the

17  Plaintiffs and/or the putative class to two years

18  arising two years before the date of filing the

19  complaint, which in this case would be August 7th

20  of 2016.

21          Based on the fact that the Illinois

22  Supreme Court's decision in Rosenbach v Six Flags

23  effectively transformed BIPA into not only a

24  strict liability statute, but also a penal

1   statute, as opposed to a remedial statute, as

2   Plaintiff asserts in his response brief.

3           With respect to Polar Tech's

4   assertion that a one-year statute of limitation

5   applies -- this falls under Section 13-201 of the

6   Code of Civil Procedure, a one-year statute of

7   limitation applies in the event that there is a

8   publication --

9         THE REPORTER:  Your Honor, I need him to

10  speak up.

11        THE COURT:  Can you speak up a little bit

12  for the court reporter.

13        MR. BOWERS:  Yes.  Sorry.

14          A one-year statute of limitation

15  applies to privacy claims in the event that there

16  is publication of the information that was, in

17  this case, purportedly collected, stored and, as

18  alleged in Plaintiff's, disseminated.

19        In Plaintiff's Complaint, there are

20  allegations that biometric data was not only

21  collected and stored, but also disseminated to

22  third parties, ADP, and, quote, "other unknown

23  third parties."

24         There is a case out of the First

1    District Appellate Court called Popko v

2    Continental Casualty Company.  That cite is 355

3    Ill. App. 3d 257.  It's a 2005 case out of the

4    First District.  In that case, an employee was

5    terminated from CNA Insurance, Continental

6    Casualty Insurance.

7                    After undergoing a performance review

8    in which he allegedly used profanity during this

9    performance review with his supervisor.  That

10   supervisor sent a memorandum to yet another

11   supervisor, a manager within the company, and the

12   plaintiff was ultimately terminated in that case.

13                   And in that case he brought a

14   defamation claim against his former employer, but

15   the focus of the court's opinion there was whether

16   or not there was publication.  And I bring this

17   particular case up, not for the defamation part of

18   the case, but to address the issue of publication.

19                   In that case, the court said that

20   there was publication solely by virtue of the fact

21   that information regarding the plaintiff's

22   performance review was transmitted by his

23   supervisor who was present at that performance

24   review to another individual within the company.

1  So in that case, an intra-office communication

2  from one individual to another, while not made

3  directly available to the public at large, can

4  constitute a publication.

5            And similarly here, that's what's

6  been alleged in Plaintiff's Complaint.  Plaintiff

7  has alleged that Polar Tech collected and stored

8  Mr. Cameron's biometric data by virtue of his

9  usage of providing scans of his finger on a time

10  clock system that was provided by ADP, and that

11  that information was then disseminated to a third

12  party, in this case ADP, and potentially to other

13  third parties.

14            BIPA itself is concerned with

15  publication, as seen in Section 15(c) and section

16  15(d).

17            THE COURT:  Can I stop and ask you a

18  question?

19            MR. BOWERS:  Sure.

20            THE COURT:  So the allegations in the

21  Complaint is that the Plaintiff was employed by

22  your client from February of 2018 until May of

23  2018, and this is a 619, so you admit all well

24  pled facts.  And this case was filed on 8/7 of

1  '18.  So would I be correct in assuming that what

2  you're directing my attention to would be the

3  class action component of this pleading?

4         MR. BOWERS:  That's correct.

5         THE COURT:  Go ahead.

6         MR. BOWERS:  So, yes, we are directing

7  your attention to the class action component for

8  this particular claim as opposed to Mr. Cameron's

9  actual dates of employment.  But as stated before,

10  BIPA does concern itself with publication in

11  Sections 15(c) and 15(d).

12         THE COURT:  But you would agree that, I

13  mean, the Complaint was filed even in the shortest

14  statute of limitation, which is a year that you're

15  asking me to consider, right?

16         MR. BOWERS:  Correct.

17         THE COURT:  Okay.  Go ahead.

18         MR. BOWERS:  I will concede the fact that

19  this complaint was filed within one year of

20  Mr. Cameron's employment.

21         THE COURT:  Okay.

22         MR. BOWERS:  But for purposes of the

23  class size, that will be determined down the road.

24  That's why I preface it now, because I don't want

1  to waive this argument later.

2      THE COURT:  I understand.

3      MR. BOWERS:  BIPA does prohibit parties

4  from selling and trading or profiting by

5  dissemination of a person's biometric data and

6  also prohibits parties from disclosing

7  re-disclosing, or otherwise disseminating an

8  individual's biometric data, and this signals the

9  Illinois General Assembly's intent to regulate

10  dissemination and, therefore, publication of an

11  individual's biometric data to third parties.

12      Again, publication is not required,

13  that this data be made available to the public at

14  large, or that could be made available to the

15  public at large, it requires that it's transmitted

16  to a third party.  Because Illinois takes a more

17  narrow view of what "publication" means as opposed

18  to other jurisdictions in this country.

19      So, accordingly, we submit that a

20  one-year statute of limitations applies to

21  Mr. Cameron's claim.

22      Alternatively, if the Court is

23  inclined that to opine that the one-year statute

24  of limitations does not apply, Polar Tech submits

1    that a two-year statute of limitations applies,

2    because Mr. Cameron seeks a statutory penalty in

3    its prayer for relief.

4              BIPA provides liquidated damages of

5    $1,000 per negligent violation, and $5,000 for

6    intention and/or reckless violation of the Act.

7              Plaintiff asserts that a five-year

8    statute of limitations applies to his claim

9    because BIPA does not contain an expressed statute

10   of limitations.  And while BIPA itself does not

11   contain a specific statute of limitations, unless

12   a rule to the contrary applies, then the five-year

13   statute of limitations, the catch-all provision,

14   applies.  And that's exactly what that is, a

15   catch-all, a backup, if nothing else applies.

16             Here alternatively, a two-year

17   statute of limitations would apply should the

18   one-year statute of limitations not apply, because

19   the Supreme Court's decision in Rosenbach v Six

20   Flags not only transforms BIPA into a strict

21   liability statute, it also rendered it into a

22   penal statute.

23             A statute is there for penal if it

24   imposes automatic liability or violation of its

1  own terms, if it sets forth a predetermined amount

2  of damages, and if it imposes liability without

3  actual damages suffered by the plaintiff.

4          In Rosenbach, the Supreme Court held

5  that the plaintiff did not need to allege actual

6  damages in order to bring a claim underneath the

7  umbrella of the statute.  That is exactly what

8  happened here.

9          Plaintiff then attempts to rebut my

10  argument by saying that BIPA addresses a societal

11  concern, in this case regulating an individual's

12  privacy and their biometric data, which, fine, I

13  will concede that it may have been an intent.  But

14  a statute can both be penal and serve remedial

15  purposes.

16          In Plaintiff's response, they bring

17  up the Telephone Consumer Protection Act, and

18  whether -- in the case called Lay, whether or not

19  that statute was remedial or penal.  And in that

20  case, the court noted that the TCPA were provided

21  for treble damages, which were separate from the

22  liquidated damages contained within the statute.

23  That's a distinguishing feature from BIPA.

24          BIPA does not contain such a

1  provision.  It provides solely liquidated damages.

2  It provides punitive and deterrent goals to

3  prevent abuse of individual -- collection of an

4  individual's biometric data.  It is

5  distinguishable from TCPA.

6              And in the event that a one-year

7  statute of limitations does not apply, because the

8  statute is penal in nature, it has deterrent and

9  punitive goals, it provides a predetermined amount

10  of damages, it imposes liability without regard

11  for actual damages as articulated by the Illinois

12  Supreme Court in Rosenbach, and it imposes

13  automatic liability for a violation of its own

14  terms, which the Illinois Supreme Court rendered

15  the statute into a strict liability statute

16  through Rosenbach.

17              This statute is penal in nature, not

18  remedial, and alternatively, a two-year statute of

19  limitations would apply to this lawsuit in

20  general, to BIPA claims in general.

21          THE COURT:  Anything else?

22          MR. BOWERS:  That's all I have.

23          THE COURT:  You will get the last word.

24          MS. JENKINS:  Thank you, your Honor.

1    We would first like to acknowledge we

2  do agree with the court.  This isn't properly at

3  issue right now.  The Plaintiff's claims were

4  filed within one year, so even assuming the short

5  statute of limitations, this complaint cannot be

6  dismissed on those grounds alone.

7    Instead, this is Defendant's improper

8  attempt to limit the class size, which it's more

9  properly handled by the motion for class

10  certification or potentially a summary judgment.

11  But regardless, as it's been noted, BIPA has no

12  self-contained statute of limitations, and

13  therefore, the statute of limitations provided by

14  735 ILCS 5/13-205, which is the default five-year

15  limitations period, should apply.

16

17

18    The one-year statute of limitations

19  does not apply here for two reasons.  First, while

20  we might allege that Plaintiff's privacy has been

21  denigrated by virtue of Polar Tech violations of

22  BIPA, the true nature of a potential liability

23  here stems from Polar Tech's violation of the

24  statute itself.  This is not an action for slander

1    or libel or publication of a matter violating the

2    right to privacy.

3                    The plain and unambiguous language of

4    Section 13-201, which provides the one-year

5    statute of limitations states that it applies to

6    actions for publication of a matter violating the

7    right to privacy, which is not what's being

8    alleged here.  The defendants in these cases can't

9    have it both ways saying that publication is a

10   necessary element for the statute of limitations,

11   but dissemination only takes place if it's made to

12   the public at large.

13                   The positions that have been taken,

14   and I understand that ADP and Polar Tech were

15   making separate arguments, but these types of

16   positions are inconsistent.  And further, the

17   plain and unambiguous language of BIPA doesn't

18   require us to allege publication, and therefore we

19   don't believe that BIPA falls within the one-year

20   statute of limitations period.

21                   Polar Tech, alternatively declares

22   that the two-year statute applies because it

23   thinks that BIPA is a penal statute; but penal

24   statutes impose automatic liability, which BIPA

1    does not.  It sets forth a predetermined amount of

2    damages, and BIPA does contain statutory damages

3    in the event that Plaintiff doesn't recover their

4    actual damages.

5              They also claim that BIPA imposes

6    damages without regard to the actual damages

7    suffered by the Plaintiff, but that's simply not

8    true.  If you read the statute, Section 14/20

9    provides that a plaintiff can recover actual

10   damages or statutory damages, whichever is

11   greater, and, therefore, BIPA is not a penal

12   statute.

13             It is analogous to the Telephone

14   Consumer Protection Act, or TCPA, which provides

15   that a plaintiff can recover actual damages or

16   $500 per each violation, whichever is greater.

17   The language is almost the same as the language in

18   BIPA.

19             And as the Illinois Supreme Court

20   recognized in Standard Mutual Insurance Company v

21   Lay, the TCPA is not a penal statute with that

22   identical statutory language, and therefore BIPA

23   shouldn't be considered one either.

24             Rosenbach didn't make BIPA a penal

1   statute.  It again reiterates that a plaintiff

2   could recover actual damages if they properly pled

3   and proved them or statutory damages.  And they

4   don't need to allege actual damages because the

5   statute provides statutory damages.  Therefore,

6   only the five-year statute of limitations remains.

7                And furthermore, Judge, no case or

8   court or judge has considered this issue, directly

9   or indirectly has adopted the Defendant's

10  position.  Every court that has considered this

11  issue has ruled in favor of the five-year statute

12  of limitations.  And I recognize that none of

13  those cases are binding on this court, but we do

14  think that they're persuasive in holding that

15  several judges across both the country and the

16  state have held that the five-year statute of

17  limitations applies.

18                And we filed with the court a notice

19  of supplemental authority.  The case Robertson v

20  Hostmark Hospitality Group, which I have copy of

21  if you need it today; and in that case Judge Cohen

22  in Cook County also held that the one-year and

23  two-year statute of limitations do not apply for

24  the reasons we have articulated, and agreed that

1    the five-year statute of limitations period is not

2    applicable here.

3            Other cases, in ruling on motions for

4    class certification, have held that the five-year

5    statute of statute of limitations period is

6    applicable with respect to the class size, and

7    those cases are Alvarado v International Laser

8    Production Inc., Case No. 18-cv-07756 in the

9    Northern District of Illinois decided on June 19

10   of 2019; Roberson v Symphony Post Acute Network,

11   Case No. 17-L-733 in the Circuit Court of St.

12   Clair County, in March of 2019; and the Facebook

13   Biometric Privacy Litigation case pending in the

14   Northern District of California, which was

15   determined and decided in April of 2018.

16           And for these reasons, we believe

17   that the five-year statute of limitations period

18   is the one that applies to BIPA and not this

19   shorter one or two-year periods.

20           THE COURT:  Thank you.

21           Last word.

22       MR. BOWERS:  Your Honor, just a couple of

23   things to address, and I'll do my best to make

24   this quick.

1          First, Ms. Jenkins has stated earlier

2     that the allegations contained in this complaint

3     focused on the violation of the statute based on

4     the collection of biometric data.  They have also

5     alleged that this data was disseminated to third

6     parties, and BIPA itself expressly prohibits

7     dissemination and publication of data to third

8     parties.

9          That is part of the violation of

10    BIPA.  There are multiple ways to violate the

11    statute:  By profiting, by collecting, by

12    capturing, by storing, by disseminating, by

13    publishing.

14         Publishing and collecting were both

15    alleged in this complaint.  BIPA expressly

16    prohibits publishing and disseminating biometric

17    data to third party.  That was what was alleged in

18    this complaint.  So, accordingly, we would submit

19    that a one-year statute of limitations does apply

20    to this claim.

21         Secondly, with respect to the

22    argument of the two-year statute of limitations,

23    as I have stated before, this statute does contain

24    express liquidated damages based on the type of

1 violation of the statute.  It imposes liability

2 automatically for violation of its terms based

3 upon a plain reading and interpretation of the

4 Illinois Supreme Court's decision in Rosenbach.

5 This statute has been transformed

6 into a strict liability statute, and it has been

7 transformed into a penal statute, and

8 alternatively, a two-year statute of limitations

9 should apply to a BIPA claim.

10 And, finally, I'll just bring up the

11 authority, the supplemental authority that

12 Ms. Jenkins has just brought to your attention.

13 None of these cases are -- none of these decisions

14 are binding on this court.  We have a decision out

15 of the Northern District of Illinois, at a

16 St. Clair County, and out of the Northern District

17 of California.  None of those cases, none of those

18 decisions are a binding precedent on this court.

19 And so accordingly, Polar Tech

20 submits that those decisions should be disregarded

21 as they are not binding on this court.

22 THE COURT:  Thank you.

23 Excellent job.  But as I thought

24 through this, it seems to me that this is

1   premature.  I don't have before me anything more

2   than the complaint which pertains to the named

3   Plaintiff.  I understand why you did what you did.

4   You want to preserve this.  It is preserved.  But

5   I'm going to enter and continue my decision on

6   that until, I don't know, class certification,

7   summary judgment.

8            But certainly, in my view, the record

9   needs to be developed much more than it is, but

10  Polar Tech is in no way, shape, or form

11  prejudiced, precluded, foreclosed from addressing

12  this as we get further down the road.  So I am not

13  ruling on this.  I'll enter and continue the issue

14  for a later date.

15           That being said, how much time does

16  Plaintiff need to replead on the Counts or the

17  sections that I left up?

18       MS. JENKINS:  30 days, your Honor, if

19  that's okay with you.

20       THE COURT:  That's reasonable.  Here's

21  the offer that I will make.  Okay?  I know this is

22  isn't the only file on your respective desks.  I

23  don't believe in bringing back attorneys unless

24  we're going to accomplish something of substance,

1   so I will throw this out.

2               I don't know what your respective

3   thoughts are, obviously, because you haven't seen

4   the amended pleading, but I'm affording you ample

5   opportunity to decide whether you're going to file

6   a motion to dismiss; I'm willing to do that.

7               You're all excellent lawyers.  You

8   can work out a briefing schedule.  I can give you

9   an outside date right now for a hearing date.  If

10  it ends up being that you file an answer, we could

11  just use that as a status date on discovery, et

12  cetera.

13              Would you like to take me up on my

14  offer.

15        MR. LAYDEN:  It's certainly fine with

16  ADP, your Honor.

17        THE COURT:  Why don't we kick this out

18  for status/argument.  How about if we go to the

19  beginning of December?  That gives each side a

20  full opportunity to work out a briefing schedule,

21  with the caveat that I get courtesy copies one

22  week before, but I'll just throw out arbitrarily

23  Wednesday, December 4th at 10:00 for argument or

24  status.

1          MR. LAYDEN:  Your Honor, that day is not

2    terrific for me.  Any other day that week is fine.

3          THE COURT:  December the 6th?  That's a

4    Friday at 10:00.

5          MR. STEPHAN:  Judge, can we suggest maybe

6    pushing that to January.  The holidays are just --

7    I'm always jammed.

8          THE COURT:  I'm not opposed at all.

9    Might I suggest the 17th, 10:00?

10          MR. LAYDEN:  Fine with me.

11          THE COURT:  Argument or status?

12          MR. BOWERS:  Judge, I'm scheduled to be

13    out of town that day.  Is there a day that week,

14    maybe earlier that week?

15          THE COURT:  15th?

16          MR. BOWERS:  That's fine, your Honor.

17          MR. LAYDEN:  That works.

18          MR. STEPHAN:  That's good.

19          THE COURT:  Same thing.  10:00 status or

20    argument.  And then you guys work out a briefing

21    schedule.  If somebody wants to e-mail an order,

22    if it gets to that point, I'd be happy to enter

23    the order without a court appearance.  Okay?

24                So if you'd indicate today for the

1   reasons stated on the record, and then just go

2   from there.

3              Anything else we can accomplish?

4          MS. JENKINS:  No, your Honor.

5          MR. STEPHAN:  Thank you, Judge.

6          MR. LAYDEN:  Thanks, your Honor.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1    STATE OF ILLINOIS   )

2                       )

3    COUNTY OF C O O K   )

4

5         NOHEMI SALAZAR-PITTS, a Certified

6    Shorthand Reporter doing business in and for the

7    State of Illinois certifies that she reported in

8    shorthand the proceedings of said hearing, and

9    that the foregoing is a true and correct

10   transcript of her shorthand notes so taken as

11   aforesaid and contains the proceedings given at

12   said hearing.

13

14

15   _____

     Certified Shorthand Reporter
16

17

18

19

20

21

22

23

24