## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

PRESTON KYLES,

     Plaintiff,

         v.

PAPA JOHN'S INTERNATIONAL,
INC. et al.,

     Defendants.

Case No. 1:20-cv-07146

Hon. John Robert Blakey

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT PAPA JOHN'S INTERNATIONAL'S MOTION TO DISMISS

Thomas R. Kayes
LAW OFFICE OF THOMAS R. KAYES, LLC
2045 W. Grand Ave., Suite B, PMB 62448
Chicago, IL 60612
708.722.2241
tom@kayes.law

J. Dominick Larry
NICK LARRY LAW LLC
8 S. Michigan Ave., Suite 2600
Chicago, IL 60603
773.694.4669
nick@nicklarry.law

*Counsel for Plaintiff and the Proposed Classes*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 1

ARGUMENT .................................................................................................................... 2

1.      BIPA applies to Papa John's. ................................................................................ 2

        1.1.     Papa John's BIPA compliance is not its franchisees' responsibility. ............... 3

        1.2.     Papa John's obtained and possessed Plaintiff's biometrics. ........................... 5

2.      Papa John's intentionally or recklessly ignored a well-publicized, decade-old law. ... 7

3.      Plaintiff's claims are timely. ................................................................................. 9

4.      The IWCA doesn't apply to Plaintiff's claims. ................................................... 12

        4.1.     Papa John's wasn't Plaintiff's employer. ....................................................... 12

        4.2.     The IWCA doesn't preempt BIPA. ................................................................ 13

CONCLUSION ............................................................................................................... 15

**Cases**

*BBL, Inc. v. City of Angola*,
    809 F.3d 317 (7th Cir. 2015) ......................................................................... 7, 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 555 (2007) ...................................................................................... 2

*Bernal v. ADP, LLC*,
    No. 2017-CH-12364, 2019 WL 5028609 (Ill. Cir. Ct. Cook Cnty. Aug. 23, 2019) ....... 4, 6

*Brandenberg v. Meridian Senior Living, LLC*,
    No. 20-cv-3198, 2021 WL 4494275 (C.D. Ill. Sept. 30, 2021) ....................................... 11

*Burge v. Exelon Generation Co.*,
    2015 IL App (2d) 141090 ....................................................................................... 12

*Burlinski, v. Top Golf USA Inc.*,
    No. 19-cv-6700, 2020 WL 5253150 (N.D. Ill. Sept. 3, 2020) .................................... 11, 13

*Cameron v. Polar Tech. Indus.*,
    No. 2019 CH 000013 (Ill. Cir. Ct. DeKalb Cnty. Aug. 23, 2019) .................................... 4

*Cothron v. White Castle Sys., Inc.*,
    467 F. Supp. 3d 604 (N.D. Ill. 2020) ......................................................... 14, 15

*Cothron v. White Castle Sys., Inc.*,
    477 F. Supp. 3d 723 (N.D. Ill. 2020) .............................................................. 10

*Dixon v. Washington and Jane Smith Cmty.—Beverly*,
    No. 17-cv-8033, 2018 WL 2445292 (N.D. Ill. May 31, 2018) ....................................... 13

*Erickson v. Pardus*,
    551 U.S. 89 (2007) ...................................................................................................... 2

*Figueroa v. Kronos Inc.*,
    454 F. Supp. 3d 772 (N.D. Ill. 2020) ....................................................... *passim*

*Flores v. Motorola Solutions, Inc.*,
    No. 20-cv-1128, 2021 WL 232627 (N.D. Ill. Jan. 8, 2021) ............................................. 4

*Folta v. Ferro Eng'g*,
    2015 IL 118070 .............................................................................................. 13, 14

*Hazlitt v. Apple Inc.*,
    500 F. Supp. 3d 738 (S.D. Ill. 2020) ............................................................... 7, 8

*Hazlitt v. Apple Inc.*,
  No. 20-cv-421, 2021 WL 2414669 (S.D. Ill. June 14, 2021) .......................................... 6

*Heard v. Becton, Dickinson & Co.*,
  440 F. Supp. 3d 960 (N.D. Ill. 2020) ................................................................................ 5

*Heard v. Becton, Dickinson & Co.*,
  524 F. Supp. 3d 831 (N.D. Ill. 2021) ..................................................................... 4, 5, 6, 8

*In re Marriage of Zamudio*,
  2019 IL 124676 ................................................................................................................... 5

*King v. PeopleNet Corp.*,
  No. 21-cv-2774, 2021 WL 5006692 (N.D. Ill. Oct. 28, 2021) ...................................... 4, 5

*McDonald v. Symphony Bronzeville Park LLC*,
  2020 IL App (1st) 192398, *appeal allowed*, 163 N.E.3d 746 (Ill. 2021) ............ 13, 14, 15

*Milford v. Commercial Carriers, Inc.*,
  210 F. Supp. 2d 987 (N.D. Ill. 2002) .............................................................................. 12

*Monroy v. Shutterfly, Inc.*,
  No. 16-cv-10984, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ...................................... 4

*Namuwonge v. Kronos, Inc.*,
  418 F. Supp. 3d 279 (N.D. Ill. 2019) ............................................................................ 6, 8

*Nationwide Agribusiness Ins. Co. v. Dugan*,
  810 F.3d 446 (7th Cir. 2015) ...................................................................................... 10, 15

*Neals v. PAR Tech Corp.*,
  419 F. Supp. 3d 1088 (N.D. Ill. 2019) ...................................................................... 3, 4, 7

*Nseumen v. Dal. Glob. Servs.*,
  No. 21-cv-2630, 2021 WL 4728707 (N.D. Ill. Oct. 11, 2021) ........................................ 15

*Pathfinder v. Industrial Comm'n*,
  343 N.E.2d 913 (Ill. 1976) .............................................................................................. 14

*Peatry v. Bimbo Bakeries USA, Inc.*,
  No. 19-cv-2942, 2020 WL 919202 (N.D. Ill. Feb. 26, 2020) ............................................ 7

*Pension Fund Trust for Operating Eng'rs v. Kohl's Corp.*,
  895 F.3d 933 (7th Cir. 2018) .......................................................................................... 15

*People v. Ward*,
  830 N.E.2d 556 (Ill. 2005) ................................................................................................ 5

*Powell v. Dean Foods Co.*,
    2013 IL App (1st) 082513-B ................................................................................ 12

*Quarles v. Pret A Manger (USA) Ltd.*,
    No. 20-cv-7179, 2021 WL 1614518 (N.D. Ill. Apr. 26, 2021) ........................ 13

*Rogers v. CSX Intermodal Terminals, Inc.*,
    409 F. Supp. 3d 612 (N.D. Ill. 2019) ................................................................ 8

*Rosenbach v. Six Flags Entm't Corp.*,
    2019 IL 123186 ....................................................................................... 11, 14

*Sojka v. Bovis Lend Lease, Inc.*,
    686 F.3d 394 (7th Cir. 2012) ........................................................................ 7, 11

*Stauffer v. Innovative Heights Fairview Heights, LLC*,
    480 F. Supp. 3d 888 (S.D. Ill. 2020) ................................................................ 8

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010) ........................................................................... 7

*Tims v. Black Horse Carriers, Inc.*,
    2021 IL App (1st) 200563 ............................................................. 2, 9, 10, 11

*Top Tobacco v. Fantasia Distrib. Inc.*,
    101 F. Supp. 3d 783 (N.D. Ill. 2015) ............................................................... 2

*Treadwell v. Power Solutions Int'l, Inc.*,
    427 F. Supp. 3d 984 (N.D. Ill. 2019) .................................................. 12, 13, 14

*Vance v. Amazon.com, Inc.*,
    525 F. Supp. 3d 1301 (W.D. Wash. 2021) ....................................................... 5

*Vance v. Microsoft Corp.*,
    525 F. Supp. 3d 1287 (W.D. Wash. 2021) ....................................................... 5

*W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*,
    2021 IL 125978 ............................................................................................ 12

*Wordlaw v. Enterprise Leasing Co. of Chicago, LLC*,
    No. 20-cv-3200, 2020 WL 7490414 (N.D. Ill. Dec. 21, 2020) ...................... 13

## Statutes

735 ILCS 5/13-201 ........................................................................................ 9, 10

735 ILCS 5/13-202 ........................................................................................ 9, 11

735 ILCS 5/13-205 ........................................................................................... 9

740 ILCS 14/10 .............................................................................................. 3

740 ILCS 14/15 ................................................................................... 3, 9, 10

740 ILCS 14/20 .............................................................................................. 7

**Other Authorities**

*Capture*, Merriam-Webster,
     https://www.merriam-webster.com/dictionary/capture (last visited Nov. 11, 2021) ...... 5, 6

*Collect*, Merriam-Webster,
     https://www.merriam-webster.com/dictionary/collect (last visited Nov. 11, 2021) ....... 5, 6

## INTRODUCTION

Since 2008, companies like Defendant Papa John's International, Inc. have ignored the Biometric Information Privacy Act's core principle: before scanning an individual's fingerprint, a company must obtain informed consent. Now ruing the consequences of ignoring the law, Papa John's raises four arguments familiar to any lawyer or judge handling BIPA litigation: that Plaintiff Preston Kyles's claims are untimely; that Plaintiff's claims are preempted by the Illinois Workers' Compensation Act; that non-employers like Papa John's owe no duties under BIPA; and that Plaintiff fails to sufficiently detail Papa John's state of mind in violating the law. The weight of authority is against all of these atextual arguments, and half have suffered unanimous rejection. The Court should reject Papa John's request to ignore precedent and rewrite BIPA, and should deny the motion to dismiss.

## BACKGROUND

Plaintiff worked at an Illinois location of a Papa John's pizza franchisee. (ECF No. 17 ("Am. Compl."), ¶¶ 12, 13, 16.) Papa John's required franchisees to use its proprietary point-of-sale system, called FOCUS. (*Id.* ¶¶ 14, 19.) Papa John's developed and operated FOCUS, which included a built-in fingerprint scanner and internet connection. (*Id.* ¶¶ 14, 15.) Papa John's required "its franchisees to use FOCUS's fingerprint scanner for employee timekeeping, point-of-sale authentication, and delivery routing whenever possible." (*Id.* ¶ 20.)

When Plaintiff first used FOCUS's fingerprint scanner, Papa John's scanned his fingerprint and extracted a "reference template." (Am. Compl. ¶ 24.) When Plaintiff later used the fingerprint scanner to unlock FOCUS, Papa John's "compared the reference templates against" the scanned fingerprint to confirm his identity. (*Id.* ¶¶ 24–25.) Papa John's used FOCUS's remote-access feature to download and collect information, including fingerprint-scanner usage, from its

franchisees nightly. (*Id.* ¶¶ 26–28.) Papa John's used that information to circulate reports identifying franchisees and workers who failed to use fingerprint authentication. (*Id.* ¶ 29.)

Before scanning Plaintiff's fingerprint, Papa John's did not inform Plaintiff that it was obtaining his biometrics, did not specify how long it would keep them or its purpose for doing so, and did not obtain his written consent. (*Id.* ¶¶ 62–65.) Thus, Plaintiff filed this class action against Papa John's and his employer. (ECF No. 1.) Papa John's moved to dismiss and to stay the case. (ECF Nos. 12–14.) Plaintiff amended as of right, and the Court stayed the case on March 4, 2021, (ECF No. 22). The Court extended the stay on July 22 and ordered that the stay would be lifted within 28 days of a ruling in any of the cases cited in Papa John's motion to stay. (ECF No. 25.) One of those cases, *Tims v. Black Horse Carriers, Inc.*, 2021 IL App (1st) 200563, was decided on September 17, 2021. Papa John's moved to dismiss again four weeks later. (ECF No. 26.)

## ARGUMENT

A Court ruling on a Rule 12(b)(6) motion "construe[s] the Complaint in the light most favorable to Plaintiff[], accept[ing] as true all well-pleaded facts and draw reasonable inferences in [his] favor." *Top Tobacco v. Fantasia Distrib. Inc.*, 101 F. Supp. 3d 783, 788 (N.D. Ill. 2015). "Specific facts are not necessary; the [complaint] need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Papa John's challenges to the factual specificity of Plaintiff's claims ignore allegations in the amended complaint, while its legal challenges—that Plaintiff's claims are untimely and barred by the IWCA—have been rejected unanimously by the many courts to have considered them. So, Papa John's motion to dismiss fails.

### 1. BIPA applies to Papa John's.

Papa John's contends that it is not subject to BIPA because it never employed Plaintiff, and because it never obtained or possessed his biometrics. Papa Johns is wrong on both fronts.

### 1.1. Papa John's BIPA compliance is not its franchisees' responsibility.

Papa John's contention that, "[i]n the employment context, [BIPA §] 15(b) applies only to employers," (ECF No. 27 ("Memo.") at 10–11) belies the statute's text. *See*, *e.g.*, *Neals v. PAR Tech Corp.*, 419 F. Supp. 3d 1088, 1092 (N.D. Ill. 2019) ("[T]here is no textual support whatsoever for such a restricted view of the statute's application."). It claims that, because the written release required by Section 15(b)(3) may be "executed by an employee as a condition of employment," 740 ILCS 14/10, (a) only the employer could obtain such a release, and therefore (b) only the employer can be subject to the statute. (Memo. at 10–11.) But Section 15(b) of BIPA requires "private entit[ies]" that "collect, capture, purchase, receive through trade, or otherwise obtain" biometrics to inform the subject of the specifics of the collection and obtain a written release. 740 ILCS 14/15(b)–(b)(3). "Private entity" is defined as "any individual, partnership, corporation, limited liability company, association, or other group, however organized." 740 ILCS 14/10. There is no exception for vendors or franchisors. *Id.*

Judge Feinerman rejected Papa John's argument. *Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 783 (N.D. Ill. 2020). "As an initial matter, even putting aside whether" a third party is "required to receive from Plaintiffs the written release mandated by Section 15(b)(3)," it would still violate "Sections 15(b)(1) and (b)(2) by not informing them that it was collecting or obtaining their biometric data, for what purposes and for how long." *Figueroa*, 454 F. Supp. 3d at 783. Moreover, even if a defendant's "obtaining Plaintiffs' data occurred 'in the context of employment,'" a defendant would still be a "'private entity' that 'collect[ed]' or 'obtain[ed] Plaintiffs' data, and" thus would remain "obligated to receive a release from them as a condition of … employment." *Id.* Judge Feinerman also pointed out that non-employer defendants "could have complied [with the consent requirement] by, for example, requiring" employers, as a condition of their use of the biometric system, "to agree to obtain their employees' written consent

to [the defendant] obtaining their data." *Id.* This simple fact puts the lie to Papa John's misguided position that "in the employment context, Section 15(b)'s 'written release' requirement can only be interpreted to apply to each individual employer and each employee thereof." (Memo. at 11.)

Papa John's only support comes from two state trial-court decisions that other judges in this district have called "cursory and ultimately unpersuasive." *Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 843 (N.D. Ill. 2021) ("*Heard II*"); *Neals*, 419 F. Supp. 3d at 1092. The first, *Bernal v. ADP, LLC*, "rested not on the inapplicability of Section 15(b) to third-party vendors, but on the insufficiency of the plaintiff's complaint on that count." *Heard II*, 524 F. Supp. 3d at 843 (citing *Bernal*, No. 2017-CH-12364, 2019 WL 5028609, *2 (Ill. Cir. Ct. Cook Cnty. Aug. 23, 2019)); *Bernal*, 2019 WL 5028609, at *1–2 ("Plaintiff has failed to allege facts sufficient enough for the Court to properly assess Defendant's actual involvement, relative to the biometric scanning technology, beyond the fact that Defendant supplied [the employer] with the technology."). The second, *Cameron v. Polar Tech. Indus.*, No. 2019 CH 000013 (Ill. Cir. Ct. DeKalb Cnty. Aug. 23, 2019), does not appear to have even resulted in a written opinion. (*See* ECF No. 27-2.)

Courts regularly refuse to extend those two cases. *Figueroa*, 454 F. Supp. 3d at 784–85; *Neals*, 419 F. Supp. 3d at 1092; *King v. PeopleNet Corp.*, No. 21-cv-2774, 2021 WL 5006692, *8 n.11 (N.D. Ill. Oct. 28, 2021) ("I decline to follow an interpretation of § 15(b) under which third parties in employment situations (parties other than the employer) owe no duties to employees whose information they obtain."); *Flores v. Motorola Solutions, Inc.*, No. 20-cv-1128, 2021 WL 232627, at *3 (N.D. Ill. Jan. 8, 2021) ("The requirement that Defendants read into the statute does not appear in the statutory language itself. There is also persuasive authority that the statute applies where no relationship between the collector and the individual exists.") (citing *Monroy v. Shutterfly, Inc.*, No. 16-cv-10984, 2017 WL 4099846, at *1 (N.D. Ill. Sept. 15, 2017)); *Vance v.*

*Microsoft Corp.*, 525 F. Supp. 3d 1287, 1298 (W.D. Wash. 2021); *Vance v. Amazon.com, Inc.*, 525 F. Supp. 3d 1301, 1313 (W.D. Wash. 2021). This Court should do the same.

### 1.2.    Papa John's obtained and possessed Plaintiff's biometrics.

Papa John's says Plaintiff fails to plausibly allege that it collected, captured, or otherwise obtained his biometrics as required to sustain BIPA Section 15(a) and 15(b) claims. (Memo. at 9–14.) Not so. Courts regularly permit claims against biometric operators and vendors to proceed with less factual support than Plaintiff offers here. Allegations that the vendor "stored," "used," and "disclosed" the plaintiffs' biometrics, for example, have been found sufficient because "to have done those things [the vendor] necessarily first had to 'obtain' the data." *Figueroa*, 454 F. Supp. 3d at 783–84; *King*, 2021 WL 5006692 at *8 (allegations that "Defendant collects, stores, and otherwise uses information and data generated from the timekeeping systems" sufficient); *Heard II*, 524 F. Supp. 3d at 842.

Relying on the plain meaning of capture, collect, "otherwise obtain," and possess—as we must in the absence of statutory definitions, *In re Marriage of Zamudio*, 2019 IL 124676, ¶ 19—it is clear that Plaintiff meets his minimal burden at the pleading stage. "Collect" means "to bring together into one body or place," and "to gather or extract from a number of persons or sources." *Collect*, Merriam-Webster, https://www.merriam-webster.com/dictionary/collect (last visited Nov. 11, 2021). "Capture" means "to record in a permanent file (as in a computer)." *Capture*, Merriam-Webster, https://www.merriam-webster.com/dictionary/capture (last visited Nov. 11, 2021). "'[P]ossession, as ordinarily understood, occurs when a person has or takes control of the subject property or holds the property at his or her disposal.'" *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020) ("*Heard I*") (quoting *People v. Ward*, 830 N.E.2d 556, 560 (Ill. 2005). "The ordinary meaning of possession does not contemplate exclusive control," *Heard I*, 440 F. Supp. 3d at 968, or storage. *Hazlitt v. Apple Inc.*, No. 20-cv-421, 2021 WL

2414669, *8 (S.D. Ill. June 14, 2021) ("*Hazlitt II*").

Here, Papa John's developed and operated the FOCUS system that scanned Plaintiff's fingerprint, extracted a reference template from it, and stored that information. (Am. Compl. ¶¶ 14, 24, 25, 60.) Papa John's also actively required franchisees to use FOCUS, (*id.* ¶ 19) and "to use FOCUS's fingerprint scanner for employee timekeeping, point-of-sale authentication, and delivery routing whenever possible." (*Id.* ¶ 20.) And Papa John's, not the franchisees, used the fingerprint data to control user access to the various parts of the FOCUS system. (Am. Compl. ¶ 23.) Papa John's even used the fingerprint scanner to limit *franchisees'* access within FOCUS. (*Id.*)

By so scanning, Papa John's "recorded in a permanent file … in a computer" Plaintiff's biometrics. *Capture*, Merriam-Webster, https://www.merriam-webster.com/dictionary/capture. It also "gather[ed] or extract[ed] from" Plaintiff and the Class their biometrics. *Collect*, Merriam-Webster, https://www.merriam-webster.com/dictionary/collect. (Am. Compl. ¶ 23.) Plaintiff has therefore alleged not only "enough to suggest that [Papa John's] exercises some form of control over users' biometric data and therefore is in possession of the data," but also that Papa John's captured, collected, or otherwise obtained his biometrics. *Heard II*, 524 F. Supp. 3d at 840.

By contrast, Papa John's relies on cases where vendors sold biometric timeclocks to employers and walked away unaware of the data collected through them.[1] In *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279 (N.D. Ill. 2019), for instance, the plaintiff "alleged only that her employer had 'collected [her] fingerprints using a system that Kronos supplied' and not that 'Kronos collected, captured, or otherwise obtained [her] biometric information.'" *Figueroa*, 454 F. Supp. 3d at 784 (quoting *Namuwonge*, 418 F. Supp. 3d at 286).[2]

---

[1]     Neither of Papa John's cited cases analyzes whether the defendants "captured" "otherwise obtain[ed]" biometrics.

[2]     Papa John's reliance on *Bernal v. ADP* offers it no help either. Papa John's cites *Bernal* for the

6

Because Plaintiff presented "'a story that holds together' by alleging that" the vendor "collected [biometrics] through its customer's use of [Papa John's] system[,] nothing more is needed under federal notice-pleading standards." *Neals*, 419 F. Supp. 3d at 1091 (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)).

**2.      Papa John's intentionally or recklessly ignored a well-publicized, decade-old law.**

Papa John's says that Plaintiff fails to plead the recklessness or intent needed to sustain his claim for damages of $5,000 per violation under BIPA § 20(2). (Memo. at 14–15.) In so arguing, Papa John's confuses claims and remedies, and misreads the amended complaint.

A "claim is the aggregate of operative facts which give rise to a right enforceable in the courts. One claim supported by multiple theories does not somehow become multiple claims." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) (internal citations omitted). "A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015).

As a result, "[s]everal courts have held that mental states need not be alleged for the purpose of stating a plausible claim under BIPA to survive a motion to dismiss." *Hazlitt v. Apple Inc.*, 500 F. Supp. 3d 738, 751 (S.D. Ill. 2020) ("*Hazlitt I*"); *Peatry v. Bimbo Bakeries USA, Inc.*, No. 19-cv-2942, 2020 WL 919202, *6 (N.D. Ill. Feb. 26, 2020); *Neals*, 419 F. Supp. 3d at 1092 ("Under Rule 9(b), states of mind may be alleged generally"). "These courts have found that mental states go only to the damages recoverable for a given claim and can be proven later, but

---

proposition that "there is little reason to believe that [§15(b)'s] applicability should extend beyond the point at which an individual has the right to withhold consent." (Memo. at 13.) But that is precisely what Plaintiff challenges: Papa John's failure to provide notice and obtain consent prior to its capture of his fingerprint through the FOCUS system Papa John's developed and operated. (Am. Compl. ¶¶ 60–69.)

per the relevant pleading requirements plaintiffs may allege states of mind generally." *Hazlitt I*, 500 F. Supp. 3d at 751; *Stauffer v. Innovative Heights Fairview Heights, LLC*, 480 F. Supp. 3d 888, 907 (S.D. Ill. 2020) ("[A]s other courts have outlined, the references to negligent, reckless, and intentional violations only relate to what the prevailing party may recover for each violation, which is not before the Court presently.")

Even if Papa John's could seek dismissal of only a set of remedies, the two cases cited in support of its argument offer no basis for doing so. In *Rogers v. CSX Intermodal Terminals, Inc.*, the plaintiff "only allege[d] that 'CSX's violations of BIPA … were knowing and willful,'" which the Court unsurprisingly found "insufficient to allow" an inference of intent or recklessness. 409 F. Supp. 3d 612, 619 (N.D. Ill. 2019). Likewise, in *Namuwonge*, the Plaintiff relied on "abstract statements regarding damages," with the only specifics being that the defendant had *failed* to act. 418 F. Supp. 3d at 286. By contrast, Papa John's developed FOCUS to obtain fingerprints, extract a reference template, and store that information. (Am. Compl. ¶¶ 14, 20, 24–25.) Plaintiff also alleges that Papa John's required franchisees to use FOCUS fingerprint scanner, restricted their ability to access FOCUS if they did not use the scanner, and named and shamed franchisees and workers who didn't use the scanner. (*Id.* ¶¶ 19–29.) None of those acts could occur without intent. Moreover, Plaintiff's allegations that Papa John's made no effort to comply with BIPA's requirements, even after more than eight years and several high-profile BIPA cases, (*id.* ¶¶ 30–38), "are enough, at the pleading stage, to make claims of … recklessness plausible." *Hazlitt I*, 500 F. Supp. 3d at 752; *Heard II*, 524 F. Supp. 3d at 846 (collecting cases "concluding that a defendant's alleged failure to comply with BIPA permits an inference of recklessness or intent.").[3]

---

[3] At the very least, "from [these] allegation[s], a plausible inference may be drawn that [Papa John's] acted negligently." *Figueroa*, 454 F.3d at 783. It is thus "unnecessary to decide whether the complaint alleges facts sufficient to raise an inference of recklessness" as "BIPA provides that recklessness offers a

**3.      Plaintiff's claims are timely.**

Papa John's sought and obtained a stay so that the Court could consider the Illinois Appellate Court's then-forthcoming decision in *Tims v. Black Horse Carriers*. Like every other court to consider the issue so far, *Tims* held that BIPA Section 15(a) and 15(b) claims are subject to a five-year limitation period. *See* 2021 IL App (1st) 200563. Having waited seven months for that opinion, Papa John's now asks the Court to disregard it. The Court should do no such thing.

*Tims* answered the certified question of "whether the one-year limitation period in [735 ILCS 5/13-201] or the five-year limitation period in [735 ILCS 5/13-205] governs claims under [BIPA]." *Tims*, 2021 IL App (1st) 200563, ¶ 16.[4] "Section 13-201 establishes a one-year limitation period for '[a]ctions for slander, libel or for publication of matter violating the right of privacy.'" *Id.*, ¶ 20 (quoting 735 ILCS 5/13-201). "Section 13-205 provides for a five-year limitation period for, in relevant part, 'all civil actions not otherwise provided for.'" *Id.* ¶ 22 (quoting 735 ILCS 5/13-205). *Tims* held "that section 13-201 does not encompass all privacy actions but only those where publication is an element or inherent part of the action." *Id.* ¶ 29.

*Tims* correctly noted that "[t]hough all [subsections] relate to protecting biometric data, each duty is separate and distinct. A private entity could violate one of the duties while adhering to the others, and an aggrieved person would have a cause of action for violation of that duty." *Id.* ¶ 30. While Section 15(d) (unlawful disclosure) involved publication, *id.* ¶ 32, "a plaintiff could … bring an action under the Act alleging violations of section 15(a), (b), and/or (e) without having

---

basis for greater liquidated damages, not for a separate claim." *Id.* at 786. "Because '[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims,' [*BBL, Inc.*, 809 F.3d at 325], that the complaint's factual allegations give rise to an inference of negligence is enough to withstand dismissal." *Id.*

[4]      *Tims* did not consider whether Section 13-202's two-year limitation period applies to BIPA claims, as Papa John's urges. As noted below, however, every court to have considered the issue has found that it does not and has applied the five-year limitations period adopted by *Tims*.

to allege or prove that the defendant private entity published or disclosed any biometric data to any person or entity beyond or outside itself. Stated another way, an action under section 15(a), (b), or (e) of the Act is not an 'action for publication of matter violating the right of privacy.'" *Id.* ¶ 31 (quoting 735 ILCS 5/13-201). Thus, section 13-205's five-year limitation period "governs actions under sections 15(a), (b), and (e) of the Act." *Tims*, 2021 IL App (1st) 200563, ¶ 33.

After insisting that the Court wait on *Tims*, Papa John's now contends that this Court should disregard it. Instead, Papa John's says the Court should look at "the point of the law" as a whole to conclude that "the nature of the liability under *all* BIPA sections is the same," i.e., that they are all "injuries related to publication" and "subject to the one-year statute of limitations." (Memo. at 7.) But that argument was dismantled by *Tims*: a plaintiff can successfully assert Section 15(a) and (b) claims "without having to allege or prove that the defendant … published or disclosed any biometric data to any person or entity beyond or outside itself." *Tims*, 2021 App (1st) 200563, ¶ 31. Indeed, Plaintiff here does not assert such a claim against Papa John's.[5]

Papa John's therefore fails to offer "persuasive indications that the Illinois Supreme Court would decide the issue differently" than the First District, meaning that the "decision[] of the Illinois Appellate Court[] controls." *Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015). Should any doubt remain as to how the Illinois Supreme Court will likely rule, it is resolved by the fact that *every* court to have considered the issue has applied the same five-year limitations period to Sections 15(a) and (b). *See Cothron v. White Castle Sys., Inc.*, 477 F. Supp. 3d 723, 729 n.4 (N.D. Ill. 2020) ("*Cothron II*") ("[T]he Court also acknowledges [Plaintiff's] argument that every trial court that has decided the issue has ultimately held the five-year 'catch-

---

[5]    While Papa John's imagines Section 15(d) claims against it from two paragraphs in the class allegations of the amended complaint, the cause of action against Papa John's makes clear that Plaintiff is not pursuing a Section 15(d) claim against it. (Am. Compl. ¶¶ 59–72.)

all' limitations period applies.") (internal quotations omitted); *Brandenberg v. Meridian Senior Living, LLC*, No. 20-cv-3198, 2021 WL 4494275, *4 (C.D. Ill. Sept. 30, 2021) (collecting cases).

Papa John's argument for applying Section 13-202's two-year limitation period for personal injury claims has likewise been uniformly rejected. Papa John's contends that BIPA "imposes a duty" and is "designed … to protect human life and safety," thereby turning BIPA violations into personal injury claims. (Memo. at 8–9.) But Papa John's "fails to explain why an alleged violation of purely statutory rights under BIPA—which is meant to give the Plaintiffs some degree of control over the collection and disclosure of their biometric data—should count as 'an injury to the person,' as that phrase is used in 735 ILCS 5/13-202." *Burlinski, v. Top Golf USA Inc.*, No. 19-cv-6700, 2020 WL 5253150, at *7 (N.D. Ill. Sept. 3, 2020). "[S]imply because statutes generally can impose tort liability does not mean BIPA does …. Indeed, just as BIPA injuries are not considered personal injuries for purposes of IWCA preemption, BIPA injuries cannot be considered personal injuries for purposes of the applicable statute of limitations." *Brandenberg*, 2021 WL 4494275, at *4.[6]

Ultimately, Plaintiff's claims under Sections 15(a) and 15(b) of BIPA are neither for publication nor injury to their persons. Instead, those claims seek to vindicate "a privacy right of secrecy, 'the right of an individual to keep his or her personal identifying information like fingerprints secret.'" *Tims*, 2021 App (1st) 200563, ¶ 26 (quoting *W. Bend Mut. Ins. Co. v. Krishna*

---

[6]     Plaintiff's allegation that he suffered some emotional distress from Papa John's conduct aside, his Section 15(b) *claim* arose from Papa John's invasion of his privacy, not from any resulting harm. *See Sojka*, 686 F.3d at 399 (A "claim is the aggregate of operative facts which give rise to a right enforceable in the courts."); *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act" to seek liquidated damages under BIPA). Should the Court find that Plaintiff's allegation of resulting emotional distress transforms his entire claim into a personal injury claim, Plaintiff respects leave to amend and proceed solely for violation of his statutory rights. *See Burliniski*, 2021 WL 5253150, at *7.

*Schaumburg Tan, Inc.*, 2021 IL 125978, ¶ 46). Accordingly, the five-year limitations period applies, and Plaintiff's claims are timely.

## 4. The IWCA doesn't apply to Plaintiff's claims.

Papa John's contends that Plaintiff can only pursue his claims through Illinois's workers' compensation regime. That assertion is mistaken for two reasons. First, Papa John's wasn't Plaintiff's employer. Second, the IWCA doesn't preempt BIPA claims.

### 4.1. Papa John's wasn't Plaintiff's employer.

The IWCA's "immunity from tort suits applies to the actual employer — it does not extend to third parties," *Milford v. Commercial Carriers, Inc.*, 210 F. Supp. 2d 987, 989 (N.D. Ill. 2002), except for "lawsuits against an employer's agents." *Burge v. Exelon Generation Co.*, 2015 IL App (2d) 141090, ¶ 4. Papa John's was not Plaintiff's employer. (Am. Compl. ¶ 18.) So, the only question is whether Papa John's was its franchisees' agent.

"It is well established that '[a]n agency is a fiduciary relationship in which the principal has the right to control the agent's conduct and the agent has the power to act on the principal's behalf.'" *Burge*, 2015 IL App (2d) 141090, ¶ 4 (quoting *Powell v. Dean Foods Co.*, 2013 IL App (1st) 082513-B, ¶ 65). "The question of whether an agency relationship exists is normally a question of fact." *Iorger v. Halverston Const.*, 232 Ill. 2d 196, 202 (2008).

Here, Papa John's simply assumes the IWCA's applicability, but the amended complaint pleads neither an agency relationship nor its underlying factual predicates of right to control or power to act. Absent such allegations, the IWCA cannot compel dismissal at this stage. *Treadwell v. Power Solutions Int'l, Inc.*, 427 F. Supp. 3d 984, 993 (N.D. Ill. 2019).[7]

---

[7]     To the extent Papa John's contends that any recovery from it would be impermissibly duplicative of a recovery from Hoosier Papa (either in litigation or through an IWCA claim), (Memo. at 4), it is mistaken. Plaintiff alleges that Papa John's "*itself* obtained … [his] biometric information," which

### 4.2. The IWCA doesn't preempt BIPA.

Even if Papa John's had employed Plaintiff or acted as his employer's agent, the IWCA still wouldn't preempt Plaintiff's claims. "[A]n employee can escape the exclusivity provisions of the [IWCA] if an employee establishes that the injury (1) was not accidental; (2) did not arise from his employment; (3) was not received during the course of employment; or (4) was not compensable under the [IWCA]." *Folta v. Ferro Eng'g*, 2015 IL 118070, ¶ 14. Plaintiff's claims fall within the first and fourth exceptions.

#### 4.2.1. Papa John's BIPA violations were not accidental.

"Obviously, any claim for an *intentional* violation under section 20(2) of [BIPA] would clearly fall under the first exception and would therefore not be preempted by the [IWCA]." *McDonald v. Symphony Bronzeville Park LLC*, 2020 IL App (1st) 192398, ¶ 19, *appeal allowed*, 163 N.E.3d 746 (Ill. 2021) (emphasis in original). As detailed in Section 2, *supra*, Papa John's intentionally violated Plaintiff's privacy rights. Thus, "[t]he alleged BIPA violations here were no accident. Rather, they were the product of a company policy that 'intentionally collected employee fingerprints for purposes of maintaining a biometric timekeeping system.'" *Wordlaw v. Enterprise Leasing Co. of Chicago, LLC*, No. 20-cv-3200, 2020 WL 7490414, at *2 (N.D. Ill. Dec. 21, 2020) (quoting *Burlinski*, 2020 WL 5253150 at *5); *Quarles v. Pret A Manger (USA) Ltd.*, No. 20-cv-7179, 2021 WL 1614518, *2 (N.D. Ill. Apr. 26, 2021); *Treadwell*, 427 F. Supp. 3d at 990–91. Thus, even if Papa John's could establish agency, there would be no preemption.

---

"reflect[s] a course of conduct distinct from any BIPA violations in which [his] employer[] may have engaged, even if such violations occurred simultaneously or through the use of the same equipment." *Figueroa*, 454 F. Supp. 3d at 787 (citing *Dixon v. Washington and Jane Smith Cmty.—Beverly*, No. 17-cv-8033, 2018 WL 2445292, *11 (N.D. Ill. May 31, 2018))

### 4.2.2.  Plaintiff's injuries are not compensable under the IWCA.

Papa John's argument also fails because Plaintiff's injuries are not compensable under the IWCA. "[I]t is only where 'the injury is the type of work-related injury within the purview of the [IWCA]' that an employer's liability is governed exclusively by the provisions of that act." *McDonald*, 2020 IL App (1st) 192398 ¶ 21 (quoting *Folta*, 2015 IL 118070, ¶ 36). "[T]his inquiry is broader than just whether an injury arises out of and in the course of employment and does, to some extent, consider the character of the injury." *Treadwell*, 427 F. Supp. 3d at 992. "[T]he Supreme Court of Illinois" has "suggested a more general 'test for whether an employee suffered a compensable injury'—'"whether there was a harmful change in the ***human organism***—not just its bones and muscles, but its brain and nerves as well.'" *Cothron v. White Castle Sys., Inc.*, 467 F. Supp. 3d 604, 616 (N.D. Ill. 2020) ("*Cothron I*") (quoting *Treadwell*, 427 F. Supp. 3d at 993 (emphasis in original) (quoting *Pathfinder v. Industrial Comm'n*, 343 N.E.2d 913, 918 (Ill. 1976)).

The Illinois Appellate Court has applied this test to BIPA and "conclude[d] that the exclusivity provisions of the [IWCA] do not bar a claim for statutory, liquidated damages where an employer is alleged to have violated an employee's statutory privacy rights under [BIPA], as such a claim is simply not compensable under the [ICWA]." *McDonald*, 2020 IL App (1st) 192398, ¶ 27. Having contrasted the compensation regimes under BIPA and the IWCA, the Appellate Court "fail[ed] to see how a claim by an employee against an employer for liquidated damages under the Privacy Act—available without any further compensable actual damages being alleged or sustained and designed in part to have a preventative and deterrent effect—represents the type of injury that categorically fits within the purview of the [IWCA], which is a remedial statute designed to provide financial protection for workers that have sustained an actual injury." *Id.*; *see also Rosenbach*, 2019 IL 123186, ¶ 36. "Other than the private right of action authorized in section

20 of [BIPA], ***no other enforcement mechanism is available***." *Id.* ¶ 37 (emphasis added).[8]

*McDonald* is binding absent "persuasive indications that the Illinois Supreme Court would decide the issue differently." *Nationwide Agribusiness*, 810 F.3d at 450. As with the limitations question, "[e]xtended analysis is unnecessary," and the Court may "agree[] with its colleagues, who as best as the [Plaintiff] can determine have uniformly rejected similar arguments regarding BIPA claims by employees." *Nseumen v. Dal. Glob. Servs.*, No. 21-cv-2630, 2021 WL 4728707, *2 (N.D. Ill. Oct. 11, 2021) (collecting cases); *see also McDonald*, 2020 IL App (1st) 192398, ¶ 28 (collecting cases); *Cothron I*, 467 F. Supp. 3d at 616 ("White Castle also maintains that Ms. Cothron's BIPA claims are preempted by the [IWCA]. Like the above, this is a frequent argument in BIPA cases. Unlike the above, courts have unanimously rejected it—and for good reason.").

As every Court to have considered the issue has held, BIPA injuries are not compensable under the IWCA. As a result, Plaintiff's claims are not preempted.

## CONCLUSION

Plaintiff respectfully requests that the Court deny Papa John's motion for the reasons set forth above. Should the Court grant the motion to dismiss for lack of specificity as to Papa John's capture, collection, obtainment, or possession of biometrics; its intent in so obtaining or possessing; or for statute-of-limitations reasons, Plaintiff requests leave to amend to add further factual specificity about the nature of Papa John's misconduct and the injuries suffered. *See Pension Fund Trust for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018).

---

[8]     While Plaintiff does allege that Papa John's conduct caused Plaintiff emotional distress and "impairs his ability to make informed decisions about his use of fingerprint authentication in his day-to-day life," (Am. Compl. ¶ 71), Plaintiff does not seek actual damages. Instead, as in *McDonald*, Plaintiff seeks only the statutory, liquidated damages available under BIPA. (*See* Am. Compl. at 12 (Prayer for Relief).)

Dated: November 12, 2021

Respectfully submitted,

**PRESTON KYLES,** individually and on behalf of all others similarly situated,

s/ J. Dominick Larry
One of Plaintiff's Attorneys

Thomas R. Kayes
LAW OFFICE OF THOMAS R. KAYES, LLC
2045 W. Grand Ave., Suite B, PMB 62448
Chicago, IL 60612
708.722.2241
tom@kayes.law

J. Dominick Larry
NICK LARRY LAW LLC
8 S. Michigan Ave., Suite 2600
Chicago, IL 60603
773.694.4669
nick@nicklarry.law

*Counsel for Plaintiff and the Proposed Classes*

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that on November 12, 2021, I e-filed the foregoing which served it on all CM/ECF registered counsel of record. A copy was served on Hoosier Papa LLC via email and regular mail.


Dated: November 12, 2021                    s/ J. Dominick Larry
                                            One of Plaintiff's Attorneys