UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PRESTON KYLES, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:20-CV-07146 |
| v. | Judge John Robert Blakey |
| HOOSIER PAPA LLC, an Indiana limited liability company, and PAPA JOHN'S INTERNATIONAL, INC., a Delaware corporation, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

In this putative class action, Plaintiff Preston Kyles ("Plaintiff") sues his former employer, Hoosier Papa LLC ("Hoosier Papa"), and its franchisor, Papa John's International ("Papa John's"), for allegedly violating sections 15(a) and 15(b) of the Illinois Biometric Information Privacy Act ("BIPA"), 740 Ill. Comp. Stat. 14/1, by impermissibly collecting and storing employees' fingerprints using a proprietary point-of-sale system that Defendant Papa John's allegedly developed and operated. [17]. Against Hoosier Papa only, it also alleges violation of § 15(d) of BIPA. *Id.* ¶ 55.

Papa John's now moves to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). [40]. For the reasons explained below, the Court denies Papa John's Motion, [40].

1

I.     FACTUAL BACKGROUND

Defendant Papa John's is a national pizza restaurant franchisor and Defendant Hoosier Papa, one of Papa John's franchisees, owns and operates multiple Papa John's restaurants, including one at 700 Columbus Street in Ottawa, Illinois (hereinafter, "Ottawa restaurant"). [17] at ¶¶ 11–12. From 2017 until January 30, 2018, Plaintiff worked for Hoosier Papa at its Ottawa restaurant. *Id*. ¶¶ 16–17.

Pursuant to Hoosier Papa's franchisee agreement with Papa John's, Hoosier Papa uses a proprietary point-of-sale system, known as FOCUS, at its franchised restaurants. *Id*. ¶¶ 14, 19. The FOCUS system, which Papa John's developed and operates, has a built-in fingerprint scanner. *Id*. ¶¶ 14–15. Papa John's requires its franchisees, including Hoosier Papa, to use FOCUS's fingerprint scanner "whenever possible" for employees to clock in and out, authenticate themselves to access the system, and input delivery routing. *Id*. ¶ 21.

During the period that Plaintiff worked for Hoosier Papa, he and other employees had to use the FOCUS fingerprint scanner to: (1) clock in and out; (2) unlock FOCUS to input transactions; and (3) access other parts of the FOCUS system. *Id*. ¶¶ 21–23. When a Hoosier Papa employee scanned his or her fingerprint into FOCUS for one of these reasons, the system compared the fingerprint to a reference fingerprint template of that employee stored in the system. *Id*. ¶¶ 24–25.

Through FOCUS system's internet connection, Papa John's has remote access to FOCUS systems at franchise locations through which it can download, collect data, and monitor fingerprint-scanner usage. *Id*. ¶¶ 26–29. The Complaint alleges that

Papa John's downloaded and collected information daily from franchisee's FOCUS systems, including from Hoosier Papa's system. *Id.* ¶ 27. It also remotely monitored fingerprint scanner usage and circulated reports on fingerprint scanner usage. *Id.* ¶¶ 28–29.

Neither Papa John's nor Hoosier Papa sought employees' consent prior to collecting fingerprint templates or fingerprint data through the FOCUS system. *Id.* ¶¶ 35–37. Nor did they tell employees how they would use the fingerprint data, how long they would store the data, or provide a publicly available retention policy regarding retention and storage of biometric data. *Id.* Employees also did not consent to Defendants disclosing any fingerprint data collected through FOCUS. *Id.* ¶ 38.

Plaintiff alleges that Defendants collected, maintained, and used his fingerprint data without proper notice and consent in violation of §§ 15(b)(1), (b)(2), and (b)(3) of BIPA. *Id.* ¶¶ 35–38, 48–54, 60–65. Plaintiff also alleges that Defendants violated § 15(a) of BIPA by failing to make publicly available a written policy regarding retention and storage of biometric data.[1] *Id.* ¶¶ 56, 66. He sues on behalf of himself and seeks to represent two classes: (1) all individuals who used a fingerprint scanner at a Hoosier Papa restaurant in Illinois at any point from December 3, 2016 to present; and (2) all individuals who used a fingerprint scanner connected to a FOCUS system in Illinois at any point from December 3, 2016 to present. *Id.* ¶ 39.

---

[1] Against Hoosier Papa, only, he also alleges violation of § 15(d)(1) of BIPA for allegedly disclosing his fingerprint data without his consent. [17] ¶ 55.

3

Now, Defendant Papa John's moves to dismiss the claims against it.[2] [40]. First, it argues that Plaintiff's claims are time barred. [41] at 10–13. Second, it argues that it did not violate §§ 15(a) or 15(b) of BIPA as a matter of law because it did not employ Plaintiff and did not "possess" or "actively collect" Plaintiff's biometric data. *Id*. at 13–18. Third, it argues that the Illinois Workers' Compensation Act ("IWCA"), 820 Ill. Comp. Stat. 305/, preempts Plaintiff's BIPA claims. *Id*. at 18–20. Fourth and finally, it seeks dismissal of any claim for heightened damages under BIPA, arguing that the Complaint fails to plead recklessness or intent. *Id*. at 20.

## II. Legal Standard

To survive a 12(b)(6) motion, a complaint must set out a short and plain statement of the claim that provides "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting and citing *Twombly*, 550 U.S. at 556, 570). In analyzing a motion to dismiss, a court will construe the complaint in the light most favorable to the plaintiff, accept all well-pled allegations as true, and draw all reasonable inferences in a plaintiff's favor. *See Iqbal*, 556 U.S. at 678; *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 584 (7th Cir. 2021).

---

[2] On June 3, 2022, the Court granted Plaintiff's motion for entry of default against Defendant Hoosier Papa after it failed to appear or defend Plaintiff's claims. [50].

4

## III. Discussion

### A. Plaintiff's Claims Against Papa John's Remain Timely

First, Papa John's argues that Plaintiff's claims are untimely because either a one-year or two-year limitation applies, and Plaintiff did not file this lawsuit until more than two years after he stopped working at the Ottawa restaurant. [41] at 11–13. At the time Papa John's filed its motion, there existed some uncertainty under the law as to whether a 1-year, 2-year or 5-year limitation applied to BIPA claims. *See id.* Since the parties briefed Papa John's motion, however, the Illinois Supreme Court issued *Tims v. Black Horse Carriers, Inc.*, -- N.E.3d --, 2023 WL 1458046, at *6–8 (Ill. Feb. 2, 2023), finding that Illinois' five-year catchall statute of limitations period codified in 735 Ill. Comp. Stat. 5/13-205 governs all BIPA claims. Plaintiff filed his lawsuit well within five years of working at Hoosier Papa. Accordingly, his claims remain timely.

### B. The Complaint States Plausible Claims Against Papa John's

Next, Papa John's argues that Plaintiff's BIPA claims against it fail because § 15(a) of BIPA only applies to entities that "possess" an individual's biometric data and §15 (b) of BIPA only applies to entities that "actively collect" an individual's biometric data. Papa John's insists that Plaintiff fails to plausibly allege either one.

#### 1. Section 15(a) of BIPA

Section 15(a) states that entities "in possession" of a person's biometric data must develop and make publicly available a written data retention policy. 740 Ill. Comp. Stat. 14/15(a).

5

Here, Papa John's argues that the § 15(a) claim against it fails because the Complaint does not allege that Papa John's was "in possession" of Plaintiff's biometric data. [41] at 15. It maintains that "possession" requires "control" over the information; in fact, it insists that possession "contemplates the *exclusion of others.*" *Id.* It argues that, even if it developed the FOCUS system and provided a fingerprint scanning *option* for franchisees, that does not suggest that it "has any propriety interest in or control over" any biometric data collected through a FOCUS system. It also argues that, even if it could remotely access a franchisee's FOCUS system, it did not "control" any biometric information in that system. *Id.* It also maintains that the Complaint only alleges that it had remote access to "information" in the FOCUS system not that it had remote access to any biometric data, specifically. *Id.*

Papa John's arguments fail at this stage. First, the Court agrees that the term "possession" requires some type of control. *See, e.g., Barnett v. Apple Inc.*, --- N.E.3d ---, 2022 WL 17881712, at *6 (Ill. App. Ct. Dec. 23, 2022) (holding that for the term "possession" in § 15(a) of BIPA, "we apply the ordinary and popular meaning of the word 'possession,' as found by our supreme court and found in a dictionary, which is to have control."). But, contrary to Papa John's argument, "possession" does not require *exclusive* control. *See Smith v. Signature Sys., Inc.*, No. 2021-CV-02025, 2022 WL 595707, at *3 (N.D. Ill. Feb. 28, 2022) ("possession requires some dominion or control over the data but does not require exclusive control." (citing *Heard v. Becton, Dickinson & Co.* ("*Heard I*"), 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020)); *Namuwonge*

6

*v. Kronos, Inc.*, 418 F. Supp. 3d 279 (N.D. Ill. 2019) (holding that "possession" under §15(a) does not require "exclusive control")).

Next, the Complaint plausibly alleges that Papa John's exercised some control over Plaintiff's biometric data. Contrary to Papa John's insistence, the Complaint does more than merely allege that Papa John's "developed" the FOCUS system. It also alleges that Papa John's: (1) "operated" the systems used by each franchisee; (2) required franchisees to use fingerprint scanning features whenever possible; (3) maintained remote access to the system; (4) would "download and collect information from franchisees' point-of-sale systems, including Hoosier Papa's, daily around 2 a.m. and 4 a.m"; and (5) used that downloaded information to, among other things, prepare reports identifying which "franchisees and workers do not use the FOCUS system's fingerprint scanner, and instead use passwords for authentication." *Id.* ¶ 29. These allegations, taken as true, plausibly allege that Papa John's "possessed" the biometric data contained in the FOCUS system.

In arguing to the contrary, Papa John's insists that the Complaint only alleges that Papa John's had access to some "information" in the FOCUS system, not the biometric information, specifically. Not so. The Complaint alleges that Papa John's "has remote access to FOCUS point-of-sale systems at franchise locations." [17] ¶ 15. This suffices to plausibly allege that Papa John's had access to the system and everything it contained, not just some parts of it.

Papa John's also relies upon *Barnett v. Apple Inc.*, a putative class action in Illinois state court in which Illinois consumers of Apple's iPhones, iPads, and

7

Macbooks brought BIPA claims related to Apple's "FaceID" facial recognition software and "TouchID" fingerprint authentication software. *See* 2022 WL 17881712, at *6–7. There, the court dismissed the § 15(a) claim against Apple, finding that the complaint failed to plausibly allege "possession" because the software resides entirely on a user's device; a device user decides whether to use the software; the collected biometrics remain stored on the device, only; the user could delete the software and data; and nothing suggested that Apple could access the biometric data. *Id*.

Papa John's insists that it has no more control over the biometric information in the FOCUS system than Apple had control of a user's data collected through "FaceID" or "TouchID." [41] at 14–15. While Papa John's remains free to dispute its control at a later point in the proceedings, the facts alleged in the Complaint—which the Court takes as true at this stage's evaluation of the pending motion to dismiss— say otherwise. If anything, *Barnett* supports Plaintiff's claim because Plaintiff alleges many of the facts that the *Barnett* Court found missing with respect to whether Apple "possessed" a device user's biometric data. Namely, Plaintiff did not control the FOCUS system and could not access, let alone delete, his biometric data. Instead, Papa John's allegedly controlled the system. Further, Plaintiff could not choose whether to use the fingerprint scanner. Instead, Plaintiff had to use the fingerprint scanner because Papa John's allegedly required its franchisees to use it whenever possible and, as such, Defendant Hoosier Papa required its employees to use it.

Papa John's also points to various BIPA cases brought against system or software vendors in which a court found no plausibly "possession" because the vendor

8

only supplied the system, did not decide or even know how the system would be used, and the biometric information remained stored only on the local system itself. *See* [41] at 14–15. For example, it cites *Jacobs v. Hanwha Techwin Am., Inc.*, which dismissed BIPA claims against a vendor who sold video-cameras to TJ Maxx that TJ Maxx used in its stores to collect facial images and track potential shoplifters. No. 21 C 866, 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021). It also cites *Heard I*, in which a court dismissed BIPA claims by hospital employees against a vendor who provided automated medication dispensers to hospitals that included fingerprint scanner technology. 440 F. Supp. 3d at 968. Further, it cites *Bernal v. ADP, LLC*, in which a court dismissed claims by employee against a vendor, ADP, LLC, who supplied a time entry system with fingerprint scanning technology that an employer used. No. 2017-CH-12364, 2019 WL 5028609, at *1 (Ill. Cir. Ct. Aug. 23, 2019).

Papa John's insists that these cases control here because, with respect to the FOCUS system, it is nothing more than a third-party vendor. Here again, taking as true the Complaint's alleged facts, this argument fails. Namely, according to the Complaint, although Papa John's developed the FOCUS system, it is not merely a third-party software vendor. Instead, as discussed above, it also allegedly operates the system, creates requirements for how franchisees use it, retains access to the system, and regularly downloads and uses data from it.

Overall, the Complaint's allegations, taken as true, plausibly allege that Papa John's had "possession" of Plaintiff's biometric data. Accordingly, Papa John's motion to dismiss the § 15(a) claim fails.

### 2. Section 15(b) of BIPA

Plaintiff also brings a claim against Papa John's for violating §§ 15(b)(1), (2), and (3) of BIPA. [17] ¶¶ 62–65. Section 15(b) imposes on private entities multiple written consent and notice requirements before it may "collect, capture, purchase, receive through trade, or otherwise obtain" an individual's biometric information. 740 Ill. Comp. Stat. 14/15(b).

In moving to dismiss the § 15(b) claims, Papa John's argues that, to state a viable § 15(b) claim, a complaint must allege more than mere possession of biometric information. [41] at 16–18. Instead, according to Papa John's, a complaint must plausibly allege that an entity "actively collected" the biometric data. *Id.* at 16. It argues that the Complaint fails to plausibly allege that it actively collected Plaintiff's fingerprint data. *Id.*

As Papa John's correctly points out, § 15(b) does not use the term "possess" while other provisions of BIPA do. Because of this, multiple courts have found that merely possessing biometric data does not subject an entity to § 15(b)'s requirements. *See, e.g., Ronquillo v. Doctor's Assocs., LLC*, 597 F. Supp. 3d 1227, 1231 (N.D. Ill. 2022) (collecting cases). Many of these courts have found that, in addition to possession, the entity must take some "*active step* to collect, capture, purchase, or otherwise obtain biometric data." *Jacobs*, 2021 WL 3172967, at *2 (emphasis added); *see also Heard I*, 440 F. Supp. 3d at 966 (same).

Papa John's points to these cases and insists that "some step" means § 15(a) only applies if an entity "actively collects" an individual's biometric data. It argues

10

that it did not "actively collect" Plaintiff's biometric data because the FOCUS system, not Papa John's, "directly collected" it. [41] at 16. It also argues that it did not "actively collect" Plaintiff's fingerprints because it did not "unequivocally require" that Hoosier Papa use the fingerprint scanner. *Id.* It insists that the franchisee remains free to choose whether to use the fingerprint scanner and, therefore, even if Hoosier Papa "actively collected" Plaintiff's fingerprints, Papa John's did not.

Papa John's reads § 15(b) too narrowly and misconstrues the caselaw. Although multiple cases require some "active step," Papa John's does not point to any case that holds that an entity must "actively collect" the biometric data from an individual (either directly or otherwise). Nor does § 15(b)'s plan language support such a requirement. To the contrary, to require "active collection", would render meaningless § 15(b)'s additional terms "capture, purchase, receive through trade, or otherwise obtain." *See, e.g., Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 783–84 (N.D. Ill. 2020) (finding that a plaintiff did not need to allege "active collection" because "Section 15(b) governs not only entities that 'collect' biometric data, but also those that 'capture, purchase, receive through trade, *or* otherwise obtain' such data." (quoting 740 Ill. Comp. Stat. 14/15(b)) (emphasis added in original)).

Instead, this Court agrees with those cases that hold § 15(b) requires some active step beyond mere possession. Such a reading comports with the ordinary meaning of the terms "collect, capture, purchase, receive through trade, or otherwise obtain," all of which imply some action.

11

Based upon this plain reading of § 15(b), the Court finds that the Complaint plausibly alleges that Papa John's collected, captured, purchased, or otherwise obtained Plaintiff's fingerprint data. First, Papa John's allegedly required that its franchisees use the fingerprint scanner whenever possible. [17] ¶ 20. Even if Papa John's did not "unequivocally" require that its franchisees use the fingerprint scanner or "directly collect" the biometric data, [41] at 16, Papa John's requirement still plausibly qualifies as an "active step" to "collect" or "capture" the employees' fingerprint data.[3]

Second, even putting aside whether Papa John's required its franchisees to use the fingerprint scanners, the Complaint alleges that Papa John's operates the FOCUS system at each franchised restaurant; regularly downloads data from it; and generates reports regarding fingerprint scanning based on the data it downloaded. *Id.* ¶¶ 23–29.[4] These additional allegations identify numerous active steps that Papa John's allegedly took to "otherwise obtain" Plaintiff's biometric data.[5]

---

[3] Notably, even if § 15(b) required that an entity "actively collect" Plaintiff's biometric data, Papa John's fails to explain how "actively collect" would require that an entity "directly collect" or "unequivocally require" that someone else collect it.

[4] In arguing to the contrary, Defendant points to *Stauffer v. Innovative Heights Fairview Heights, LLC*, 20-cv-00046, 2022 WL 3139507 (S.D. Ill. Aug. 5, 2022). *See* [52]. There, employees brought a § 15(b) claim against a franchisor, Skyzone, based upon its franchisee's use of a third-party time management system that collected employees' fingerprints. The court dismissed the § 15(b) claim against Skyzone, finding that the complaint only alleged that Skyzone had an "unlimited right to access the system," but did not allege that Skyzone actually did anything to extract or obtain the biometric data. *Stauffer*, 2022 WL 3139507, at *3, 6. It held that Skyzone's ability to access the system alone did not suffice to plausibly allege an "active step" to collect, capture or otherwise obtain the employees' fingerprints. *Id.* As discussed above, the Complaint here alleges more than just that Papa John's had the ability to access the FOCUS system. Therefore, *Stauffer* remains distinguishable from this case.

[5] Of course, discovery will inform exactly what data Papa John's downloaded, whether the system placed limitations on what data could be downloaded, as well as other factors that may prove material to whether Papa John's violated any provision of BIPA. Federal pleading standards, however, only

Next, Papa John's argues that § 15(b) should only apply to employers. In fact, it insists that BIPA only places notice and consent requirements on employers. [41] at 18. Papa John's offers no basis to read such limitations into § 15(b). To the contrary, § 15(b) applies to any "private entities" that "collect, capture, purchase, or otherwise obtain" biometric data from any "person or customer." 740 Ill. Comp. Stat. 14/15(b). As numerous other courts have held, the provision does not limit application in the employment context. *See, e.g., Ronquillo v. Doctor's Assocs., LLC*, 597 F. Supp. 3d at 1233 (holding that "DAL and HP cannot point to anything in BIPA's text that supports limiting § 15(b)'s reach only to employers."); *Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088, 1092 (N.D. Ill. 2019) (finding "no textual support whatsoever" for "the proposition that the BIPA exempts a third-party non-employer collector of biometric information when an action arises in the employment context"); *Figueroa*, 454 F. Supp. 3d at 783 (rejecting a similar argument made by a third-party human resources provider)

Finally, Papa John's complains that it did not have a direct relationship with employees, so it could not feasibly obtain their written consent or provide them notice before the FOCUS system collected their fingerprints. [41] at 17. Section 15(b), however, does not limit its application to entities who could feasibly provide notice or obtain informed consent. Nor does it turn upon the relationship an entity has with a plaintiff. *See, e.g., Flores v. Motorola Sols. Inc.*, No. 20-cv-01128, 2021 WL 232627, at *3 (N.D. ill. Jan. 8, 2021) (rejecting a defendant's argument that § 15(b) "only applies

---

require that the complaint allege a facially plausible claim; a plaintiff need not prove the claim at the pleading stage. *Iqbal*, 556 U.S. at 678.

13

where an information collector has some relationship with the individual and has an opportunity to perform the written exchange of notice."). Overall, the Complaint alleges a plausible § 15(b) claim against Papa John's.[6]

### C.  IWCA Does Not Preempt Plaintiff's Claims Against Papa John's

Next, Papa John's argues that the Illinois Workers' Compensation Act ("IWCA"), 820 Ill. Comp. Stat. 305/, preempts Plaintiff's BIPA claims. [41] at 18. The IWCA establishes a mechanism for employees to obtain "prompt and equitable compensation" for injuries suffered in the course of employment. *See Kelsay v. Motorola, Inc.*, 384 N.E.2d 353 (Ill. 1978).

Recently, the Illinois Supreme Court in *McDonald v. Symphony Bronzeville Park, LLC*, 193 N.E.3d 1253 (Ill. 2022), held that that the IWCA does not preempt an employees' BIPA claims against an employer for statutory damages. Papa John's acknowledges *McDonald* but argues that Plaintiff's claims remain preempted by IWCA because, in addition to seeking statutory damages under BIPA, he also alleges emotional distress damages. [41] at 19. Papa John's argues that the IWCA still provides the exclusive remedy for such an injury and "*McDonald* did nothing to change the fundamental rule that any lawsuit falling within the scope of the exclusivity provision must be dismissed." *Id.*

---

[6] Papa John's also asks the Court to dismiss any § 15(d) claim against it, arguing that Plaintiff waived such a claim by failing to address it in its briefing. [41] at 11 n.4; [45] at 3. Plaintiff's Amended Complaint, however, does not assert a § 15(d) claim against Papa John's. *See* [17] (Count II). It only asserts a § 15(d) claim against Defendant Hoosier Papa. *See id.* (Count I). Accordingly, there exists no § 15(d) claim against Papa John's for the Court to dismiss.

14

In response, Plaintiff disputes Papa John's arguments on the merits and argues that, regardless, the IWCA only applies to an employer and here Hoosier Papa, not Papa John's, employed Plaintiff. [44] at 16–19. Most notably, however, Plaintiff responds that, although he alleged that Papa John's actions caused him emotional distress, his complaint "seeks only BIPA's statutory damages, and not any actual damages." [44] at 18. Based upon this representation, which remains consistent with the Complaint's prayer for relief, [17] at 12, *McDonald* plainly controls and the IWCA does not preempt Plaintiff's BIPA claims.

### D. Pleading Recklessness or Intent for Heightened Damages Under BIPA

Finally, Papa John's moves to dismiss Plaintiff's request for heightened statutory damages, arguing that the Complaint fails to plead that Papa John's acted recklessly or intentionally. [41] at 20. In response, Plaintiff argues that he does not need to allege Papa John's state of mind and, even if he did, his Complaint plausibly alleges intent or recklessness. [44] at 20–21.

At the pleading stage, a plaintiff does not need to "show his entitlement to" the "precise forms of relief" that he seeks. *Sosa*, 2022 WL 1211506, at *10; *Jones v. Butler*, 663 F. App'x 468, 470 (7th Cir. 2016) (holding that a demand for relief is not part of the claim); *Cothron*, 467 F. Supp. 3d at 615 ("Rule 12(b)(6) does not require [Plaintiff] to plead the facts that will determine the amount of actual damages she may be entitled to recover."). Instead, Federal Rule of Civil Procedure 8(a)(3) only requires that a plaintiff plead "a demand for the relief sought."

15

BIPA provides that a plaintiff may recover statutory damages of $1,000 for each negligent violation and $5,000 for each reckless or intentional violation. *See* 740 Ill. Comp. Stat. 14/20(1)–(2). Plaintiff's request for relief seeks both, in the alternative, depending on which state of mind each Defendant is found to have had. [17] at 12. BIPA also provides other forms of relief—declaratory, injunctive, and reasonable attorneys' fees and costs—which Plaintiff also seeks. *Id.*

As explained above, the Complaint plausibly alleges that Papa John's violated BIPA §§ 15(a) and 15(b). Papa John's state of mind has no bearing on the plausibility of Plaintiff's alleged BIPA claims themselves but will merely determine what damages Plaintiff may recover for any BIPA violation. In other words, Papa John's state of mind only relates to what relief Plaintiff may seek if he establishes a BIPA violation. *See, e.g., Sosa v. Onfido, Inc.*, 20-cv-4247, 2022 WL 1211506, at *9 (N.D. Ill. Apr. 25, 2022) ("liquidated damages are requests for a particular type of remedy should [Plaintiff] prevail on his underlying BIPA claim); *Cothron v. White Castle Sys., Inc.*, 467 F.Supp.3d 604, 615 (N.D. Ill. 2020) (holding that statutory damages, declaratory relief, and injunctive relief are various forms of relief for a single claim under BIPA); *Davis v. Passman*, 442 U.S. 228, 239 (1979) ("a 'cause of action' is analytically distinct" from the question of "what relief, if any, a litigant may be entitled to receive."). Accordingly, the rules do not require Plaintiff to allege state-of-mind for his BIPA claims to proceed.

Yet, even if the law required Plaintiff to plead Papa John's state of mind, the Complaint plausibly alleges that Papa John's acted intentionally or recklessly.

16

Namely, it alleges that Papa John's regularly conducts business in Illinois; BIPA had been in place for over eight years when Plaintiff began working at the Ottawa restaurant; BIPA had garnered significant news attention; BIPA's requirements were well-known; and other cases like this one had been litigated and settled in employees' favor. [17] ¶¶ 30–34. These facts suffice, at this stage, to at least plausibly suggest that Papa John's acted recklessly if not intentionally. *See, e.g., Horn v. Method Prod., PBC*, No. 21 C 5621, 2022 WL 1090887, at *2 (N.D. Ill. Apr. 12, 2022) (holding that the Defendant "made no effort to comply with BIPA, Horn has pleaded facts to suggest that Method acted with negligence, recklessness, or intent."); *Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2019 WL 5635180, at *5 (N.D. Ill. Oct. 31, 2019) ("[T]he BIPA took effect more than ten years ago, and if the allegations of his complaint are true—as the Court must assume at this stage—BNSF has made no effort to comply with its requirements. This is certainly enough, at the pleading stage, to make a claim of negligence or recklessness plausible.").

## IV. Conclusion

For the reasons explained above, the court denies Papa John's motion to dismiss [40].

Dated: March 30, 2023            Entered:

                                           John Robert Blakey
                                           United States District Judge